UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>*Defendants*. | Case No. 25-cv-03501 |

**DECLARATION OF M. CHRISTIAN GREEN
IN SUPPORT OF PLAINTIFFS' MOTION FOR A STAY AND A PRELIMINARY INJUNCTION**

I, M. Christian Green, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am the President of the League of Women Voters of Louisiana and the League of Women Voters of Louisiana Education Fund (collectively "LWVLA" or the "League"). I have served in this role since 2023.

2. I submit this declaration to describe the League's mission to empower voters through voter registration, education, and engagement, and to explain how the League and its members have been harmed by Defendants' actions to transform the U.S. Citizenship and Immigration Services' Systematic Alien Verification for Entitlements ("SAVE") tool into a searchable national citizenship data system. It is my understanding that the overhauled SAVE system now draws on Social Security Administration ("SSA") systems of records and its incomplete and unreliable citizenship data—which, from publicly available information, I understand is particularly unreliable for naturalized citizens—and that the tool allows state and

1

federal user agencies to run bulk searches of the citizenship or immigration status of many thousands of individuals.

3. Because the Louisiana Secretary of State's office is using the SAVE tool for voter roll maintenance, thousands of eligible Louisiana voters are now at serious risk of being purged from the rolls and deprived of their right to vote in upcoming elections, based on inaccurate citizenship data in SAVE. The Louisiana Secretary of State has already announced that, through use of the SAVE tool, her office has identified 390 non-citizen registered voters and intends to investigate these individuals—even though, as she acknowledges, her findings may be based on errors or outdated information.

4. The overhauled SAVE tool's unlawful pooling of information, including incomplete and unreliable SSA citizenship data, thus directly harms the League's voter registration and voter empowerment mission and its members. With local primaries in Louisiana taking place in October, a municipal election in New Orleans taking place on November 15, and 2026 elections on the horizon, time is of the essence to protect this mission.

5. With these elections looming and others upcoming in the next year, naturalized-citizen League members, and naturalized-citizen Louisianans whom the League has engaged with as part of its voter education and participation work, fear they will be wrongly purged from voter rolls and unable to exercise their right to vote, or that they will be criminally investigated for their lawful voting. The League has heard these fears firsthand, and they impair its ability to facilitate their registration and voting.

6. However, the League cannot reasonably address or assuage these fears, and fully educate voters about the SAVE system, the risks it poses to their voting rights, and the steps they should take to protect their rights, because Defendants have not provided the public with basic

information about the overhauled SAVE system or provided the public with notice and an opportunity to comment on the overhauled system's contents and parameters.

7.  For all these reasons, the League and its members need immediate judicial relief.

**LWVLA Background**

8.  The League of Women Voters of Louisiana and League of Women Voters of Louisiana Education Fund, formed under Section 501(c)(4) and Section 501(c)(3) of the Internal Revenue Code, respectively, are nonpartisan, nonprofit, grassroots organizations that seek to encourage informed and active participation in the democratic process and government. Nonpartisanship is fundamental to LWVLA and LWVLA does not support or oppose any candidate or political party.

9.  LWVLA is a state League of the League of Women Voters, which was founded in 1920 as an outgrowth of the struggle to win voting rights for women, has more than a million members and supporters, and is organized in more than 750 communities and in all fifty states and the District of Columbia.

10. LWVLA was founded in the 1940s. Today, it consists of six chapters in Louisiana: LWV of New Orleans, LWV of St. Tammany, LWV of Lafayette, LWV of Caddo-Bossier, LWV of Iberia, and LWV of Tangipahoa. Each local League is a member of LWVLA, and all members of the local Leagues are members of LWVLA.

11. LWVLA has approximately 300 members across Louisiana. These individuals share in its mission to educate and engage eligible voters and encourage all residents to actively participate in Louisiana's political process. Some of those members are naturalized citizens.

12. These naturalized-citizen members are registered voters, have records in various federal databases, including SSA, and have not consented to SSA's provision of their records to

the overhauled SAVE tool. Although some may have had their SSA records updated to account for the fact that, after they applied for a Social Security Number and card, they became a naturalized citizen, many others have not.

**LWVLA's Mission and its Members**

13. LWVLA's mission is to empower eligible Louisianans to vote and defend the democratic process in Louisiana. LWVLA believes that every Louisiana voter should be able to effectively register to vote and cast their ballot. LWVLA encourages the informed and active participation of all citizens in Louisiana's government through participation in the democratic process.

14. LWVLA is comprised of dues-paying members who provide voter services to Louisianans. LWLVA is entirely volunteer-run; it does not have paid full-time employees or staff involved in the operation of the League.

15. Helping eligible citizens register to vote and voter assistance in all of its forms are core components of the League's work and are vital to expressing its belief that all eligible voters should participate in Louisiana's democracy. The League works to ensure that all eligible individuals have the opportunity and the information needed to register and vote, with a particular focus on traditionally underrepresented and underserved communities who benefit the most from additional education and assistance. LWVLA believes it is especially important to encourage naturalized citizens to vote and educate them about the American and Louisianan democratic processes.

