# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

LEAGUE OF WOMEN VOTERS, *et al*.,

                       Plaintiffs,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al*.

                    Defendants.

Case No. 1:25-cv-03501

## PLAINTIFFS J. DOE 1, J. DOE 4, AND J. DOE 5'S
## MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CERTIFICATION
## OF PRELIMINARY RELIEF SUBCLASS

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

   I.  The Privacy Act of 1974 ......................................................................................... 2

   II. Changes to the SAVE System ............................................................................... 3

   III.  Effects on the Plaintiffs and Subclass ............................................................... 4

ARGUMENT ..................................................................................................................... 7

   I.  Standard of Review ................................................................................................. 7

   II. The Subclass May Be Certified Because This Action Satisfies the Requirements of
       Rule 23(a) .............................................................................................................. 9

     A.  Numerosity .................................................................................................... 9

     B.  Commonality ............................................................................................... 10

     C.  Typicality ..................................................................................................... 12

     D.  Adequacy ..................................................................................................... 14

   III.  The Subclass May Be Certified under Rule 23(b)(2) ........................................ 16

   IV.  The Court Should Appoint Counsel as Class Counsel. ...................................... 18

CONCLUSION ................................................................................................................ 18

## INTRODUCTION

SAVE is an online system administered by USCIS that allows federal, state, tribal, and local government agencies to confirm citizenship and immigration status of certain categories of individuals, based on Department of Homeland Security ("DHS") records, before—for example—granting benefits and licenses. *See* Class Action Complaint for Injunctive and Declaratory Relief, ECF No. 1 ("Compl."), ¶ 97. The SAVE system has not historically permitted queries for U.S.-born citizens, queries of Social Security Administration data, or queries of many individuals at once, among other limitations. *Id.* at ¶¶ 104, 105, 108. Plaintiffs' Class Action Complaint alleges that, in May 2025, Defendants unilaterally "overhauled" the SAVE system into what they call "a single, reliable source for verifying immigration status and U.S. citizenship nationwide." *Id.* at ¶ 111 (citing Press Release, *USCIS Deploys Common Sense Tools to Verify Voters*, USCIS (May 22, 2025), https://perma.cc/HBZ5-RW2E). This overhauled version of the SAVE system allowed, for the first time, user agencies to run queries by Social Security Number ("SSN") and to run mass queries of as many as millions of individuals at once. *Id.* at ¶¶ 114-116. It created, for the first time, what is effectively a national data bank of U.S. citizens. And Defendants made these significant changes without complying with the procedural requirements of, and without establishing safeguards required by, the Privacy Act.

In addition to the serious privacy implications of these changes, the updates to the SAVE system also injected a significant new source of error: reliance on Social Security Administration ("SSA") records to verify citizenship status. These records are known to be flawed and incomplete, especially for naturalized citizens. Yet DHS has created a system—and encouraged states to use it specifically to verify the citizenship status of voters on their voter rolls—that relies on this frequently outdated and inaccurate information. This issue is the focus of the Motion for

Preliminary Relief because it poses an imminent threat of impairing the fundamental right to vote of the PR Subclass Plaintiffs, as well as the putative class members, with elections occurring in several states this fall, multiple states holding primary elections next spring, and nationwide midterm elections next fall. The PR Subclass Plaintiffs seek certification of this narrow class for purposes of the Motion for Preliminary Relief.

**BACKGROUND**

## I.     The Privacy Act of 1974

The Privacy Act of 1974 was enacted to protect Americans from the risks of privacy infringement, surveillance, and abuse that unregulated centralized national data banks would pose. "Enacted in the wake of the Watergate and the Counterintelligence Program (COINTELPRO) scandals involving illegal surveillance on opposition political parties and individuals deemed to be 'subversive,' the Privacy Act sought to restore trust in government and to address what at the time was seen as an existential threat to American democracy."[1] The Act imposes mandatory requirements that an agency must satisfy whenever it creates or modifies a "system of records," defined as a "group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). These requirements include protections against disclosure of data, 5 U.S.C. §§ 552a(b)(1)-(13); creation and maintenance of an "accounting of certain disclosures," *id.* § 552a(c); rights for individuals to request access to and amendment of their records, *id.* § 552a(d); and other "agency requirements" for the maintenance, collection, use, or dissemination of covered information, *id.* §§ 552a(a)(3), (e), (f). The Privacy

---

[1] U.S. Dep't of Just, *Overview of the Privacy Act of 1974*, at 1 (2020 ed.), https://perma.cc/6SB9-XAEK (cleaned up).

