UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Case No. 25-cv-3501-UNA |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A STAY IN LIGHT OF LAPSE OF APPROPRIATIONS**

Defendants' stay motion does not justify departing from this Court's standing order governing civil litigation during the current government shutdown and should be denied. Among the reasons for denying the motion, Defendants wrongly suggest there is only one statutory exception that permits them and their counsel to work during a lapse in appropriations—"emergencies involving the safety of human life or the protection of property," 31 U.S.C. § 1342—and they grossly mischaracterize the imminent and irreparable injuries inflicted by Defendants' unlawful conduct, including but not limited to threatened disenfranchisement of eligible voters in fast-approaching 2025 elections. *See* ECF No. 19.

*First*, the Department of Justice ("DOJ") and Office of Management and Budget ("OMB") recognize in their official guidance that there are other exceptions that permit federal employees to work during a lapse in appropriations. One of these exceptions, for work authorized by law, applies where a court orders that a case continue during a lapse. In this lapse and prior ones, many courts have ordered that civil cases proceed on this basis. And this Court's Standing Order No. 25-

55 establishes a general rule that "the United States' deadlines to respond to motions for temporary restraining orders or preliminary injunctions" are neither stayed nor extended during the federal shutdown. *In re: Stay of Civil Proceedings Involving the United States in Light of Lapse of Appropriations*, Standing Order No. 25-55 (Oct. 1, 2025) (Boasberg, C.J.). Defendants offer no compelling reason—or any reason at all—to justify an exception to Standing Order No. 25-55's default rule for the motion for preliminary injunction now pending before this Court.

*Second*, there is a particular urgency for this case to proceed because, as detailed in Plaintiffs' pending motion for a stay under 5 U.S.C. § 705 and a preliminary injunction ("PI Motion"), ECF No. 16-1, Plaintiffs face ongoing, imminent, and irreparable injuries due to Defendants' illegal overhaul of the Systematic Alien Verification for Entitlements ("SAVE") system and its incorporation of unreliable Social Security Administration ("SSA") citizenship data. Because of Defendants' unlawful actions, Plaintiffs are facing threats of disenfranchisement in rapidly approaching elections in Virginia, Louisiana, and Texas, and obstacles to exercising their fundamental right to vote, among other injuries. *See id.* at 34-45. And these injuries are *compounded* by the government shutdown. Indeed, Defendants' overhauled SAVE system "remains operational during the lapse in appropriations,"[1] and states are continuing to use it for voter list maintenance and investigatory purposes. Yet, due to diminished SSA services during the shutdown, Plaintiffs and proposed class members now may face additional obstacles in booking in-person appointments with SSA to update their inaccurate citizenship data that SAVE is now illegally utilizing. *See id.* at 36; *infra* at 6 n.3. If the Court grants Defendants' request for an indefinite stay during a shutdown without a known end date, there is an intolerable risk that

---

[1] Dep't of Labor, Employment Training and Administration General Questions Regarding the Impact of a Lapse in Congressional Appropriations, at I-12, https://www.dol.gov/sites/dolgov/files/ETA/advisories/TEN/2025/TEN%2002-25/Lapse%20FAQs%20%28accessible%20PDF%29.pdf.

Plaintiffs and proposed class members will suffer the "real and completely irreparable" loss of their voting rights in imminent elections. *League of Women Voters of N.C. v. N. Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("[O]nce the election occurs, there can be no do-over and no redress.").

*Third*, a prolonged delay in the resolution of this matter would run contrary to the federal judiciary's core constitutional duty of hearing and deciding cases on a timely basis.

