# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | No. 1:25-cv-03501 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR
A STAY IN LIGHT OF LAPSE IN APPROPRIATIONS**

The Government hereby files this reply memorandum to respond to Plaintiffs' opposition to Defendants' motion to stay. In further support of its stay motion, the Government makes three points:

*First*, as previously noted, ECF No. 19, the Anti-Deficiency Act requires that absent an appropriation, Department of Justice attorneys and employees of the Defendant agencies are prohibited from working, even on a volunteer basis, "except for emergencies involving the safety of human life or the protection of property." 31 U.S.C. § 1342. The Act specifically states that "the term 'emergencies involving the safety of human life or the protection of property' does not include ongoing, regular functions of government the suspension of which would not imminently threaten the safety of human life or the protection of property." *Id.* But despite filing a 12-page opposition, Plaintiffs do not even dispute that this standard is not satisfied here. That is reason enough to grant a stay.

Primarily, Plaintiffs respond that the Court could simply order Defendants to litigate this case as if the Anti-Deficiency Act did not exist. And, to be clear, Defendants recognize that if this Court denies relief, they will be required to—and they will—comply with all applicable court orders. But that practical reality does not render the Anti-Deficiency Act a legal nullity that can

be ignored as a matter of course without any consideration of the applicable statutory factors. *See, e.g.*, *Rubin v. Islamic Rep. of Iran*, 583 U.S. 202, 213 (2018) (noting that "one of the most basic interpretive canons . . . is that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). Plaintiffs' failure to respond on that point is dispositive.

*Second*, Plaintiffs' opposition doubles down on extraordinarily speculative assumptions about facing an "increased risk of hacking or theft," or the fear they may be "at risk of being unfairly investigated for lawfully voting" at some point in the future. Pls.' Mot. at 36, 39, ECF No. 19. As for the former theory, Plaintiffs offer no response to Defendants' citation to *TransUnion LLC v. Ramirez*, 594 U.S. 413, 439 (2021), which holds that these sorts of generalized fears of possible future privacy-related harms are not enough to establish Article III standing (much less irreparable harm). And as for the latter, the fact that, as a general matter, sometimes, some "states conduct voter list maintenance using SAVE," Pls.' Opp'n at 8, ECF No. 21, is no basis for a preliminary injunction against any of the Defendants in this case—none of whom have any responsibility at all over state voter rolls. *See, e.g.*, *Haaland v. Brackeen*, 599 U.S. 255, 292 (2023) ("[E]njoining the federal parties would not remedy the alleged injury, because state courts apply the placement preferences, and state agencies carry out the court-ordered placements.").

In any event, even accepting the dubious premise that a Privacy Act lawsuit against federal agencies is the right way to protect State voter rolls, the state-run elections in October and November that Plaintiffs point to here (in Virginia, Texas, and Louisiana) are all now squarely within the 90-day "cooling-off" period subject to the National Voter Registration Act. So there is zero reason to think that the sort of "voter list maintenance" that Plaintiffs claim to be worried about is going to happen imminently. *See* 52 U.S.C. § 20507(c)(2)(A) ("A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible

voters."). And to the extent that Plaintiffs' fears of accidental disenfranchisement (that is, by independent, State actors who are not before the Court) require indulging the assumption that State officials are going to violate federal law, they have offered no basis for that assumption.

*Third*, to the extent Plaintiffs assert that a "prolonged delay in the resolution of this matter would run contrary to the federal judiciary's core constitutional duty" to resolve cases, ECF No. 21, at 3, that fear is speculative and overblown. There has been no "prolonged delay"—this suit was filed only very recently—and to the extent this lapse in appropriations continues in a manner that Plaintiffs believe has violated their constitutional rights, they may bring an appropriate action in the appropriate context (including a motion to lift a stay for good cause shown). And in any event, to the extent that Plaintiffs imply that the Anti-Deficiency Act is itself unconstitutional, they have not adequately presented or briefed that weighty question.

Dated: October 9, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*