**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LEAGUE OF WOMEN VOTERS, *et al.*,<br><br>       Plaintiffs,<br><br>    v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>       Defendants. | No. 1:25-cv-03501-SLS |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
<u>CERTIFICATION OF A PRELIMINARY RELIEF SUBCLASS</u>**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

LEGAL STANDARD .............................................................................................................. 2

ARGUMENT ............................................................................................................................ 3

    I.      The subclass cannot be certified because the named Plaintiffs lack standing. ....... 3

    II.    Even if Plaintiffs had standing, the Court should deny certification under
          Rule 23. .................................................................................................................. 5

          A.   The proposed subclass definition is not ascertainable. ................................... 5

          B.   Plaintiffs cannot show commonality or typicality. ......................................... 8

    III.   Plaintiffs' motion violates other important principles limiting equitable relief ... 11

          A.   Granting a preliminary injunction to this subclass would violate
              Rule 65(d). ................................................................................................... 11

          B.   Plaintiffs cannot use Rule 23 to circumvent the limitations on relief available
              under the Privacy Act.................................................................................... 13

    IV.   At a minimum, Plaintiffs' motion should be denied without prejudice, subject to
          renewal (if necessary) after disclosure of Plaintiffs' identities to the government.
          .............................................................................................................................. 14

CONCLUSION ...................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

*A.A.R.P. v. Trump*,
605 U.S. 91 (2025) .................................................................................................. 3

*Am. First Legal Found. v. Greer*,
No. 24-5168, 2025 WL 2810813 (D.C. Cir. Oct. 3, 2025) ..................................... 4

*Am. Red Cross v. Palm Beach Blood Bank, Inc.*,
143 F.3d 1407 (11th Cir. 1998) .............................................................................. 12

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ................................................................................................. 3

*Attias v. Carefirst, Inc.*,
344 F.R.D. 38 (D.D.C. 2023) ................................................................................... 5

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
222 F.3d 52 (2d Cir. 2000) ..................................................................................... 15

*Bynum v. District of Columbia*,
214 F.R.D. 27 (D.D.C. 2003) ............................................................................ 6, 10

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013) ..................................................................................... 6

*Cell Assocs., Inc. v. NIH*,
579 F.2d 1155 (9th Cir. 1978) ............................................................................... 13

*Clapper v. Amnesty Int'l*,
568 U.S. 398 (2013) ................................................................................................. 4

*Coleman ex rel. Bunn v. District of Columbia*,
306 F.R.D. 68 (D.D.C. 2015) ................................................................................... 4

*Common Cause v. Nuclear Regul. Comm'n*,
674 F.2d 921 (D.C. Cir. 1982) ............................................................................... 12

*Daskalea v. Wash. Humane Soc'y*,
275 F.R.D. 346 (D.D.C. 2011) ................................................................................. 2

*DL v. District of Columbia*,
302 F.R.D. 1 (D.D.C. 2013) ..................................................................................... 5

*Does 1-2 v. OPM*,
    763 F. Supp. 3d 58 (D.D.C. 2025) ................................................................ 16

*E.W. Bliss Co. v. Struthers-Dunn, Inc.*,
    408 F.2d 1108 (8th Cir. 1969) ................................................................ 13

*EPIC v. Dep't of Com.*,
    928 F.3d 95 (D.C. Cir. 2019) ................................................................ 4

*FAA v. Cooper*,
    566 U.S. 284 (2012) ................................................................ 13

*Frank v. Gaos*,
    586 U.S. 485 (2019) ................................................................ 3

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ................................................................ 3, 8, 10

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) ................................................................ 4

*Hinton v. District of Columbia*,
    567 F. Supp. 3d 30 (D.D.C. 2021) ................................................................ 5

*Howard v. Liquidity Servs. Inc.*,
    322 F.R.D. 103 (D.D.C. 2017) ................................................................ 15

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    289 F.3d 98 (D.C. Cir. 2002) ................................................................ 3

*In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*,
    422 F. Supp. 3d 194 (D.D.C. 2019) ................................................................ 5, 6, 8

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017) ................................................................ 6

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
    725 F.3d 244 (D.C. Cir. 2013) ................................................................ 3

*J.D. v. Azar*,
    925 F.3d 1291 (D.C. Cir. 2019) ................................................................ 5

*League of Women Voters v. DHS*,
    No. 25-cv-3501 (JEB), 2025 WL 2897654 (D.D.C. Oct. 10, 2025) ................................................................ 14, 15, 16

*Lightfoot v. District of Columbia*,
    273 F.R.D. 314 (D.D.C. 2011) ................................................................. 3

*Lyon v. United States*,
    94 F.R.D. 69 (W.D. Okla. 1982) ............................................................ 14

