# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al*. <br> *Defendants.* | Case No. 1:25-cv-03501-SLS |

**REPLY IN SUPPORT OF PLAINTIFFS J. DOE 1, J. DOE 4, AND J. DOE 5's MOTION FOR CERTIFICATION OF PRELIMINARY RELIEF SUBCLASS**

**TABLE OF CONTENTS**

I. Standing is not an obstacle to class certification ................................................................... 1

II. The Proposed Preliminary Relief Subclass should be certified .............................................. 1

    A. The Proposed PR Subclass is defined with regard to objective criteria and no more is required for an injunctive relief class............................................................................................ 2

    B. The PR Subclass Plaintiffs show both commonality and typicality ................................... 5

III. Defendants' arguments about the hypothetical scope of an injunction do not defeat class certification ....................................................................................................................................... 9

IV. No further information about the pseudonymous plaintiffs is needed.............................. 12

CONCLUSION............................................................................................................................. 12

Plaintiffs J. Doe 1, J. Doe 4, and J. Doe 5 (the "PR Subclass Plaintiffs") respectfully submit this Reply in support of their Motion for Certification of Preliminary Relief Subclass (ECF No. 17) ("Motion for Class Certification"). This Motion seeks certification of a narrow subclass under Federal Rule of Civil Procedure 23(b)(2), in connection with Plaintiffs' Motion for a Stay Under 5 U.S.C. § 705 and Preliminary Injunction (ECF No. 16) ("Motion for Preliminary Relief"). The proposed subclass defined in the Motion for Class Certification (the "Proposed Preliminary Relief Subclass") is precisely and appropriately defined, the PR Subclass Plaintiffs are appropriate class representatives, and their chosen counsel is experienced and has committed the time and resources necessary to prosecute the action. The Court should, therefore, grant the Motion for Class Certification, if needed to grant the preliminary relief that Plaintiffs seek.

## I. Standing is not an obstacle to class certification

The PR Subclass Plaintiffs have standing to bring this action for the reasons set forth in Plaintiffs' Motion for Preliminary Relief (ECF No. 16-1, at 21-22) and Reply (ECF No. 41, at 2-12), which the PR Subclass Plaintiffs incorporate by reference to avoid repetition. Where, as here, the individual named plaintiffs have standing, the Court need not consider the standing of absent class members. *Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 65 (D.D.C. 2018).

## II. The Proposed Preliminary Relief Subclass should be certified

The requirements under Rule 23 for certifying the Proposed PR Subclass have been satisfied here. Defendants contend the Proposed PR Subclass is not "ascertainable"—a requirement that does not exist in Rule 23 and this Circuit has never applied to a Rule 23(b)(2) class like this one. They also claim the Proposed PR Subclass lacks commonality because none of the PR Subclass Plaintiffs have yet been purged from state voter rolls and lacks typicality because each of these Plaintiffs reside in different states and State officials may administer their elections differently. Because all Subclass members suffer the same injury—the incorporation of inaccurate citizenship information into SAVE, which puts them at risk of being purged from voter rolls—and their injury would be redressed by the same relief, commonality is satisfied, and the claims of the

PR Subclass Plaintiffs are typical of the claims of the Subclass as a whole. Each of these arguments is addressed here in turn.

    **A.**    <u>The Proposed PR Subclass is defined with regard to objective criteria and no more is required for an injunctive relief class</u>

In their Motion, consistent with Rule 23(c)(1)(B), Plaintiffs defined the Proposed PR Subclass to include individuals with each of three characteristics: (1) naturalized citizens, (2) whose records within SSA databases do not accurately reflect their U.S. citizenship status, and (3) who reside in jurisdictions using DHS's overhauled SAVE system for activities relating to vote registration and voter roll maintenance. All three of these characteristics are defined with regard to objective criteria, which—contrary to what Defendants suggest throughout their opposition brief—is all Plaintiffs must establish. *See Hinton v. D.C.*, 567 F. Supp. 3d 30, 50-51 (D.D.C. 2021) (finding ascertainability "easily satisfied" where class defined as "all transgender inmates who are or will be held in mandatory protective custody at intake under the H Policy" identified class members according to objective criteria).

