UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| League of Women Voters of the United States, *et al.*,<br><br>    *Plaintiffs,*<br><br>v.<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>    *Defendants.* | Case No. 1:25-cv-003501 |

### STATE OF TEXAS'S EMERGENCY MOTION TO INTERVENE
### AND REQUEST FOR ORAL HEARING

"The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir.1972). Courts in the D.C. Circuit "generally take a liberal approach to intervention." *LeBoeuf, Lamb, Greene & MacRae, LLP v. Abraham*, 205 F.R.D. 13, 18 (D.D.C. 2001) (citing *Wilderness Soc'y v. Babbitt*, 104 F.Supp.2d 10, 11, 18 (D.D.C. 2000)); *accord Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021) (applying a liberal standard); *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 799 (7th Cir. 2019) (same); *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (same); *City of Emeryville v. Robinson*, 621 F.3d 1251, 1258 (9th Cir. 2010) (same). Rule 24 of the Federal Rules of Civil Procedure provides for both permissive intervention and intervention as of right. *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citing Fed. R. Civ. P. 24(a) & (b)).

# TABLE OF CONTENTS

Table of Contents ............................................................................................................... 2

    I.      Texas Has a Right to Intervene to Protect its Interests Under Rule 24(a) ...................... 3

         A.    Texas's Intervention is Timely ................................................................................. 3

         B.    Texas Claims an Interest in the Transaction at Issue .................................................. 4

         C.    Disposition of this Action Without Texas's Involvement Will Impede Texas's Ability to Protect its Interests ................................................................................................. 7

         D.    Texas's Interest are not Adequately Represented by the Federal Defendants ............ 8

    II.     Alternatively, Texas should be Permitted to Intervene Under Rule 24(b) .................... 9

         A.    Texas has an Independent Ground for Subject Matter Jurisdiction ........................... 10

         B.    Texas's Motion is Timely and Texas Shares Common Questions of Law and Fact .. 10

         C.    Granting Texas's Intervention Will Not Delay or Prejudice the Adjudication of Rights 11

Conclusion ....................................................................................................................... 11

Request for Hearing ......................................................................................................... 12

Certificate of Conference ................................................................................................. 12

Certificate of Service ....................................................................................................... 13

## I. Texas Has a Right to Intervene to Protect its Interests Under Rule 24(a)

The "court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "As the D.C. Circuit has explained, the right to intervene under Rule 24(a) depends on the applicant's ability to satisfy four factors: (1) the timeliness of the motion to intervene; (2) whether the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties." *100Reporters LLC v. United States Dep't of Justice*, 307 F.R.D. 269, 274 (D.D.C. 2014) (citing *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C.Cir.2003); *Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003).

### A. Texas's Intervention is Timely

"A motion to intervene as of right, in turn, must be timely as 'judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case.'" *Campaign Legal Ctr. v. Fed. Election Comm'n*, 68 F.4th 607, 610 (D.C. Cir. 2023) (quoting *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008). "[T]he most important circumstance relating to timeliness" is whether a party "sought to intervene 'as soon as it became clear'" that its "interests 'would no longer be protected' by the parties in the case." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 279–80 (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)).

When intervention to protect the integrity of a state's public records is sought less than a month after the filing of suit and before the district court has taken any action, the intervention is timely. *Karsner v. Lothian*, 532 F.3d 876, 886 (D.C. Cir. 2008). The "limited goal" of future participation "does not appear to impose any untoward burden" on the original parties. *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977) (quoting *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 129 (D.C. Cir. 1972)). Intervention is timely even when intervention is sought seven years after the filing of suit, if the intervention seeks to participate in upcoming proceedings without further delay. *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977).

Texas satisfies these factors and the timeliness requirement for a simple reason: this case has just begun. This suit was filed less than a month ago on September 30, 2025. ECF 1. The Court has not taken any substantive action in this case having only just recently set a hearing for preliminary injunction. Texas first learned of a setting on Plaintiffs' Motion for a Stay Under 5 U.S.C. § 705 and a Preliminary Injunction on October 21, 2025. That is the first day Texas was aware of any deadline under which Texas's interests could be adversely affected. Moreover, Texas could not be certain whether its interests would be adequately represented by Federal Defendants until Federal Defendants filed their Opposition on October 22, 2025. *See* ECF 37. Texas seeks leave to intervene so that it may participate in the upcoming October 28, 2025 preliminary injunction hearing and other future proceedings. Given the early stage of the proceedings, the existing parties are not prejudiced by Texas's intervention. For these reasons, Texas's intervention is timely and should be granted.

