# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| League of Women Voters of the United States, *et al.*, §§§ | |
| *Plaintiffs,* §§ | |
| v. §§ | Case No. 1:25-cv-003501 |
| U.S. Department of Homeland Security, *et al.*, §§ | |
| *Defendants.* § | |

---

### STATE OF TEXAS'S MOTION TO DISMISS AND RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Federal law entitles states and local officials to request citizenship status information from the Department of Homeland Security ("DHS") and United States Citizenship and Immigration Services ("USCIS") for any purpose authorized by law, such as performing voter list maintenance and investigating if criminal conduct occurred in connection with an election. 8 U.S.C. § 1373(c). Federal law requires DHS, by and through USCIS, to fulfill such information requests. *Id.* Plaintiffs incorrectly claim DHS and USCIS's efforts to comply with this federal law are illegal. Texas utilizes this information to verify citizenship and immigration status for individuals. Plaintiffs' claims should be dismissed, and preliminary injunction should be denied.

TABLE OF CONTENTS

Table of Contents ................................................................................................... 2

Background ............................................................................................................ 3

Legal Standard ...................................................................................................... 4

   I.    Federal Rule of Civil Procedure 12(b)(1) ................................................ 4

   II.   Federal Rule of Civil Procedure 12(b)(6) ................................................ 4

   III.  Preliminary Injunction ............................................................................ 4

Motion to Dismiss .................................................................................................. 5

   I.    Plaintiffs lack standing. ............................................................................ 5

     A.   Individual Plaintiffs and members of LWVVA, LWVLA, and EPIC lack standing. ......................................................................................................... 7

     B.   LWV, LWVVA, and LWVLA lack organizational standing. ...................................... 8

     C.   EPIC lacks standing to bring the *ultra vires* and separation of powers claims............. 8

   II.   Plaintiffs have not pled a plausible claim for relief......................................... 9

     A.   Plaintiffs have not pled a plausible claim for relief under the APA............................ 9

       1.    Plaintiffs have not identified a reviewable agency action. ................................. 9

       2.    The Data Systems at issue are not "matching programs" as defined by federal law ............................................................................................................10

       3.    The SAVE system's disclosure of SSA and citizenship information is authorized by the Privacy Act. ........................................................................... 11

     B.   Plaintiffs have not pled a plausible *ultra vires* claim. ..................................12

     C.   Plaintiffs have not pled a plausible separation of powers claim. ...............................13

Response in Opposition to Plaintiffs' Motion for Preliminary Injunction.....................14

   I.    Plaintiffs are unlikely to succeed on the merits...........................................14

   II.   Plaintiffs will not be irreparably harmed absent injunctive relief................................16

     A.   Plaintiffs' right to vote is not disenfranchised ........................................................17

     B.   Plaintiffs' alleged harms are speculative ..................................................................17

   III.  The balance of the equities and the public interest weigh against granting injunctive relief. ....................................................................................................18

   IV.  Objections to Plaintiffs' Preliminary Injunction Evidence ..........................................19

Conclusion ............................................................................................................ 20

Certificate of Service.............................................................................................21

<u>**BACKGROUND**</u>

Last year, the Texas Attorney General and Secretary of State sued the Department of Homeland Security ("DHS"), the Secretary of "DHS", the Director of U.S. Citizenship and Immigration Services ("USCIS"), and USCIS for failing to provide citizenship information in response to Texas's queries as required by federal law. 8 U.S.C. § 1373. SAVE was the only system USCIS offered to fulfill this requirement. Prior to making the upgrades to SAVE, States were required to pay per query, had to enter each query individually, and could only obtain information if they had an alien registration number for the individual in question. Exh. 1 at ¶ 7. Even with that information, USCIS was only able to provide states with confirmation of a person's lawful presence in the United States, not their citizenship. This was not sufficient under federal law. Several other states recognized SAVE's deficiencies and sued on similar bases, including Florida, Ohio, Indiana, and Iowa. In response to these lawsuits, DHS and USCIS upgraded the SAVE system to bring it into compliance with federal law. The upgrades made to the SAVE system, including batch searching and Social Security Administration ("SSA") information availability are necessary to ensure the SAVE system functions in accordance with federal law. Without these upgrades, USCIS will not be able to provide the information required by § 1373.

