UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| LEAGUE OF WOMEN VOTERS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Case No. 25-cv-3501-SLS |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR A STAY UNDER 5 U.S.C. § 705**

Pursuant to the Court's October 28, 2025, Minute Entry, Plaintiffs League of Women Voters, League of Women Voters of Virginia, League of Women Voters of Louisiana, League of Women Voters of Louisiana Education Fund, and J. Does 1, 4, and 5 respectfully submit this supplemental memorandum in support of their motion for a stay under 5 U.S.C. § 705. *See* ECF 16; ECF 16-1 ("§ 705 Mem."); ECF 41 ("§ 705 Reply").[1]

1. As counsel for Plaintiffs described at the October 28, 2025, motion hearing, this suit is occurring amid a rapidly evolving factual landscape concerning Defendants' illegal overhaul of DHS's Systematic Alien Verification for Entitlements ("SAVE") system and SAVE user agencies' reliance on that system for voter list maintenance and investigatory purposes. Plaintiffs

---

[1] Contemporaneous with this filing, Plaintiffs J. Does 1, 4, and 5 are separately filing a notice withdrawing their motion for certification of a preliminary relief subclass. *See* ECF 17 (motion); ECF 46 (withdrawal). Because of that withdrawal, Plaintiffs' motion for a stay under 5 U.S.C. § 705 and preliminary injunction should now be treated solely as a § 705 motion. *See* ECF No. 16 at 2 n.2 (framing Plaintiffs' request for a preliminary injunction with classwide relief as an alternative to their request for a § 705 stay). Section 705 authorizes all of Plaintiffs' requested relief. *See, e.g.*, *Thein v. Trump*, No. 25-cv-2369-SLS, 2025 WL 2418402, at *19 (D.D.C. Aug. 21, 2025) (noting that § 705 authorizes courts to "issue all necessary and appropriate process to preserve status or rights pending conclusion of the review proceedings," and this "includes 'the power to compel agency inaction when necessary to preserve status or rights'" (cleaned up)).

1

submit this supplemental memorandum to notify the Court of recent factual developments relevant to their pending § 705 motion, and they respectfully request that the Court take judicial notice of materials cited below. *See Cannon v. Dist. of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of contents of document on government agency website); *Pharm. Rsch. & Mfrs. of Am. v. HHS*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (same; citing cases); *Page v. Comey*, 137 F.4th 806, 814 (D.C. Cir. 2025) (courts may take judicial notice of "information [that] 'is not subject to reasonable dispute'" (quoting Fed. R. Evid. 201(b)).

2.   Plaintiffs submit that the factual developments described below support critical elements of the arguments Plaintiffs are advancing in seeking preliminary relief in this case:

   a. The rollout of the overhauled SAVE system and its effects on voters is ongoing, and significant developments have happened even in the last week. For example, as described below, the SAVE system has identified thousands of registered Texas voters to the State as potential non-citizens, and Texas counties are sending form notices to those voters requiring that they provide proof of their citizenship to counties, the State, and U.S. Citizenship and Immigration Services ("USCIS"). These notices are, at the time of this filing, in the process of being distributed, in some cases with minimal apparent verification by counties of whether the recipients are actually non-citizens.

   b. Despite USCIS's representations that they use DHS records to reduce the error rate in the SSA citizenship records they query, the overhauled SAVE system is alerting states of alleged "non-citizen voters" who are in fact citizens and eligible voters. Though the record cannot yet capture exactly what that error rate is, a declaration of a Texas county official attached to this filing and described below states that roughly a quarter of the names flagged to one populous county in Texas via the overhauled SAVE system were

individuals who were already known to have proven their citizenship through an alternate administrative process. While that county continues to try to validate the rest of the list from USCIS (and thus may continue to identify additional errors), they were able to immediately identify one significant source of error in results generated by SAVE.