16. To further its beliefs, LWLVA provides regular training to its local Leagues, their members, their volunteers, voter services teams, and nonpartisan partners to assist voters in getting registered and staying registered.

17. LWVLA also helps maintain, together with the national League and other state and local Leagues, VOTE411.org, an award-winning nonpartisan, online resource committed to ensuring voters have the information they need to successfully participate in every election—local, state, and federal. VOTE411.org is an accessible, bilingual, user-friendly website that allows individuals across the nation to register to vote or update their voter registration. VOTE411 provides extensive, state-by-state guides about a huge range of election issues for voters, such as how states' absentee ballot process work, how to cure ballots, where to vote, what ID is required, how to verify their voter registration, even what types of machines to expect at polling places.[1]

**LWVLA's Voter Registration Activities**

18. LWLVA and its local Leagues, through their voter services and public services programs, host public events on civic education, including providing information and assistance with the voter registration process and with confirming a voter's registration status.

19. The League undertakes these efforts and works to register voters across Louisiana, with a particular focus on the parishes in which local Leagues operate

20. The bulk of the League's registration events take place in the late summer and early fall of election years. These drives include registration events at high schools, community events, and festivals throughout the state. The New Orleans chapter of LWVLA also hosts weekly voter registration events throughout the year to register naturalized citizens. At these events, LWVLA volunteers typically guide applicants through the voter registration process, answer questions, and ensure that applications are completed correctly. LWVLA volunteers then ensure that the applications are submitted correctly to the parish registrar in accordance with Louisiana law.

---

[1] *See Louisiana*, Vote411, https://www.vote411.org/louisiana, archived at https://perma.cc/PA8Z-AQYM.

21. Throughout LWVLA's programming, many of the voters who are submitting applications to register to vote or who have questions about the process are naturalized citizens.

22. Aside from holding registration events, the League helps its own members and other registered voters update their registrations, double-check that they remain registered, and remain on the rolls or be reinstated.

23. In short, the League conducts an array of activities to further its mission of registering eligible voters, including naturalized citizen voters, and ensuring they can exercise their right to vote.

### The Overhauled SAVE System's Harmful Effects on LWVLA's Mission, Activities, and Members

24. The overhauled SAVE system harms the League and its members in several ways, particularly in advance of the upcoming October and November 2025 elections and with 2026 elections on the horizon.

25. First, when voters are unlawfully purged from Louisiana voter rolls, it decreases the number of Louisiana voters, directly undermining the League's mission of increasing the number of registered voters and voter participation. And when voters are intimidated or must take additional steps to register or remain registered, it directly harms the League's mission of ensuring that the ballot box is accessible for all eligible voters in Louisiana.

26. The overhauled SAVE system imposes these very harms because it creates a serious risk that naturalized-citizen Louisianans who are eligible to vote will nonetheless be purged from voter rolls. The purges, and the threat of criminal prosecution against individuals wrongly believed to be non-citizen voters, has already begun.

27. In May 2025, the Louisiana Secretary of State's office announced that the state would use the overhauled SAVE system for voter list maintenance. And in September 2025, the

Secretary of State announced the preliminary findings of her office's investigation of alleged instances of non-citizen voting using SAVE, *i.e.*, running names from Louisiana's voter rolls through the overhauled system. She announced that her office had discovered 390 non-citizen registered voters in the state, with 79 voting in at least one election since the 1980s, and she announced that the 390 individuals had to respond or give proof of their removal from voter rolls within 21 days would be referred for criminal prosecution. Nonetheless, she acknowledged that some of the findings of non-citizen registration and voting could be due to errors or outdated information.

28. It is my understanding that the SAVE system creates a serious risk of error because it includes citizenship data from SSA, which has inaccurate and unreliable citizenship data, especially for naturalized citizens.

29. The purging of "non-citizen" voters from voter rolls, based on bad citizenship data from SAVE right before elections, has sowed confusion and hindered the information LWVLA can provide to its members and thousands of other Louisianans about the voter rolls, the safeguards in place to prevent the purging of their registration prior to an election, and the lawful administration of elections. The overhauled SAVE tool therefore has directly interfered with the League's effort to increase voter participation and turnout and will continue to do so.

30. It is inevitable that, because of the overhauled SAVE tool and its faulty citizenship data, some Louisiana voters, including some registered by the League and some League members, will not be able to vote, will not be able to correct any faulty citizenship data in time, will choose to take their name off the registration list out of fear, or will choose not to vote. The downsides of registering to vote and voting because of Defendants' actions—where SAVE's flaws create the serious risk that naturalized citizens will be identified as non-citizens and potentially even

criminally investigated for their lawful voting—are simply too burdensome for many of these citizens.  As a result, the overhauled SAVE system has and will continue to directly interfere with our efforts to register voters, keep eligible voters on the rolls, accurately inform these voters about the process and effectively promote civic engagement and voting across Louisiana.  The unlawful reduction in voters who are in fact eligible to vote harms the League's mission of increasing participation in our elections, including from naturalized citizens.