Act also prohibits "computer matching program[s]" that compare data across agencies unless participating agencies execute and disclose to Congress and the public written "matching agreements" detailing their interagency data sharing. 5 U.S.C. §§ 552a(o), 552a(a)(8). These restrictions limit the ways in which the government can transfer, cross-reference, and consolidate data, require transparency when it does so, and provide important protections for every American whose data is housed in government systems.

## II.    Changes to the SAVE System

The SAVE program is "an inter-governmental initiative" administered by USCIS that is "designed to help federal, state, tribal, and local government agencies confirm citizenship and immigration status prior to granting benefits and licenses, as well as for other lawful purposes."[2] SAVE's functionality allows queries of different records systems within DHS.

As detailed at length in the Complaint, in recent months, DHS has overhauled the SAVE system to ostensibly function as a "single, reliable source for verifying immigration status and U.S. citizenship nationwide."[3] To accomplish this goal, DHS has enabled SAVE to directly query SSA records systems to allow for bulk retrieval of SSA information for the purpose of mass checks of individuals' citizenship status, retrieved by Social Security Number. Compl. ¶¶ 113-125. DHS has also begun making the overhauled SAVE system available to states who are using it to purge their voter rolls and open investigations into alleged instances of non-citizen voting. *Id.* ¶¶ 140-155.

---

[2] Dep't of Homeland Sec., *Privacy Impact Assessment for the Systematic Alien Verification Entitlements Program*, DHS Ref. No. DHS/USCIS/PIA-006(c) at 2 (June 30, 2020), https://perma.cc/HU2M-NTL8 ("SAVE PIA").

[3] Press Release, *USCIS Deploys Common Sense Tools to Verify Voters*, USCIS (May 22, 2025), https://perma.cc/HBZ5-RW2E.

### III.     Effects on the Plaintiffs and Subclass

As a result of Defendants' overhaul, the SAVE system reflects inaccurate citizenship status for the PR Subclass Plaintiffs and members of the Subclass. The PR Subclass Plaintiffs have each confirmed with SSA that their naturalization and current status as U.S. citizens was not accurately reflected in their SSA records. *See* Decl. of J. Doe 1, ECF No. 16-2 ("Doe 1 Decl."), at ¶ 14; Suppl. Decl. of J. Doe 4, ECF No. 16-3 ("Doe 4 Decl."), at ¶ 14; Decl. of J. Doe 5, ECF No. 16-4 ("Doe 5 Decl."), at ¶ 13.

The experience of these Plaintiffs is not exceptional; SSA has itself acknowledged widespread inaccuracies in its records about the citizenship status of SSN holders, because its records merely reflect each individual's citizenship status at the time they interact with SSA—such as, for example, when first applying for a SSN.[4] SSA is not automatically notified when previously noncitizen SSN holders become naturalized citizens,[5] and SSA has not historically encouraged people to proactively report changes in their citizenship status to SSA because of the burden this process would impose on field offices, which must handle such updates through in-person appointments.[6] A 2006 audit by SSA's Office of the Inspector General estimated that SSA's citizenship records inaccurately identified seven percent of U.S. citizens—an estimated 3.3 million naturalized U.S. citizens—as non-citizens "because [they] had become U.S. citizens after

---

[4] Letter from SSA Off. of Gen. Couns. to Fair Elections Ctr. 2 (July 13, 2023), https://perma.cc/KS2N-U2US.

[5] Brown, et al., *Understanding the Quality of Alternative Citizenship Data Sources for the 2020 Census* 12 (June 2019), https://perma.cc/KQE2-UJCV.

[6] Westat, Evaluation of The Accuracy of E-Verify Findings 51 (July 2012), https://perma.cc/JN4C-TKBP.

obtaining their SSN."[7] Because there is no automated process to update citizenship status SSA records, these inaccuracies persist even for people who naturalized many years ago. *See* Decl. of J. Doe 6, ECF 16-8, at ¶¶ 2, 15.

These inaccurate records are now incorporated into the SAVE system. Any state or other governmental entity that runs a search using these individuals' SSNs in the SAVE system—for example, to verify eligibility to vote or to receive certain benefits—will receive the incorrect response that PR Subclass Plaintiffs cannot be verified as citizens.