The Court should deny Defendants' stay motion.[2]

## BACKGROUND

Plaintiffs filed this suit on September 30, 2025, *see* ECF No. 1, and, on October 7, moved for a stay under 5 U.S.C. § 705 or, in the alternative, a preliminary injunction, *see* ECF No. 16. This morning, Defendants moved to stay the case, including the PI Motion, indefinitely, pending resolution of the ongoing lapse in appropriations. ECF No. 19. As Defendants acknowledge, this Court's Standing Order No. 25-55 squarely controls their deadline to respond to Plaintiffs' PI Motion. *See* ECF No. 19 at 1-2 (acknowledging that their deadline to respond has not been automatically stayed). Standing Order No. 25-55 exempts responses to motions for preliminary relief for good reason: such motions seek to prevent irreparable harm. And Plaintiffs are suffering

---

[2] Defendants have only moved to stay their deadline to respond to Plaintiffs' PI Motion, and they assert that their deadlines to respond to Plaintiffs' Complaint (ECF No. 1), motion to proceed under pseudonyms (ECF No. 14), and motion for certification of a preliminary relief subclass (ECF No. 17) "have each been automatically extended." ECF No. 19 at 2. But as Plaintiffs' PI Motion makes clear, one of Plaintiffs' requested forms of emergency relief—a preliminary injunction as to Defendants' overhaul of the SAVE system—is tied to their motion for certification of a preliminary relief subclass. *See* PI Mot., at 2 n.2, ECF No. 16. Thus, Plaintiffs request that the Court order Defendants to respond to the certification motion on the same timeline as Plaintiffs' PI Motion, *i.e.*, by October 14, 2025. However, because the Court need only reach the certification motion if it determines that it cannot stay the overhaul of the SAVE system under § 705 of the APA, *see* ECF No. 16 at 2 n.2, even if the Court does not adjust any deadlines for the certification motion, the Court should order Defendants to respond to Plaintiffs' PI Motion by October 14, 2025, as Standing Order No. 25-55 requires.

3

numerous forms of irreparable harm due to Defendants' unlawful conduct. *See* PI Mot. at 34-43, ECF No. 16-1.

## ARGUMENT

**I.      The lapse of some appropriations for DOJ does not require entering a stay.**

Defendants suggest that this case *must* be stayed until restoration of all appropriations to the federal government because, "[a]bsent an appropriation, Department of Justice attorneys and most employees of the other defendant agencies are prohibited from working, even on a voluntary basis, except in very limited circumstances, including 'emergencies involving the safety of human life or the protection of property.'" ECF No. 19, at 1-2 (quoting 31 U.S.C. § 1342). Defendants omit, however, that under 31 U.S.C. § 1341, OMB Guidelines, and DOJ's own official Contingency Plan, there are numerous circumstances in which Defendants may continue work even during a lapse of appropriations. 31 U.S.C. § 1341(a); OMB, *Frequently Asked Questions During a Lapse in Appropriations* ("OMB FAQ") at 1–4 (Oct. 3, 2025), https://www.whitehouse.gov/wp-content/uploads/2025/09/Frequently-Asked-Questions-During-a-Lapse-in-Appropriations.pdf (listing circumstances where DOJ may continue activities); DOJ, *U.S. Department of Justice FY 2026 Contingency Plan* ("DOJ Contingency Plan") at 1 (Sept. 29, 2025), https://www.justice.gov/jmd/media/1377216/dl (stating same). One such circumstance where Defendants may continue working—which the stay motion ignores—is where "authorized by law." 31 U.S.C. § 1341(a)(1)(B); DOJ Contingency Plan at 1 (stating DOJ may continue activities where "there is an express authority to continue" or where authority "arises by necessary implication"); OMB FAQ at 1 (stating that "an agency may incur an obligation" where "legal requirement expressly authorizes an agency to obligate funds in advance of appropriations"). And DOJ itself agrees that court orders can provide Defendants with such authorization to continue operating: If a court denies a motion for stay like the one pending here "and orders a case to

4

continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue." DOJ Contingency Plan at 3.

The D.C. Circuit recognized as much during a previous shutdown. In *Kornitzky Group, LLC v. Elwell*, two judges, concurring in the denial of a stay, relied on DOJ's contingency plan in concluding that denial of a stay amounts to legal authorization for DOJ attorneys to continue working. 912 F.3d 637, 638 (D.C. Cir. 2019) (Srinivasan, J., concurring). The judges noted that the D.C. Circuit consistently denies requests by the federal government to stay briefing or argument due to a government shutdown. *Id.* at 638–39; *see also People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 912 F.3d 641 (D.C. Cir. 2019); *Air Transp. Ass'n of Am., Inc. v. FAA*, 912 F.3d 642 (D.C. Cir. 2019).