*Mullins v. Direct Digit., LLC*,
    795 F.3d 654 (7th Cir. 2015) ................................................................. 6

*Nieves v. Bartlett*,
    587 U.S. 391 (2019) ............................................................................. 4

*NLRB v. Teamsters, Chauffeurs, Helpers & Taxicab Drivers*,
    419 F.2d 1282 (6th Cir. 1970) .............................................................. 12

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) .............................................................. 3

*Ramirez v. USCIS*,
    338 F. Supp. 3d 1 (D.D.C. 2018) ........................................................... 3

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
    821 F.3d 992 (8th Cir. 2016) ................................................................. 5

*Schmidt v. Lessard*,
    414 U.S. 473 (1974) ............................................................................ 12

*Schmidt v. U.S. Dep't of Veterans,*
    *Affs.*, 218 F.R.D. 619 (E.D. Wis. 2003) ................................................ 14

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................................... 4

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................................. 4

*Sussman v. U.S. Marshal Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) ............................................................ 13

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ............................................................................. 4

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................... 3, 8, 9, 10

*Warth v. Seldin*,
  422 U.S. 490 (1975) ........................................................................................ 3

*Westcott v. McHugh*,
  39 F. Supp. 3d 21 (D.D.C. 2014) .................................................................. 13


**Statutes**

5 U.S.C. § 552a(g)(4) ...................................................................................... 13

5 U.S.C. § 552a(g)(4)(A) ........................................................................... 13, 14

5 U.S.C. § 705 .................................................................................................. 1

52 U.S.C. § 20507(c)(2)(A) ............................................................................. 4


**Rules**

Fed. R. Civ. P. 23(a)(3) ................................................................................... 10

Fed. R. Civ. P. 23(b)(2) ..................................................................................... 3

Fed. R. Civ. P. 65(d)(1) ................................................................................... 11


**Other Authorities**

1 Newberg & Rubenstein on Class Actions § 3:3 (6th ed. Nov. 2024 update) ............................. 6

Manual for Complex Litigation (Fourth) § 21.222 (2005) ............................... 6

USCIS, *About SAVE*, https://perma.cc/5888-TH46 ....................................... 7

Va. Code Ann. § 24.2-404(A)(4) ..................................................................... 11

**INTRODUCTION**

As explained in Defendants' opposition to Plaintiffs' motion for a preliminary injunction, this is a Privacy Act lawsuit dressed up in the guise of an Administrative Procedure Act (APA) case—brought by Plaintiffs who have not carried their burden to show either Article III standing or irreparable harm.  Accordingly, for the reasons stated in Defendants' opposition brief, Plaintiffs' motion for a preliminary injunction (or a stay under 5 U.S.C. § 705) should be denied.  Upon denial of Plaintiffs' preliminary injunction motion, Plaintiffs' separate motion for certification of a preliminary relief subclass can then be denied as moot.

If the Court does reach Plaintiffs' motion to certify a preliminary relief subclass, it is both meritless and premature.  Plaintiffs' proposed subclass is not ascertainable—instead, it is defined by vague and speculative criteria that would be all but impossible for the government to implement.  That violates both Rule 23's requirements for class certification, as well as Rule 65(d)'s general command for specificity in injunctive relief.  As for Rule 23's requirements of commonality and typicality, this suit is founded upon pessimistic predictions about how State officials might enforce State law in connection with State-run elections around the country—elections that take place at different times, subject to different rules, run by different officials, applying different State laws to different factual circumstances.  Rule 23 does not allow certification of a class that is simultaneously so vaguely defined and so heterogenous—particularly not where, as here, the Privacy Act itself mostly forecloses broad injunctive relief, and *any* relief for disclosures other than actual, individualized monetary damages, which Plaintiffs have not even tried to demonstrate.

At a minimum, in the alternative, Plaintiffs class-certification motion should be denied, without prejudice, subject to renewal after the Court has ruled on Plaintiffs' preliminary injunction motion and upon disclosure to the government of the identifies of the "named" class representatives: currently known only as Plaintiffs J. Doe 1, 4, and 5.  Despite a timely request, Defendants only know the information about those individuals that Plaintiffs have selectively disclosed.  Defendants (and thus the Court) cannot know whether, for example, they would be adequate class

representatives, or whether their claims are typical of the putative class, without knowing who they are.  Plaintiffs' refusal to provide that information is thus fatal to their motion, at least at this time.

## BACKGROUND

To avoid unnecessary repetition, for background information about this litigation, Defendants respectfully refer the Court to their opposition to Plaintiffs' motion for a preliminary injunction, ECF No. 37, which was filed earlier this evening—and which the Court would likely benefit from reading first.  Otherwise, as relevant here, Plaintiffs move for certification of a preliminary relief subclass defined as follows:

> All naturalized citizens whose records within Social Security Administration databases do not accurately reflect their U.S. citizenship status, and who reside in jurisdictions using DHS's overhauled SAVE system for activities relating to voter registration and voter roll maintenance (the "Proposed Preliminary Relief Subclass" or "PR Subclass").