As Defendants acknowledge (Opp., ECF No. 38, at 5), the D.C. Circuit has never imported an "ascertainability" requirement into the Rule 23 analysis. *See J.D. v. Azar*, 925 F.3d 1291, 1319-20 (D.C. Cir. 2019) (collecting cases). In addition, courts within this Circuit have consistently held that, even if such a requirement were implied, it would be easily satisfied in a 23(b)(2) class like this one. *See Thorpe v. D.C.*, 303 F.R.D. 120, 139 (D.D.C. 2014); *DL v. D.C.*, 302 F.R.D. 1, 17 (D.D.C. 2013) ("[T]he rationale for precise ascertainability is inapposite in the 23(b)(2) context."), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017).[1]

---

[1] All except one of the cases that Defendants cite to support their argument involved Rule 23(b)(3) classes. *See In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 267 (D.D.C. 2019) (certifying a Rule 23(b)(3) class); *Attias v. Carefirst, Inc.*, 344 F.R.D. 38, 52 (D.D.C. 2023) (certifying a Rule 23(b)(3) class); *Bynum v. District of Columbia*, 214 F.R.D. 27, 41 (D.D.C. 2003) (certifying a hybrid Rule 23(b)(2)/(b)(3) class, giving class members with damages claims "all of the due process protections afforded to members of a (b)(3) class, including notice and opt-out rights."). *Hinton v. District of Columbia* involved a proposed Rule 23(b)(2) class that failed on numerosity. To the extent it did mention ascertainability, the opinion acknowledged that it is "far from clear ... that there exists in this

Where a proposed class seeks injunctive relief, once the plaintiffs have defined a class with objective criteria, there is good reason not to imply an additional requirement that the class be "ascertainable." In a 23(b)(3) damages class, the Court must send notice to class members and ultimately must be able to distribute any damage award or settlement. *See Thorpe,* 303 F.R.D. at 139 ("[I]n a Rule 23(b)(3) class action, 'a high level of precision in defining class membership is necessary ... because all class members must be identified in order to notify each of his or her opt-out rights, and, later, to distribute monetary relief.'" (citation omitted)). In contrast, in a b(2) class such as this one, the court does not need to distribute notice, class members have no opt-out rights, and there is no monetary relief to distribute. *Id.*

Indeed, while they cast their arguments this way, Defendants' complaints about the class definition have nothing to do with the ascertainability of the PR Subclass. Instead, they purport to identify difficulties they might experience in *implementing* any injunction that the Court might enter. *See* Opp., ECF No. 38, at 1 ("Plaintiffs' proposed subclass is not ascertainable—instead, it is defined by vague and speculative criteria that would be all but impossible for the government to implement."); *id* at 6 ("That definition will be all-but-impossible to implement."); *id.* at 6-7 ("Plaintiffs' class definition thus creates an infinite recursive loop that would be impossible to implement—as a practical matter, the government could only provide relief to those who are, by definition, not members of the class."); *id*. at 12 ("there is no practical mechanism to implement Plaintiffs' proposed subclass definition"). But in an injunctive relief class, "the defendant will be required to comply with the relief ordered no matter who is in the class." *Thorpe*, 303 F.R.D. at 139; *see also* 1 Newberg and Rubenstein on Class Actions § 3:7 (6th ed.) ("Because 'defendants are legally obligated to comply [with any relief the court orders] … it is usually unnecessary to define with precision the persons entitled to enforce compliance.'" (citation omitted)). For this reason, where, as here, "defendants' alleged policies and practices shape the contours of the class,

---

district a requirement that a class certified under Rule 23(b)(2) must demonstrate ascertainability to merit certification." 567 F. Supp. 3d 30, 51 (D.D.C. 2021).