### B. Texas Claims an Interest in the Transaction at Issue

The rule requiring an intervenor have an interest in the transaction "impliedly refers not to any interest the applicant can put forward, but only a legally protectable one." *City of Cleveland,*

*Ohio v. Nuclear Regulatory Comm'n*, 17 F.3d 1515, 1517 (D.C. Cir. 1994). To demonstrate a sufficient interest proposed intervenors must show that they "would suffer harm from an adverse decision on the merits." *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 25 (D.D.C. 2002) (quoting *Alaska v. Federal Energy Regulatory Comm'n*, 980 F.2d 761, 763 (D.C. Cir. 1992)).

"For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). The D.C. Circuit has previously taken the position that Article III standing is inherently required for intervention. However, the United States Supreme Court has clarified that "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 440 (2017). Because Texas does not intend to seek relief beyond that sought by the existing parties at this time, Texas need not establish standing independently. But in any event, "the standing inquiry will fold into the underlying inquiry under Rule 24(a): generally speaking, when a putative intervenor has a 'legally protected' interest under Rule 24(a), it will also meet constitutional standing requirements, and vice versa." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 13 (D.D.C. 2010).

To establish Article III standing, and thus a legally protected interest, a plaintiff must demonstrate that (1) he has suffered an injury-in-fact; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. E. Ky. Welfare Rights Org*, 426 U.S. 26, 41–43 (1976)). "[A] State 'clearly has a legitimate interest in the continued enforceability of its own statutes.'" *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595

U.S. 267, 277 (2022). "This means that a State's opportunity to defend its laws in federal court should not be lightly cut off." *Id.*

Here, denial of Texas's Motion to Intervene will impede Texas's ability to implement its laws. Federal and State law require Texas to "implement and maintain a statewide computerized voter registration list." Exh. 1 at ¶2. "In March 2025, the Texas Secretary of State signed a Memorandum and Agreement with USCIS for Participation in the Systemic Alien Verification for Entitlements (SAVE) system for voter registration and voter list maintenance purposes." Exh. 1 at ¶6. The Texas Secretary of State had not previously gained access to the SAVE system because it required the use of an alien registration number that the Texas Secretary of State did not maintain. Exh. 1 at ¶7. When it required an alien registration number, "the SAVE system was an inadequate option for an agency like the Texas Secretary of State seeking to obtain citizenship status information for individuals on the voter rolls." Exh. 1 at ¶7. "The recent modifications to SAVE have made the system functional for use by Texas and other states seeking to determine eligibility for voter registration." Exh. 1 at ¶8. "[T]he changes to the SAVE system over the last several months have been transformational for the Texas Secretary of State." Exh. 1 at ¶8.

Texas now has "the ability to search the SAVE system with a person's social security number rather than an alien registration number or other immigration identifier that is not maintained in Texas's voter registration system." Exh. 1 at ¶9. Texas also utilizes the new system "to submit bulk uploads of voter records to SAVE instead of going through the cumbersome process of searching one record at a time." Exh. 1 at ¶9. This upgraded SAVE system gives Texas an "effective tool to use in fulfilling its obligation to maintain clean, up-to-date voter registration rolls." Exh. 1 at ¶11.

Plaintiffs themselves have identified Texas's interests in this litigation. For example, an entire section of Plaintiffs' Complaint is dedicated to "States' use of the overhauled SAVE system" with Texas being one of the States specifically referenced. ECF 1 at 35–38. In support of their Motion for Preliminary Injunction, Plaintiffs rely on a declaration, from a registered voter in Texas who discusses Texas's use of the SAVE system. ECF 16-2. Plaintiffs challenge the very changes that make the SAVE system usable to the Texas Secretary of State. Texas, therefore, has a direct interest in the transaction at issue in this litigation and should be permitted to intervene.