These upgrades form the basis of the case at bar. Plaintiffs League of Women Voters, League of Women Voters of Virgina, League of Women Voters of Louisiana, League of Women Voters of Louisiana Education Fund (collectively "League Plaintiffs"), Electronic Privacy Information Center ("EPIC"), and Individual Plaintiffs (collectively "Plaintiffs") bring statutory and constitutional claims against DHS, the DHS Secretary, the SSA, the SSA Commissioner, the U.S. Department of Justice ("DOJ"), and the U.S. Attorney General (collectively "Federal Defendants") claiming the SAVE upgrades violate the Privacy Act and Separation of Powers,

among other things. The State of Texas ("Texas") now files this Motion to Dismiss and Response to Plaintiffs' Motion for Preliminary Injunction.

**LEGAL STANDARD**

### I.    Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A "defect of standing is a defect in subject matter jurisdiction." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (quoting *Haase v. Sessions*, 835 F.2d 902. 906 (D.C. Cir. 1987)). The plaintiff bears the burden to prove jurisdiction exists. *Id.* (citing *D.C. Retirement Bd. v. United States*, 657 F. Supp. 428, 431 (D.D.C. 1987)).

### II.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III.    Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90. "To succeed on the merits, '[a] plaintiff must show a likelihood of success encompass[ing] not only substantive theories but also establishment of jurisdiction,' including standing to sue." *Cabrera v. U.S. Dep't of Lab.*, No. 25-CV-1909 (DLF), 2025 WL 2092026, at *2 (D.D.C. July 25, 2025) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)).

## MOTION TO DISMISS

### I.    Plaintiffs lack standing.

"[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citing *Davis v. Fed. Election Com'n*, 554 U.S. 724, 734 (2008)). A citizen does not have standing to sue simply because they believe the government is acting illegally, nor do citizens have standing simply because of strong moral, ideological, or policy objections to government action. *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 381 (2024). Article III standing requires the plaintiff to plead an injury that is (1) concrete and particularized and (2) actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). "[T]he injury must be accrual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Alliance for Hippocratic Medicine*, 602 U.S. at 381 (citing *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561 (citing *FW/PBS Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). An organization's injury satisfies Article III only if it goes beyond a setback to the organization's social interest and alleges that the defendant's conduct inhibited the organization's daily operations, and the organization

used its resources to counteract the harm. *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1093-94 (D.C. Cir. 2015).

The United States Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient. *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013). Plaintiffs' "subjective fear . . . does not give rise to standing. *Id.* at 418. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416 (citing *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976)). Fear—even if not "fanciful, paranoid, or otherwise unreasonable"—as well as costs and burdens associated with that fear, is not sufficient to establish standing. *Id.*

Here, Individual Plaintiffs and organizational members have not sufficiently pled these elements for any of the claims asserted. As such, neither Individual Plaintiffs, nor the organizations on behalf of their members have standing to bring any of Plaintiffs' claims. *See Travelers United, Inc. v. Hyatt Hotels Corporation*, 761 F. Supp. 3d 97, 117 (D.D.C. 2025) (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1997) ("a party may show that an organization has associational standing by showing that '(a) its members would otherwise have standing to sue in their own right; (b) the interests [the organization] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'"). On their own behalf, LWV, LWVLA, and LWVVA have not alleged organizational standing for any of Plaintiffs' claims. Similarly, EPIC has not satisfied the elements of organizational standing to bring Plaintiffs' *ultra vires* and separation of powers claims.

**A.  Individual Plaintiffs and members of LWVVA, LWVLA, and EPIC lack standing.**

Individual Plaintiffs and members of LWVVA, LWVLA, and EPIC (collectively "Individual Plaintiffs and organizational members") lack standing to bring any of Plaintiffs' claims because their alleged injuries are not concrete and particularized nor actual and imminent. *See Lujan*, 504 U.S. at 560. Specifically, Individual Plaintiffs' and organizational members' alleged injuries include (1) fear, emotional distress, and unease at the "potential mishandling and misuse," "increased risk," and "increased vulnerability" of their personal information, ECF 1 ¶ 175-76, (2) fear that potential misuse of their information will subject them to unwarranted investigations or impediments to their fundamental right to vote, ECF 1 ¶ 176, 181, 184, and (3) the inability "adequately understand" how their information is being used and being unable to convey their concerns and "exercise their rights under the Privacy Act to submit appropriately targeted requests to access or correct their own records[,]" ECF 1 ¶ 178-80. These "injuries" are not imminent or concrete because Individual Plaintiffs and organizational members plead no facts supporting their alleged fears that their information is being, or will soon be, misused. Likewise, they plead no facts showing any of them have been, or have a concrete reason to believe they will imminently be, subject to an unwarranted investigation. Finally, they plead no facts alleging they have tried and failed to submit a proper request to correct their records. Individual Plaintiffs and organizational members' assertion that an election is coming up, ECF 1 ¶¶ 183, does nothing to rectify these deficiencies because the mere fact that an election is approaching does not mean Individual Plaintiffs and organizational members will be subject to unwarranted investigation or misuse of their information.