c. Although diligent verification work by user agencies can theoretically mitigate some of the harms of DHS's systematic misidentification of voters as non-citizens, the supplemental facts indicate that election officials are not uniformly diligent in correcting DHS's work. This is consistent with the documented history of SAVE user agencies failing to take the additional verification steps contemplated in SAVE Memoranda of Agreement ("MOAs"). *See* § 705 Mem. at 38 n. 79 (historically, the majority of SAVE user agencies have not completed additional verification).

d. The supplemental facts continue to show the federal government actively encouraging the use of the overhauled SAVE system for voter removal in the weeks immediately preceding elections. The record does not support DHS's role as simply a tacit software provider to independent state actors. *See* § 705 Reply at 6-7 (arguing that DHS's changes are a factual and legal cause of election-related injuries, despite the role of state election officials).

**Texas's Use of Defendants' Overhauled SAVE System**

3.  The day after the Texas Secretary of State's October 20, 2025, press release announcing her office's identification of 2,724 potential non-citizens registered to vote in Texas using the overhauled SAVE system and referral to counties for review and investigation, *see* § 705 Reply at 5 & n. 4, the Secretary's office sent an email (later reported in the press) to all Texas

county Voter Registrars and Elections Administrators "as part of a continuing process for identifying and removing non-United States citizens from the State's voter rolls." Email from Texas Secretary of State to Voter Registrars/Election Administrators (Oct. 21, 2025), https://perma.cc/X9MN-ZTVJ ("Texas SOS Voter Removal Email to Counties"); *see Texas officials removing voter registration of people believed to be 'non-citizens'*, CBS 19 Texas (Oct. 22, 2025), https://perma.cc/T559-ZHEY (screenshotting Texas SOS Voter Removal Email to Counties).

4. The Texas SOS Voter Removal Email to Counties states that Texas's voter removal process "is being conducted in accordance with the Secretary of State's Memorandum of Understanding with United States Citizenship and Immigration Services (USCIS) to compare state voter registration lists with USCIS' Systematic Alien Verification for Entitlements (SAVE) records." Texas SOS Voter Removal Email to Counties.

5. To facilitate that removal, the Texas SOS Voter Removal Email states that the Texas Secretary of State's office has "created a new Notice to Registered Voter for Proof of Citizenship to be used to request proof of citizenship documentation from a registered voter pursuant to the result of the comparison of the voter's registration information with the USCIS SAVE records" (the "Texas SAVE Non-Citizenship Notice"). *Id.* The Texas Voter Removal Email does not instruct County Voter Registrars and Elections Administrators to conduct any independent investigation or verification of the alleged non-citizens identified by the Texas Secretary of State other than by sending that Texas SAVE Non-Citizenship Notice. *See id.*

6. The email adds that, "[i]n accordance with our [SAVE] Memorandum of Understanding with USCIS, if a voter provides proof of citizenship documentation, the county must send a copy of that documentation to the Secretary of State's office to be provided to USCIS."

*Id.*

7.     A template of the Texas SAVE Non-Citizenship Notice, which is now publicly available on the Texas Secretary of State's website, states that "[a] comparison of the information in your voter registration records with the United States Citizenship and Immigration Services SAVE records show that you were not a United States citizen at the time of the comparative process." Texas SAVE Non-Citizenship Notice, https://perma.cc/Q5XA-CW3R.

8.     The Texas SAVE Non-Citizenship Notice does not mention any limitations with the SSA citizenship data now incorporated in the overhauled SAVE system, including the unreliability of SSA's citizenship data for naturalized citizens. *See id.* Further, the Texas SAVE Non-Citizenship Notice instructs that the target of the notice must provide a copy of their (1) U.S. birth certificate or consular report of birth abroad of a citizen, (2) United States passport, (3) Certificate of Naturalization or Certificate of Citizenship, or (4) parent's Certificate of Naturalization along with the target's birth certificate if the target became a U.S. citizen as a result of their parent's naturalization. *Id.* Targets of the notice have only 30 days to respond, and if the county registrar does not receive proof of citizenship within 30 days, the target's voter registration "will be cancelled." *Id.*