31. Second, the League lacks critical information to fully and accurately educate eligible Louisiana voters, including naturalized ones, about the overhauled SAVE tool, the risks it poses to their voting rights, and the steps they can and should take to protect their rights effectively.  LWVLA is known in the community as a trusted resource for voter education and information.  In line with this mission to educate voters, LWVLA has sought out public information on the SAVE overhaul, but such information has been hard to come by.

32. Defendants have developed and rolled out the overhauled SAVE tool in an opaque process.  They have released only limited and high-level material and failed to provide the League, its members, or others with basic information about the tool.  They have not, for example, given any advanced notice on the exact parameters of the overhauled SAVE system's uses, including for voter roll verification; the sources of the data pooled in that system; the policies and practices for records retrieval; the procedures for voters to access records contained in the system and contest or correct their contents; and other steps voters can take to ensure their government records are accurate, up-to-date, and secure.

33. Without this vital information, the League cannot effectively carry out its educational mission.  A key part of the League's work is delivering accurate information about voter registration to the public and tailoring and communicating voter information to the

appropriate audiences, all so that all eligible Louisianans know they can vote, how they can do so, and how they can take steps to protect their voting rights. Yet without basic notice on the overhauled SAVE system's parameters, policies, and procedures—notice that the Privacy Act guarantees to the League and its members—the League and its members are kept in the dark about a serious threat to voting rights in Louisiana, the magnitude of that threat, and how best to mitigate it. As detailed above, the League typically undertakes a host of measures to educate the public, including as part of voter registration drives, other voter services events, and communications initiatives and programming like mailers. It is unable to effectively educate eligible voters, including naturalized ones, through these various means because Defendants have withheld critical information on the overhauled SAVE system that the League would have disseminated alongside analysis and advice for affected voters.

34. Simply put, there has been significant confusion in state and local LWVLA communities about exactly what the overhauled SAVE tool is doing and how members and voters across the state can ensure that their ability to vote is safeguarded and can avoid being deprived of their right to vote based on faulty citizenship data. We have been struggling to adjust our voter registration guides, communications, and other materials in light of the lack of information on the changes to SAVE.

35. Third, because Defendants failed to follow notice-and-comment procedures before overhauling the SAVE system, the League and its members were deprived of their opportunity to convey their concrete concerns with the overhauled SAVE tool and the unreliable and inaccurate SSA citizenship data it incorporates. Had Defendants provided an opportunity for notice and comment before they developed and unveiled their overhauled SAVE tool, the League would have submitted a comment expressing their concerns about the serious risk that its naturalized-citizen

members and other naturalized-citizen voters in Louisiana will be wrongfully purged from voter roles and even potentially criminally investigated for their lawful voting. As part of its comment, it would have also offered recommendations to ensure eligible voters are not wrongfully purged from voter rolls or investigated based on inaccurate SSA data. The League would have also alerted its members to the opportunity to provide comments on the overhauled SAVE system.

36. Finally, our members are being directly harmed by the Defendants' SAVE overhaul. As explained, the League's members include Louisianans who are naturalized U.S. citizens who have records in various federal databases, including SSA, have not consented to SSA's provision of their records to the overhauled SAVE tool, and have not had their SSA records updated to account for the fact that they naturalized.

37. Until Defendants' unlawful overhaul of the SAVE tool ends, these naturalized citizen members will need to re-check their voter registration status and are at risk of being purged, while voting in the November 2025 election is currently underway and with 2026 elections on the horizon. These members also may have to take future corrective action in order to vote in future elections, including continuing to re-check and update their voter registration information and updating their SSA records and, in some cases, DHS records. They likely cannot take the latter step in time to safeguard their right to vote in the upcoming October and November elections since in-person appointments at SSA to prove citizenship status may take weeks or months, and since they may have already been purged from the voter rolls. Also, LWVLA expects that many of its naturalized-citizen members and the naturalized-community members that it seeks to register to vote, will face onerous barriers to obtaining and providing the proof of citizenship necessary to correct SSA records. Specifically, it expects that a number of them do not currently possess common forms of proof of citizenship reflecting their current name. LWVLA further expects that

these individuals will face significant financial and logistical hurdles in attempting to obtain proof of citizenship and may not be able to do so at all.

38. In other words, the League's naturalized-citizen members face clear obstacles in their ability to vote. They reasonably fear they will not be able exercise their right to vote, or to take the steps necessary to protect that right. And they reasonably fear they may be subject to unwarranted criminal investigation for their voting, simply because the SAVE system erroneously has them down as a non-citizen.

39. Compounding these issues, I am aware that League members and their families—especially naturalized citizens—are too afraid to participate in this litigation. Even after being given the option of proceeding under a pseudonym, such League members were afraid that litigating to preserve their fundamental rights would still invite retaliation from the current administration. Given the countless actions this administration has taken against individuals who oppose it, League members fear that the government will retaliate against them, their families, and their employers.

I declare under penalty of perjury as prescribed in 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on October 7, 2025, in New Orleans, Louisiana.

_M. Christian Green_
M. Christian Green