This system is even now being used by states to check voter rolls for non-citizens ahead of upcoming elections.[8] Compl. ¶¶ 146-159. And the Department of Justice ("DOJ") has been subpoenaing state voter rolls and working with DHS to screen them for ineligible voters—presumably using the SAVE system—in service of its own voter fraud investigation initiative.[9] *Id.* at ¶¶ 163-64.

The PR Subclass is comprised of naturalized citizens whose citizenship status is not correctly reflected in SSA records or—therefore—in the overhauled SAVE system, and the putative class members face harms to their ability to exercise their fundamental right to vote. The PR Subclass Plaintiffs' situations illustrate this risk. Plaintiff J. Doe 1 is registered to vote in Texas, which is holding a general election on November 4, 2025, Doe 1 Decl. ¶ 5, and will hold primary

---

[7] *Id.*; *see also* SSA Off. of the Inspector Gen., Cong. Resp. Rep. No. A-08-06-26100, *Accuracy of the Social Security Administration's Numident File* 13 (Dec. 18, 2006), https://perma.cc/5G2J-FF4V, at p. iii.

[8] Jude Joffe-Block & Miles Parks, *33 million voters have been run through a Trump administration citizenship check*, OPB (Sept. 10, 2025), https://perma.cc/FUM3-XEAY.

[9] *See* Jonathan Shorman, *DOJ is sharing state voter roll lists with Homeland Security*, Stateline (Sept 12, 2025), https://perma.cc/ZU9N-GHTC.

elections on March 3 and May 26, 2026.[10] Plaintiff J. Doe 4 is registered to vote in Louisiana, which will hold local elections on October 11, 2025, Doe 4 Decl. ¶ 7, and will hold primary elections on April 18 and May 30, 2026.[11]. Plaintiff J. Doe 5 is registered to vote in Virginia, which is holding a general election on November 4, 2025, Doe 5 Decl. ¶ 5, and will hold primary elections on June 16, 2026.[12] These jurisdictions—like all jurisdictions nationwide—will hold general elections on November 3, 2026. The PR Subclass Plaintiffs all intend to vote in upcoming elections, Doe 1 Decl. ¶ 5, Doe 4 Decl. ¶ 7, Doe 5 Decl. ¶ 5, but are at imminent risk that their states—all of which are confirmed to be using the overhauled SAVE system to verify voter rolls and initiate investigations of alleged non-citizen voters—will receive incorrect citizenship information and will strike them from the voter rolls, prevent them from voting, or potentially wrongfully investigate them for fraudulent voter registration. PR Subclass members face similar risks in other jurisdictions where SAVE is used to verify citizenship for purposes of voter registration or voter roll maintenance.

The PR Subclass Plaintiffs are also past voters. Plaintiffs J. Doe 1 and 4 were each previously registered to and did vote in another state, one which DOJ has targeted in its investigations into noncitizens purportedly voting in past elections and which DOJ is presently suing to obtain a copy of its voting records to check for non-citizens. *See* Doe 1 Decl. ¶ 6; Doe 4 Decl. ¶ 6.[13] J. Doe 5 is a past voter in Virginia. Doe 5 Decl. ¶ 6. All fear unjustified investigation

---

[10] Tex. Sec'y of State, *Important 2025 Election Dates*, https://perma.cc/SNY2-XZWM.

[11] La. Sec'y of State, *Schedule of 2026 Elections* (Nov. 2024), https://perma.cc/R5TN-QLUP.

[12] Va. Code § 24.2-510.1.

[13] Melissa Quinn, *Justice Department sues 6 states for failing to turn over voter registration rolls*, CBS News (Sept. 25, 2025), https://perma.cc/N7TP-KZP2.

into their past voting when law enforcement authorities use the overhauled SAVE system containing inaccurate information about their citizenship status. *See* Doe 1 Decl. ¶ 15; Doe 4 Decl. ¶ 15; Doe 5 Decl. ¶ 14.

PR Subclass members face the same kinds of harms; the overhauled SAVE system reflects inaccurate information about their citizenship status and will, therefore, return a false result if queried for any purpose, including to confirm voter rolls and to investigate whether they voted lawfully in the past.