In the last week, numerous courts have denied stays and ordered proceedings to continue notwithstanding the shutdown, including in cases where there is no imminent threat to life or property.[3] Just yesterday, Judge Kollar-Kotelly *sua sponte* refused to stay a case brought by, among others, Plaintiff League of Women Voters, where the League is likewise seeking injunctive relief to prevent disenfranchisement due to the Trump administration's actions. *See* Minute Order, *League of United Latin American Citizens ("LULAC") v. EOP*, No. 25-cv-946 (D.D.C. Oct. 7, 2025) ("Due to the lapse in appropriations, most civil litigation deadlines for the United States and its officers, agencies, and employees are currently stayed. See Standing Order No. 25-55. However, the Court finds that it is in the interest of justice for this case to proceed without undue

---

[3] *See, e.g.*, *United States v. Google LLC*, No. 1:20-cv-3010, Oct. 2, 2025 Minute Order (D.D.C.); *Rhode Island Coal. Against Domestic Violence v. Kennedy*, No. 1:25-cv-0342, Oct. 1, 2025 Text Order (D.R.I.); *Camp Lejeune Water Litigation v. United States*, No. 7:23-cv-0897, 2025 WL 2827029, ECF No. 644 (E.D.N.C. Oct. 6, 2025); *United States v. Live Nation Entertainment, Inc.*, No. 1:24-cv-03973, ECF No. 652 (S.D.N.Y. Oct. 1, 2025); *Am. Fed'n of Gov't Emps. v. Trump*, No. 3:25-cv-3698, ECF No. 276 (N.D. Ca. Oct. 3, 2025); *Planned Parenthood Fed'n of Am., Inc. v. Kennedy*, Nos. 25-1698, 25-1755, Doc. 00118347754 (1st Cir. Oct. 2, 2025); *Nat'l TPS Alliance v. Noem*, No. 25-5724, Doc. 29.1 (9th Cir. Oct. 2, 2025).

delay and in a manner that reasonably aligns deadlines applicable to both Government and non-Government parties."). In other words, DOJ does not unilaterally decide whether this case is or should be stayed; this Court does.

This Court's Standing Order No. 25-55 regarding the lapse of federal funding draws on these principles, providing that "the United States' deadlines to respond to motions for temporary restraining orders or preliminary injunctions" are neither stayed nor extended during the federal shutdown. *In re: Stay of Civil Proceedings Involving the United States in Light of Lapse of Appropriations*, Standing Order No. 25-55 (Oct. 1, 2025) (Boasberg, C.J.). As Defendants admit, that portion of the Standing Order applies to Plaintiffs' PI Motion. *See* ECF No. 19 at 3-4. Defendants' attempt to escape the requirements of that Order based on Plaintiffs' other non-PI motions, *id*. at 3, would defeat the purpose of the Order. Defendants articulate no extraordinary circumstances to warrant departing from Standing Order No. 25-55's general rule here.

## II. Plaintiffs are experiencing ongoing irreparable harm.

Defendants offer a paltry, two-paragraph argument in an attempt to rebut Plaintiffs' substantial showing of irreparable harm. *See* ECF No. 19 at 3-4. They fall far short of the mark. As detailed in the PI Motion, proposed class representatives J. Doe Plaintiffs 1, 4, and 5 and members of the League of Women Voters of Virginia and League of Women Voters of Louisiana (collectively, the "Voter Plaintiffs and League Members") and the League of Women Voters Plaintiffs (the "League Organizational Plaintiffs") are experiencing numerous irreparable injuries which will continue absent preliminary injunctive relief. ECF No. 16-1 at 34-43. While Plaintiffs will not duplicate their PI Motion here, they emphasize the following key points.

**Risk of wrongful disenfranchisement and investigations**. The Voter Plaintiffs and League Members are naturalized citizens registered to vote in states using Defendants' overhauled SAVE system for voter list maintenance and investigatory purposes—including in Virginia,

6

Louisiana, and Texas—who have confirmed that SSA's records inaccurately reflect that they are non-citizens. *See id.* at 35-39. Because Defendants illegally overhauled SAVE to incorporate SSA's unreliable citizenship data and have enabled and encouraged states to use that faulty data for "voter verification" purposes, these eligible voters face imminent and concrete threats of disenfranchisement and investigation, both for elections in the next few weeks as well as for elections beginning in early 2026. *See id.* at 16-20, 35-39. Indeed, "United States Citizenship and Immigration Services (USCIS) has indicated that SAVE should be operational during the lapse in appropriations, although with limited staff available for technical assistance."[4] Defendants do not dispute this.