Pls. J. Doe 1, J. Doe 4 & J. Doe 5's Mot. for Certification of Prelim. Relief Subclass at 1, ECF No. 17, at 1 ("Class Cert. Mot.").  As the "named" class representatives, Plaintiffs have selected three of the five pseudonymous individual Plaintiffs: J. Doe 1, J. Doe 4, and J. Doe 5.  Defendants do not know the identities of any of those three class representatives, nor anything about them beyond what Plaintiffs have chosen to include in their public declarations.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 defines the circumstances in which representative parties may sue on behalf of a class of individuals.  Plaintiffs, as "proponent[s] of the class[,] bear[] the burden of proof" regarding their entitlement to proceed as a class.  *Daskalea v. Wash. Humane Soc'y*, 275 F.R.D. 346, 355 (D.D.C. 2011).  For any proposed class action, Plaintiffs must show that they satisfy the four criteria of Rule 23(a): numerosity, commonality, typicality, and adequate representation.

In addition, a proposed class action must fit within one of the three types of class actions defined by Rule 23(b).  Here, Plaintiffs seek certification only under Rule 23(b)(2).  Accordingly, Plaintiffs must show that "the party opposing the class has acted or refused to act on grounds that

apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"The burden of proving each of the requisite elements of Rule 23 is on the party seeking certification, and the failure to prove any element precludes certification." *Ramirez v. USCIS*, 338 F. Supp. 3d 1, 43 (D.D.C. 2018) (citing *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 249 (D.C. Cir. 2013)). Courts must "conduct a 'rigorous analysis' to ensure that all the requirements of class certification are satisfied." *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 323 (D.D.C. 2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160-61 (1982)). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *In re Rail*, 725 F.3d at 249 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

The Supreme Court has stated that "courts may issue temporary relief to a putative class" if the general requirements for preliminary-injunctive relief and a Rule 23 class action are otherwise satisfied. *A.A.R.P. v. Trump*, 605 U.S. 91, 98 (2025).

## **ARGUMENT**

**I.    The subclass cannot be certified because the named Plaintiffs lack standing.**

The named plaintiffs must have standing for class claim to proceed. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) (upholding dismissal of class claims because named plaintiffs lacked standing); *see also Frank v. Gaos*, 586 U.S. 485, 492-93 (2019) (per curiam) (observing that "federal courts lack jurisdiction if no named plaintiff has standing" and remanding for a determination whether "any named plaintiff" has standing). Standing "is a prerequisite to Rule 23 class certification because it goes to the court's jurisdiction." *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 107-08 (D.C. Cir. 2002); *see also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d

1266, 1279 (11th Cir. 2000) ("[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."); *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 74 (D.D.C. 2015).

As explained in more detail in Defendants' opposition to Plaintiffs' motion for a preliminary injunction, Plaintiffs have not carried their burden to show Article III standing. The fact that Plaintiffs are "worried that [their] data might be stored or transferred in an insecure manner, exposing [them] to a data breach and identity theft and fraud," Decl. of J. Doe 1 ¶ 23, ECF No. 16-2, is insufficient to show Article III standing under cases like *Clapper v. Amnesty International*, 568 U.S. 398 (2013), and *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Plaintiffs' voting-related harms are equally (or more) speculative, and also come with the additional problem that they "require guesswork as to how independent decisionmakers will exercise their judgment," *Clapper*, 568 U.S. at 413—in particular, State officials who are obligated to (and presumed to) follow federal law, *see* 52 U.S.C. § 20507(c)(2)(A) (prohibiting "any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" within 90 days of an election); *Nieves v. Bartlett*, 587 U.S. 391, 400 (2019) (discussing the "presumption of regularity" that attaches to State law-enforcement officials); *see also Haaland v. Brackeen*, 599 U.S. 255, 292 (2023) (no standing to sue federal agencies when any injury is caused by "state courts" and "state agencies"). Nor can Plaintiffs rely on any "procedural right *in vacuo*" afforded by the Privacy Act itself, in connection with Plaintiffs' allegations of informational injury or procedural violations of the law. *Am. First Legal Found. v. Greer*, No. 24-5168, 2025 WL 2810813, at *2 (D.C. Cir. Oct. 3, 2025) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)); *see also EPIC v. Dep't of Com.*, 928 F.3d 95, 102 (D.C. Cir. 2019) (rejecting a similar theory of informational standing).