3

attacks on its definiteness are not entitled to weighty consideration provided all other requirements for class certification are established." Newberg and Rubenstein on Class Actions § 3:7.

Defendants also overstate the factual impossibility of identifying Subclass members. First, while SSA may lack the information necessary to determine the universe of naturalized citizens whose records with SSA do not accurately reflect their citizenship status, DHS does not. Its component, USCIS, processes and adjudicates all naturalization petitions.[2] Individual class members could also determine whether their citizenship information is accurate in SSA records by contacting SSA to confirm, as the PR Subclass Plaintiffs did here. *See* Decl. of J. Doe 1, ECF No. 16-2, at ¶ 14; Suppl. Decl. of J. Doe 4, ECF No. 16-3, at ¶ 14; Decl. of J. Doe 5, ECF No. 16-4, at ¶ 13. Second, the universe of state and local jurisdictions that use the SAVE system for voter verification purposes is also knowable and, as Defendants concede, is reflected in the agreements that these jurisdictions enter into with DHS before they are provided access to the overhauled SAVE system. *See* Opp., ECF No. 38, at 7; *see also* Compl., ECF No. 1, at ¶¶ 98, 101, 148. DHS also keeps records of jurisdictions' actual use of the overhauled SAVE system.[3] These facts are, therefore, also ascertainable from Defendants' own records.

Defendants' timing-related arguments are also misplaced. If a jurisdiction has gained access to and queried the overhauled SAVE system for purposes of voter roll maintenance, then it is "using" the system for this purpose, and any class members who were included in those queries have already suffered harms to their privacy and informational interests and face imminent risk of removal from voter rolls and baseless investigation into their voting histories, using the information collected from the system. Those harms do not disappear, nor would a person lose

---

[2] USCIS, 10 Steps to Naturalization, https://perma.cc/PS2M-M4XC
 (last visited October 24, 2025).

[3] Privacy Act of 1974, System of Records Notice, 85 Fed. Reg. 3198, 31803 (May 27, 2020), https://perma.cc/2UMG-2A27 ("records collected in the process of . . . verifying citizenship or immigration status are stored and retained in SAVE for ten (10) years from the date of the completion of verification"); *see also* Compl., ECF No. 1, at ¶ 156 (alleging MOAs with states authorize DHS to retain and use information uploaded when states use the SAVE system).

their status as a class member just because one election cycle passes. States are actively using the overhauled SAVE system to purge their voter rolls, as evidenced by Texas's announcement earlier this week of new investigations based on SAVE results.[4] There is no temporal or election cycle-based limit in the Subclass definition, so the passage of time does not affect whether a person falls within it. Defendants' arguments also ignore the fact that the "overhauled SAVE system"—the term used in the subclass definition—was first announced in April of this year. *See* Compl., ECF No. 1, at ¶ 111. Any use of this system is, at this point, current or very recent.

For these reasons, an implied "ascertainability" requirement should not be applied here and would not, in any event, pose an obstacle to certifying the Proposed PR Subclass.

**B.** <u>The PR Subclass Plaintiffs show both commonality and typicality</u>

**Commonality**. Rule 23(a)'s "commonality" requirement ensures that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement does not demand that all questions of law or fact at issue be common; "'even a single common question' will do." *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). Commonality is satisfied when there is a "uniform policy or practice that affects all class members." *Id*.

Here, the PR Subclass Plaintiffs have identified five issues of law and fact common to the Proposed PR Subclass, all stemming from Defendants' uniform policy incorporating their sensitive personal records into the overhauled SAVE system. *See* Mem. in Supp. of Mot. for Class Cert., ECF No. 17-1, at 11 (Whether Defendants acted contrary to law and required procedure by establishing and continuing to operate the overhauled SAVE system without complying with the basic protections of the Privacy Act; whether they unlawfully failed to provide these required disclosures, public comment opportunities, and safeguards; Whether they acted arbitrarily and capriciously in establishing and continuing to operate the overhauled SAVE system; whether they acted ultra vires; and whether they violated the separation of powers.). Moreover, because the PR

---

[4] Press Release, Texas Completes Citizenship Verifications in the SAVE Database, Tx. Sec'y of State (Oct. 20, 2025), https://perma.cc/9WZ2-XVDA.