### C. Disposition of this Action Without Texas's Involvement Will Impede Texas's Ability to Protect its Interests

This Court considers this factor "as looking to the 'practical consequences' of denying intervention, even where the possibility of future challenge . . . remain[s] available" *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (quoting *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C.Cir.1977). "It is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003).

Texas's ability to protect its interests hinges on intervention. Without intervention, Texas has no way to defend its interests in maintaining accurate voter rolls, preventing illegal votes, and ensuring fair and accurate elections. This case could fundamentally alter Texas's ability to comply with federal and state law regarding voter registration by eliminating "the most current and accurate data set available for verification of U.S. citizenship." Exh. 1 at ¶10. An adverse ruling in this matter would interfere with the enforcement of Texas's election laws and thus warrants intervention.

### D. Texas's Interest are not Adequately Represented by the Federal Defendants

The Supreme Court has held that this "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). The D.C. Circuit Court of Appeals has also held that "the burden is on those opposing intervention to show that representation for the absentee will be adequate." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980). "The mere fact that other defendants might hypothetically take [a state's] interests into account when shaping their arguments does not mean that they would afford the same primacy to [that state's] interests." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 20 (D.D.C. 2010). "[F]or purposes of Rule 24, applicants for intervention need not prove that representation by the [existing parties] *is* inadequate but need show merely that it *may be*." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972). Courts across the country have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003).

Federal Defendants' generalized interests in representing the national public interest may not align with the Texas's specific interests. *See Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1255–56 (10th Cir. 2001). "In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." *Id.* These can include the "expense of defending" the current laws, *Clark v. Putnam Cnty.*, 168 F.3d 458, 461–62 (11th Cir. 1999); the "social and political divisiveness of the election issue," *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1478 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007) (per curiam); and the interests of opposing parties, *In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir. 1991). Where, as here,

Texas shares similar interests with Federal Defendants as adversaries of Plaintiffs, Texas should "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980) (quoting 7A C. Wright & A. Miller, Federal Practice & Procedure: Civil s 1909, at 524 (1972)).

Texas's interests are not adequately protected because Federal Defendants do not have an interest in protecting Texas's use of the SAVE database. In fact, Texas is currently adverse to Federal Defendants in litigation seeking to compel Federal Defendants' disclosure of citizenship and immigration information through the SAVE system under 8 U.S.C. § 1373. *See Attorney General of Texas, et al. v. Mayorkas, et al.*; Case No. 4:24-cv-00049 (W.D. Tex. 2024). Moreover, to the extent Federal Defendants' interest are aligned with Texas's, the federal government shutdown is presently inhibiting Federal Defendants' ability to represent these interests. This is demonstrated by Federal Defendants' inability to take a position on Texas's motion to intervene.

## II. Alternatively, Texas should be Permitted to Intervene Under Rule 24(b)

Federal Rule of Civil Procedure 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In order to litigate a claim on the merits under Rule 24(b)(2), the putative intervenor must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action. *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (citing *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)).

"[P]ermissive intervention is an inherently discretionary enterprise" and "wide latitude [is] afforded to district courts under the rules." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (citing *Hodgson v. United Mine Workers of America*, 473 F.2d 118, 125 n. 36 (D.C.Cir.1972); *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C.Cir.1997)). "When 'exercising its discretion,' the district court 'shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) (quoting Fed. R. Civ. P. 24(b)). Texas checks each box.

### A. Texas has an Independent Ground for Subject Matter Jurisdiction

"The first requirement for permissive intervention—an independent basis for jurisdiction—stems not from any explicit language in Rule 24(b), but rather from the basic principle that a court may not adjudicate claims over which it lacks subject matter jurisdiction." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). (citing Fed. R. Civ. P. 82). The district courts shall have original jurisdiction of all actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Here an independent ground for jurisdiction exists because Texas seeks to intervene as a defendant in this matter, therefore federal question jurisdictions exists as to Texas as much as it does to Federal Defendants. Furthermore, subject matter jurisdiction implicates Article III standing, which Texas has established as described *supra*.