Because Individual Plaintiffs and organizational members have not alleged an Article III injury, their claims must be dismissed. Individual Plaintiffs and organizational members' lack of an

Article III injury is also fatal to EPIC, LWV, LWVVA, and LWVLA's claims to the extent they assert standing on behalf of their members. *Travelers United, Inc.*, 761 F. Supp. 3d at 117 (quoting *Hunt*, 432 U.S. at 343 (requiring an organization's members have standing to sue in their own right to achieve associational standing).

**B.  LWV, LWVVA, and LWVLA lack organizational standing.**

LWV, LWVVA, and LWVLA ("League Plaintiffs") lack standing to bring any of Plaintiffs' claims because they have not alleged an Article III injury. League Plaintiffs essentially plead two injuries. First, League Plaintiffs claim SAVE's use of SSA data impairs citizens' ability and willingness to vote. *E.g.,* ECF 1 ¶ 190-91 ("when voters are intimidated or must take additional steps to register or remain registered, it directly harms LWV's mission of ensuring that the ballot box is accessible for all eligible voters" and SAVE's use of SSA data "risks impairing" citizens' "ability and willingness" to vote). Second, League Plaintiffs claim that Federal Defendants' failure to provide SORN and matching agreement information relating to the SAVE updates and allow for notice and comment hinders League Plaintiffs' ability to provide feedback on the changes and properly educate the public and their members on how the changes to SAVE affect them. ECF 1 ¶¶ 192-194. These "injuries" are not sufficient because League Plaintiffs do not claim they used organizational resources to counteract these alleged harms. *See People for the Ethical Treatment of Animals*, 797 F.3d at 1094 (requiring an organization expend resources to counteract the harm to qualify for Article III standing). Thus, League Plaintiffs lack Article III standing. *Id.*

**C.  EPIC lacks standing to bring the *ultra vires* and separation of powers claims.**

EPIC lacks standing to bring Plaintiffs' *ultra vires* and separation of powers claims because it has not alleged an injury which is likely to be redressed by a favorable ruling on those claims. *Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43

(1976)) (requiring it be likely that the injury will be redressed by a favorable decision). EPIC alleges its purported injuries were caused by Federal Defendants' "failure to disclose information required by statute[.]" ECF 1 ¶ 188. Plaintiffs' *ultra vires* and separation of powers claims are related to the establishment and operation of the databases, not Federal Defendants' alleged failure to disclose information. ECF 1 ¶¶ 229-40. Enjoining the operation of the databases, declaring them unconstitutional, and ordering the data be deleted and "unlinked" will not redress EPIC's alleged injury—that is, expending additional resources to uncover information due to Federal Defendants' alleged failure to disclose information. ECF 1 ¶ 188. Thus, EPIC does not have standing to bring the *ultra vires* and separation of powers claims. *See Lujan*, 504 U.S. at 561 (quoting Simon, 426 U.S. at 38, 43) (requiring the injury be likely redressed by the relief sought).

## II. Plaintiffs have not pled a plausible claim for relief.

### A. Plaintiffs have not pled a plausible claim for relief under the APA.

#### 1. *Plaintiffs have not identified a reviewable agency action.*

The APA provides for judicial review of a "final agency action." 5 U.S.C. § 704. However, we need not address the "finality" aspect of judicial review here because Plaintiffs do not even complain of reviewable "agency action." The APA permits judicial review of only "agency action" as that term is defined. *See Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 778 (D.C. Cir. 2025). The APA defines "agency action" to include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. 551(13). "[T]he term [agency action] is not so all-encompassing as to authorize [courts] to exercise judicial review over everything done by an administrative agency." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 19 (D.C. Cir. 2006) (quoting *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004)) "[T]he APA does not require notice and comment for