9.     As Christopher Davis, the Voter Registration Director for Travis County, Texas, explains, the situation in Texas since the Texas SOS Voter Removal Email was sent to counties "is evolving day-to-day. [Counties] are working to adapt to the situation as it evolves in real time given the limited information provided to us by the Secretary of State." Declaration of Christopher Davis ("Davis Decl.") ¶ 15, attached as Exhibit A. Mr. Davis stated that Travis County and several other counties were "not made aware of their potential non-citizen match lists until they received the Secretary of State's October 21 email advisory." *Id.* ¶ 7. Mr. Davis "understand[s] that the list

[Travis County] received was generated using the SAVE database but we have no visibility into how the matching process was conducted, how the list was created, or the reliability of the information within the database. For example, it is not clear whether the information provided by the Secretary of State's office accurately reflects the citizenship status of naturalized citizens who naturalized before registering to vote." *Id.* ¶ 8.

10. Counties started to send out Texas SAVE Non-Citizenship Notices within days of the Texas Secretary of State sending out the Texas SOS Voter Removal Email to Counties. The approach between counties has been inconsistent, with some sending out the notice with little apparent effort to verify the SAVE results relayed by the Secretary of State.

11. For example, Denton County—in which the Texas Secretary of State identified 84 potential non-citizens using the overhauled SAVE system, https://www.sos.state.tx.us/about/newsreleases/2025/potential-non-citizens.pdf—sent out Texas SAVE Non-Citizenship Notices on Wednesday, October 22, 2025. That was just one day after Denton received the Texas SOS Voter Removal Email to Counties, leaving essentially no time for Denton to independently verify or investigate the list of 84 alleged non-citizens registered to vote in Denton before sending Texas SAVE Non-Citizenship Notices to those alleged non-citizen voters. *See* Camila Gonzalez, *Denton County has 84 possible noncitizens registered to vote, state says. Most have never voted*, Denton Record-Chronicle (Oct. 23, 2025), https://dentonrc.com/news/denton_county/denton-county-has-84-possible-noncitizens-registered-to-vote-state-says-most-have-never-voted/article_f7555549-b411-4c03-b125-13ee8c079005.htm.

12. As of October 22, 2025—the day after the Texas SOS Voter Removal Email to Counties was sent—Williamson County also had already sent out 28 Texas SAVE Non-Citizenship Notices. *See* Adam Bennett, *County officials checking voter rolls after Texas officials*

*find 2,724 'potential noncitizens' on statewide list*, KVUE ABC (Oct. 22, 2025), https://perma.cc/RFB6-XBA8.

13. Since then, Brazos County has sent out notices as well. *See* Bobby Poitevint, *Over 100 'potential' illegal voters identified in Central Texas, SOS report says*, KXXV (Oct. 29, 2025), https://perma.cc/YE6N-HPJ5.

14. In conducting its own investigation of the list provided by the Texas Secretary of State, Travis County identified that "[a]bout twenty-five percent of the non-citizen matches on Travis County's list have a voter registration source code of 64 – Department of Public Safety" which means that those voters "registered to vote at the Department of Public Safety (DPS) and, through the process at DPS, provided proof of citizenship at the time of registration." *Id.* ¶ 9. When Travis County "contacted the Secretary of State's Office about this apparent issue with the list we received, they could not clarify why people who registered to vote at DPS would be flagged via the SAVE database matching process." *Id.* Mr. Davis stated that "[i]t is my understanding that other counties have experienced this same issue with the lists sent to them by the Secretary of State." *Id.*

15. The Texas Secretary of State has acknowledged that voter registration source code 64 means "people who registered to vote while getting their drivers license at a DPS office who showed proof of citizenship." Phil Prazan, Russell Falcon, *County officials: Texas non-citizen voter list is 'too big,' wrong*, KXAN (Jan. 29, 2019), https://perma.cc/UT8F-F776; *see also* Julieta Chiquillo, James Barragán & Robert T. Garrett, *Some names in list of 98,000 potential non-citizen voters included 'in error,' county officials say, citing state*, Dallas Morning News (Jan. 29, 2019), https://perma.cc/BWA4-Y2Z7.