**ARGUMENT**

"An order that certifies a class action must define the class[.]" Fed. R. Civ. P. 23(c)(1)(B); *see also* Manual for Complex Litigation (Fourth) § 21.222 (2005) ("The definition must be precise, objective, and presently ascertainable").[14] PR Subclass Plaintiffs seek here to certify a proposed PR Subclass that is clearly defined with reference to objective criteria:

> All naturalized citizens whose records within Social Security Administration databases do not accurately reflect their U.S. citizenship status, and who reside in jurisdictions using DHS's overhauled SAVE system for activities relating to voter registration and voter roll maintenance.

This Subclass meets the legal standards under Rules 23(a) and (b)(2) for certification.

## I. Standard of Review

Class certification demands a "rigorous analysis" under Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (*quoting Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982)). The issue at this stage is not, however, whether Plaintiffs can or have proven the

---

[14] Rule 23 does not contain a freestanding implied requirement that a class be ascertainable, separate from and in addition to the factors listed in Rule 23(a), and the D.C. Circuit has not yet decided whether Rule 23(b)(2) requires that a class be ascertainable. *See J.D. v. Azar*, 925 F.3d 1291, 1319-20 (D.C. Cir. 2019) (noting conflict in decisions of sister circuits). However, even if such a requirement existed, the proposed subclass definition easily satisfies this requirement.

elements of their claims on the merits. *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 194 n.3 (D.D.C. 2024) ("If some objective legal standard applies in common to the entire class and will be dispositive of each plaintiff's success on the merits, plaintiffs need not prove that standard is met at the class certification stage."); *see also Nat'l ATM Council v. Visa, Inc.*, No. 21-7109, 2023 WL 4743013, at *5 (D.C. Cir. July 25, 2023) (probing merits of plaintiffs' claims permissible "insofar as necessary to ensure that the Rule 23 requirements are met"). Instead, class certification focuses on the nature of the issues in dispute and whether common proof can resolve them.

As the Supreme Court observed recently in issuing temporary injunctive relief for a putative class, "[p]reliminary relief is 'customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *AARP v. Trump*, No. 24A1007, 2025 WL 1417281, at *3 (U.S. May 16, 2025) (citations omitted). For these reasons, when a motion for class certification is decided in conjunction with a motion for preliminary relief, a class may be certified under Federal Rule of Civil Procedure 23. *R.I.L–R. v. Johnson*, 80 F. Supp. 3d 164, 179-80 (D.D.C. 2015) (*quoting Bame v. Dillard*, No. 05-cv-1833, 2008 WL 2168393, at *5 (D.D.C. May 22, 2008)). *See also P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 530-31 (D.D.C. 2020) (citing cases). In such circumstances, the purpose of class certification is to provide the relief sought in the preliminary relief motion to the class—or, in this case, subclass—as a whole. *See Trump v. CASA, Inc.*, 606 U.S. 831, 869 (2025) ("To be sure, in the wake of the Court's decision, plaintiffs who challenge the legality of a new federal statute or executive action and request preliminary injunctive relief may sometimes seek to proceed by class action under Federal Rule of Civil Procedure 23(b)(2) and ask a court to award preliminary classwide relief.") (Kavanaugh, J., concurring).

## II.    The Subclass May Be Certified Because This Action Satisfies the Requirements of Rule 23(a)

Before a district court may certify a class under Rule 23, the party seeking certification must establish that the proposed class satisfies all the prerequisites in Rule 23(a). That Rule provides that "one or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). As discussed below, each of these criteria is met.

### A.    Numerosity

The first requirement under Rule 23(a) is that the class must be so numerous that joinder is "impracticable." Fed. R. Civ. P. 23(a)(1). Demonstrating impracticability "does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *DL v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013), aff'd, 860 F.3d 713 (D.C. Cir. 2017) (citation omitted). There is no specific threshold that must be surpassed to satisfy the numerosity requirement, but as a general matter "the numerosity requirement is satisfied and [ ] joinder is impracticable where a proposed class has at least forty members." *Healthy Futures of Tex. v. HHS*, 326 F.R.D. 1, 6 (D.D.C. 2018) (certifying class of more than 60 geographically dispersed grantees) (citations omitted) (Jackson, J.).