The Voter Plaintiffs and League Members thus are unquestionably at risk of being wrongfully disenfranchised, facing additional obstacles to voting, or being subjected to baseless investigation—all because of Defendants' overhaul and continued operation of the unlawfully modified SAVE system. Contrary to the Government's assertion that the Voter Plaintiffs' and League Members' concerns are "extraordinarily speculative," ECF No. 19 at 3, Texas and Louisiana have already announced investigations into voters they identified as possible non-citizens using Defendants' overhauled SAVE system, *see* PI Mot. at 17-20, ECF No. 16-1, and just a few weeks ago, the Governor of Virginia issued an Executive Order directing the Department of Elections to use the overhauled SAVE system's new "bulk upload" functionality to conduct voter list maintenance, *id.* at 19, 37. Moreover, Virginia law expressly mandates the general registrars to delete from voter rolls "any voter who … is known not to be a United States citizen . . . based on information received from" Defendants' SAVE system. *Id.* (quoting Va. Code Ann. §

---

[4] Dep't of Labor, Employment Training and Administration General Questions Regarding the Impact of a Lapse in Congressional Appropriations, at I-12, https://www.dol.gov/sites/dolgov/files/ETA/advisories/TEN/2025/TEN%2002-25/Lapse%20FAQs%20%28accessible%20PDF%29.pdf.

24.2-404(A)(4)). Adding urgency, Virginia and Texas both have elections for state and local offices on November 4, 2025, and Louisiana has local primaries in October and a municipal election in New Orleans on November 15. *See id.* at 19. Early voting is already underway in Virginia and Louisiana and is soon to begin in Texas. *See id.* And even after those elections, the threat of disenfranchisement to Voter Plaintiffs and League Members will persist. Texas, for example, has primaries on March 3, 2026, for state and federal races and on May 2, 2026, for local races only. Thus, time is of the essence, and "it is in the interest of justice for this case to proceed without undue delay." Minute Order, *LULAC*, No. 25-cv-946 (D.D.C. Oct. 7, 2025).

Defendants miss the mark in arguing that Plaintiffs' injuries are "not even attributable to the federal government." ECF No. 19 at 3. Defendants—not the states—established and are operating the overhauled SAVE system. *See* U.S. Citizenship and Immigration Services, *SAVE*, https://www.uscis.gov/save ("SAVE is administered by U.S. Citizenship and Immigration Services (USCIS), a component of the Department of Homeland Security (DHS)."). But for Defendants' illegal overhaul of SAVE, SAVE user agencies would not have access to the unreliable SSA citizenship data that the overhauled SAVE system is now utilizing with injurious consequences. *See* PI Mot. at 23, ECF No. 16-1. Although states conduct voter list maintenance using SAVE, that does not absolve Defendants of responsibility for their harmful conduct, *i.e.*, creating and operating the overhauled SAVE system. It is settled in this Circuit that a party has standing to challenge a "government action that permits or authorizes third-party conduct that would otherwise be illegal in the absence of the Government's action." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004) (citing cases), *abrogated on other grounds by Perry Capital LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017); *see also Tel. & Data Sys., Inc. v. FCC*, 19 F.3d 42, 47 (D.C. Cir. 1994) ("[I]njurious [third party] conduct is fairly traceable to the administrative action contested in the suit if that action authorized the conduct.").