The Court, therefore, should deny Plaintiffs' motion without reaching the class certification inquiry, because the Court cannot exercise jurisdiction over the class certification motion when Plaintiffs lack Article III standing. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (citation omitted)).

At a minimum, the motion should be denied as premature (or held in abeyance) pending the Court's resolution of the standing questions that are raised in Defendants' opposition to Plaintiffs' motion for a preliminary injunction, and that will be raised in greater detail at a later date (if necessary) in Defendants' eventual motion to dismiss.

**II.    Even if Plaintiffs had standing, the Court should deny certification under Rule 23.**

**A.    The proposed subclass definition is not ascertainable.**

**1.** "Rule 23 does not expressly require that a class be ascertainable, and the D.C. Circuit has not addressed whether Rule 23 implicitly contains an ascertainability requirement for class certification." *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 241 (D.D.C. 2019) (citation omitted); *see also J.D. v. Azar*, 925 F.3d 1291, 1320 (D.C. Cir. 2019) (explaining that the D.C. Circuit "has not addressed whether Rule 23 contains an ascertainability requirement for class certification," though still addressing "vagueness and manageability concerns" of a proposed class definition). But most other federal circuits have squarely held that "ascertainability" is necessarily an implicit requirement under Rule 23, for obvious reasons of practicality, fairness, and administrability. *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 995 (8th Cir. 2016) (citing cases from First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits); *but see DL v. District of Columbia*, 302 F.R.D. 1, 17 (D.D.C. 2013) (indicating that the "First and Tenth Circuits do not require precise ascertainability for certification of (b)(2) classes"). For the most part, district courts in this circuit have followed the majority rule and applied an ascertainability requirement. *See McCormick*, 422 F. Supp. 3d at 241 (applying the ascertainability requirement); *Hinton v. District of Columbia*, 567 F. Supp. 3d 30, 51 (D.D.C. 2021) (assuming without deciding that an ascertainability requirement applies); *Attias v. Carefirst, Inc.*, 344 F.R.D. 38, 48 (D.D.C. 2023); *see also* Class Cert. Mot. at 7

(citing Manual for Complex Litigation (Fourth) § 21.222 (2005) ("The definition must be precise, objective, and presently ascertainable.")).

Although the circuits diverge slightly as to the meaning of ascertainability,[1] "courts generally agree that ascertainability means that a class definition must render potential class members identifiable according to objective criteria." *McCormick*, 422 F. Supp. 3d at 241; *Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003) (asking whether "an individual would be able to determine, simply by reading the definition, whether he or she was a member of the proposed class"); *see also Mullins v. Direct Digit., LLC*, 795 F.3d 654, 657 (7th Cir. 2015) ("[A] class must be defined clearly and . . . by objective criteria."); *In re Petrobras Sec.*, 862 F.3d 250, 257 (2d Cir. 2017) (class should be "defined using objective criteria that establish a membership with definite boundaries"); 1 Newberg & Rubenstein on Class Actions § 3:3 (6th ed. Nov. 2024 update) ("All courts essentially focus on the question of whether the class can be ascertained by objective criteria.").  This Court should do the same.

**2.**  Here, Plaintiffs have not established an ascertainable and definite class, for several independent reasons.  First, the subclass definition includes only "naturalized citizens whose records within Social Security Administration databases do not accurately reflect their U.S. citizenship status."  Class Cert. Mot. at 1.  That definition will be all-but-impossible to implement—literally, by definition.  Undersigned counsel cannot tell the Social Security Administration to comply with an injunction solely with respect to those "whose records within Social Security Administration databases do not accurately reflect their U.S. citizenship status," because the agency will have no mechanism to identify those individuals.  *Id.*  By definition, SSA—according to Plaintiffs' own theory—lacks the relevant data to do so.  And if SSA *did* have accurate information that allowed identification of those class members, then they wouldn't be class members at all.  Plaintiffs' class

---

[1] The Third Circuit, for example, adds an additional requirement to the ascertainability inquiry that "[t]he method of determining whether someone is in the class must be administratively feasible."  *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) (citation omitted).  The Seventh and Ninth Circuits have expressly rejected that interpretation, applying only the objective criteria test.  *See McCormick*, 422 F. Supp. 3d at 241 & n.70.

definition thus creates an infinite recursive loop that would be impossible to implement—as a practical matter, the government could only provide relief to those who are, by definition, not members of the class.