Subclass Plaintiffs are seeking to certify the Subclass under Rule 23(b)(2), commonality is even clearer—"a claim that the opposing party 'has acted or refused to act on grounds that apply generally to the class' necessarily presents a common question of fact; similarly, a claim that injunctive or declaratory relief is appropriate for the class as a whole presents a common question of law." 2 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 3:24 (June 2025 Update). Defendants are acting in a way that applies generally to the Subclass, and injunctive relief is appropriate to provide uniform classwide relief to address their harms.

   The fact that named members of the Proposed PR Subclass have not yet been disenfranchised, does not, and should not, defeat commonality. The Complaint alleges that they face this imminent risk, among other harms, due to unlawful actions by Defendants that are common to the Subclass. Plaintiffs' Motion for Preliminary Relief, and the Reply in support of that motion filed today, robustly explain these risks. A class has commonality "if they posit a systematic act or overarching process or procedure that is the cause of their harm, even if the specific harm to each class member might be different." *Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 419 (D.D.C. 2017). For example, in *L.G.M.L. v. Noem*, 2025 WL 2671690, at *8 (D.D.C. Sept. 18, 2025), the Court certified a class of Guatemalan unaccompanied minors living in the United States that the government planned to remove to Guatemala under the pretense of familial reunification. Even though there were varying factual situations among the plaintiff class (some wanted to return, some had parents who wanted them to return, some had no parents awaiting them, some were being removed against their will), the Court found commonality. There, as here, defendants argued commonality was lacking due to factual differences among class members and the injuries they suffered, but the Court concluded that focus on the outcomes was improper as the common issue was the denial of the statutory and constitutional processes that Plaintiffs may or may not be owed. *Id*. at *8. Similarly, in *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, 334 F.R.D. 449 (D.D.C. 2020), an anonymous group of Afghan and Iraqi nationals filed a class action challenging the Department of Homeland Security's unreasonable delay in processing their Special Immigrant Visa (SIV) applications. Even

though the Court acknowledge factual variations among the class members such as the date they applied and the kinds of threats they faced, it found those variations "are not fatal to commonality because they do not undermine the class's common characteristics—that they have submitted SIV applications and have been waiting longer than 9 months for final adjudication." *Id.* at 459. The Court further rejected DHS's argument that commonality was defeated because the class would include individuals with "high-risk" cases who stood on a different footing than the rest of the class because "all class members, including those considered high-risk, assert a common legal injury: that Defendants have breached their duty under the APA to adjudicate SIV applications without reasonable delay." *Id.* at 459-60.

So too for commonality here. The legally required processes being denied to the Subclass are the injury, not the potential outcome from this denial. Defendants' practice of incorporating incorrect information about citizenship status in the overhauled SAVE system is common to the entire Proposed PR Subclass and has put the entire Proposed PR Subclass at risk of disenfranchisement, baseless investigation, or other barriers to voting. *See* Class Cert. Mot. at 7. The fact that the different states may investigate and purge voter rolls differently does not negate the commonality of Defendants' conduct. Whether this practice was implemented contrary to the safeguards created by the Privacy Act and in a manner that is arbitrary and capricious, violative of non-discretionary official duties, ultra vires, and/or violative of the separation of powers are legal issues common among the Proposed PR Subclass.

This point is especially salient in a Rule 23(b)(2) class action. For a Rule 23(b)(2) class, it is not required that "common legal and factual questions predominate." *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006). Instead, "[a] court may certify a class pursuant to Rule 23(b)(2) only when 'the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.'" *Id.*; Fed. R. Civ. P. 23(b)(2).