### B. Texas's Motion is Timely and Texas Shares Common Questions of Law and Fact

*First*, as explained above, Texas Motion to Intervene is timely. *See supra* at Section I.A. *Second*, Texas will raise defenses that share many common questions of law and fact with the parties' claims and defenses. Plaintiffs allege that numerous recent changes to the SAVE system

are unlawful. Texas disagrees with Plaintiffs and contends that the recent changes are valid, enforceable, and necessary to comply with federal and state law. *See supra* at Section I.B.

### C. Granting Texas's Intervention Will Not Delay or Prejudice the Adjudication of Rights

"The 'delay or prejudice' standard presumably captures all the possible drawbacks of piling on parties; the concomitant issue proliferation and confusion will result in delay as parties and courts expend resources trying to overcome the centrifugal forces springing from intervention, and prejudice will take the form not only of the extra cost but also of an increased risk of error." *Mass. Sch. of Law at Andover, Inc. v. U.S.*, 118 F.3d 776, 782 (D.C. Cir. 1997). When an intervenor does not seek to add additional claims, the risk of delay and prejudice are minimal. *Butte Cnty., CA v. Hogen*, No. CIV.A.08-519 HHK AK, 2008 WL 2410407, at *3 (D.D.C. June 16, 2008).

As discussed *supra at* Section I.A, this litigation is in its early stages; Plaintiffs filed their Complaint less than a month ago and the Court has taken no substantive actions. Discovery has not begun and the only pending issues before the court are class certification and preliminary injunction. Texas does not seek to delay any proceedings in this case assuming it is permitted to intervene and be heard in the upcoming proceedings.

## CONCLUSION

Texas has an obligation under state and federal law to maintain its voter registration list. Access to citizenship and immigration information is necessary to achieve that goal. In fact, Texas is currently engaged in litigation with these same Federal Defendants to ensure access to such information. Plaintiffs here challenge the very changes that Texas is utilizing to maintain its voter rolls. Texas clearly has an interest in maintaining access to the expanded features of the SAVE system. Texas's intervention in this barely month-old litigation is timely because it comes as soon

as Texas became aware its interests were at issue and may not be adequately represented by existing parties, before any substantive developments in the litigation, and because it will not delay these proceedings. If Texas were not allowed to participate, its ability to protect its interests would be impeded because Federal Defendants are nit fully aligned with Texas's interests. Therefore, Texas should be granted the opportunity to intervene and be heard.

### REQUEST FOR HEARING

Texas requests that this Motion be heard and ruled on at the previously scheduled October 28, 2025 hearing so that Texas may participate in scheduled proceedings. Plaintiffs have consented to this Motion being heard at that time. Federal Defendants are unable to take a position due to the lapse in appropriations. Allowing Texas to be heard would be in the interest of judicial efficiency.

Dated: October 27, 2024.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

Respectfully submitted.

*/s/ William D. Wassdorf*
**WILLIAM D. WASSDORF**
Associate Deputy AG for Civil Litigation
Texas Bar No. 24103022
**ALI M. THORBURN**
Special Counsel, Special Litigation Division
Texas Bar No. 24125064

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(737) 226-4398
Will.Wassdorf@oag.texas.gov
Ali.Thorburn@oag.texas.gov
**COUNSEL FOR INTERVENOR DEFENDANT**
**THE STATE OF TEXAS**

### CERTIFICATE OF CONFERENCE

On October 22, 2025, undersigned counsel conferred with counsel for Plaintiffs and counsel for Federal Defendants via email regarding the substance of this Motion. Plaintiffs oppose

Page 12 of 13

Texas's motion to intervene, as well as any request to postpone the October 28, 2025 hearing. However, Plaintiffs do not oppose Texas being heard on its motion to intervene at the October 28 hearing. The United States is unable to take a position on Texas's motion to intervene and request for hearing at this time, due to the lapse in appropriations. *See* 31 U.S.C. §§ 1341–42; Standing Order No. 25-55 (JEB) (D.D.C.).

*/s/ William D. Wassdorf*
**WILLIAM D. WASSDORF**
Associate Deputy AG for Civil Litigation

### CERTIFICATE OF SERVICE

On October 27, 2025, the foregoing instrument was served on all parties and counsel of record via the Court's CM/ECF system.

*/s/ William D. Wassdorf*
**WILLIAM D. WASSDORF**
Associate Deputy AG for Civil Litigation