interpretive rules, general statements of policy, and rules of organization, procedure, or practice." *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014) (citing 5 U.S.C. § 553(b)(3)(A)). Nor does "the mere fact that [an agency action] may have a substantial impact . . . transform it into a legislative rule" subject to notice and comment. *Sec. Indus. & Fin. Markets Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F.Supp.3d. 373, 423 (D.C. Cir. 2014) (quoting *Cent. Tex. Tel. Coop. v. FCC*, 402 F.3d 205, 214 (D.C. Cir. 2005) (cleaned up). "[T]he APA does not make federal courts "roving commissions" assigned to pass on how well federal agencies are satisfying their statutory obligations." *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 780–81 (D.C. Cir. 2025) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11 (1973).

Plaintiffs incorrectly claim Federal Defendants' "establishment and operation of the Interagency Data Systems" are "final agency action[s]." ECF 1 ¶ 206. Neither establishment nor operation of SAVE or the Data Lake are final agency actions as defined by the APA. *See* 5 U.S.C. 551(13) (defining "agency action" as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."). Therefore, Federal Defendants were not required to engage in notice and comment. The outsized effects Plaintiffs speculate these systems may have does nothing to change this fact. *See   Sec. Indus. & Fin. Markets Ass'n*, 67 F.Supp.3d. at 423 (D.C. Cir. 2014) (quoting *Cent. Tex. Tel. Coop.*, 402 F.3d at 214 (D.C. Cir. 2005). Because Plaintiffs do not challenge a reviewable agency action, Plaintiffs' APA claims fail as a matter of law.

### 2. *The Data Systems at issue are not "matching programs" as defined by federal law*

Plaintiffs claim Federal Defendants violated the APA by establishing and significantly changing "'computer matching program[s]'" without first soliciting public comment on any

"matching agreements" as required by the Privacy Act. ECF 1 ¶ 211. This claim fails because neither the SAVE system nor the "Data Lake" are "matching programs" as defined by the Privacy Act. 5 U.S.C. § 552a. A "matching program" is a computerized comparison of:

> (i) two or more automated systems of records or a system of records with non-Federal records for the purpose of--
> (I) establishing or verifying the eligibility of, or continuing compliance with statutory and regulatory requirements by, applicants for, recipients or beneficiaries of, participants in, or providers of services with respect to, cash or in-kind assistance or payments under Federal benefit programs, or
> (II) recouping payments or delinquent debts under such Federal benefit programs, or
> (ii) two or more automated Federal personnel or payroll systems of records or a system of Federal personnel or payroll records with non-Federal records,

5 U.S.C.A. § 552a. SAVE is "a single, reliable source for verifying immigration status and U.S. citizenship nationwide[,]" ECF 1 ¶ 112 intended to aid states in "voter registration and list maintenance[,]" ECF 1 ¶ 122. SAVE is not intended to verify the eligibility of beneficiaries for cash or in-kind Federal assistance programs and Plaintiffs do not plead otherwise. Likewise, Plaintiffs do not plead facts showing the Data Lake is intended for or used to verify the eligibility of beneficiaries for cash or in-kind Federal assistance programs. Because Plaintiffs have not plausibly pled that SAVE and the Data Lake are "matching programs," Plaintiffs' claims asserting that Federal Defendants failed to comply with the requirements of "matching programs" fail as a matter of law and should be dismissed.

### 3. The SAVE system's disclosure of SSA and citizenship information is authorized by the Privacy Act.

The Privacy Act authorizes SAVE's data-sharing. Specifically, 5 U.S.C. § 552a(b)(7) authorizes agencies or instrumentalities of any government jurisdiction within or under the control

of the United States to disclose records for the purpose of enforcing civil or criminal law. In fact, not only is disclosure authorized by the Privacy Act but the federal government is *required* to disclose "the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." 8 U.S.C. § 1373.This is precisely what the SAVE partnership with DHS entails. As Plaintiffs plead, the updated SAVE system will be used to enforce civil laws including preventing voter fraud. ECF 1 ¶ 111. Plaintiffs point out a few additional changes to SAVE which they dislike such as a "bulk uploader" feature which allows users to query multiple cases in a single search instead of one at a time, ECF 1 ¶ 124, and a feature that allows searches using the last four digits of a Social Security Number rather than the full 9 digits previously required, ECF 1 ¶ 127. Beyond expressing their disdain for these updates, Plaintiffs do not explain how or why these new features constitute violations of the Privacy Act.  ECF 1 ¶¶ 126-127.