16. Mr. Davis also states that the process of responding to the Texas SAVE Non-

Citizenship Notice "can be a burden on voters given the required short turnaround for providing proof of citizenship." *Id.* ¶ 12.

17. He further states: "I have interacted with voters in the past who felt intimidated by receiving a governmental document indicating that they needed to provide proof of citizenship when they had previously done so with a state agency, like DPS. I am worried that sending out this notice will deter eligible voters from providing the required proof of citizenship and/or from voting." *Id.* ¶ 13.

18. As a result, Mr. Davis is "concerned that the list Travis County received from the Secretary of State is flawed and worr[ies] about the potential for voters to be improperly cancelled from the voter rolls and possibly disenfranchised as a result." *Id.* ¶ 14.

19. There is also a substantial risk that at least some voters who receive the Texas SAVE Non-Citizenship Notice will not be able to procure the documents necessary to prove their citizenship to the county (and, in turn, the Secretary of State and USCIS) within the 30 days required to avoid being removed from the voter rolls. For example:

  a. The wait time to obtain a copy of a birth certificate in Texas, in most cases, is "20-25 business days." Texas Department of State Health Services, *Order Vital Records*, https://perma.cc/964W-K7VE.

  b. The "routine" processing time for a new or replacement passport is between 4 and 6 weeks. U.S. Department of State, *U.S. Passports*, https://perma.cc/T3PH-PHFJ.

  c. The average wait time to obtain a replacement naturalization or citizenship certificate or document is 5.5 months. USCIS, *Check Case Processing Times*, https://egov.uscis.gov/processing-times/.

20. In other words, if the target of a Texas SAVE Non-Citizenship Notice does not

already have any of the documents required to establish their citizenship, they are unlikely to obtain such documentation in time to avoid being removed from the voter rolls.

**Other States' Use of Defendants' Overhauled SAVE System**

21. On October 27, 2025, the Tennessee Secretary of State announced that his office referred 42 alleged non-citizens who appear to have registered to vote and voted in Tennessee to the Federal Bureau of Investigation. Press Release, *Tennessee Secretary of State Tre Hargett Protecting the Vote in Tennessee: Uses Enhanced SAVE Program to Identify Ineligible Voters*, Tennessee Sec'y of State (Oct. 27, 2025), https://perma.cc/Z7K5-VQZU (as published by WBBJ 7 Eyewitness News). The Press Release states that "[t]hese names were identified using the federal Systematic Alien Verification for Entitlements (SAVE) program, which has recently been enhanced to provide states with more accurate and timely data for verifying citizenship status." *Id.*

**The President Directly Encourages States to Use Defendants' Overhauled SAVE System**

22. Although they were not made publicly available until late October, a series of identical letters sent by President Trump and dated October 8, 2025, went to election administrators in states using the overhauled SAVE system, including at least the Louisiana Secretary of State, Texas Secretary of State, the Alabama Secretary of State, the Arkansas Secretary of State, the Kansas Secretary of State, the Ohio Secretary of State, and the Tennessee Secretary of State.[2]

---

[2] *See, e.g.*, Louisiana Sec'y of State, Facebook (Oct. 27, 2025, 12:49 PM), https://www.facebook.com/Louisianasos/posts/in-a-recent-letter-president-donald-trump-praised-secretary-landrys-commitment-t/1321314536690125/; Texas Sec'y of State Jane Nelson (@SecJaneNelson), X (Oct. 22, 2025 12:00 PM), https://perma.cc/32A6-E3ZJ; Alabama Sec'y of State, Facebook (Oct. 20, 2025, 1:52 PM), https://www.facebook.com/alasecretaryofstate/posts/what-an-honor-to-receive-this-letter-today-you-were-one-of-the-first-leaders-to-/1239004048259607/; Arkansas Sec'y of State Cole Jester, Facebook (Oct. 27, 2025, 11:43 AM), https://www.facebook.com/cole.jester.9/posts/pfbid02rc2nAEe2bg3Bcm5a5phE5iH7wcsb8xyUc