Here, the proposed class, composed of what is likely to be a significant sub-set of the millions of naturalized citizen eligible voters nationwide,[15] easily satisfies Rule 23(a)'s numerosity requirement. As described above, the SSA Office of Inspector General has estimated that over three million U.S. citizens are not identified as such in its Numident records.[16] It would be practically impossible to join each putative class member to this action individually, and it would be judicially inefficient to do so.

### B. Commonality

Rule 23(a)'s second requirement is the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, Plaintiffs must identify an issue of fact or law whose resolution "is central to the validity of each" class member's claim. *Dukes*, 564 U.S. at 350. The commonality requirement does not demand that all questions of law or fact at issue be common; "'even a single common question' will do." *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) (*quoting Dukes*, 564 U.S. at 359). Commonality is thus generally satisfied where, as in this case, the lawsuit challenges a "uniform policy or practice that affects all class members." *DL v. District of Columbia*, 860 F.3d 713, 724 (D.C. Cir. 2017). The key to the commonality requirement is whether the members of the proposed class have "suffered the same injury" such that their claims depend upon the resolution of "common contention." *Dukes*, 564 U.S. at 350.

---

[15] Katherine Schaeffer, *1 in 10 eligible voters in the U.S. are naturalized citizens*, Pew Research Center (Sept. 19, 2024), https://perma.cc/5MED-YF6G (nearly 24 million naturalized citizen eligible voters, as of 2024); USCIS, *Naturalization Statistics* (last updated Jan. 24, 2025), https://perma.cc/5X25-98RV (more than 7.9 million citizens naturalized in the decade between 2014 and 2024).

[16] *See* SSA Off. of the Inspector Gen., Cong. Resp. Rep. No. A-08-06-26100, *supra* n.7.

Here, Defendants have acted identically with respect to each member of the Subclass, and their unlawful conduct at issue in the Motion for Preliminary Relief has affected all members of the Subclass in a similar manner, *i.e.*, each member of the Subclass has suffered the same injury: DHS is incorporating incorrect information about their citizenship status in the overhauled SAVE system, which is used by the jurisdictions they live in to verify citizenship status to verify or purge voters from voter rolls in advance of upcoming elections, without obtaining consent for the data-sharing or complying with the Privacy Act's substantive and procedural safeguards. The Court can therefore decide in one stroke whether Defendants' actions were legally permissible.

Among the questions of law and fact common to the Subclass are:

- Whether Defendants acted contrary to law and required procedure by establishing and continuing to operate the overhauled SAVE system—a prohibited "national data bank"—and did so without complying with the basic protections of the Privacy Act (publishing a SORN and soliciting public comment on any new use or intended use of information pooled in the system);

- Whether Defendants unlawfully withheld or unreasonably delayed providing, or violated non-discretionary official duties by failing to provide, these required disclosures, public comment opportunities, and safeguards;

- Whether Defendants acted arbitrarily and capriciously in establishing and continuing to operate the overhauled SAVE system;

- Whether Defendants acted *ultra vires*, in excess of their statutory authority, by establishing and continuing to operate the overhauled SAVE system; and

- Whether Defendants violated the separation of powers by establishing and continuing to operate the overhauled SAVE system.

The commonality requirement is easily satisfied here. The legal and factual questions arising from Defendants' actions do not vary from one Subclass member to the next, and a common answer to these questions will resolve the common harm that the Subclass members have suffered. *See Dukes*, 564 U.S. at 350 (commonality requires that class members rely on a common contention that is capable of classwide resolution); *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, No. CV 25-306 (RDM), 2025 WL 1825431, at *49 (D.D.C. July 2, 2025) ("[c]ommonality is satisfied where there is 'a uniform policy or practice that affects all class members'"); *N.S. v. Hughes*, 335 F.R.D. 337, 354 (D.D.C. 2020) ("Although the exact facts of each seizure may differ, the general legal question is the same, meaning that plaintiff has satisfied the commonality requirement"), modified on clarification sub nom. *N.S. v. Dixon*, No. 1:20-CV-101-RCL, 2020 WL 6701076 (D.D.C. Nov. 13, 2020). *See also Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 419 (D.D.C. 2017) ("[A] proposed class may have sufficient commonality if they posit a systematic act or overarching process or procedure that is the cause of their harm, even if the specific harm to each class member might be different."). Members of the Subclass all face the same unauthorized and unlawful incorporation of their sensitive personal records into the overhauled SAVE system, and the Court's resolution of the common questions regarding the legality of Defendants' actions will provide class-wide resolution. The commonality requirement is, therefore, satisfied.