Nor can the Voter Plaintiffs and League Members easily correct their inaccurate SSA citizenship data to mitigate these threats. Even before the federal government shutdown, wait times to correct inaccurate citizenship data held by SSA—which must be done in-person at SSA regional offices—spanned well past the upcoming 2025 elections. *See* PI Mot. at 36-37, ECF No. 16-1. Since the shutdown, those delays are likely if not certain to increase: SSA has announced "local offices will remain open to the public but will provide reduced services."[5] Thus, if anything, the ongoing government shutdown *exacerbates* the SAVE system's threatened harm to Plaintiffs and *heightens* the need for immediate judicial intervention.[6]

**Informational and notice-and-comment injuries.** Plaintiffs are experiencing additional concrete and irreparable injuries due to Defendants' violations of the Privacy Act's transparency and notice-and-comment requirements. *See* PI Mot. at 40-45, ECF No. 16-1. Defendants fail entirely to address their notice-and-comment violations, but they contend that any informational harm "is not irreparable" because it can be remediated by "publication of the allegedly missing information at a later stage in this litigation." ECF No. 19 at 3. Not so. As the PI Motion explains, Plaintiffs need that information *now*—before elections in 2025 and 2026—so that the individuals can use the information to protect their voting rights and privacy interests, and so that the League Organizational Plaintiffs can fulfill their mission-critical functions of protecting and educating

---

[5] SSA, *What the Federal Government Shutdown Means to You*, Social Security Matters Blog (Oct. 1, 2025), https://perma.cc/C795-7UML.

[6] Nor is the threat of wrongful disenfranchisement mitigated by the 90-day "quiet period" under the National Voter Registration Act ("NVRA"). Although the NVRA prohibits certain voter list maintenance within 90 days of *federal* elections, that restriction does not apply to upcoming *state and local* elections, *see* 52 U.S.C. § 20507(c)(2)(A), including those in Virginia and Louisiana. And even if the NVRA's quiet period did apply, Virginia has taken the position that it can conduct voter list maintenance of suspected non-citizens even on the eve of a *federal* election. *See* Emergency App. for Stay at 14-26, *Beals v. Va. Coalition for Immigrant Rights*, No. 24A407 (U.S. Oct. 27, 2024); *see also* Order, *Beals v. Va. Coalition for Immigrant Rights*, No. 24A407 (U.S. Oct. 30, 2024) (allowing Virginia's last-minute voter purge ahead of November 2024 election).

voters in advance of next year's primary and general elections nationwide. The information will be useless if it comes too late to protect voters from being disenfranchised, a textbook form of irreparable harm. *See* PI Mot. at 40-45, ECF 16-1 (citing cases granting injunctive relief to prevent irreparable informational injuries). Defendants tellingly ignore the numerous cases Plaintiffs cite for precisely that point.

**Privacy injuries.** The PI Motion further details how the overhauled SAVE system is irreparably harming the Voter Plaintiffs' and League Members' privacy interests in preventing the misuse and unauthorized repurposing of their personal data and the increased exposure to data-security breaches. *See id.* at 39-40. Both the *ongoing* misuse of Plaintiffs' sensitive SSA data through the overhauled SAVE system, as well as the increased risk of cybertheft and additional misuse, qualify as irreparable injuries. *See Williams v. Harry's Nurses Registry, Inc.*, 2025 WL 842041, at *5 (2d Cir. Mar. 18, 2025) (plaintiff "made a strong showing of irreparable harm" based in part on increased risk of "identity theft and misuse of [her] personal information").

Defendants assert that Plaintiffs' standing is undercut by the Supreme Court's grant of an application to stay a preliminary injunction in an "analogous Privacy Act challenge to intra-government data sharing." ECF No. 19 at 3 (citing *SSA v. AFSCME*, 145 S. Ct. 1626 (2025)). But that argument is wrong twice over. First, "the Supreme Court's order granting the government's stay application in *AFSCME* did not explain why the stay was warranted," and thus, this "Court cannot simply assume that the Court agreed with the government's standing argument—which was one of several grounds for a stay the application asserted." *AFL-CIO v. Dep't of Lab.*, 2025 WL 1783899, at *4 n.5 (D.D.C. June 27, 2025). Second, *AFSCME* is distinguishable because it solely concerned alleged wrongful *disclosure* of personal data to Department of Government Efficiency ("DOGE") personnel; it did not concern the unlawful *misuse* of personal data, the primary basis of Plaintiffs' privacy injuries here. *Cf. id.* at *11-14 (holding in another data-access

10

case that plaintiff "failed to show clearly that the DOGE Affiliates' mere access to records is causing or will cause irreparable harm," but plaintiff could show irreparable harm if it "presented evidence that DOGE Affiliates will .... *misuse* their members' records") (emphasis added).