Second, Plaintiffs' proposed definition applies only to those "who reside in jurisdictions using DHS's overhauled SAVE system for activities relating to voter registration and voter roll maintenance." *Id.* But, which jurisdictions are those? Plaintiffs do not say, and Defendants likewise have no reliable and comprehensive method to know what all State and local jurisdictions are doing with respect to their own voter rolls—after all, that is a process that generally does not involve the federal government at all. This is no small problem, as "[a]pproximately 1,200 agencies nationwide use SAVE to support their benefit eligibility and licensing determinations." USCIS, *About SAVE*, https://perma.cc/5888-TH46. And although DHS knows which States have entered into agreements with USCIS to use SAVE for voter-verification purposes, that is not the standard that Plaintiffs have proposed. For good reason: merely entering into an agreement with the federal government that *allows* use of the SAVE system cannot cause anyone any Article III injury—even under Plaintiffs' theory it is only jurisdictions that are actually "*using* DHS's overhauled SAVE system" that they are concerned about. Class Cert. Mot. at 1 (emphasis added).

Moreover, the list of jurisdictions subject to Plaintiffs' definition would be subject to change on any given day. For example, assume—as Plaintiffs do, though without factual basis—that Virginia is currently "using" this system in connection with its November 4, 2025 elections. Presumably, that means that, today, Virginia residents who otherwise meet the subclass definition would be included. But what about two weeks from now? At that point, Virginia residents would drop out of the class definition. A class definition that will so massively ebb and flow as to who is in and who is out is not workable.

Third, even if all those problems could be overcome, Plaintiffs' proposed definition is also plagued by vague and undefined terms. For example, what does it mean for a jurisdiction to be "using" the "overhauled SAVE system"—does that mean every jurisdiction that has ever signed a SAVE agreement relating to voter-verification? Surely not, as some of those agreements may be

lying dormant. Does it mean every jurisdiction that has an agreement and is "using" that agreement to actually submit SAVE requests? But if that is the test, then how recently does the most recent submission have to be? What if they last sent a request 18 months ago? And as for "activities relating to voter registration and voter roll maintenance," what sort of "activities" suffice? Does "voter roll maintenance" include confirming the eligibility of a single voter? 10 voters? Or does it speak to some more systematic effort, such as what Plaintiffs call a "voter purge"? Plaintiffs do not say, and the answers to these questions are going to be informed by countless shades of gray, as the thousands of participating jurisdictions vary widely across the country in the way that they—not DHS or SSA—manage their own elections and voter rolls, under State law.

Because Plaintiffs' subclass definition fails to "render potential class members identifiable according to objective criteria," *McCormick*, 422 F. Supp. 3d at 241, it should be rejected as not ascertainable.

### B.    Plaintiffs cannot show commonality or typicality.

The "commonality" and "typicality" requirements of Rule 23(a) "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5 (citation omitted). Analysis of these two requirements often "tend to merge." *Falcon*, 457 U.S. at 157 n.13.

**Commonality**. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349-50 (citation omitted). Rather, "[t]heir claims must depend upon a common contention . . . that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

In *Wal-Mart*, the Supreme Court concluded that a Title VII putative class claiming gender discrimination at Wal-Mart did not satisfy the commonality requirement because the plaintiffs

there had merely shown a generalized policy "of allowing discretion by local supervisors over employment matters." *Id.* at 355 (emphasis omitted). The Plaintiffs failed to identify a definite "mode" of exercising discretion that resulted in a concrete harm common to all class members. *Id.* at 355-56. *Wal-Mart* and similar class-action decisions thus instruct that commonality requires more than abstract, generalized allegations of harm; plaintiffs must instead demonstrate a shared, concrete injury that is shared by the entire class. *See id.* at 350-56.

Plaintiffs seem to acknowledge that to establish commonality, they must show that "each member of the Subclass has suffered the same injury." Class Cert. Mot. at 11. According to Plaintiffs, that injury is based on their assumption that "DHS is incorporating incorrect information about their citizenship status in the overhauled SAVE system, which is used by the jurisdictions they live in to verify citizenship status to verify or purge voters from voter rolls in advance of upcoming elections." *Id.* But in fact, *none* of the class representatives—and at least based on the current record, none of the class members—have suffered that "injury" at all. As explained in greater detail in Defendants' preliminary injunction motion, Plaintiffs have not identified a single voter (let alone a class representative) who has been disenfranchised by a "purge" of State "voter rolls in advance of upcoming elections." Class Cert. Mot. at 11. An injury that *none* of the class representatives has suffered cannot be the "common" injury that supports class certification.

Plaintiffs also reference Defendants' alleged failure "to "comply[] with the Privacy Act's substantive and procedural safeguards." *Id.* But that simply states a generalized grievance—*i.e.*, that the government has allegedly violated the law. An alleged violation of the same statute does not, by itself, establish commonality. *See Wal-Mart*, 564 U.S. at 349-50 (holding that commonality "does not mean merely that they have all suffered a violation of the same provision of law.").