**Typicality.** Rule 23(a)'s "typicality" requirement certifies that the specific claims of the class representatives are "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). The typicality

7

and commonality requirements "tend to merge." *J.D.*, 925 F.3d at 1322 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). But, unlike commonality, typicality "concerns the relationship between the representative's individual claims and the class's claims rather than the relatedness of the entire class's claims." *J.D.*, 925 F.3d at 1322.

"The test for typicality is not demanding." 2 Rubenstein § 3:29. Typicality "is ordinarily met 'if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.'" *McCormick*, 422 F. Supp. 3d at 237. Factual variations among class members "do not render the representatives' claims atypical." *J.D.*, 925 F.3d at 1322. Specifically, the inquiry focuses on "the nature of the claims of the representative, not the individual characteristics of the plaintiff." *Nio v. DHS*, 323 F.R.D. 28, 33 (D.D.C. 2017) (quoting *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 52 (D.D.C. 2010)).

Defendants claim that typicality is defeated by factual differences between class members because they reside in different states with different election procedures. But as they do in their commonality arguments, Defendants misstate the relevant inquiry and focus exclusively on the purported atypicality of the potential *harms* and ignore that Plaintiffs' *legal claims* are typical of those of the Subclass as a whole. Opp., ECF No. 38, at 11. As with commonality, the PR Subclass Plaintiffs are subject to the same unlawful conduct and face the same kind of risks as every other class member. Their claims, injuries, and risk of irreparable harm, therefore, remain typical of the Subclass, even if there is variance in how different state and local jurisdictions use the unlawfully provided SAVE data, and even if those differences create variation in the level of risk. *See J.D.*, 925 F.3d at 1322 (affirming that commonality and typicality are satisfied and upholding preliminary injunction where the policy at issue applied to all class members, though "most class members" may have been in different factual circumstances than the representatives, but all class members had the same claims and defenses to the policy); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 182 (D.D.C. 2015) (commonality and typicality satisfied and preliminary injunction entered where all class members were subject to the allegedly unlawful policy, even though precise application

8

of the policy may have varied); *P.J.E.S. by & through Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 509 (D.D.C. 2020) (typicality satisfied and preliminary injunction entered where class representative's and class members' claims "stem from a unitary course of conduct," although the class representative and many of the class members had not yet suffered the threatened harm); *Afghan and Iraqi Allies*, 334 F.R.D. at 461 ("The differences between the named Plaintiffs and the class members that Defendants highlight (applicants who are at different steps in the process and who are considered high-risk) do not undermine the relevant shared characteristics between the named Plaintiffs and the class as a whole").

Defendants also suggest, incorrectly, that Plaintiff J. Doe 4 may not even be a member of the Subclass because the October 11 election in which they intended to vote has already taken place. The Proposed PR Subclass is not defined by reference to particular elections nor by whether or not an individual has already lost the right to vote; J. Doe 4 still, therefore, falls squarely within the definition of the Subclass. Importantly, there is another imminent election in Louisiana on November 15, *see Election Information*, Louisiana Secretary of State (2025), https://perma.cc/KF7X-T67T, as well as elections for federal office in 2026. And because the overhauled SAVE system has made SSA's inaccurate information about J. Doe 4's citizenship status available to the state in which they are registered to vote, J. Doe 4's risk of disenfranchisement, risk of baseless investigation, and other barriers to voting remain—now and in advance of other upcoming elections. *See* Supp. Decl. of J. Doe 4, ECF No. 16-3, at ¶¶ 7, 13-15 (declaring that they "typically vote" and that they fear investigation for "future lawful voting.").

### III. Defendants' arguments about the hypothetical scope of an injunction do not defeat class certification

Defendants contend that the Court's yet-to-be-issued injunction will be insufficiently specific for Defendants to comply and that Plaintiffs are attempting to use Rule 23 to "circumvent" the relief available under the Privacy Act. As a threshold matter, Defendants' arguments on this topic are not relevant to class certification. As with their earlier addressed arguments regarding

9

"ascertainability," Defendants' arguments about the hypothetical scope of an injunction do not supply a basis for denying certification of the proposed Subclass.