### B.  Plaintiffs have not pled a plausible *ultra vires* claim.

"To succeed on an *ultra vires* claim, the plaintiff must show that (1) judicial review is not expressly foreclosed; (2) the agency made an extreme legal error; and (3) there is no alternative means for the plaintiff to seek judicial review. *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 791 (D.C. Cir. 2025) (citing *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 721–22 (D.C. Cir. 2022)). "[*U*]ltra vires claims are confined to 'extreme' agency error where the agency has 'stepped so plainly beyond the bounds of [its statutory authority], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court[.]" *Fed. Express Corp. v. U.S. Dep't of Comm.*, 39 F.4th 756, 764 (D.C. Cir. 2022) (quoting *Griffith v. Fed. Labor Relations Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988)). Plaintiffs fail to carry this burden as a matter of law. The Privacy Act provides an alternative avenue for Plaintiffs to seek relief. 5 U.S.C.A. § 552a(g)(1) (allowing

individuals to bring civil actions against an agency that fails to comply "with any provision of this section, or any rule promulgated thereunder"). On this basis alone, Plaintiffs' *ultra vires* claims fail as a matter of law. *Nat'l Treasury Emps. Union*, 149 F.4th at 791 (requiring there be no alternative means for the plaintiff to seek judicial review to proceed with an *ultra vires* claim).

### C. Plaintiffs have not pled a plausible separation of powers claim.

Plaintiffs claim Federal Defendants "violated the separation of powers by establishing and operating the Interagency Data Systems" because (1) no statute gives Federal Defendants authority to establish a "data bank" for determining the citizenship of voters and voter registrants and (2) the Executive Branch does not possess any constitutional authority over elections. ECF 1 ¶¶ 238-40. Plaintiffs are wrong on both counts.

*First*, 8 U.S.C. § 1373 requires USCIS to maintain, send, and exchange information regarding the immigration status "lawful or unlawful" of any individual with any other Federal, State, or local government entity. In fact, Congress forbid Federal, State, and local government entities and officials from prohibiting "or in any way restrict[ing], any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a). Moreover, Congress mandated that States maintain their voter rolls, *see* 52 U.S.C. § 21083(a)(2)(A), (a)(2)(B), and mandated that USCIS respond to inquiries from Federal, State, and local government agencies "seeking to verify or ascertain the citizenship or immigration status of any individual" within that agency's jurisdiction "by providing the requested verification or status information[,]" 8 U.S.C. § 1373(c). This is precisely what the updated SAVE system does.

*Second*, not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Dalton v. Specter*, 511 U.S. 462,

472 (1994). "[S]tatutory claims do not become constitutional ones by operation of the separation-of-powers principles that prevent the States and the Executive Branch from disregarding federal statutes." *Nat'l Treasury Emps. Union v. Vought*, 149 F.4th 762, 792 (D.C. Cir. 2025). "[C]laims alleging nothing more than executive actions in contravention of statutes give rise to *ultra vires* claims but not implied constitutional claims." *Id.* at 793. Any dispute as to Federal Defendants' authority to update the SAVE system is a question of statutory interpretation, not constitutional. Additionally, the Elections Clause is irrelevant because Plaintiffs have not pled Federal Defendants engaged in any regulation of the time, place, or manner of holding Elections for Senators and Representatives. *See* U.S. CONST. ART. I, § 4, cl. 1.

### RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "The default rule is that a plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008)). "When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).

### I.    Plaintiffs are unlikely to succeed on the merits.

"[A] likelihood of success is an independent, free-standing requirement for a preliminary injunction." *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (quoting *Davis v. Pension Benefit*

*Guaranty Corp.*, 571 F.3d 1288, 1296 (2009)). "Without such a substantial indication of probable success, there [is] no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Washington Metro. Area Transit Comm'n v. Holiday* Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977) (quoting *Va. Petroleum Jobbers Assoc. v. FPC*, 259 F.2d 921, 925 (1958)). "[T]he 'merits' on which [a] plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction." *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015). It is not enough that the chance of success on the merits are "better than negligible." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)). That the questions before the Court are "serious, substantial, or difficult" is also not justification for entering a preliminary injunction. *Munaf v. Geren*, 553 U.S. 674, 690 (2008).