23. In each letter, the President thanked the state for using the overhauled SAVE system and claimed that "many States are currently failing to enforce basic and necessary election laws. To reverse this dereliction, in March, I signed Executive Order 14248, *Preserving and Protecting the Integrity of American Elections*, to make the SAVE system free of charge for every state government to use to ensure only American citizens are registered to cast a ballot." *See*, *e.g.*, Ohio Secretary of State, https://perma.cc/E6P2-ZDML. The President then added: "You were one of the first leaders to step up and protect the integrity of our elections by using the SAVE system—and I commend you for your decisive action." *Id.*

24. In response to receiving the letter, many state election administrators emphasized that it was important to them to be among the first states to remove alleged non-citizens from voter rolls. Louisiana's Secretary of State, for example, underscored that Louisiana was "the first state to use the new and improved SAVE database" and that, as a result, Louisiana was already "able to remove 390 noncitizens from its voter rolls." *Supra* n.2. The Texas Secretary of State likewise stressed she was "one of the first Secretaries of State to step up and protect the integrity of our elections by using the federal SAVE database." *Id.*

25. Together, the President's letters and states' responses support two critical factual points. First, the President's letters confirm that Defendants are operating the overhauled SAVE system for the express purpose of enabling states to remove voter rolls of alleged non-citizens quickly and through "decisive action." Second, the states' responses confirm they are heeding the administration's overtures and moving rapidly to use SAVE to identify and remove alleged non-

---

Dz4EvPZt6o8653TJG66hqfMCTygztwWl; Kansas Sec'y of State Scott Schwab (@ScottSchwabKS), X (Oct. 21, 2025, 5:31 P.M.) https://perma.cc/L4DG-C7JB; Ohio Sec'y of State, https://perma.cc/E6P2-ZDML; Tennessee Sec'y of State Tre Hargett (@tnsecofstate), X (Oct. 27, 2025, 4:38 PM), https://perma.cc/6PXR-CCDL.

citizens from their voter rolls and to initiate criminal investigations.

26. In addition to the facts included in Plaintiffs' earlier briefing on their § 705 motion demonstrating standing and irreparable harm, the supplemental facts outlined above show that voter removals and investigations driven by faulty data from Defendants' overhauled SAVE system are not just threatened but actively underway in states across the country.

Dated: October 29, 2025

Respectfully Submitted,

*/s/ Nikhel S. Sus*
Nikhel S. Sus (D.C. Bar No. 1017937)
John B. Hill (N.Y. Bar No. 5505508)*
Lauren C. Bingham (Fl. Bar No. 105745)*
Yoseph T. Desta (D.C. Bar No. 90002042)
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, D.C. 20044
(202) 408-5565
nsus@citizensforethics.org
jhill@citizensforethics.org
lbingham@citizensforethics.org
ydesta@citizensforethics.org

Jennifer Fountain Connolly (D.C. Bar No. 1019148)
Aman T. George (D.C. Bar No. 1028446)
Johanna M. Hickman (D.C. Bar No. 981770)
Mark B. Samburg (D.C. Bar No. 1018533)
Robin Thurston (D.C. Bar No. 1531399)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
ageorge@democracyforward.org
jconnolly@democracyforward.org
hhickman@democracyforward.org
msamburg@democracyforward.org
rthurston@democracyforward.org

Jon Sherman (D.C. Bar No. 998271)*
Michelle Kanter Cohen (D.C. Bar No. 989164)
Emily Davis (D.C. Bar No. 90020129)
FAIR ELECTIONS CENTER
1825 K St. NW, Suite 701
Washington, DC 20006
(202) 331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
edavis@fairelectionscenter.org

*admitted *pro hac vice*

*Counsel for Plaintiffs*