### C. Typicality

The claims of the class representatives must also be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is liberally construed, and "is ordinarily met 'if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.'" *In re McCormick & Co., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 237 (D.D.C. 2019) (citation

12

omitted). It requires neither complete coextension nor even substantial identity of claims. *See Nio v. DHS*, 323 F.R.D. 28, 33 (D.D.C. 2017) ("The facts and claims of each class member do not have to be identical to support a finding of typicality; rather, '[t]ypicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff.' The typicality requirement is satisfied 'if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability.'") (citations omitted) (certifying class where "Defendants are applying standardized, across-the-board policies to the class"). The typicality inquiry "tend[s] to merge" with both commonality and adequacy. *Falcon*, 457 U.S. at 157, 158 n.13.

"[F]actual variations" between class members do not automatically "render the representatives' claims atypical." *J.D.*, 925 F. 3d at 1322. The typicality inquiry focuses on whether "the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct," or whether "they are based on the same legal or remedial theory." *Id.* (quoting 7A Wright et al., Federal Practice and Procedure § 1764). Thus, for example, a policy that deprives all members of a class of the same right may be challenged by the class even if different class members respond to that deprivation differently. *See id.* ("Though absent class members may elect to exercise their choice in a different manner than Doe and Roe, the claims and defenses of the representatives are substantially—arguably entirely—identical to those of the class."). "[T]o the extent that 'each class member's claim arises from the same course of events that led to the claims for the representative parties and each class member makes similar legal arguments to prove the defendant's liability,' typicality is obviously established." *Healthy Futures*, 326 F.R.D. at 7 (citations omitted).

Here, Rule 23(a)'s typicality requirement is satisfied. As above, the PR Subclass

Representatives' claims—that DHS improperly incorporated information, including inaccurate information about their citizenship status, from SSA into the overhauled SAVE system, *see* Compl. ¶ 130-159—arise from the same course of events as every other member of the Subclass. DHS's decision to unlawfully overhaul the SAVE database is a single policy that gives rise to identical legal claims for all members of the PR Subclass, including the Representatives. DHS did not undertake any individualized review of SSA records before unlawfully ingesting them into the SAVE database, nor did DHS seek individualized permission from PR Subclass members before this action, leaving no room for atypicality of the claims of members of the PR Subclass subject to this indiscriminate blanket policy change.

### D. Adequacy

The final requirement of Rule 23(a) is that the representative party must fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). Adequacy is a two-pronged inquiry: (i) the named plaintiff must not have claims in conflict with other class members, and (ii) the named plaintiff and proposed class counsel must demonstrate their ability to litigate the case vigorously and competently on behalf of named and absent class members alike. *Thorpe v. District of Columbia*, 303 F.R.D. 120, 150 (D.D.C. 2014) (quoting 1 Newberg and Rubenstein on Class Actions § 3:54 (6th ed. 2024)). Here, Plaintiffs' interests are aligned with the interests of the Subclass they seek to represent, such that no conflict of interest preventing certification is present. Plaintiffs share the interests of all class members in redressing the injuries resulting from Defendants' unlawful overhaul of the SAVE system. Their injuries arise from the same conduct, and their legal claims challenging that conduct are the same. There are no known material conflicts of interest among members of the proposed PR Subclass, all of whom share an interest in not being improperly purged from voter rolls or investigated for unlawful voting due to Defendants' unlawful and haphazard conduct.

14

The PR Subclass Representatives will fairly and adequately protect the interests of the PR Subclass. Plaintiffs have been active participants in the development of this lawsuit, have remained in regular communication with Plaintiffs' counsel, and have otherwise acted in the best interests of the Subclass. Doe 1 Decl. ¶ 28; Doe 4 Decl. ¶ 25; Doe 5 Decl. ¶ 24. They are not pursuing any individual relief different from what any other class member will obtain. Rather, they seek relief that will protect all members of the PR Subclass equally by having Defendants' conduct with respect to the overhauled SAVE system declared illegal and requiring Defendants to take the overhauled SAVE system offline and revert to the original system. Moreover, each PR Subclass Representative is "willing[] and [able] to take an active role in this litigation and to protect the interests of absent plaintiffs." *Ramirez v. ICE*, 338 F. Supp. 3d 1, 47 (D.D.C. 2018).