### III. The Court should deny Defendants' stay motion to protect the Court's constitutional duty to hear cases on a timely basis.

Finally, a prolonged delay of unknown length in resolving this matter would infringe on the federal judiciary's core constitutional duty of hearing and deciding cases on a timely basis. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-19 (1995) ("Article III establishes a 'judicial department' with the 'province and duty ... to say what the law is' in particular cases and controversies. The record of history shows that the Framers crafted this charter of the judicial department with an expressed understanding that it gives the Federal Judiciary the power, not merely to rule on cases, but to *decide* them.") (citation omitted); *see also, e.g.*, *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (explaining that courts must consider stay requests "in light of [their] strict duty to exercise jurisdiction in a timely manner" (quoting *Cherokee Nation of Oklahoma v. United States,* 124 F.3d 1413, 1416 (Fed. Cir. 1997) (explaining that "[o]verarching" the stay analysis is "the court's paramount obligation to exercise jurisdiction timely in cases properly before it")). This duty is particularly notable in this matter, given that the federal government is generally only subject to suit in federal courts, making alternate means of redress, such as through state courts, unavailable. In these circumstances and in light of the irreparable injuries at stake, granting Defendants' motion and entering an indefinite stay would "delay the necessary speedy disposition of this matter." *United States v. US Airways Grp., Inc.*, 979 F. Supp. 2d 33, 35 (D.D.C. 2013).

## CONCLUSION

This Court should deny Defendants' stay motion and order Defendants to respond to Plaintiffs' PI Motion by no later than October 14, as required by Standing Order No. 25-55 and Local Civil Rule 65.1(c). The Court should likewise order Defendants to respond to Plaintiffs' motion for certification of a preliminary relief subclass by October 14, since that motion is tied to Plaintiffs' PI Motion. As Plaintiffs have explained, however, the Court need only reach the certification motion if it determines it cannot grant preliminary relief via a stay under 5 U.S.C. § 705. *See* ECF No. 16 at 2 n.2.

Dated: October 8, 2025                                Respectfully Submitted,

*/s/ Nikhel S. Sus*
Nikhel S. Sus (D.C. Bar No. 1017937)
John B. Hill (N.Y. Bar No. 5505508)*
Lauren C. Bingham (Fl. Bar No. 105745)*
Yoseph T. Desta (DC Bar No. 90002042)
CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, D.C. 20044
Telephone: (202) 408-5565
Fax: (202) 588-5020
nsus@citizensforethics.org
jhill@citizensforethics.org
lbingham@citizensforethics.org
ydesta@citizensforethics.org

Aman T. George (D.C. Bar No. 1028446)
Jennifer Fountain Connolly (D.C. Bar No. 1019148)
Johanna M. Hickman (D.C. Bar No. 981770)
Mark B. Samburg (D.C. Bar No. 1018533)
Robin Thurston (D.C. Bar No. 1531399)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090

ageorge@democracyforward.org
jconnolly@democracyforward.org
hhickman@democracyforward.org
msamburg@democracyforward.org
rthurston@democracyforward.org

Jon Sherman (D.C. Bar No. 998271)*
Michelle Kanter Cohen (D.C. Bar No. 989164)
Emily Davis (D.C. Bar No. 90020129)
FAIR ELECTIONS CENTER
1825 K St. NW, Suite 701
Washington, DC 20006
202-331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
edavis@fairelectionscenter.org

* application for *pro hac vice admission* pending

*Counsel for All Plaintiffs*

John L. Davisson (D.C. Bar No. 1531914)
Enid Zhou (D.C. Bar No. 1632392)
Abigail Kunkler (D.C. Bar No. 90030868)
ELECTRONIC PRIVACY INFORMATION CENTER
1519 New Hampshire Ave NW
Washington, D.C. 20036
Telephone: 202-483-1140
Fax: 202-483-1248
davisson@epic.org
zhou@epic.org
kunkler@epic.org

*Counsel for Plaintiff Electronic Privacy Information Center*