Plaintiffs assert that "[t]he legal and factual questions arising from Defendants' actions do not vary from one Subclass member to the next." Class Cert. Mot. at 12. But even if that were true, it is only because nobody has suffered *any* injury of the sort that Plaintiffs allege here—after all, it is easy to describe an injury as "uniform" that exists purely as a hypothetical created by Plaintiffs' litigation counsel. Critically, if one or more States *were* unlawfully and accidentally

disenfranchising U.S. citizens *en masse*, then there surely *would* be substantial state-by-state variation in the factual and legal circumstances surrounding those (currently hypothetical) voter "purges," to use Plaintiffs' word. Plaintiffs cannot rely on a purely hypothetical (and thus perfectly uniform) injury to satisfy the commonality requirement where, as here, any *real* injury, if it ever came to pass, would surely feature massive variation across the class. That imaginative approach to possible future injuries would violate Rule 23 just as much as it violates Article III.

**Typicality.** "[T]he typicality requirement focuses on whether the representatives of the class suffered a similar injury from the same course of conduct." *Bynum*, 214 F.R.D. at 34. In other words, Rule 23(a)(3)'s "typicality" requirement "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart*, 564 U.S. at 349. Under Rule 23(a)(3), Plaintiffs must establish that their claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). At a minimum, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (citation omitted).

Here, the typicality requirement is likewise not satisfied because the three (pseudonymously) named Plaintiffs are likely to have divergent interests in these proceedings from many of the class members that they seek to represent. To be sure, the record provides little information about the Doe Plaintiffs, leaving Defendants and the Court without any clarity as to whether the representative Plaintiffs have suffered injuries typical of the class—an independent problem with Plaintiffs' motion, addressed in greater detail below. *See infra* at 14-16. But even relying solely on the little information that Plaintiffs have selectively disclosed to Defendants, there are significant differences in the cases of each individual Plaintiffs, and amongst the class.

Most obviously, Plaintiff Doe 1 resides in Texas; Doe 2 resides in Louisiana; and Doe 5 resides in Virginia. Of course, classes are often certified nationwide. But in this one, Plaintiffs' theory of harm turns entirely on speculation about how State officials may enforce State law in connection with State-run elections. Plaintiffs have not even tried to establish—nor could they—

that each State approaches these issues in the same way, or is subject to the same legal or practical constraints that affect Plaintiffs' risk of harm.

To the contrary, to the extent Plaintiffs acknowledge the role of State law at all in this case, it is to emphasize *differences* between the relevant legal and factual circumstances that arise in each State. Plaintiffs assert, for example, that "[i]n Virginia, the risks to naturalized citizen voters are especially high," based on Plaintiffs' (far from self-evident) interpretation of Virginia law. Pls.' Prelim. Inj. Mot. at 37, ECF No. 16-1 (citing Va. Code Ann. § 24.2-404(A)(4)). Plaintiffs' risk-assessment may or may not be right, but it still undermines any notion of typicality: as a Virginia voter, Plaintiff Doe 5 (even according to Plaintiffs) faces very different factual and legal circumstances as Doe 2, who is a Louisiana voter. Indeed, due to Plaintiffs' delay in bringing suit, the relevant Louisiana election has already been completed. *See* Supp. Decl. of J. Doe 4 ¶ 7, ECF No. 16-3 ("I plan on voting in Louisiana's upcoming local elections, which will be held on October 11, 2025"). So it is not even clear that Plaintiff Doe 4 is a *member* of the subclass that he or she purportedly represents. And of course, these massive variations amongst the named class representatives are sure to be multiplied exponentially, when compared to the many potential unnamed class members in thousands of State and local jurisdictions around the country.

In short, the representative Plaintiffs each represent different groups of individuals subject to different State procedures regarding their voting rights. In effect, Plaintiffs are attempting to litigate multiple distinct cases at once, in an effort to avoid a risk of possible future harm caused by three or more distinct sovereigns (none of which are before the Court) under the guise of one class action. That sort of factual and legal morass is precisely what Rule 23 is meant to avoid.

## III. Plaintiffs' motion violates other important principles limiting equitable relief.

### A. Granting a preliminary injunction to this subclass would violate Rule 65(d).

Plaintiffs' motion for class certification is in service of their motion for a preliminary injunction. So, it not only must comply with Rule 23, but also with Rule 65. And Rule 65(d)(1) requires that "[e]very order granting an injunction" must "state its terms specifically," and "describe in reasonable detail—and not by referring to the complaint or other document—the act or

acts restrained or required."  As the Supreme Court has explained, "the specificity provisions of Rule 65(d) are no mere technical requirements."  *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). Instead, "[t]he Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood."  *Id.*  After all, "[s]ince an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."  *Id.*; *see, e.g.*, *Common Cause v. Nuclear Regul. Comm'n*, 674 F.2d 921, 926-27 (D.C. Cir. 1982) (holding that an injunction barring the agency from closing to the public future meetings similar in nature to the meeting that gave rise to the action lacked the requisite specificity under Rule 65).