These arguments also fail on the merits. First, this is not an action for money damages, so any administrability issues from insufficiently specific relief are irrelevant here. In an injunctive relief class "the defendant will be required to comply with the relief ordered no matter who is in the class," *Thorpe*, 303 F.R.D. at 139. For the reasons explained in the Motion for Preliminary Relief (ECF No. 16-1, at 23) and supporting Reply (ECF No. 41, at 12-15), this action was properly brought as an APA action to vacate final agency action. It is not, as Defendants suggest, a Privacy Act case seeking damages, nor do the PR Subclass Plaintiffs seek any relief other than a stay or injunction of this final agency action. Thus, it is irrelevant whether it would be difficult to prove and distribute individual damages to the class members; this is not the remedy they seek nor even one that is available in this APA action. The cases Defendants cite on this point are, therefore, inapposite. *See Lyon v. United States*, 94 F.R.D. 69 (W.D. Okla. 1982); *Schmidt v. U.S. Dep't of Veterans Affs.*, 218 F.R.D. 619 (E.D. Wis. 2003).

Second, it is entirely feasible for the Court to enter an order providing preliminary relief that is properly scoped for the proposed Subclass and complies with Rule 65(d). Defendants' argument assumes incorrectly that the Court must tailor the scope of relief in any order to the specific group of individuals who fall within the Subclass definition. In fact, the preliminary relief that Plaintiffs seek is a total stay or injunction of the overhauled SAVE system. The Court can enter an order staying or vacating the agency action in its entirety under Section 705 of the Administrative Procedure Act. *See, e.g.*, *Cabrera v. U.S. Dep't of Lab.*, No. 25-CV-1909 (DLF), --- F. Supp. 3d ---, 2025 WL 2092026, at *8 (D.D.C. July 25, 2025); *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, No. CV 25-306 (RDM), 2025 WL 1825431, at *51 (D.D.C. July 2, 2025). Vacatur and its preliminary relief analogue, a Section 705 stay, are standard APA remedies that were not disturbed by the decision in *Trump v. CASA*. *Id*.

And even if the principles articulated in *CASA* were imported into this APA action, the Court is empowered to enter an order that provides complete relief to the parties in the case,

regardless of whether it might also incidentally benefit nonparties. *See L.G.M.L.,* 2025 WL 2671690, at *19 (granting broad preliminary relief to protect even children ineligible for the removals being challenged, because "Defendants' eligibility criteria do not provide a workable line for dividing relief" and class-wide relief in this situation "is not the frowned-upon 'universal relief'" from CASA, rather it "fits comfortably within the 'equitable tradition' of 'administer[ing] complete relief between the parties'"); *Los Angeles Press Club v. City of Los Angeles*, 2025 WL 2640421, at *16-17 (C.D. Cal., Sept. 10, 2025) (finding a broad injunction necessary to afford complete relief to the plaintiffs, because LAPD officers could not differentiate between plaintiff and non-party journalists in the field, so there was not otherwise a practical way to protect plaintiff journalists alone). If, as Defendants argue, they have no way of compiling a definitive list of Subclass members and blocking the ability of SAVE users to query those names, then broader steps will be needed to provide complete relief to the Subclass, such as taking the overhauled SAVE system offline and reverting to the previous version or otherwise altering it to remove users' access to information about immigration status from SSA records.

Thus, the broad relief Plaintiffs seek is appropriate in scope, the Court need not attempt to tailor it specifically to the list of individuals who fall within the Subclass definition, and an order granting such relief plainly meets the specificity requirements of Rule 65(d). The proposed Subclass definition does not, therefore, pose an insurmountable obstacle to the Court providing an appropriately specific order, as Defendants argue.

Plaintiffs brought these claims regarding the overhauled SAVE system and seek preliminary relief precisely *because* Defendants are using inaccurate and outdated citizenship records. The deficiencies in these records are part of what make this agency action unlawful and arbitrary and capricious. Thus, any implementation problems they may encounter due to their own inadequate records should be addressed through an appropriately scoped remedy that provides complete relief to the parties, not by denying relief entirely, as Defendants suggest.