Plaintiffs are unlikely to succeed on the merits of their claims for the reasons set forth above in Texas's Motion to Dismiss and for the following additional reasons.

*First*, Plaintiffs lack standing to assert their claims. *See supra* at Section I.A–C. *Second*, Contrary to Plaintiffs' assertion, ECF 16-1 at 22–23, Defendants' upgrade of the SAVE system is not reviewable agency action as discussed *supra* at Section II.A.1. *Third*, the upgrade of the SAVE system does not violate the Privacy Act because the data systems at issue are not "matching programs" and the SAVE systems disclosure of citizenship information is authorized by the Privacy Act. *See supra* Section II.A.2-3. *Fourth,* Plaintiffs are incorrect in their assertion that the SAVE system contains unreliable data. ECF 16-1 at 16–17. This is the primary support for their contention that Federal Defendants' upgrade of the SAVE system was arbitrary and capricious. ECF 16-1 at 28–30. In fact, the SAVE system is "the most current and accurate data set available for verification of U.S. citizenship" status. Exh. 1 at ¶10. *Fifth*, Plaintiffs are not likely to succeed

on the merits of their *ultra vires* claim because there are alternative remedies available. *See supra* at Section II.B. *Sixth*, Plaintiffs are not likely to succeed on the merits if the separation of powers claim because Congress has granted express authority—in the form of a requirement—for the government to provide citizenship information to other governmental entities upon request for any lawful purpose, including voter verification and because Federal Defendants' upgrade of the SAVE system in not a regulation on elections. *See supra* at II.C.

## II.    Plaintiffs will not be irreparably harmed absent injunctive relief.

"[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *Alliance for Hippocratic Medicine*, 602 U.S. at 381. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.). Instead, the United States Supreme Court "standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To qualify as irreparable harm, the injuries alleged 'must be both certain and great,' 'actual and not theoretical,' and 'of such imminence that there is a 'clear and present' need for equitable relief.'" *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 37 (D.D.C. 2025) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

### A. Plaintiffs' right to vote is not disenfranchised

Voters will not be disenfranchised through the purging of voter rolls as a result of the improved SAVE system as Plaintiffs contend. *See* ECF 16-1 at 17–20, 35–36. Both state and federal law require Texas, and other states, to perform voter registration list maintenance to ensure that only eligible voters can vote. Exh. 1 at ¶¶2–5. Texas "recognize[s] that the SAVE system does not, by itself, indicate whether a person is eligible for voter registration." Exh. 1 at ¶11. Rather SAVE is just one piece of information that can be used "along with other information about the registrant to determine the person's eligibility to vote." Exh. 1 at ¶11. In Texas, "no voter is immediately cancelled from the voter rolls based on information obtained from the SAVE system." Exh. 1 at ¶12. Instead, voter registrars "conduct their own investigations into the eligibility of voters as part of their statutory responsibilities to remove ineligible voters from the rolls." Exh. 1 at ¶12.

### B. Plaintiffs' alleged harms are speculative

For the same reasons the Plaintiffs lack an injury sufficient to establish standing, their alleged injuries are too speculative to meet the irreparable harm standard for a preliminary injunction. Plaintiffs' alleged injuries include (1) fear, emotional distress, and unease at the "potential mishandling and misuse," "increased risk," and "increased vulnerability" of their personal information, ECF 1 ¶ 175-76. Plaintiffs have specifically alleged that they "reasonably fear the system will cause them to be erroneously disenfranchised, face additional obstacles to voting, or be subjected to unwarranted criminal investigation." ECF 16-1 at 35. Plaintiffs' subjective fear is not enough. First, that fear is not reasonable—even if that were the standard—because "no voter is immediately cancelled from the voter rolls based on information obtained from the SAVE system." Exh. 1 at ¶12. But *potential* harm, or a *risk* of harm, or increased *vulnerability* to harm is not sufficient. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, (2008) (mere possibility of

irreparable harm is not sufficient to support a preliminary injunction). Moreover, Plaintiffs' lawsuit is seemingly based on the idea that they fear the governments' ability to use information. But to be very clear, this is information the government already possesses. This is not a legitimate fear but merely their pure speculation on how the government will use that information in a different digital location. Because Plaintiffs' alleged harm is no harm at all but just pure speculation, this factor weighs against granting a preliminary injunction.