Additionally, the PR Subclass Representatives are represented by qualified counsel. The undersigned counsel are experienced administrative law, constitutional, civil rights, and class action attorneys. *See* Ex. 1, Decl. of Jennifer Fountain Connolly ("Connolly Decl."), ¶¶ 3-18. Counsel have successfully litigated dozens of challenges to unlawful government action, including:

- In Democracy Forward's case, multiple cases seeking to protect sensitive personal data from unlawful intrusion by unauthorized government employees;[17]

---

[17] *See AFL-CIO v. U.S. Dep't of Labor*, No. 1:25-cv-339 (D.D.C.) (litigated in part by counsel for Plaintiffs Thurston, George, and Samburg); *EPIC v. OPM*, No. 1:25-cv-00255 (E.D. Va) (litigated in part by counsel for Plaintiffs Thurston, George, and Samburg); *Ctr. for Taxpayer Rts. v. IRS*, No. 1:25-cv-00457 (D.D.C.) (litigated in part by counsel for Plaintiffs Thurston and Hickman); *AFSCME v. SSA*, No. 1:25-cv-00596 (D. Md.) (litigated in part by counsel for Plaintiffs Thurston and Samburg).

- In CREW's case, multiple cases securing permanent or preliminary injunctive relief vindicating the public's right of access to statutorily guaranteed information,[18] and challenging arbitrary and capricious agency action and failure to comply with notice-and-comment procedures,[19] including in the elections context.[20]

- In FEC's case, cases seeking the vindication of voting rights, including challenges to laws imposing citizenship checks on voters.[21]

Democracy Forward and CREW have attorneys on staff with experience in litigating complex class actions, Connolly Decl. ¶¶ 7, 12, 14, 15, and Counsel have the resources to adequately represent the Subclass. Connolly Decl. ¶¶ 19.

## III.    The Subclass May Be Certified under Rule 23(b)(2)

"Rule 23(b)(2) exists so that parties and courts . . . can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *DL*, 860 F.3d at 726. A court may therefore certify a class under that Rule if "the party opposing the class has acted or

---

[18] *See, e.g.*, *CREW v. OMB*, No. 25-cv-1051 (D.D.C.) (litigated in part by counsel for Plaintiffs Sus and Desta); *CREW v. U.S. DOGE Service*, No. 25-cv-551 (D.D.C.) (litigated in part by counsel for Plaintiffs Sus, Hill, and Bingham); *CREW v. Dep't of the Army*, No. 21-cv-2482 (D.D.C.) (litigated in part by counsel for Plaintiffs Sus).

[19] *See, e.g.*, *CREW v. NARA*, No. 20-cv-739 (D.D.C.) (litigated by counsel for Plaintiffs Sus).

[20] *See, e.g.*, *Cobb Cnty. Bd. of Elections & Registration v. Ga. State Election Bd.*, No. 24-cv-12491 (Ga. Super. Ct.) (litigated in part by counsel for Plaintiffs Sus).

[21] *See, e.g.*, *Mi Familia Vota v. Fontes*, No. CV-22-00509-PHX-SRB, 2024 WL 862406 (D. Ariz. Feb. 29, 2024), *aff'd in part, vacated in part, remanded*, 129 F.4th 691 (9th Cir. 2025); *Alabama Coalition for Immigrant Justice v. Allen*, No. 2:24-cv-01254, 2024 WL 4510476 (N.D. Ala. Oct. 16, 2024); *League of Women Voters v. Hargett*, 400 F. Supp. 3d 706 (M.D. Tenn. 2019); *Democracy N. Carolina v. N. Carolina State Bd. of Elections*, No. 1:20CV457, 2020 WL 4484063 (M.D.N.C. Aug. 4, 2020), *reconsideration denied*, No. 1:20CV457, 2020 WL 6591396 (M.D.N.C. Sept. 30, 2020); *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014).

refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).[22]