If combined with Plaintiffs' proposed subclass definition, Plaintiffs' requested injunctive relief would violate the specificity requirements of Rule 65(d) by leaving Defendants guessing about where—and with respect to whom—the injunction applies.  For the reasons explained above, there is no practical mechanism to implement Plaintiffs' proposed subclass definition, which contains critical ambiguities about which individuals, living in which jurisdictions, are covered.

To comply with an injunction, the enjoined party must know to whom the injunction applies.  Courts have thus found injunctions too vague in analogous circumstances, where (as here) they failed to provide sufficient notice to the defendants of the individuals or entities against whom conduct was enjoined.  *See, e.g.*, *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (11th Cir. 1998) (injunction prohibiting entity from contacting "any donor whose name is contained on Plaintiff's [trade secret donor] lists" impermissibly vague because enjoined party had "no way to determine whether a given member of the public might happen to appear on" a list not in its possession (citation omitted)); *NLRB v. Teamsters, Chauffeurs, Helpers & Taxicab Drivers*, 419 F.2d 1282, 1283 (6th Cir. 1970) (injunction directing employers to cease from restraining or coercing the employees of a specified company "or the employees of any other employer within its jurisdictional territory" was too vague where, inter alia, the injunction failed to define the specified jurisdiction "and thus it provides no means of defining the people for whom protection is

sought" (citation omitted)); *E.W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1116 (8th Cir. 1969) (injunction prohibiting defendants from contacting current or proposed customers of plaintiff company was "excessively vague" where, inter alia, neither the court's fact findings nor the injunction itself "determin[ed] the identity of the customers or proposed customers" of the plaintiff so that it was "unclear whom the defendants may or may not contact").

So too here. Because the combination of Plaintiffs' requested injunction and Plaintiffs' proposed class definition would leave it "unclear whom the defendants may or may not" respond to verification requests about, *Bliss*, 408 F.2d at 1116, Plaintiffs' proposed class definition should be rejected under not just Rule 23, but also under Rule 65(d).

## B. Plaintiffs cannot use Rule 23 to circumvent the limitations on relief available under the Privacy Act.

As explained in greater detail in Defendants' opposition to Plaintiffs' motion for a preliminary injunction (at 25-29), for the most part, "only monetary damages, not declaratory or injunctive relief, are available to" plaintiffs bringing suit for an improper disclosure under the Privacy Act. *Sussman v. U.S. Marshal Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007). For that reason, even "an individual" who has proven a violation of the Privacy Act may recover only "actual damages sustained by the individual as a result of the" violation, *FAA v. Cooper*, 566 U.S. 284, 299 (2012) (quoting 5 U.S.C. § 552a(g)(4)(A)), subject to a $1,000 statutory minimum—and even then, only if the "agency acted in a manner which was intentional or willful," 5 U.S.C. § 552a(g)(4). Plaintiffs' effort to smuggle their Privacy Act claims through the rubric of the APA, then, should be rejected as an impermissible work-around of the comprehensive remedial scheme created by Congress. *See, e.g.*, *Westcott v. McHugh*, 39 F. Supp. 3d 21, 33 (D.D.C. 2014) ("[A] plaintiff cannot bring an APA claim to obtain relief for an alleged Privacy Act violation."). After all, were injunctive relief freely available for violations of the Privacy Act generally—such as through the sort of generic APA claims that Plaintiffs bring here—"the detailed remedial scheme adopted by Congress would make little sense." *Cell Assocs., Inc. v. NIH*, 579 F.2d 1155, 1160 (9th Cir. 1978).

Plaintiffs' violation of these settled procedural rules is only compounded by trying to bring their claims as a class.  If a single "individual" could not obtain the sorts of injunctive relief that Plaintiffs seek here, then a putative class must be subject to (at least) the same limitations.  Indeed, the statutory requirement to prove "actual damages," 5 U.S.C. § 552a(g)(4)(A), standing alone, is enough to defeat class-certification on commonality and typicality grounds, given the widely varying facts and circumstances that will be necessary to answer that question for any individual class member.  Those sorts of practical considerations are why courts routinely deny certification of class actions in Privacy Act cases: "In Privacy Act damages actions, questions affecting only individual members greatly outweigh questions of law and fact common to the class." *Lyon v. United States*, 94 F.R.D. 69, 76 (W.D. Okla. 1982) (finding that plaintiff failed to meet typicality prerequisite and, in the alternative, failed to demonstrate certification was appropriate under Rule 23(b)(3)); *see also Schmidt v. U.S. Dep't of Veterans Affs.*, 218 F.R.D. 619, 637 (E.D. Wis. 2003) (finding "individual[ized] questions of fact [would] predominate over common questions [of] fact" in Privacy Act suit, thus "preclud[ing] certification under Rule 23(b)(3) because [questions of fact] could not be resolved without conducting numerous mini-trials").