### IV.   No further information about the pseudonymous plaintiffs is needed

Finally, this Court should not require disclosure of Plaintiffs' identities at this stage, nor does the fact Plaintiffs are proceeding pseudonymously preclude class certification. Courts allow proposed class representatives to proceed pseudonymously where, as here, "partial sealings or protective orders cannot address the plaintiffs' concerns about government retaliation," and the government fails to identify "any 'reasonably contested class issues'" that would justify requiring identification of the proposed representatives to the government. *CASA, Inc. v. Trump*, 2025 WL 2263001, at *11-13 & n.8 (D. Md. Aug. 7, 2025); *see also Afghan and Iraqi Allies*, 334 F.R.D. at 449 (certifying class action of anonymous Afghan and Iraqi nationals).

Here, the PR Subclass Plaintiffs have submitted declarations outlining the facts relevant to their participation in this case. Nowhere do Defendants explain what additional information they need about these individuals to evaluate whether they are adequate class representatives. Indeed, even though Defendants attached their letter to Plaintiffs' counsel as Exhibit 1 to their Motion, they did not attach Plaintiffs' response, *see* Ex. 1, which asked Defendants to meet their burden of establishing how the plaintiffs might be subject to unique defenses "which threaten to become the focus of the litigation." *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 119 (D.D.C. 2017). They declined to do so and have not given more detailed reasoning in their opposition. *See* Ex. 1. Defendants' bald assertion that they need to know the identities of the named plaintiffs does not justify removing the protection of pseudonymity that was previously granted in this case, *see* ECF No. 23, or denying certification of the subclass.

### CONCLUSION

For the foregoing reasons, the PR Subclass Plaintiffs respectfully request that the Court grant the Motion and certify the Proposed Preliminary Relief Subclass.

Dated: October 24, 2025                           Respectfully submitted,

*/s/ Johanna M. Hickman*

| | |
|---|---|
| Aman T. George (D.C. Bar No. 1028446)<br>Jennifer Fountain Connolly (D.C. Bar No. 1019148)<br>Johanna M. Hickman (D.C. Bar No. 981770)<br>Mark B. Samburg (D.C. Bar No. 1018533)<br>Robin Thurston (D.C. Bar No. 1531399)<br>DEMOCRACY FORWARD FOUNDATION<br>P.O. Box 34553<br>Washington, D.C. 20043<br>Telephone: (202) 448-9090<br>ageorge@democracyforward.org<br>jconnolly@democracyforward.org<br>hhickman@democracyforward.org<br>msamburg@democracyforward.org<br>rthurston@democracyforward.org<br><br>*Counsel for All Plaintiffs* | Jon Sherman (D.C. Bar No. 998271)*<br>Michelle Kanter Cohen (D.C. Bar No. 989164)<br>Emily Davis (D.C. Bar No. 90020129)<br>FAIR ELECTIONS CENTER<br>1825 K St. NW, Suite 701<br>Washington, DC 20006<br>Telephone: (202) 331-0114<br>jsherman@fairelectionscenter.org<br>mkantercohen@fairelectionscenter.org<br>edavis@fairelectionscenter.org<br><br>*admitted pro hac vice<br><br>*Counsel for All Plaintiffs* |

Nikhel S. Sus (D.C. Bar No. 1017937)
John B. Hill (N.Y. Bar No. 5505508)*
Lauren C. Bingham (Fl. Bar No. 105745)*
Yoseph T. Desta (DC Bar No. 90002042)
CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, D.C. 20044
Telephone: (202) 408-5565
Fax: (202) 588-5020
nsus@citizensforethics.org
jhill@citizensforethics.org
lbingham@citizensforethics.org
ydesta@citizensforethics.org

*admitted pro hac vice

*Counsel for All Plaintiffs*