### III. The balance of the equities and the public interest weigh against granting injunctive relief.

"[W]hen the Government is the opposing party" the final two factors of the analysis merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[A] court must balance the harms to the regulated and negatively affected parties not only against the harms to the Government as an institution, but also against the harms to the third parties who otherwise would benefit from the challenged government action." *Noem v. Vasquez Perdomo*, No. 25A169, 2025 WL 2585637, at *4 (U.S. Sept. 8, 2025) (Kavanaugh, J., concurring). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982).

There is a well stablished axiom in this country: "Every vote counts." The United States Supreme Court "has consistently held in a long series of cases, that in situations involving elections, the States are required to insure that each person's vote counts as much, insofar as it as practicable, as any other person's." *Hadley v. Junior Coll. Dist. of Metro. Kansas City, Mo.*, 397 U.S. 50, 54 (1970). "The conception of political equality from the Declaration of Independence, to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments can mean only one thing—one person, one vote." *Gray v. Sanders*, 372 U.S. 368, 381 (1963). But it is

only *qualified voters* that have "a constitutionally protected right to cast the ballots and have them counted." *Gray v. Sanders*, 372 U.S. 368, 380 (1963). This fundamental concept that every qualified vote should be counted includes the right to be "protected from the diluting effect of illegal ballots." *See id.* Any risk to Plaintiffs must be balanced against the risk to every vote cast in the United States—that is what is at issue here.

## IV.    Objections to Plaintiffs' Preliminary Injunction Evidence

Texas objects to Plaintiffs' declarations submitted in support of their Preliminary injunction on the grounds that the testimony contained therein is not based on personal knowledge, lacks relevance, constitutes incurable hearsay, and violates the best evidence rule.[1]

*First*, declarations must be made on personal knowledge. Plaintiffs fail to describe how their declarants' understanding is based on personal knowledge. Plaintiffs do not explain how the declarants have personal knowledge of the actions of Defendants or any of the states, including Texas. None of the declarants describe working for Defendants, Texas, or any other state. Nor have the declarants described any other basis to establish personal knowledge of the facts contained in the declarations. Therefore, their declarations are fatally defective and should not be considered. *Second*, not only are the declarations fatal as not based on personal knowledge but also to the extent the declarations merely recite the declarants' "understanding." The declarants bare understanding—in other words, their subjective belief—is not relevant to support Plaintiffs' claims. What matters here are the objective facts of Defendants' actions, something Plaintiffs have failed to present to the Court. Third, to the extent the declarations are based on information

---

[1] In light of the posture of this case, Texas does not object to the consideration of testimony in the form of declarations. However, the testimony contained in those declarations must pass evidentiary standards for admissibility. The testimony contained in Plaintiffs' declarations, even if given in the form of testimony in live court, would not pass these standards.

obtained from some other source—as the must be based on the foundation provided in the declarations— the declarations contain incurable hearsay or violate the best evidence rule.

**CONCLUSION**

For these reasons the State of Texas respectfully requests the Court deny Plaintiffs' Motion for Preliminary Injunction and dismiss Plaintiffs' claims in their entirety.

Dated: October 27, 2024.                    Respectfully submitted.

**KEN PAXTON**                              */s/ William D. Wassdorf*
Attorney General of Texas                    _____
                                            **WILLIAM D. WASSDORF**
                                            Associate Deputy AG for Civil Litigation
**BRENT WEBSTER**                           Texas Bar No. 24103022
First Assistant Attorney General            **ALI M. THORBURN**
                                            Special Counsel, Special Litigation Division
                                            Texas Bar No. 24125064
**RALPH MOLINA**
Deputy First Assistant Attorney General

                                            Office of the Attorney General
**AUSTIN KINGHORN**                         P.O. Box 12548, Capitol Station
Deputy Attorney General for Civil Litigation  Austin, Texas 78711-2548
                                            (737) 226-4398
                                            Will.Wassdorf@oag.texas.gov
                                            Ali.Thorburn@oag.texas.gov
                                            **COUNSEL FOR INTERVENOR DEFENDANT**
                                            **THE STATE OF TEXAS**

## CERTIFICATE OF SERVICE

On October 27, 2025, the foregoing instrument was served on all parties and counsel of record via the Court's CM/ECF system.

*/s/ William D. Wassdorf*
**WILLIAM D. WASSDORF**
Associate Deputy AG for Civil Litigation