"The key to the b(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Dukes*, 564 U.S. at 360 (citation omitted). Here, Defendants acted based on grounds generally applicable to all subclass members by establishing and continuing to operate the overhauled SAVE system in an unlawful manner and without required safeguards and processes. Because this agency action applies generally to the Subclass, a decision setting aside or enjoining this agency action will likewise provide relief generally to the Subclass. It is therefore appropriate to certify this Subclass under Rule 23(b)(2). *See Angelica S. v. HHS*, No. 25-CV-1405 (DLF), 2025 WL 1635369, at *12 (D.D.C. June 9, 2025) (requirements of 23(b)(2) satisfied where agency's new sponsor documentation requirements applied generally to the children in the class); *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 202 (D.D.C. 2024) (an injunction requiring an agency to provide uniform relief to all class members—conducting individual parole termination hearings for each—"fits comfortably within the 23(b)(2) framework"); *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, No. CV

---

[22] Declaratory relief "corresponds" to injunctive relief when "as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief." Rules Advisory Committee Notes, 39 F.R.D. 69, 102 (1966). Therefore, the Court may issue a declaration incident to injunctive relief under Rule 23(b)(2) or certify a Class for declaratory relief under Rule 23(b)(1). *See, e.g.*, *Guadamuz v. Ash*, 368 F. Supp. 1233, 1235 (D.D.C. 1973) ("The two classes are certifiable under either Rule 23(b)(1) or 23(b)(2), Federal Rules of Civil Procedure, since the prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications which would impose incompatible standards of conduct upon the defendants or would effectively be dispositive of the interests of other members of their class. In addition, the defendants have acted on grounds that are generally applicable to each class, thereby making final injunctive or declaratory relief appropriate with respect to each class.").

25-306 (RDM), 2025 WL 1825431, at *49 (D.D.C. July 2, 2025) (requirements of 23(b)(2) satisfied where the challenged Proclamation and agency action affected all class members in the same way and where the injunction sought would provide relief to all class members). If the Court concludes that it cannot provide universal preliminary relief to impacted individuals under Section 705 of the APA, then certification of this Subclass and an order granting class-wide preliminary relief offers the best mechanism for imposing uniform equitable and injunctive relief to the Subclass as a whole.

### IV.    The Court Should Appoint Counsel as Class Counsel.

Rule 23(g) requires the court to appoint class counsel when certifying a class, considering "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class," along with "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g). Plaintiffs have retained counsel who are experienced in litigating complex administrative and constitutional matters in federal court and have decades of experience litigating class actions of all types. *See* Connolly Decl. ¶¶ 3-18; *see Morgan v. District of Columbia*, No. CV 10-1511 (RJL), 2025 WL 2255228, at *8 (D.D.C. Aug. 7, 2025) (noting that proposed class counsel "spent significant time and effort" advancing their claims, have handled class actions and other complex litigation, were knowledgeable about relevant law, and willing to commit resources necessary to prosecute the litigation). Counsel has and will continue to prosecute this action vigorously.

CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter an order granting its Motion for Certification of the Preliminary Relief Subclass.

18

Dated: October 7, 2025                                      Respectfully submitted,

*/s/ Johanna M. Hickman*

Aman T. George (D.C. Bar No. 1028446)
Jennifer Fountain Connolly (D.C. Bar No. 1019148)
Johanna M. Hickman (D.C. Bar No. 981770)
Mark B. Samburg (D.C. Bar No. 1018533)
Robin Thurston (D.C. Bar No. 1531399)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090
ageorge@democracyforward.org
jconnolly@democracyforward.org
hhickman@democracyforward.org
msamburg@democracyforward.org
rthurston@democracyforward.org

*Counsel for All Plaintiffs*

Nikhel S. Sus (D.C. Bar No. 1017937)
John B. Hill (N.Y. Bar No. 5505508)*
Lauren C. Bingham (Fl. Bar No. 105745)*
Yoseph T. Desta (DC Bar No. 90002042)
CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON
P.O. Box 14596
Washington, D.C. 20044
Telephone: (202) 408-5565
Fax: (202) 588-5020
nsus@citizensforethics.org
jhill@citizensforethics.org
lbingham@citizensforethics.org
ydesta@citizensforethics.org

*application for *pro hac vice admission*
pending or forthcoming

*Counsel for All Plaintiffs*

Jon Sherman (D.C. Bar No. 998271)*
Michelle Kanter Cohen (D.C. Bar No. 989164)
Emily Davis (D.C. Bar No. 90020129)
FAIR ELECTIONS CENTER
1825 K St. NW, Suite 701
Washington, DC 20006
Telephone: (202) 331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
edavis@fairelectionscenter.org

*application for *pro hac vice admission*
pending or forthcoming

*Counsel for All Plaintiffs*