Here, of course, Plaintiffs do not try to certify a damages class under Rule 23(b)(3), but instead pursue injunctive relief under Rule 23(b)(2).  But that makes things worse, not better—if a single one of the individual Plaintiffs could not get an injunction under the Privacy Act in these circumstances, a class-wide injunction is likewise impermissible.

## IV.   At a minimum, Plaintiffs' motion should be denied without prejudice, subject to renewal (if necessary) after disclosure of Plaintiffs' identities to the government.

Plaintiffs filed a sealed motion to proceed under pseudonyms on October 1, 2025.  ECF No. 14.  Typically, Defendants would have had 14 days to respond to that motion under Local Civil Rule 7(b).  But because Plaintiffs' motion was filed during the ongoing lapse in appropriations, Defendants' deadline to respond was automatically stayed by order of the Chief Judge.  *See* Standing Order No. 25-55 (JEB).  Nevertheless, on October 10, 2025, nine days after the motion was filed, Chief Judge Boasberg granted Plaintiffs' motion to proceed under pseudonyms.  *League*

*of Women Voters v. DHS*, No. 25-cv-3501 (JEB), 2025 WL 2897654 (D.D.C. Oct. 10, 2025).  The accompanying opinion also made clear, however, that "Defendants may seek reconsideration by the United States District Judge to whom this case is randomly assigned."  *Id.* at *1.  Defendants reserve their right to do so at the appropriate time, as Defendants respectfully disagree that Plaintiffs have satisfied the high bar to litigate via pseudonym—particularly where, as here, Plaintiffs' arguments were largely based upon generalized and speculative fears of retaliation that would seem to apply to any lawsuit against the Executive Branch.

Setting aside the general question of whether Plaintiffs have satisfied the standard to litigate under a pseudonym, now, however, Defendants are hampered in responding to Plaintiffs' motion for certification of a preliminary relief subclass.  That is because Defendants do not know the identities of the named Plaintiffs, who are referred to in the filings available to Defendants only as J. Doe 1, J. Doe 4, and J. Doe 5.  Instead, Defendants only know the information that Plaintiffs' counsel have selectively disclosed—surely, after exercising litigation judgment.

Without knowing who the named Plaintiffs are, it is impossible for Defendants (and thus the Court) to determine, for example, whether they are adequate class representatives, or whether their claims are typical of those of the putative subclass.  After all, although some "factual variations are acceptable, 'class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'"  *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 119 (D.D.C. 2017) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)).  Neither Defendants nor the Court know whether that standard is satisfied here.  Accordingly, at an absolute minimum, Plaintiffs' motion should be denied without prejudice, subject to renewal (if necessary) after disclosure of Plaintiffs' identities to the government.

Chief Judge Boasberg's order appropriately accounted for this possibility, in specifying explicitly that, "[s]hould Defendants need to learn facts about Plaintiffs or their identities as the litigation progresses—*e.g.*, to assure satisfaction of Rule 23's class certification requirements— they 'will remain free to request any further information [they] deem necessary to the full and fair

defense of the case.'" *League of Women Voters*, 2025 WL 2897654, at *3 (quoting *Does 1-2 v. OPM*, 763 F. Supp. 3d 58, 62 (D.D.C. 2025)).  So, following the procedure contemplated by the Chief Judge's order, counsel for Defendants sent a letter (via email) to counsel for Plaintiffs at 12:45 p.m. on October 17, 2025, requesting the identities of Plaintiffs J. Doe 1, 4, and 5.  *See* Ex. 1, Ltr. from S. Pezzi to N. Sus (Oct. 17, 2025).  That letter also specified that Defendants were willing to maintain Plaintiffs' names in confidence, at least pending further order of this Court.  *See id.* As of this filing, however, Plaintiffs' counsel has not provided any of the requested information.

Accordingly, although Defendants respectfully submit that Plaintiffs' motion for class certification can and should be denied outright for the reasons above, in the alternative, at a minimum, it should be denied without prejudice, subject to renewal (if necessary) once Defendants know who the named Plaintiffs are, and thus are able to evaluate and advance all available defenses that may be available under Rule 23.

## CONCLUSION

Plaintiffs' motion for certification of a preliminary relief subclass should be denied.

Dated:  October 22, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI (D.C. Bar No. 995500)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel: (202) 305-8576
Email: stephen.pezzi@usdoj.gov

*Counsel for Defendants*