```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
LEAGUE OF WOMEN VOTERS, et al.      )  Civil Action
                Plaintiffs,         )  No. 25-3501
vs.                                 )
U.S. DEPARTMENT OF                  )  October 28, 2025
HOMELAND SECURITY,                  )  2:37 p.m.
                Defendants.         )  Washington, D.C.
     *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF MOTION HEARING**
**BEFORE THE HONORABLE SPARKLE L. SOOKNANAN**
**UNITED STATES DISTRICT COURT JUDGE**

**APPEARANCES:**
FOR THE PLAINTIFFS:
          NIKHEL SUS
          Citizens For Responsibility and Ethics in Washington
          1331 F St NW, Suite 900
          Washington, DC 20004
          (202) 408-5565
          nsus@citizensforethics.org

          JENNIFER FOUNTAIN CONNOLLY
          AMAN TEWARI GEORGE
          Democracy Forward Foundation
          P.O. Box 34553
          Washington, DC 20043
          (202) 701-1783
          ageorge@democracyforward.org
          jconnolly@democracyforward.org

FOR THE DEFENDANTS:
          STEPHEN M. PEZZI
          ELIZABETH SHAPIRO
          U.S. Department of Justice
          Civil Division, Federal Programs Branch
          1100 L Street, NW
          Washington, DC 20530
          (202) 305-8576
          stephen.pezzi@usdoj.gov

*This transcript is __work product__.  The integrity of this transcript
shall be considered null and void if the transcript is edited,
printed, disassembled, screenshot, and/or distributed in any
manner by any party without authorization of the signatory.*

Court Reporter: Elizabeth Davila, RPR, FCRR
               Official Court Reporter
          Proceedings reported by machine shorthand.
        Transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

1

2          THE COURTROOM DEPUTY:  Good afternoon, Your Honor.

3    We're on the record for Civil Case 25-3501, League of Women

4    Voters, et al. versus the U.S. Department of Homeland

5    Security, et al.

6          Starting with the plaintiff, please approach the

7    lectern and identify yourselves for the record.

8          MR. SUS:  Good afternoon, Your Honor.

9    Nikhel Sus for the plaintiffs.  And with me at counsel's

10   table I have Von George and Jennifer Connolly.

11         THE COURT:  Okay.  Good afternoon.

12         Are you arguing for the plaintiffs, Mr. Sus?

13         MR. SUS:  Yes.  I will be arguing primarily the

14   bulk of the motion for preliminary injunction and motion for

15   a stay.  My co-counsel Mr. George will be arguing a few

16   select issues for the motion for stay and motion for

17   preliminary injunction.  Ms. Connolly will argue the motion

18   for class certification.

19         THE COURT:  Okay.  Well, I am thinking about the

20   issues as all intertwined so it's not going to be the most

21   efficient thing, but you guys are going to have to pass over

22   when you need.  It will be a bit of musical chairs, but I am

23   going to ask the questions in the order I want to ask them.

24         MR. SUS:  Yes, Your Honor.

25         MR. PEZZI:  Good afternoon, Your Honor.

1    Stephen Pezzi from the Department of Justice on behalf of

2    the United States.  With me at counsel's table is Deputy

3    Director Elizabeth Shapiro.

4            THE COURT:  Okay.  Good afternoon.  Good to see

5    you both.

6            Hang on one minute.

7            (Whereupon, the proceeding paused.)

8            THE COURT:  Okay.  Good afternoon, everyone.

9            For those of you in the courtroom not completely

10   familiar with this case, it challenges the government's

11   alleged overhaul of what is known as the SAVE database or

12   the Systematic Alien Verification For Entitlement database,

13   which is a tool used by DHS to verify citizenship and

14   immigration status when requested by certain state and local

15   authorities.

16           There are two types of plaintiffs in this case:

17   Class action plaintiffs and organizational plaintiffs.  The

18   class action plaintiffs brought this action on behalf of a

19   putative class of all United States citizens and lawful

20   permanent residents whose records contain their personal

21   identification information, or PII, are contained in the

22   interagency data systems whose PII originated from a federal

23   agency other than DHS or its subcomponents, and who did not

24   consent to that PII being shared with DHS.

25           The plaintiffs have only moved for certification

1      of a subclass of naturalized citizens in particular states

2      who they say have a need for relief that is more urgent than

3      others.  And we also have organizational plaintiffs

4      committed to voter participation and privacy.

5              Before we begin, I received a motion to intervene

6      by the state of Texas that was filed yesterday.  I have

7      ordered briefing on that motion.  I do not intend to rule on

8      it until I receive briefing, and so I am not going to hear

9      from Texas today who is not a party to this case.

10             This case has been pending four weeks.  And so

11     receiving an emergency motion the day before the PI hearing

12     and expecting to be heard today is not reasonable in my

13     view.  So I will consider any briefing on that motion and

14     then rule on it.  And until then -- Texas is not a party, as

15     I said.

16             So I am going to start -- I have some factual

17     questions for the government just to make sure we are all

18     operating from the same facts.

19             Mr. Pezzi, if I can ask you to come up first, and

20     then I will hear from the plaintiffs.

21             So can you just walk me through the changes that

22     have been made to the SAVE database that are at issue here

23     as you understand them.

24             MR. PEZZI:  Certainly, Your Honor.  Stephen Pezzi

25     from the Department of Justice on behalf of defendants.

1          The changes that are at issue in the motion before

2     Your Honor today I think are two.  One is that queries of

3     the SAVE database used to be one person at a time.  There is

4     now a capability to do bulk requests; essentially, compile

5     names, date of birth, et cetera, on an Excel spreadsheet

6     submitted to the agency through the online portal and can

7     get responses to large numbers of requests at the same time,

8     instead of that being a one-by-one process.  I think the

9     plaintiffs refer to that as the "bulk certification

10    process."  So that is a change the plaintiffs have raised.

11         The other change -- and the one that is the focus

12    of most of the briefing in this case -- is that it used to

13    be the case that queries of the SAVE system required name,

14    date of birth, and then some other DHS-specific enumerator.

15    Essentially, a number that DHS had assigned to somebody,

16    usually what's known as an "A number."

17         Most voters -- most people in the United States do

18    not have an A number, so that was a significant limitation

19    on the system.  That has now been changed such that the

20    Social Security number, among other things can now be used

21    as the enumerator so that when a SAVE request is made now

22    the user can provide a name, date of birth, and Social

23    Security number, and query that number against records not

24    maintained at just DHS and USCIS, but also at SSA.

25              THE COURT:  Okay.  So this is the first time that

1     SSA information is in the database?

2             MR. PEZZI:  I am hesitant to make a blanket

3     confirmation that broadly.  It is certainly the first time I

4     am aware of integration between SSA data and the USCIS

5     database.  This search functionality on SSNs in particular

6     is certainly new.

7             THE COURT:  Okay.  Is this the first time we have

8     U.S. citizens appearing in the database?

9             MR. PEZZI:  No.  I do not think this is the first

10    time that U.S. citizens appear in the database.  I think

11    previously there is a variety of circumstances in which U.S.

12    citizens would have appeared in the database.

13            U.S. citizens do often have interactions with DHS.

14    So, for example, if you sign up for TSA Precheck there may

15    be a number associated with your name and your date of birth

16    in DHS systems, and that is sort of information -- just by

17    way of an example -- I think is the kind of information that

18    might have always been searchable.

19            The change is that there are some U.S. citizens

20    who have never had encounters with DHS, and so the only

21    record about their citizenship status may be retained in

22    other agencies like the Department of State and, in this

23    case, Social Security Administration.

24            THE COURT:  So that means even U.S.-born citizens

25    who may have interacted with DHS in the past were in the

1    database previously?

2            MR. PEZZI:  I'm sorry.

3            THE COURT:  I had asked you whether U.S. citizens

4    were in the database.  I just wanted to clarify.  Does that

5    include both naturalized and U.S.-born citizens?

6            If we had a natural-born citizen who applied for

7    TSA Precheck, would they then end up in the same database?

8            MR. PEZZI:  It is certainly the case that there

9    was never any sort of comprehensive set of U.S.-born

10   citizens in the database.  I don't think that necessarily

11   means that there were no U.S.-born citizens in the database.

12   I used the TSA Precheck as an example of the much less

13   common circumstance in which a U.S.-born citizen would end

14   up in DHS records and, thus, could appear as a result of a

15   SAVE request.

16           Obviously, that integration with the Social

17   Security Administration -- and I think this is undisputed --

18   significantly increased the number of U.S. citizens for

19   which a SAVE request could be made and for which a response

20   could be provided to a SAVE user agency.

21           THE COURT:  So in the past we may have had

22   citizens, including U.S.-born citizens, if they interacted

23   with DHS.  But because we are not linking the systems with

24   SSA we have got a large number of U.S. citizens, everyone in

25   the SSA database, automatically being moved over to SAVE.

1              MR. PEZZI:  That is more or less right, Your

2    Honor.  I would quibble with the last clause of your last

3    sentence.

4              I don't think everybody has been moved over from

5    one database to the other.  It's just that queries of the

6    SAVE system now can search on SSA records.  So at least, as

7    I understand it, they're still maintained in SSA systems.  I

8    am not sure anything turns on this --

9              THE COURT:  No, no, no.  I just want to -- so

10   there is a SAVE database where, if you searched before, you

11   were looking in DHS's system.

12             You didn't combine that with records from SSA and

13   now there is some different SAVE database.  When someone

14   searches, it's searching the DHS database and also searching

15   the SSA database?

16             MR. PEZZI:  I am a little hesitant to get out over

17   my skis on the technology of it all.  But certainly, for

18   purposes of the changes that are being challenged in this

19   case, there are searches made of a USCIS database.  That

20   database now has access to other information throughout the

21   government including from the Social Security

22   Administration.

23             THE COURT:  So is DHS syncing that every month

24   with SSA or, when it pulls, is that just happening

25   automatically?  Do you understand what I mean?

1          MR. PEZZI:  I do understand what you mean.  I am

2     sorry to say that I don't know the answer to that question,

3     whether it's some sort of live updating or whether it's a

4     periodic update, I'm sorry, I don't know.

5          THE COURT:  Okay.  Tell me how the searches take

6     place.  So the user puts in a name, date of birth and, now,

7     Social Security number; what are they seeing on the output?

8          MR. PEZZI:  Yes.  So there is -- it's like an

9     online web portal that doesn't look dissimilar to a lot of

10    online web portals we have all interacted with before.  In

11    fact, there is a tutorial on the USCIS website.  It's a

12    little bit outdated but it provides screenshots of how the

13    process works if Your Honor is interested in more granular

14    detail.

15         But the key requirements are that the user agency

16    provide always a name, date of birth, and then some

17    number -- essentially, some sort of enumerator or

18    identifier -- because name and date of birth standing

19    alone -- it's a little more challenging to narrow that down

20    to one single human being.

21         It doesn't have to be a Social Security number, to

22    be clear.  Some of the old numbers that always used to work,

23    like an A-number, or a naturalization certificate number,

24    passport number -- there are a lot of numbers that can work.

25    But Social Security number now -- for the first time, as of

1    May 2025 -- is one of the enumerators that can go with a

2    name and date of birth to submit a request through the

3    system.

4            THE COURT:  Okay.  So the user puts a name, date

5    of birth, and some identifier.  What do they see?

6            MR. PEZZI:  So there are several different

7    possibilities as to what they see next; and that obviously

8    depends, in large part, on what the records about that

9    individual show.

10           I mean, first of all, I should note that this

11   often gets tripped up at this very first step in the process

12   because someone might think they have the right name, plus

13   date of birth, plus Social Security number or passport

14   number, or whatever it is.  And sometimes those just don't

15   come back as a match and it's, essentially, something like

16   an error notification; like, not found; try again; the same

17   sort of thing that we're all familiar with when interacting

18   with a computer system.

19           But if the name, date of birth, and Social

20   Security number say you do match a person in -- whether it's

21   in SSA records or DHS records, or somewhere else, there is a

22   variety of possible responses that might come back.  It

23   might say:  U.S. citizen, for example.  So if it's someone

24   who has been a citizen since birth and they are in the SSA

25   database with the name, date of birth -- haven't changed

1    their name, et cetera, Social Security number -- all lines

2    up, it will say U.S. citizen.

3         It might say "deceased."  Social Security

4    Administration has pretty extensive records on deaths in

5    this country as well due to their role in processing death

6    benefits, Social Security benefits.  Or it might say a

7    variety of other categories, immigration statuses.

8         So, for example, it could say this is a noncitizen

9    national born in American Samoa.  It could say this is

10   someone on a nonimmigrant visa.  It could say this is an

11   asylee.  There is a whole range of possible immigration

12   statuses that can also be reported.

13        Then I think, as relevant here, it might also say

14   something to the effect of "inconclusive, submit additional

15   verification" or "additional verification steps required,"

16   and then there are processes that are reflected in the

17   agreements between USCIS and SAVE user agencies as to what

18   steps are then required.

19        I should also say that some of the steps that I

20   just described to Your Honor are, essentially, automatic,

21   the software does it by itself.  This is addressed a little

22   bit in the Broderick declaration that is attached to the

23   government's brief in this case.

24        When it comes to SSA records in particular, I

25   think it is important to note that:  If the result is U.S.

1   citizen or deceased, that result gets reported out,

2   essentially, automatically by the computer.  If it is

3   anything other than U.S. citizen or deceased, it gets

4   escalated to a manual review by whoever at USCIS is the one

5   inputting these queries or checking the results of the

6   queries.  That manual review will result in queries of not

7   just SSA records, but also USCIS records which include

8   things like naturalization records, naturalization numbers,

9   and so on.

10          So the exact output of any given request is going

11   to vary a lot unsurprisingly depending on who it's being

12   asked about and what their records reflect.

13          THE COURT:  So what comes out is some

14   determination of their immigration status.  Is there any

15   other personal information that's being given over other

16   than their immigration status or some inconclusive message?

17          MR. PEZZI:  No, Your Honor.  To my knowledge, the

18   output of the system is essentially an answer to the

19   question of:  What is this person's citizenship or

20   immigration status?

21          So it's not, for example, going to say:  Here is

22   everything we have at the Social Security Administration

23   about this person.  It's just going to say:  This person is

24   a U.S. citizen.  It's answering that sort of yes-or-no

25   question.  Yes or no is not quite the right way to put it

1    because, as we've discussed, there are, maybe, 30 different

2    immigration statuses one can have.  But the basic function

3    of the system is to answer the question:  Is this person a

4    U.S. citizen, is this person not a U.S. citizen, or does

5    this person fall into some other gray area that requires

6    some additional information.

7            It's not spitting out -- it's not even spitting

8    out Social Security numbers, to be clear.  I mean, the state

9    is submitting the Social Security number to the system and

10   the system is answering the question of:  Is this person a

11   U.S. citizen?

12           THE COURT:  Okay.  That is helpful.

13           Who is eligible to access the database?

14           I know state and local governments.  Are there

15   other federal agencies?

16           MR. PEZZI:  So to be a little bit pedantic about

17   it, Your Honor, I don't think even state or local

18   governments are eligible to access the database.

19           THE COURT:  Well, I mean, eligible to go to DHS

20   and say:  I want an MoA.  Who can access it if all of the

21   steps are followed?

22           I assume it's not -- Google can go to DHS and say:

23   I want an MoA because I want this information.  Which

24   entities are even eligible to go seek to enter an MoA?

25           MR. PEZZI:  Certainly, Your Honor.  That question

1    is answered by, initially, 8 U.S.C. 1373.  It obligates DHS

2    to, quote, "respond to an inquiry by a federal, state, or

3    local government agency," so that eliminates Google right

4    there -- we're talking about government agencies --

5    "seeking to verify or ascertain the citizenship or

6    immigration status of any individual within the jurisdiction

7    of the agency," which is another important limitation to

8    USCIS, "for any purpose authorized by law," which is, again,

9    another limitation that USCIS takes seriously, "providing

10   the requested verification or status information."

11         So how this shakes out in the real word is, some

12   1200 -- maybe now it's a bit closer to 1300 state and

13   local -- to some extent federal -- though, I think the more

14   useful purposes are for state and local jurisdictions.  They

15   come to USCIS; they say, we have this sort of -- it can be

16   food stamps, it could be voting, it could be some sort of

17   state welfare benefit for which only citizens are entitled.

18   We need to figure out who in our jurisdiction is or is not a

19   citizen for purposes of this benefit.  Can you please give

20   us access to submit requests to the SAVE system.

21         USCIS has, basically, a template agreement that

22   they send to these jurisdictions depending on the purpose.

23   And so I think we linked to the most recent release -- it

24   may not literally be the most recent.  One of the more

25   recent voter verification related agreements between USCIS

1     and Indiana, which governs the terms of the access, confirms

2     that Indiana wants to enter into this agreement for a

3     purpose authorized by law; in this case, voter verification

4     is a purpose not just authorized but required by federal

5     law.  And once the state or local jurisdiction has signed

6     that agreement committing to follow the steps that are

7     outlined by USCIS, then they can -- essentially, they get,

8     like, a login and password that they can go to the website,

9     submit a request to the agency and then those are processed

10    by the agency as they come in.

11          THE COURT:  Okay.  Can you summarize what the MoAs

12    permit these agencies to do with the information?

13          Can a state government, for example, submit a

14    query, get information back from USCIS, and then go turn

15    that over to some other entity not subject to an MoA?

16          MR. PEZZI:  I don't believe so, Your Honor.  I

17    certainly can't imagine a circumstance in which that would

18    be consistent with the agreements that I have seen.

19          I believe -- in fact, more than just believe.  I

20    mean, the sample agreement that we attached -- or that we

21    linked to in our brief with Indiana contains extensive and

22    detailed provisions about the purpose of the data, about the

23    state's obligation to safeguard that data, about compliance

24    with other federal, state laws, about privacy.

25          So, I mean, the short answer to the question is

1    no, that is not what this system is for.  It is for getting

2    an answer to a yes-or-no question, citizenship or not, with

3    all of the caveats we've already discussed for purposes of

4    providing the particular benefit that is outlined in the

5    agreement.

6            And so, again, in this case we're mostly talking

7    about voter verification.  But there are other template

8    agreements that states and local jurisdictions have entered

9    into USCIS that contemplate similar requests for other

10   purposes.

11           THE COURT:  Okay.  And is it your understanding

12   that the database is being used in very much the same way it

13   has been used prior to this change?  Or given that it's now

14   linked to SSA data, is it being used by state and local

15   governments in different ways?

16           MR. PEZZI:  I am not aware of any different ways

17   that the database is being used now that it has not been

18   used in the past.  It has always -- for decades, I should

19   say.  I don't know if I should say "always."  But it has for

20   decades been used for voter verification purposes.

21           I think it is fair to say that it is more useful

22   now for voter verification purposes than it was before these

23   changes were made.  So there are states that have more

24   recently signed up for SAVE that had not previously signed

25   up for SAVE because it used to be much less useful for this

1    purpose than it is now due to the integration with SSA data.

2    The basic purpose and the basic function of the system has

3    not changed.

4                THE COURT:  Is it right that prior to these most

5    recent changes, USCIS has published SORNs and followed the

6    Privacy Act notice and comment procedures when making these

7    significant changes to the database?

8                MR. PEZZI:  It is certainly correct that there

9    have been previous SORNS published relating to the SAVE

10   system -- relating to changes to the SAVE system.

11               Now, that, obviously, does not necessarily answer

12   the question of whether that was legally required.  But we

13   do not dispute that there are prior examples of USCIS

14   publishing SORNs for changes to the SAVE system.

15               THE COURT:  Are you aware of USCIS making any

16   significant changes to the system where it did not publish a

17   SORN?

18               MR. PEZZI:  A few things I would say about that.

19   It's a little hard to assess from where I stand today what

20   is or is not a significant enough change to warrant a SORN.

21               I will say that, I mean --

22               THE COURT:  Are you aware of any times that they

23   have made changes where they didn't publish a SORN?

24               We don't need to get into whether it's legally

25   required or not because we'll get to that on the merits.

1          I am just wondering whether this is the first

2     time, to your knowledge -- and you might not know the answer

3     to this question -- but if this is the first time that USCIS

4     has made a change and not published a SORN?

5          MR. PEZZI:  I will answer that two ways, Your Honor.

6          I certainly do not have an example that I can

7     point to of another significant change that USCIS made in

8     which USCIS did not publish a SORN.  It doesn't mean it

9     didn't happen, and it certainly does not mean that smaller

10    changes haven't happened over the years without publication

11    of a SORN.

12         The other thing that I did want to make sure that

13    Your Honor is aware of and that plaintiffs are aware of;

14    they may already be aware, they may not be.

15         But a few days ago DHS did submit a notification

16    to Congress for publication of a draft SORN with respect to

17    some of the changes that are now at issue in this lawsuit.

18    Obviously, that's a bit of a laborious process that

19    plaintiffs are familiar with and that, in some respects, are

20    described in their filings.  There is a notification to OMB,

21    a notification to Congress.  But with respect to DHS, that

22    process is now underway.

23         Again, to be clear, it's important, from the

24    government's perspective, to say that we don't think that

25    answers the question of whether it was legally required in

1    the past or whether it's legally required now.  But sooner

2    rather than later, I think, some of those claims will be

3    mooted by the work that DHS has now done.

4            THE COURT:  Okay.  I will save my questions about

5    what's required or not when it's your turn.  But thank you

6    for answering my questions on some of the facts, that was

7    very helpful to ground argument today.

8            MR. PEZZI:  Thank you, Your Honor.

9            THE COURT:  You can have a seat.  I will hear from

10   the plaintiffs now.

11           None of you have been before me.

12           I ask a fair number of questions during oral

13   argument.  I use oral argument to help me work through what

14   I think are the more difficult issues in the case.  I am

15   going to ask you to please bear with me and answer my

16   questions.  You may not like them; you might think I should

17   be asking different questions, but that's what is troubling

18   me.

19           I don't have time limits so, at the end, after I

20   have worked through my questions you can have time to make

21   any additional arguments that you want to make.

22           Okay.  So we'll start with the plaintiffs.

23           I am just going to say at the outset that I think

24   this case raises important and hard questions, and I found

25   your briefing very difficult to understand.  It was not

1    organized in the way I am thinking about the issues.  It

2    sort of lumped together your claims, your plaintiffs, your

3    injuries, and your relief in a way that is making it really

4    hard for me to do my job.

5            I will try to work through some of that with you

6    today to better understand what you are actually arguing and

7    what you actually want me to do.  But I found your briefing

8    to be pretty tough to work through given that you are asking

9    me for a pretty extraordinary remedy.

10           With that in mind, I have some smaller

11   clarification questions, and then I am going to get to my

12   more fundamental troubles with how you have briefed this.

13           The first one is just a clarification on your

14   pseudonym request.  You brought class action claims on

15   behalf of Plaintiffs John Does 1 to 5.  Chief Judge Boasberg

16   granted a pseudonym request with respect to those plaintiffs.

17           Your PI motion seems to rely on alleged harms and

18   a declaration by some other John Doe 6.  Who is John Doe 6?

19   And is there something I am missing in the record?

20           MR. SUS:  Yes.  Apologies, Your Honor, for the

21   confusion.  Also, apologies for the briefing if it wasn't

22   presented in the most clear manner it could have been.

23           J. Doe 6 is not a plaintiff.  J. Doe 6 is a member

24   of the League of Women Voters of Virginia.  We submitted

25   J. Doe 6's declaration to demonstrate associational standing

1    on behalf of the League of Women Voters of Virginia, and to

2    show that they have a member who has standing.

3            THE COURT:  Okay.  So not a part of the class that

4    you are pleading.

5            MR. SUS:  Correct, Your Honor.

6            THE COURT:  Okay.  Next on your Privacy Act claims

7    which, I think, largely revolve around the 2025 SAVE

8    adjustments that you say exceed the parameters provided in

9    the 2020 SORN, throughout your brief you also allege that

10   the changes to SAVE exceed the description of the 2020

11   Privacy Act -- privacy impact, sorry, assessment.

12           Wouldn't any claims arising from the Privacy

13   Impact Assessment be covered by the E-Government and not the

14   Privacy Act?

15           MR. SUS:  Yes.  That's correct, Your Honor.  We do

16   not independently bring claims alleging violations of the

17   E-Government Act.  We merely provided the statements

18   regarding the privacy impact assessment to demonstrate the

19   changes that DHS made to the system without doing both a

20   SORN and a privacy impact assessment which, we think,

21   reenforces --

22           THE COURT:  Okay.  That's enough.

23           MR. SUS:  Sure.

24           THE COURT:  It was confusing.  I just want to make

25   sure you are not bringing claims under that statute.

```
 1              MR. SUS:  Sure.  We are not.

 2              Your Honor, can I clarify one question you asked

 3      government counsel.

 4              THE COURT:  Sure.

 5              MR. SUS:  You had asked about the prior SAVE

 6      system's functionality and whether it drew from records that

 7      had systems -- records that had -- I'm sorry -- systems that

 8      had records on U.S.-born citizens.  I just wanted to point

 9      Your Honor to the prior iteration of the SAVE fact sheet

10      that is cited in our briefing and cited in our preliminary

11      injunction memorandum at page 12.

12              As of April 26 of this year, it said that SAVE

13      does not verify U.S.-born citizens under any circumstances.

14      It says that SAVE does not access databases that contain

15      U.S.-born citizen information, for example, birth

16      certificate databases.  So I just wanted to point that out

17      to Your Honor since it directly answers your question.

18              THE COURT:  Okay.  Thank you for that.

19              Do you have any other discrepancies or additional

20      points in response to the facts laid out by Mr. Pezzi?

21              MR. SUS:  I don't think so, Your Honor.

22              THE COURT:  Okay.

23              MR. SUS:  I'm sorry.  I, actually, do.  I have one

24      more.

25              The changes -- you had asked about whether the
```

```
1     prior changes to SAVE had prompted SORNs.  I also just

2     wanted to point out to Your Honor that the changes to the

3     SSA system that the SAVE system is now drawing from for the

4     first time ever, those previously prompted SORNs as well,

5     including as recently as February of this year.  That system

6     of records is a fairly significant system of records; it's

7     the master files of SSNs for every American with an SSN in

8     the country.  So I just wanted to point out that we're

9     talking about two agency system of records and two sets of

10    SORNs.

11              THE COURT:  Okay.  Thank you.

12              So your complaint also included numerous alleged

13    informational injuries from the failure to disclose MoAs,

14    but I don't see any discussion of that in your motion for a

15    stay and PI.  Just to be clear, you are not seeking

16    preliminary relief related to those claims or allegations?

17              MR. SUS:  Apologies, Your Honor.  We are not

18    seeking any informational relief tied to the MoAs.

19              We are seeking informational relief tied to the

20    publication of SORNs in the Federal Register.  The

21    only information that --

22              THE COURT:  Okay.  That's all.  I am just trying

23    to tick through these.  I don't want to dwell on them.  I

24    want to make sure I am not missing things.

25              MR. SUS:  Sure.
```

1          THE COURT:  As I said, you filed many, many pages

2     of briefing and you referenced a lot of things, a lot of

3     claims, a lot of plaintiffs, and it's not done in a way that

4     helps me figure out what you are actually asking me to do

5     which is why I want to work through this.  No claims on the

6     MoAs, no E-Government Act claims.

7          Okay.  So you filed a class complaint.  And it

8     looks to me like you moved for an APA stay and a PI on

9     behalf of that entire class.  Within that class there are

10    different categories of plaintiffs which you seem to

11    recognize by moving to certify only a subclass -- and we'll

12    get to that in a minute because I am very confused about

13    that decision.

14         Then you rely on irreparable harm for some but not

15    all of the categories of plaintiffs in moving for emergency

16    relief.  It's not clear to me which claims are on behalf of

17    which categories of plaintiffs, which plaintiffs suffered

18    which injuries, what relief you think is appropriate for

19    each category of plaintiffs.  You just lump it all together

20    and ask me to shut down the whole thing.  I am not going to

21    do that.

22         MR. SUS:  Right.

23         THE COURT:  It's your burden at the PI stage to

24    make out the four factors.

25         I want you to break out your class for me into the

1      different categories.

2              I think, but I don't know, that that includes

3      natural-born citizens who are not included in the 2020 SORN,

4      naturalized citizens who have particular concerns about the

5      accuracy of their information in the SAVE database, and then

6      noncitizen residents who may raise distinct privacy

7      concerns.

8              First, I want you to tell me if that's right or if

9      you break out your class into different categories.

10             And then I want you to tell me which claims each

11     group is bringing, which injuries each group suffers such

12     that there is standing, and how there is irreparable harm as

13     to each group because I need to assess standing by plaintiff

14     and by claim.

15             Again, your briefing just lumps everything

16     together and then asks me to just shut down this entire

17     system without explaining any of that.

18             MR. SUS:  Your Honor, I will state candidly that

19     part of the complication here was introduced by the Supreme

20     Court's decision in *CASA* that requires cases like this to,

21     at least alternatively, be pled as putative class actions.

22     So this is previously a case we would have simply brought as

23     an APA case because that's what it is.

24             THE COURT:  But can you just answer my questions.

25             MR. SUS:  Understood.  Understood.

```
 1              So to simplify things a bit, I think it's helpful
 2      to just set aside the complaint because the sub --
 3              THE COURT:  I can't set aside the complaint.
 4              MR. SUS:  Okay.  The subclass is tied to the
 5      preliminary injunction relief.
 6              THE COURT:  Okay.  So that's an important
 7      clarification.
 8              MR. SUS:  Correct.
 9              THE COURT:  Just to be clear, your entire
10      preliminary injunction motion speaks in terms of the whole
11      class, not just the subclass.
12              MR. SUS:  That was not our intention.
13              THE COURT:  But that's what you did.  That's what
14      the whole brief says.
15              MR. SUS:  We move for relief on behalf of a
16      preliminary relief subclass, so there are subclass
17      representatives.
18              THE COURT:  Okay.  So you are asking me to order a
19      preliminary injunction on behalf of only the subclass that
20      you seek to certify of naturalized citizens in certain
21      states; is that right?
22              MR. SUS:  Yes.  Well, the scope of the subclass is
23      defined in the class certification motion and in the
24      complaint.
25              THE COURT:  Okay.  I just -- you are now throwing
```

1    me for a complete loop because it's not what your papers

2    say.  You are only seeking a PI as to the subclass?

3              MR. SUS:  Yes, correct.

4              THE COURT:  And so why is your relief the

5    requested relief not as to that subclass only?

6              MR. SUS:  To the extent that we're seeking class

7    relief, it is.

8              THE COURT:  What do you mean to the extent you are

9    seeking class relief?

10             MR. SUS:  So our plaintiffs, individually, without

11   regard to class actions, are entitled to APA relief under

12   Section 05 [sic] and Section 706 of the APA.

13             THE COURT:  So you are saying these individuals --

14   you want me to consider a PI motion on behalf of the

15   individual plaintiffs, and then you want those same

16   individual plaintiffs to be representatives of the subclass

17   and then order relief as to the subclass?

18             MR. SUS:  We move for a stay under --

19             THE COURT:  Yes or no?

20             I can't order any relief for you if you can't

21   clarify what is going on.  I am even more confused sitting

22   here based on your first question.

23             MR. SUS:  So we move for a stay under Section 705

24   of the APA --

25             THE COURT:  But this is part of the problem.  You

1    just lump everything together.

2              You say:  I want a motion for stay and PI, and

3    then you brief everything as if it's all the same, as if you

4    are seeking the same relief for all of the plaintiffs, and

5    that's not the case.

6              MR. SUS:  It's a motion for a stay under

7    Section 705 of the APA or, in the alternative, for a PI with

8    respect to the bulk of the claims, yes.

9              THE COURT:  Wait.  Which -- okay.  Which claims?

10             MR. SUS:  So all of the claims under the APA may

11   be brought under -- may be -- you don't need to certify a

12   class for them, and relief may be sought under Section 705,

13   period.  There is no need to reach a class certification.

14             THE COURT:  So you want me to treat the

15   individuals as seeking an APA stay and, then, separately

16   treat the individuals as representing your subclass for a

17   PI?

18             MR. SUS:  You do not need to reach the class

19   certification motion at all.

20             THE COURT:  You just told me you are seeking a PI

21   on behalf of the subclass.  Are you withdrawing that motion?

22             MR. SUS:  No.  It is a motion for a stay under

23   Section 705 or, in the alternative, for a preliminary

24   injunction.

25             THE COURT:  Okay.  So you just told me I don't

1    need to reach that.  Do you want me to decide whether a PI

2    should be granted on behalf of the subclass or not?

3         MR. SUS:  Only if you determine that you can't

4    grant relief under the APA to the named plaintiffs without

5    certifying a class.  That is the only circumstances in which

6    you need to reach the class certification motion.

7         We submit that you do not need to reach this class

8    certification at all.  You can simply set it aside and grant

9    relief to the named plaintiffs without regard to class

10   certification --

11        THE COURT:  Okay.  We will get to that, but you

12   are asking me to consider both.

13        I mean, unless you are telling me you are

14   withdrawing the PI motion, we have got to talk about it

15   because, again, you briefed it all together, without

16   distinguishing what you were asking for under which

17   alternative motion and which arguments support which

18   alternative motion.

19        Do you think every argument in your brief applies

20   equally to your motion for an APA stay and your motion for a

21   preliminary injunction?

22        MR. SUS:  In the preliminary injunction motion?

23        THE COURT:  No.  I am saying:  You filed one

24   document that is a motion for a stay and preliminary

25   injunction.  You are telling me that the preliminary

1     injunction is an alternative motion.

2               Are all of the arguments in your brief in support

3     of both motions?

4               MR. SUS:  Yes, they are.

5               THE COURT:  Because some of those arguments aren't

6     applicable to one or the other, and you want me to sort that

7     out.

8               MR. SUS:  Respectfully, Your Honor, I don't think

9     you need to sort it out if you determine that classwide

10    relief is not necessary here; that is unnecessary to certify

11    a class.

12              THE COURT:  I mean, if I don't -- I mean, you

13    filed both things.  You can't just say:  Agree with me on

14    one, and ignore the other.

15              I have questions for you on both of them.

16              MR. SUS:  With respect to the question of relief,

17    there is a question of whether you can grant any of the

18    relief at issue in this case without certifying a class.

19              THE COURT:  Okay.  I want you to work through the

20    questions I asked you so I can think about this in a logical

21    way.

22              MR. SUS:  Okay.

23              THE COURT:  So putting aside your request for a

24    stay and talking about your motion for a PI, you are

25    bringing a motion for a PI not on behalf of the class as

```
 1   pleaded in your complaint but on behalf of this subclass; is
 2   that right?
 3            MR. SUS:  The subclass is pleaded in the
 4   complaint.
 5            THE COURT:  It's a broader class in the complaint
 6   necessarily if this is a subclass.
 7            MR. SUS:  The subclass is defined in the
 8   complaint.  There is a class in the complaint and there is a
 9   subclass.
10            THE COURT:  Mr. Sus, is this subclass the entirety
11   of your class or is it, in fact, a subclass?
12            MR. SUS:  It is a subclass.  It is, in fact, a
13   subclass.
14            THE COURT:  Okay.  So if it is a subclass, what I
15   am asking you is:  Is your PI motion on behalf of the
16   subclass or the whole class?
17            MR. SUS:  The subclass.
18            THE COURT:  Okay.
19            MR. SUS:  It's titled as a motion for preliminary
20   relief on behalf of the subclass.
21            THE COURT:  Okay.  So you are asking me to grant a
22   PI and shut down the entire system, even though you are only
23   seeking a PI as to this subclass of naturalized citizens?
24   Because the relief you are asking for isn't specific to
25   naturalized citizens, it isn't specific to your subclass.
```

```
 1          You aren't asking me to say:  Take naturalized citizens out

 2     of the database.  You are asking me to shut the entire thing

 3     down, yet your PI motion is brought only on behalf of the

 4     subclass.

 5               MR. SUS:  So the relief that the subclass is

 6     seeking is vacatur on behalf of the class.

 7               THE COURT:  On behalf of the whole class or

 8     subclass?

 9               MR. SUS:  The subclass.

10               The motion in front of you -- the preliminary

11     relief motion is only tied to the subclass.  There is no

12     relief tied to the broader class in the preliminary motion.

13               THE COURT:  Why would I be granting relief beyond

14     that subclass?

15               MR. SUS:  You are not.  We're not -- well, first,

16     I just want to start again to stress that under the APA --

17               THE COURT:  I am not talking about the APA.  I am

18     asking you -- and I asked you at the beginning -- this is

19     not going to be a productive use of my time if you are going

20     to resist my questions.

21               You put everything in one document which makes it

22     a little bit impossible for me to figure out what you are

23     asking for.  I am asking you to put aside your APA stay

24     claim and focus on your PI motion.

25               MR. SUS:  Yes.
```

1          THE COURT:  And you have now clarified that it's

2     on behalf of this subclass only.

3          MR. SUS:  Yes.

4          THE COURT:  So, then, what specific relief for

5     this subclass are you asking me for in connection with the

6     PI motion?

7          MR. SUS:  It corresponds to what we were seeking

8     for the stay under 705 of the APA, it is equivalent relief.

9          THE COURT:  Okay.  I have got to say -- and I have

10    seen many, many emergency motions in this court in my time

11    here.  I do not understand what you are doing and what you

12    are asking for.

13          You are telling me that you have a class, a whole

14    full class, you have a subclass that you want me to consider

15    this PI for; but the relief you are asking for isn't limited

16    to that subclass but for everyone.

17          I should -- even if I agree with you when I say

18    that this subclass is entitled to a PI, this subclass of

19    naturalized citizens, then I should grant relief that

20    affects everyone in your whole class and not just this group

21    of people.  Why would I do that?

22          MR. SUS:  So with respect solely to the

23    preliminary injunction, the reason why you would do that --

24    and it's not just relief to, quote, shut the system down; it

25    is to revert the system to the prior operational state it

1    existed in before it was overhauled.

2              That relief that would benefit people outside of

3    the class, potentially, is necessary to accord relief to the

4    parties -- to accord complete relief to the parties.  Courts

5    in this district have done that post the Supreme Court's

6    decision in *CASA* very recently.  I can point you to a couple

7    of decisions if you would like.

8              The gist of it is that in order to grant the

9    subclass which -- we're just talking about the subclass --

10   that subclass relief, it is necessary to grant the requested

11   relief that we are seeking to revert the system.

12             There is not really a practical way to separate

13   out the specific subclass with naturalized citizens who have

14   outdated Social Security data who are in states that are

15   using the SAVE system, which is how the subclass is defined.

16             It is not possible to sort of easily segregate

17   them out as the government points out.  That weighs in favor

18   of bringing in broader relief as courts have recently held,

19   or judges in this District have recently held to accord

20   complete relief to the parties.  That is the only practical

21   way to grant the relief --

22             THE COURT:  Can you point me to a single example

23   where a court has certified a subclass before getting a

24   motion to certify the whole class?

25             MR. SUS:  A motion for a preliminary relief

```
 1    subclass?

 2              THE COURT:  You filed a motion for me to certify a

 3    subclass.

 4              MR. SUS:  Yes.

 5              THE COURT:  You have not moved for me to certify

 6    the whole class.  Can you give me any example of a court

 7    certifying a subclass prior to viewing a certification

 8    motion for the class as a whole?

 9              MR. SUS:  Because this relates to class

10    certification, I would have to call on my colleague

11    Ms. Connolly.  Apologies.

12              THE COURT:  Okay.  Go ahead.

13              MS. CONNOLLY:  Good afternoon, Your Honor.

14              So I can't point you to a case that

15    specifically -- where preliminary relief was sought for a

16    subclass.

17              THE COURT:  I am asking you, and I will ask it a

18    third time.  I will just say I am incredibly busy.

19              I have been very frustrated because of the time it

20    has taken me to work through this case because of how messy

21    this briefing is.  So I am going to ask you to stick to

22    answering my questions so that we can work through this

23    hearing as quickly as possible because I have a lot to do.

24              I am not talking about your PI motion at this

25    point.  Okay?
```

1          You have asked me to certify a subclass.  Are you

2     aware of any case of a court certifying a subclass without

3     viewing a certification motion for the whole class; yes or no?

4          MS. CONNOLLY:  No, I am not.

5          THE COURT:  Okay.  How is that supposed to work?

6          You have not moved to certify the class and you

7     expect me to just certify a subclass before seeing any

8     motion about the class itself?

9          MS. CONNOLLY:  Yes, because -- the reason that we

10    designed this as a subclass was to identify -- we were

11    actually trying to help Your Honor and we, obviously, did a

12    poor job.

13         THE COURT:  I will give you a hint.  If you are

14    asking me to do something that no court has done before,

15    that's not helpful because you can't point me to a single

16    example of a court certifying a subclass before certifying

17    the whole class.  It's probably a sign that it's not done

18    that way.

19         MS. CONNOLLY:  Well, I think you can think of the

20    PI subclass as just being a class --

21         THE COURT:  Do you want me to redefine your class

22    to be your subclass and that's it, you are done?

23         MS. CONNOLLY:  We won't be dealing with the class

24    as a whole until we move for class certification on broader

25    issues in the case later.

```
1              THE COURT:  So you want me to do your work for

2    you.  You filed a motion to certify a subclass.  Are you

3    going to withdraw that and file a motion to certify a class?

4              MS. CONNOLLY:  No.  I am just saying that you can

5    take the word "subclass" out.

6              THE COURT:  I can't take the word "subclass" out

7    because your complaint contemplates a much larger class --

8    right? --

9              MS. CONNOLLY:  Yes.

10             THE COURT:  -- of individuals who are not in this

11   subclass.  So I can't just treat your subclass as a class

12   and ignore the fact that your complaint pleaded a much

13   broader class.

14             MS. CONNOLLY:  We are just not seeking

15   certification of that broader class at the time --

16             THE COURT:  You can't ask me to certify a subclass

17   without giving me a motion to certify, I mean, the class as

18   a whole.  I mean, I don't -- I just don't understand how you

19   expect that to work.

20             If you want to withdraw your motion for a subclass

21   certification, you can do that.

22             Here is what you are doing.  Because, on the one

23   hand, you don't want me to certify the whole class; you

24   haven't moved for that.  You are asking me to certify a

25   subclass in the absence of certifying a class because you
```

```
 1    want to use that subclass to support your preliminary

 2    injunction motion, correct?  Is that why you are doing it

 3    this way?

 4              MS. CONNOLLY:  That's right.

 5              THE COURT:  Okay.

 6              MS. CONNOLLY:  Because an AARP decision from the

 7    Supreme Court made clear that this Court can order -- can

 8    deal with class action allegations in connection with a

 9    motion for preliminary injunction.  So that's, in fact, what

10    we're doing.  We are calling it a "subclass," but what it is

11    is the group of people who are moving for preliminary

12    relief.

13              THE COURT:  Okay.  I am going to have Mr. Sus come

14    back up.

15              MR. SUS:  Your Honor, I can throw out two

16    alternatives.

17              THE COURT:  Excuse me?  What?

18              MR. SUS:  I can throw out two options to address

19    this situation.  One is, we are willing to limit the class

20    certification motion to the subclass -- to our class

21    definition to the subclass, which is one of the options Your

22    Honor has proposed, or we can withdraw the class

23    certification motion and just proceed on the motion for a

24    stay under the APA.

25              THE COURT:  I am not going to tell you what to do.
```

```
1   This is your case.  I have had to figure out enough on my
2   own already.  You can decide what you want to do.  I am
3   going to continue with my questions.
4           Assuming we are talking about your subclass
5   only -- and I want to talk about injury and standing -- can
6   you point to anyone who has had their voter registration
7   impacted in any way because of these changes?
8           MR. SUS:  No, Your Honor, not yet.
9           THE COURT:  Okay.
10          MR. SUS:  But these --
11          THE COURT:  Okay.  So if the answer is no, how do
12  these individuals have standing?
13          I am not minimizing the injuries you have pleaded.
14  I understand that these individuals are scared, anxious, and
15  frustrated, but how is that enough to confer Article III
16  standing?
17          MR. SUS:  Well, Your Honor, I think the Ninth
18  Circuit and the Eleventh Circuit's decisions in,
19  respectively, *Mi Familia Vota* --
20          THE COURT:  I have read those cases.  Those are
21  cases where there were lawsuits against the state, right?
22          And in the Eleventh Circuit decision in
23  particular, the plaintiffs there had additional harms
24  because they had been wrongfully identified as noncitizens,
25  correct?
```

```
1              MR. SUS:  That's correct with respect to the

2     Eleventh Circuit decision.

3              However, our reading of that decision is that the

4     second sort of set of harms that the court identified would

5     have been independently sufficient for standing.

6              It is true that they had been previously

7     identified through a separate operation by the Florida

8     Secretary of State's office.  But the court separately

9     discussed the potential that they would be wrongfully

10    identified as noncitizens through the state's use of the

11    prior iteration of the SAVE database, and said that that was

12    sufficient to confer standing.

13             I think the important piece here is the

14    fundamental right to vote is sacrosanct, and the courts have

15    been highly protective of that right; standing doctrine

16    reflects that.  Cases from this court reflect that,

17    including a decision from Judge Sullivan in 2020 that we

18    cite in the papers.

19             THE COURT:  Okay.  Just for everyone, I have read

20    all of the cases in the papers, okay?

21             Let me ask you, if a voter gets unlawfully purged

22    with respect to a federal election, we have got the NVRA and

23    the 90-day-purge-period.  If someone is unlawfully purged by

24    a state in connection with a state or local election, what's

25    the cause of action?  What do you sue the state for?
```

1        MR. SUS:  I think it would depend on which state

2    you are in, if you are talking about state law remedies.  Or

3    are we talking about federal?

4        THE COURT:  You tell me.  What would be your

5    recourse against the state in that scenario?

6        MR. SUS:  I imagine there would be a variety of

7    constitutional claims if it were based on the person's

8    status as a naturalized citizen.

9        But our claims are of a different variety because

10    we're challenging the federal government's use of this --

11        THE COURT:  I know what your claims are.  I am

12    trying to understand and play that out.

13        The federal government has said, you know, you

14    should really go talk to the states.  I am familiar with the

15    NVRA.  But I am just trying to wrap my head around what that

16    looks like.  If a voter gets purged incorrectly because of

17    the state's actions, in connection with the state or local

18    election, what claims do you think you would have against

19    the state?

20        So it sounds like your answer is you would have

21    constitutional claims.  Okay.

22        Let's talk about organizational standing.

23        Your organizational plaintiffs are bringing this

24    suit both in a representative capacity for their members and

25    in their own right as an organization; is that right?

```
 1                    MR. SUS:  Yes.

 2                    THE COURT:  Okay.  So putting aside the

 3       organizational injury related to the inability to

 4       participate and notice and comment and all of that, I want

 5       to talk about associational standing.

 6                    So are the members of the organizations who suffer

 7       these harms also absent class members?

 8                    I am not talking about however you may plan to

 9       replead your class.  As it stands in the papers that I have,

10       are the members also absent class members?

11                    MR. SUS:  Yes.

12                    THE COURT:  Are any of the members also members of

13       the subclass?

14                    MR. SUS:  Yes.  I'm sorry.  I may have

15       misunderstood what you meant by "absent class members."

16                    They are members of the subclass and they are

17       named representatives.  Does 1, 4, and 5 are proposed class

18       representatives for the subclass.

19                    THE COURT:  Okay.  I am going to ask that again to

20       make sure I understand.

21                    MR. SUS:  Yes.

22                    THE COURT:  Are the members of the organizational

23       plaintiffs members of the subclass?

24                    MR. SUS:  Yes.  I understand your question now.

25       My apologies.
```

```
1              THE COURT:  So if that's true, why is there

2    associational standing?  Because I have read a fair bit of

3    case law from the D.C. Circuit that where an organization is

4    bringing a lawsuit alongside a putative class of affected

5    members, associational standing is very commonly defeated

6    for prudential reasons.

7              If I have organizations' members who are already

8    parties to the lawsuit in their own right, why am I finding

9    associational standing?

10             MR. SUS:  Your Honor, just to clarify my

11   statements, J. Doe 1 is not an associational member.

12   J. Doe 4 is an associational member.  J. Doe 5 is not.

13             THE COURT:  Okay.  Are the members of the

14   organizational plaintiffs members of the subclass?

15             MR. SUS:  One of them is.  One of the proposed

16   class representatives is, yes.

17             THE COURT:  Are there members of the organization

18   that are not members of the subclass?

19             MR. SUS:  Are there members of the organization --

20   yes.  Correct.  Yes, there are.  There are members of the

21   organizations that are not members of the subclass.

22             THE COURT:  Okay.  I will move on.

23             So let's talk about the Computer Matching and

24   Privacy Protection Act of 1988.

25             So you rely heavily on the Privacy Act's note that
```

1    certain provisions shouldn't be construed to authorize the,

2    quote, "establishment or maintenance by an agency of a

3    national data bank."

4            Do you agree that this provision applies only to

5    the ADA amendments to the act?

6            MR. SUS:  The matching program amendments from

7    the -- yes.

8            THE COURT:  Okay.  Is it your position that SAVE

9    was established pursuant to the 1988 Privacy Act amendments.

10           MR. SUS:  No, Your Honor.

11           THE COURT:  So if you disagree and think some

12   other statute authorizes the system, as the government

13   suggests, does this claim just fail entirely?

14           MR. SUS:  This claim fails if there is separate

15   statutory authority outside of the Privacy Act for --

16           THE COURT:  Right.

17           MR. SUS:  -- yes, it would, if there is a separate

18   statute that authorizes it.  Our position is that 1373 does

19   not authorize it.

20           THE COURT:  Okay.  You dedicate very little

21   briefing to your separation of powers argument, and I am not

22   sure I understand it.  If you would like to, can you please

23   explain that in more detail.

24           MR. SUS:  Yes, Your Honor.

25           So as we pointed out in our briefing, there is no

1    statutory authority for the creation of a database at DHS

2    that merges, aggregates, and pulls data from the Social

3    Security Administration with state records and then outputs

4    those results to SAVE users.

5        Beyond that, that type of system -- and

6    specifically the way the defendants have set it up pursuant

7    to the President's election -- executive order, relates to

8    elections in a way that implicates Congress's and the

9    state's power to regulate elections under the Constitution's

10   election clause.

11       Beyond lacking any statutory authority, the

12   defendants have abrogated the power of Congress and the

13   states by creating this overhauled system not only without

14   statutory authority but impinging on other actors, other

15   constitutional branches' own authority.

16       THE COURT:  Okay.  Lets talk about irreparable

17   harm, and then I can move to the government.

18       So I am really struggling to find irreparable harm

19   here.  I am struggling a bit on the standing question,

20   although I am probably getting there on standing.  But I am

21   having a lot of trouble finding irreparable harm.

22       Again, your briefing is very confusing in the

23   irreparable harm you are relying on.  I want you to just

24   tell me, for purposes of both requests -- because I need to

25   find irreparable harm to issue either a stay or a PI

1    motion -- what is the irreparable injury to these

2    plaintiffs?

3          I want you to separate it -- not repeating it all,

4    like you did in your papers.

5          You say your claim for a stay under the APA is for

6    these individuals plaintiffs.  What irreparable injury have

7    these individual plaintiffs experienced or are experiencing?

8          And then for your PI motion, which is on behalf of

9    this subclass, what is the irreparable injury for this

10   subclass that you think justifies a PI?

11         MR. SUS:  Yes, Your Honor.  So in terms of

12   injuries relating to voting --

13         THE COURT:  Which one are you talking about?

14         MR. SUS:  We're talking about the individual

15   plaintiffs.  You had asked about the individual

16   plaintiffs --

17         THE COURT:  Okay.  So we're talking about your 705

18   stay request and the individual plaintiffs?

19         MR. SUS:  Yes.

20         THE COURT:  Tell me, what are their injuries?

21         MR. SUS:  They are at risk of being wrongfully

22   purged from the voter rolls in the states that are --

23   because they are in states that are using the SAVE system

24   for voter list maintenance.  They are at risk of facing

25   unwarranted investigations based on outdated, unreliable SSA

1    citizenship data that the defendants have unlawfully pooled

2    into the SAVE system.  They are otherwise facing burdens

3    and, currently, have already experienced burdens on their

4    right to vote in order to get in front of the potential

5    harms that I've just described.  They have had to take

6    remedial measures to ensure that their citizenship status is

7    up to date and that they are not wrongfully purged.

8            THE COURT:  Okay.  So I just want to clarify.  For

9    your APA claim on these individual plaintiffs, the harms you

10   are relying on for irreparable harm are all voter-related

11   harms; is that correct?

12           MR. SUS:  There are two additional harms for the

13   voters.  One is the notice and comment injury, J. Doe 1, as

14   included in her declaration.  J. Doe 1 would have submitted

15   a comment during notice and comment had the defendants

16   followed the Privacy Acts notice and comment process, and

17   her concrete privacy and voting interests were affected or

18   impacted by that.

19           THE COURT:  So notice and comment voter-related

20   injuries.  What's the next one?

21           MR. SUS:  Informational injuries.  The deprivation

22   of information that would have been provided via a SORN or

23   SORNs, rather, by both DHS and SSA.

24           THE COURT:  Okay.  So let's take your

25   informational injuries, the "procedural injuries" as I will

1    call them.

2              I think your briefing seems to recognize that that

3    is not sufficient to find irreparable harm.  There is this

4    exception that if you are doing this prior to agency action,

5    then relief may be appropriate.  That's not what we have

6    here.  You are not coming to me in March or April; the

7    change has already happened and is already many months old.

8              So notice and comment wouldn't remedy any

9    immediate injury.  What am I missing there?

10             MR. SUS:  Well, there is a recent decision that we

11   had cited in our papers from the District of Maryland where

12   it was a similar circumstance, where --

13             THE COURT:  Is that the one case you are relying

14   on, that District of Maryland case?

15             MR. SUS:  That case, and another District of

16   Maryland case that is cited in that case.

17             THE COURT:  Okay.  I just want to make sure.

18             So for your irreparable harm as to the procedural

19   injuries, you are relying only on the District of Maryland

20   case?

21             MR. SUS:  That is correct, Your Honor.  Yes.

22             THE COURT:  Okay.  And you think that district --

23             MR. SUS:  Well, irreparable harm, I should say.

24   For standing, we have broader --

25             THE COURT:  No, no, no.  I am talking -- I mean,

```
 1    if you can't establish irreparable harm, I don't know why I

 2    need to reach any of these merits issues --

 3              MR. SUS:  Understood.

 4              THE COURT:  -- for all of the many of your claims.

 5              MR. SUS:  Understood.

 6              THE COURT:  So you think I should ignore the other

 7    background principles when it comes to procedural injuries

 8    like this one and, instead, just follow this District of

 9    Maryland case.

10              MR. SUS:  I don't think you would be ignoring any

11    background principles.  I think you would be --

12              THE COURT:  Well, when I ask you what you are

13    relying on and you point me to one District of Maryland

14    case -- again, I think your brief recognizes that,

15    generally, failure to provide notice and comment is not

16    sufficient to find irreparable harm.

17              Do you disagree with that?

18              MR. SUS:  No.  That's correct, Your Honor.  But

19    we're not just relying on the lack of notice and comment.

20    We're relying on their concrete interest in voting and

21    privacy --

22              THE COURT:  Okay.  I am taking your -- this is the

23    thing, your brief just dumps everything together and wants

24    me to look at all of it without saying which injuries apply

25    to which plaintiffs or which claims.
```

1          I am working through this in a logical and

2     sequential way and trying to understand your argument.

3          MR. SUS:  Yes, Your Honor.

4          THE COURT:  You identify three buckets of injuries

5     for this first group.  I am just talking about the

6     procedural injury.  We'll move on because I think I've

7     gotten my answer of what you are relying on.

8          Then we get to the "voter-related injuries."  I

9     will call them that.  I would be first in line to agree with

10    you that restrictions on the right to vote meet the

11    irreparable harm standard, and I think that I might even get

12    the government to agree that that is right.

13         But on this record, how do I find that what's

14    happened is a restriction on the right to vote?

15         I mean, you can't point to a single voter who has

16    been removed from the rolls and it's not enough to label the

17    harms as a harm impeding the right to vote.  I mean, the

18    fact that someone might be wrongfully purged or

19    investigated -- I mean, all of that is so speculative.

20         As I said, I mean, there might be enough to get

21    you to standing, but I just don't know how I can make a

22    finding of irreparable harm on this record.  You haven't

23    found a single voter.

24         MR. SUS:  Well, two things, Your Honor.  This

25    rollout of SAVE and states' use of it is rapidly unfolding

1    right now.  So states are announcing that they have run

2    their entire state's voter roll through the SAVE system and

3    that they have referred cases for criminal prosecution, that

4    they have referred cases to the county for potential

5    exclusion from the voter rolls.  Texas has developed a

6    template form that they will send out to potential

7    noncitizen voters who have been identified through SAVE, and

8    this process is just starting.

9         So there is a risk that people will be purged

10    because the procedures are in place and the law is in place

11    in some states to make that a very real concrete reality.

12    And I will give you an example --

13         THE COURT:  But I can't grant a PI because

14    irreparable harm might happen.  You need to show me

15    irreparable harm now.

16         Again, I have been very confused about a lot of

17    aspects of how you have pleaded this case.  As I have sat

18    with it, I think you probably have a strong claim on the

19    merits that the government has disregarded statutory

20    requirements in doing what they did here, right?

21         At the merits state -- right? -- I might agree

22    with you, that, yes, there's been a violation of the law

23    here; what they have done is unlawful; you win; now let's

24    talk about what the remedy is.

25         You are asking me on an emergency basis to issue a

1    PI, and in order for me to do that I have to find

2    irreparable harm.  You are throwing a ton of claims at me

3    asking me to do things when it comes to class cert that are

4    unprecedented.  We are all working through these issues,

5    being briefed in a couple days, in a week, and you are

6    giving me a record that doesn't support the relief you are

7    asking for which is quite extraordinary.

8        Again, I say all of that while starting from a

9    place that -- I mean, based on what is before me, it looks

10    like the government just disregards the statute and it's

11    unlawful, but that's not enough for me to grant you a PI.

12        MR. SUS:  So I would first point to the Virginia

13    law on implementation of SAVE, which we think heightens the

14    imminence of the injury.  The law says that the general

15    registrars in the counties must delete from the voter rolls

16    anyone who is identified as a noncitizen through SAVE.

17        THE COURT:  Yes.  But you need me to assume that

18    these three people -- right? -- are going to be queried by

19    Virginia and they will -- USCIS will give an incorrect

20    response about their citizenship status, and then Virginia

21    will terminate them incorrectly or investigate them or -- do

22    you see the number of "ifs" I have to get to to figure out

23    whether these plaintiffs are being irreparably harmed here?

24        MR. SUS:  Well, even being forced to have to prove

25    their citizenship status when they're citizens and

```
1        qualified --

2                 THE COURT:  You don't even know they're going to

3        have to do that yet.

4                 MR. SUS:  Well, we shouldn't have to wait for the

5        injury to be incurred to sue.

6                 THE COURT:  What is the irreparable harm?

7                 MR. SUS:  The irreparable harm is substantial --

8                 THE COURT:  You don't have to wait to sue.  You

9        can sue and you could have come to me and gone to the

10       government and said:  I want to do expedited summary

11       judgment briefing because we have a clear claim on the

12       merits, and we could have been sitting here at a summary

13       judgment hearing talking about the merits of this claim.

14                But what you are asking me to enter is a

15       preliminary injunction or an APA stay, and you need to

16       establish irreparable harm.  I don't think you have that

17       yet.  Maybe you will at some point, but you can't say:  Yes,

18       it's unlawful, and we think they may, down the line, have to

19       prove their citizenship.  We don't know that to be true yet.

20                If that is true, how are they harmed irreparably?

21                MR. SUS:  So the question -- as Your Honor knows,

22       the question for irreparable harm is:  Will the clients be

23       irreparably harmed if we are forced to wait until final

24       judgment on the merits in this case.  Final judgment on the

25       merits could be after next year's midterms.
```

```
1         As I said, this SAVE system is being rolled out

2    rapidly.  If we have to wait until next year's midterms when

3    this thing -- this SAVE system --

4         THE COURT:  No.  If someone is actually harmed,

5    then you can say to me:  Hey, this is happening, there is

6    irreparable harm.  I mean, it's somewhere in the middle of

7    that.  Right now you have no one.  I just don't know how, on

8    this record, you want me to find irreparable harm.

9         MR. SUS:  Well, again, Your Honor, we would submit

10   that the harm to voters here is demonstrated from the record

11   that the heightened risk of harm --

12        THE COURT:  Okay.  I don't need you to repeat the

13   arguments.  I want to make sure I am not missing anything,

14   and we have been going for quite a while.  Let me ask you

15   one more question, which is the second part of my last

16   question.

17        For your PI motion and the subclass it's being

18   brought on behalf of, what are their injuries?  What are you

19   relying on for irreparable harm?

20        Is it the same injuries as these three individuals

21   for APA claim?  Are they different?

22        What's the irreparable harm you are relying on for

23   your PI motion?

24        MR. SUS:  It is the same.

25        THE COURT:  All right.  Thank you.
```

1          I will hear from the government.

2          Okay.  Mr. Pezzi.  Let me pick up with you where I

3     left off with the plaintiff.

4          So you heard what they're relying on for, I think,

5     both standing and irreparable harm of this informational

6     injury and the voter-related injuries.

7          So starting with this informational injury, the

8     plaintiffs are relying on this District of Maryland case.

9          Tell me why I should not follow that case or

10     whether you think that case doesn't support what they're

11     asking me to do.

12          MR. PEZZI:  So if it's the District of Maryland

13     case that I think it is -- the two District of Maryland

14     cases that I think it is.

15          THE COURT:  Right.  It is one cited in the other.

16          MR. PEZZI:  Right.  One of them was stayed by the

17     Fourth Circuit on grounds that we agree with.  One of them

18     was not stayed by the Fourth Circuit; the government agreed

19     with, essentially, the dissenting opinions in that one.

20     That is the one in which the Supreme Court entered a stay.

21     So unless I am losing track of which District of Maryland

22     cases we're relying on, I don't think that is a strong basis

23     for preliminary injunction; all of those orders have been

24     stayed by further appellate courts.

25          I mean, even if it is a third District of Maryland

1    case that I have now lost track of, I think the absence of

2    any precedent in this Circuit is notable.  There is

3    obviously a lot of D.C. Circuit precedent about

4    informational standing and procedural harm in some of the

5    cases we have cited in our brief, we think those are clear.

6          THE COURT:  Why isn't the informational injury

7    here sufficient to confer standing?

8          As you have heard, I am not sure it's enough to

9    show irreparable harm.  But why isn't it enough for

10   standing?

11         MR. PEZZI:  Yes, Your Honor.  Informational injury

12   is, in many respects, an outlier in modern standing

13   jurisprudence, and there is even some discussion at the end

14   of *TransUnion* about this --

15         THE COURT:  I thought you were going to talk about

16   *TransUnion*.  Go ahead.

17         MR. PEZZI:  I mean, *TransUnion* more or less

18   explicitly carves out FOIA and says, sure, we are not

19   casting doubt on whether FOIA plaintiffs still have

20   standing.  I mean, the way the D.C. Circuit has

21   operationalized this in cases that we have cited in our

22   brief, several cases all involving plaintiff EPIC, I mean,

23   there are some statutes for which the purpose of the statute

24   is to provide information.  The most famous example is FOIA.

25         Another set of important examples are in the

1    campaign finances space where, for example, disclosing the

2    names of campaign contributors, something that Congress

3    thought was really important.  But there is a whole host of

4    other statutes out there that do not give rise to

5    informational standing even if complying with the statute

6    might have the effect of letting some extra information out

7    into the world.

8            The D.C. Circuit has squarely held that the

9    E-Government Act is not a case -- is not a statute that

10   creates these informational rights.  In one of the EPIC

11   cases that we cited we think the reasoning of that case is

12   on all fours with the Privacy Act.  The Privacy Act,

13   obviously, is about privacy, first and foremost.

14           THE COURT:  Right.  But the Privacy Act does

15   confer pretty concrete informational interests to

16   individuals whose records are stored on federal agency

17   database; and then it grants pretty specific disclosure

18   rights, for example, to organizations interested in the

19   agency's compliance.  I mean, why isn't that enough?

20           MR. PEZZI:  Certainly, Your Honor.  I may have

21   overstated the argument just a tad in that there are

22   certainly parts of the Privacy Act the plaintiffs are not

23   suing in which someone can obtain information from the

24   government, for example, about your own records.  If

25   somebody came into this court and said, under the Privacy

1    Act, I need access to my own records, I am not aware of the

2    government disputing standing in a circumstance like that.

3    That is not a circumstance we have here.

4            I mean, here they're dissatisfied with the failure

5    to publish SORN and go through the equivalent of notice and

6    comment processes.  I mean, I think their theory here is

7    indistinguishable with an APA notice and comment claim.  I

8    don't think we would let an APA notice and comment plaintiff

9    say:  I have standing to challenge any agency action on the

10   grounds that it had to go through notice and comment because

11   I was deprived of my informational rights to whatever the

12   government would have been in the notice of proposed

13   rulemaking.  That's, essentially, the claim we have here.  I

14   don't think there is any support for it, certainly not in

15   any D.C. precedent that I have seen.

16           I mean, obviously, the irreparable harm is one

17   step higher.  Our brief starts with standing because our

18   briefs most always start with standing.  But, I mean, we

19   agree with Your Honor that the only thing that the Court

20   needs to decide today is whether or not plaintiffs have

21   carried their burden on irreparable harm.  And that --

22           THE COURT:  Do you think I don't need to decide

23   standing if I find that there is no irreparable harm or -- I

24   think I need to decide standing first, no?

25           MR. PEZZI:  I don't think so, Your Honor.

```
1              I think Your Honor could deny the motion based on

2     a lack of establishing likelihood of success on the merits

3     including a failure to show irreparable harm.  I don't think

4     that necessarily requires --

5              THE COURT:  You don't think I have to do the

6     standing inquiry first before I get to irreparable harm?

7              MR. PEZZI:  Judge Moss in the Carter case, for

8     example, did not reach, I think, any holdings on Article III

9     standing, and just said:  Whatever may be said about

10    plaintiffs' injuries here, this motion can be denied for

11    lack of irreparable harm.

12             And I believe we cite an EDVA case, EPIC v. OPM

13    that, I think, takes a similar approach.  It starts to talk

14    about standing and says, you know what, at least at the

15    preliminary injunction stage we don't have to resolve all of

16    that now because the motion fails for lack of irreparable

17    harm.

18             THE COURT:  Okay.  Do you think the Eleventh

19    Circuit got it wrong in Arcia when they found standing on

20    the voter-related injuries in the NVRA context?

21             MR. PEZZI:  I am not sure the Eleventh Circuit got

22    it wrong.  I think the most notable thing about that

23    case Your Honor is obviously very familiar with -- like the

24    Ninth Circuit case, it is captioned Voter v. Florida

25    Secretary of State, or Voter v. Arizona Secretary of State.
```

1    So those are cases in which individual voters or groups of

2    voters allege that they are either actually being frustrated

3    in their efforts to vote or there are limitations being

4    placed on their right to vote in a much more direct way than

5    we have here.

6         I think -- I mean, if anything, those cases

7    support our position here, which is that:  To the extent

8    there are U.S. citizens out there who are being accidentally

9    and unlawfully thrown off state voter rolls by state law

10   enforcement officials, they may very well have a claim,

11   whether it's a due process claim, whether it's some sort of

12   state law claim.  I am not an expert either on what's the

13   appropriate way to bring that sort of claim against which

14   state official, and it might even vary from state to state;

15   but it is, certainly, no basis for a lawsuit -- a Privacy

16   Act lawsuit, much less against the federal government.

17        THE COURT:  Okay.  The plaintiffs rely pretty

18   heavily on this 2006 audit by the SSA OIG, which estimated

19   that citizenship data inaccurately identified approximately

20   3.3 million U.S. citizens as non-U.S. citizens because they

21   became U.S. citizens after getting their social security

22   numbers.

23        Do you know if the government has conducted any

24   audits or analyses of the accuracy of SSA and citizenship

25   data since this 2006 audit?

1          MR. PEZZI:  I am not aware of any newer audit.  I

2    mean, I will say I don't think we have disputed the general

3    proposition that there is no legal obligation, for example,

4    to call up the Social Security Administration and say:  Hey,

5    you issued me an SSN five years ago and I was not a citizen

6    and now I am a citizen, and I just wanted to tell you that.

7    So I am sure that there is some number of U.S. citizens who

8    are currently listed as noncitizens in an SSA database.

9    Whether it's 3 million, I don't know as I stand here today.

10          Our point is that that is not enough information

11   by itself for SAVE to spit out a response to a state saying:

12   This person is not a citizen.  There are additional

13   procedures and checks in place because of this very fact to

14   ensure that it does not happen.

15          I mean, the purpose of the system is to sort folks

16   from the citizen bucket and the noncitizen bucket.  And

17   everyone is aware -- and not just plaintiffs -- that SSA

18   data standing alone might not be a perfect way to do that.

19   But no one is looking at SSA data alone in these

20   circumstances.

21          THE COURT:  Can I walk through that declaration

22   that you submitted and ask you a couple of questions.

23          So it says if a query matches an SSA record

24   indicating non-U.S. citizenship or that individual is marked

25   as deceased, see if captures that record information, and

```
 1   then continues an automated query using additional

 2   databases.

 3            That is correct, that that is the first step there?

 4            MR. PEZZI:  Yes, Your Honor.  You are referring to

 5   paragraph 12.  Yes.

 6            THE COURT:  12, yeah.

 7            MR. PEZZI:  Yes, I think --

 8            THE COURT:  Go ahead.

 9            MR. PEZZI:  Paragraph 12, I think, is less

10   important than either 11 or 13.

11            THE COURT:  13, yes.

12            MR. PEZZI:  My understanding is that that is

13   correct, that there is some additional automated pulling in

14   of relevant information that is then used by whoever is

15   doing the manual review that is described in paragraph 13.

16            THE COURT:  13, okay.  I was getting to 13 next.

17            So is a manual verification required every time

18   there is conflicting data for a query?

19            MR. PEZZI:  I am hesitant to deviate from the

20   precise language in this declaration.  That is -- I think I

21   read the declaration that way as well.

22            I will say that -- I mean, I was told quite

23   clearly, and that is why it's in this declaration; that

24   there is an automatic manual review in all voting relating

25   SAVE requests when a response comes back from SSA as
```

1    anything other than U.S. citizen or deceased.  That is, in

2    large part, to capture the very concerns that plaintiffs

3    have raised here to ensure that before a response goes out

4    to states -- not just SSA records are consulted, but also

5    USCIS records.

6              So for the population that they are most concerned

7    about or their subclass of naturalized citizens, they should

8    have nothing to worry about because naturalization records

9    are -- I think it is undisputed -- retained by USCIS, and

10   they would be consulted as part of this manual review with

11   respect to their subclass.

12             In the reply on the class certification motion,

13   one of the issues we raised in response to the class

14   certification motion was:  We don't know how we would

15   implement a class definition that turns on a group of people

16   that are incorrectly categorized in an SSA database because,

17   by definition, we are talking about people for which SSA

18   doesn't have records.

19             The response was:  Well, SSA can just talk to

20   USCIS and USCIS has the records.  I mean, that is what we do

21   and that is what they are suing over.  I think it defeats

22   the theory that they have come to this Court seeking a

23   preliminary injunction on to, essentially, debunk their

24   concern that the mere fact that someone has an inaccurate

25   citizenship indicator in an SSA database standing alone is

```
 1    going to lead to them -- I mean, not even the response from

 2    SAVE; before we even get to the additional steps taken by

 3    independent third parties not before the Court, which I also

 4    think, of course, is important for standing and irreparable

 5    harm.

 6              THE COURT:  Okay.  So if the SSA record says that

 7    a person is not a citizen and there are no other records in

 8    the SAVE system, so USCIS doesn't have a record, is the

 9    response then delivered that that person is a noncitizen?

10              MR. PEZZI:  Sorry?

11              THE COURT:  Would you rely on a record that is

12    only in the SSA system?

13              So SSA's system says a person is not a citizen and

14    there is no other record -- right? -- so there is no USCIS

15    record for that person.  Would you then deliver a noncitizen

16    response to the user?

17              MR. PEZZI:  My understanding is that the answer to

18    that question is no; that, instead, there would be a request

19    for additional verification procedures for submitting

20    another enumerator.

21              Plaintiffs seem to assume that the -- I'm sorry,

22    to back up a little bit.  Plaintiffs then say:  But that

23    doesn't work because we don't have an A-number for everybody

24    or you don't have another enumerator.  That is true, as I

25    understand it.
```

1    But what plaintiffs get wrong is they think that

2    that, therefore, means that the thing that they're concerned

3    about is going to happen; whereas, I think what that means

4    is the thing that is the opposite is going to happen.

5    I don't think individuals are getting thrown off

6    voter rolls based on inconclusive responses from the SAVE

7    system. If they are, that is in violation of their

8    agreement with USCIS. It may also be in violation of state

9    law, due process, I don't know, but that is something that

10    they would take up with state law enforcement authorities,

11    as I understand it.

12    THE COURT: Is there any mechanism for someone

13    whose data is in the SAVE system to pull those records and

14    ensure that they are correct?

15    MR. PEZZI: I learned a lot of things from

16    plaintiffs in this very case about the mechanism for

17    contacting SSA to correct one's citizenship status in SSA

18    systems. According to plaintiffs -- and my understanding is

19    that they are correct -- there is a mechanism by which you

20    can make an appointment with SSA to say: Change my records

21    in the SSA system to show that I am a U.S. citizen.

22    I am not aware --

23    THE COURT: But that's on the SSA side.

24    MR. PEZZI: Yes.

25    THE COURT: I am saying in the SAVE system. Can

1    someone go to USCIS and say:  I think I am in the SAVE

2    system, I want to make sure you have the correct information

3    so I am not unlawfully purged down the road; can you tell me

4    what you have in the SAVE system about me?

5              MR. PEZZI:  The short answer is I don't know the

6    answer to that question.

7              I am not aware, though, of any need to do it in

8    the way that they have identified they think a need for a

9    subset of cases in the SSA's system.

10             They have not alleged -- and I am not aware of any

11   reason to think that there is any sort of systematic issue

12   with USCIS data on citizenship or immigration status.

13   Again, that makes sense because USCIS is, you know, U.S.

14   Citizenship and Immigration Services.  It is their job in

15   the federal government, more than anybody else's, to have

16   up-to-date records on who is or is not a citizen and what

17   everyone's immigration status is.

18             I am sure, like any other government database,

19   it's not perfect.  But the sort of systematic concern that

20   they have raised with SSA data is what gives rise to what

21   they think -- and I understand -- the need for the separate

22   process by which someone could, in theory, contact SSA and

23   say:  Please correct my records.

24             Again, if the system is working as it should and

25   people are following the procedures set forth by USCIS and

1    people are following federal law, the fact that the SSA data

2    is not perfect should neither result in mistaken outputs to

3    states saying someone is not a citizen when, in fact, they

4    are a citizen; and either way, none of it should result in

5    states taking anyone off voter rolls without states going

6    through whatever legal processes are required to do that,

7    which I think is going to be governed by both federal and

8    state law and may vary across the 50 states.

9            I think there are going to be some federal law

10   backstops there, maybe even a constitutional law backstop in

11   some circumstances.  But, I mean, the SAVE agreements

12   themselves talk about due process and state procedures

13   needing to be followed before anybody takes action based on

14   responses from the system.

15           THE COURT:  That is the MoAs, right?

16           MR. PEZZI:  Yes, Your Honor.

17           THE COURT:  Okay.  So if a lawful voter gets

18   removed from a voting roll due to an inaccurate SAVE

19   query -- assume that happens -- right? -- and that voter can

20   show that she would have corrected the records in the

21   database had a properly published SORN been made available,

22   would that person have a claim to money damages under

23   552a(g).

24           MR. PEZZI:  I think, at a minimum, they would need

25   to also show that it was a willful violation to obtain money

1    damages.  I think they have to show actual damages as well --

2          THE COURT:  Right.  That they have -- but if they

3    can -- if they can show that they have been harmed, can they

4    claim money damages?

5          MR. PEZZI:  I mean, I don't want to concede away

6    in advance all of the arguments I could imagine the

7    government raising in such a case.  But, I mean, the basic

8    premise of the question I don't contest at all, which is

9    that the Privacy Act, obviously, does have remedies.  In

10   some ways they're narrower than the APA and in other ways

11   they are broader than the APA.  Obviously, you can't get

12   money damages under the APA.  And at least, under certain

13   facts, you could absolutely imagine a circumstance where

14   somebody had some Privacy Act remedy relating to this

15   information.

16         Now, when you're talking about actions that were

17   taking place by the states, I mean, again --

18         THE COURT:  I agree.  They have to show that they

19   were harmed by the government's failure to comply with the

20   Privacy Act, but assuming that's right.

21         MR. PEZZI:  Yes.  I mean, if counsel from USCIS

22   were here, they would be in my ear just demanding that I

23   emphasize, and so I will.

24         I mean, USCIS takes very seriously their

25   obligation to put out good information as a part of this

1    process.  But they also do make clear in the agreement that

2    they are not the ones deciding whether someone gets food

3    stamps or welfare benefits or whether they belong on a state

4    voter roll.  That is ultimately a decision for the states,

5    and USCIS is there to fulfill their obligation under federal

6    law to provide the information.  But that would certainly be

7    a much stronger claim both to standing and under the Privacy

8    Act than I think what we have here.

9            THE COURT:  Okay.  Let's talk a little bit about

10    the Privacy Act violations.  I think everyone here now

11    knows, I don't hide my cards at argument.  I think this is

12    an important part of the process so you understand what I am

13    thinking and you have an opportunity to make any arguments I

14    am missing.

15            Do you disagree here that the changes to SAVE are

16    significant such that the notice and comment period of 30

17    days didn't kick in and require publication of a SORN?

18            MR. PEZZI:  I think if the Privacy Act applies

19    here --

20            THE COURT:  Right.  Yes, assuming it applies.

21            MR. PEZZI:  Yes.  We have not argued and I cannot

22    imagine we would argue in this case that these were such

23    insignificant changes that we would not have to publish a

24    SORN.

25            Obviously, to the extent Your Honor ever has to

1    decide that issue and for some of the reasons I previewed at

2    the beginning, Your Honor may not ever have to decide that

3    issue.  We have other arguments that I think would be more

4    important to the government.

5              THE COURT:  Okay.  On remedies, I was going to ask

6    you whether the government is able to publish a SORN for

7    their revisions, but it sounds like one is already in

8    progress.  What is the timeline for that being published?

9              MR. PEZZI:  So I am very hesitant to say much

10   about the timeline in part, because I don't know and, in

11   part, because I don't think -- it's not for failure of

12   asking.  It's because there are some factors here that make

13   it very hard to predict, including, but not limited to, a

14   lack in appropriations that results in making it very

15   difficult to do almost anything without first convincing the

16   relevant folks that, you know, this is or is not an

17   exception under the Antideficiency Act.  There is a whole

18   office of Federal Register, for example, that gets involved

19   in publications in the *Federal Register*.  So I don't know.

20             I do know that letters went to the relevant

21   officials in Congress a few days ago with the draft SORN and

22   went to OMB, and that sort of kicks off the process.

23             I think if there were not a lapse in

24   appropriations my expectation would be something published

25   in the *Federal Register* and available for public inspection

1    in a matter of days.  But I don't want to make that

2    representation here among other reasons, given the strange

3    appropriation circumstance we are in.

4            Plaintiff's counsel is correct that -- they are

5    concerned both about DHS SORNs and SSA SORNS.  Everything I

6    said today was about DHS --

7            THE COURT:  DHS.

8            MR. PEZZI:  -- SORNs.  But Your Honor should not

9    infer from that that there is no SSA SORN that will ever be

10   forthcoming.  I am just not in position, at the lectern

11   today, to provide the sort of update that I provided about

12   the status of DHS SORNs.

13           THE COURT:  Right.  But I assume the government is

14   able to publish an SSA SORN.

15           MR. PEZZI:  Yes.  It would be odd, in a

16   circumstance like this, I think, to publish a DHS SORN but

17   not an SSA SORN.  Again, although I am hesitant to say much

18   more than I have already about a possible SSA SORN, it

19   certainly would be easier for everyone if Your Honor never

20   had to decide the question of whether a SORN was required

21   here and, obviously, DHS has started to take some steps in

22   that direction.

23           THE COURT:  Okay.  If I were to order you to

24   return to the old SAVE system prior to the SSA link, could

25   that be accomplished or -- and if so, how would the

1    government accomplish that?

2          MR. PEZZI:  Yes.  That is a good and difficult

3    question, Your Honor.

4          I mean, could it be accomplished?  I am sure it

5    could be accomplished.

6          Could it be accomplished by, say, an election

7    happening by Tuesday in Virginia, I am nearly certain that

8    the answer to that question is no.

9          I mean, I hesitate to even speculate what that

10   would look like.  But, I mean, it would essentially be

11   intentionally making a government software database worse.

12   It would be dismantling a lot of hard work that a lot of

13   people put into a system for purposes of modernizing and

14   improving a 30-year-old -- more than 30-year-old system.

15         I mean, obviously, if Your Honor ordered it, the

16   government would do everything in its power to comply with

17   such an order.  We don't think that they have come close to

18   the showing that would be required for that sort of

19   extraordinary relief.  I do think it's the kind of thing

20   that would take some time.

21         THE COURT:  Okay.  I have one last question for

22   you.  And your brief raised this issue with the plaintiffs'

23   proceeding by pseudonym.  You are saying that you can't

24   really make your Rule 23 arguments without getting

25   additional information from the plaintiffs.  What is the

1    status of that?

2            Have you guys talked about it?  Is that still in

3    dispute?

4            MR. PEZZI:  I mean, plaintiffs, I think, attached

5    the entirety of our email correspondence on that issue.

6    There has been no further discussion about it since then.

7            I mean, I think if Your Honor denies or if

8    plaintiffs were to withdraw the motion for certification of

9    a preliminary relief subclass, we think that would take the

10    time sensitivity out of that issue at least.  Although, I do

11    think that the fact that we don't know anything about any of

12    the individual plaintiffs other than what plaintiffs have

13    dribbled out to us over the course of this briefing has

14    hampered us in responding to that motion.  I will say not

15    just that motion.

16            I mean, I think -- for example, plaintiffs make a

17    lot in their reply about the 90-day cooling off period only

18    applying in federal elections.  I mean, they are right;

19    that, on its face, that that provision only applies to

20    federal elections.  We don't know and didn't know which

21    elections we're talking about here.

22            I mean, I think there is a federal election

23    happening in Texas next week, as I understand it.  It's,

24    like, a special election for the U.S. House of

25    Representatives.  I don't know if the J. Doe plaintiff lives

1    in that district; I don't know if they don't.  I mean, I

2    think plaintiffs are absolutely correct that provision

3    doesn't apply to state and local elections.  Some of the

4    elections they are concerned about seem to be state and

5    local elections, some of them are not.  That's the sort of

6    example where I don't understand how we should be expected

7    to litigate under a background of facts that they choose to

8    select at the time that's right for them.

9         I don't know if -- if we learned the identities of

10    the plaintiffs it is possible we would not have a single

11    additional argument to offer.  But, out of our own due

12    diligence, we thought obligated to ask; and we thought that

13    the chief judge's order seemed to contemplate that very sort

14    of request.

15         THE COURT:  I do think it did.  Okay.  Thank you.

16         Is there anything else you want to add to your

17    argument before I have plaintiffs come back up?

18         MR. PEZZI:  No, Your Honor.

19         THE COURT:  Thank you.

20         Okay.  Who is coming back up on rebuttal?

21         Okay.  Can you just respond to that last issue

22    with the pseudonym?

23         The chief judge's order did seem to contemplate

24    that you would provide the government with sufficient

25    information to inform how they were going to respond to this

1    and, obviously, that doesn't necessarily mean, "Here is the

2    person's name."  But information about that person to allow

3    the government to make the type of arguments that Mr. Pezzi

4    just outlined seems completely reasonable.  Is there a

5    reason you have not turned that over?

6              MR. SUS:  So, Your Honor, I might suggest that the

7    parties just continue conferring and see if we can work this

8    out without the Court's involvement.  I think it is possible

9    that we can provide certain information that the government

10   is seeking under a protective order that wouldn't actually

11   identify the plaintiff that may address the government's

12   concerns.

13             THE COURT:  Okay.  Please do that.

14             But you understand by not doing that to date -- I

15   ordered them to respond to your emergency motion and the

16   class cert motion, and they have had to do that without the

17   benefit of that information which does hamper their ability

18   to make certain arguments.

19             Go ahead and do that.

20             Okay.  I am going to give you the opportunity to

21   make any additional points in response to the government's

22   arguments or, otherwise, in support of both of your motions.

23             MR. SUS:  Yes, Your Honor.

24             The first point is just to distinguish between

25   informational injury and procedural injury, which are

1     discrete standing doctrines and also discrete for purposes

2     of irreparable harm.

3           We are hearing that the government is going to

4     publish SORNS.  If they do publish SORNS, that would, we

5     agree, address our informational injuries both for DHS and

6     SSA.  But if that does not happen, then those injuries are

7     going to go unredressed.

8           We do believe that the case law in the

9     D.C. Circuit binding Circuit precedent does support both our

10    standing in irreparable harm on those informational injury

11    claims, Your Honor.  I just want to be clear on that.

12          THE COURT:  Okay.  I am not sure that that is

13    right, but give me your best case in support of that.

14          MR. SUS:  On standing or irreparable harm?

15          THE COURT:  On irreparable harm.

16          MR. SUS:  Most recently, *CREW v. OMB*; this is a

17    case that Judge Sullivan heard very recently.

18          THE COURT:  Okay.  I am familiar with that case.

19    I will take another look at it if you think that's what you

20    think supports me finding irreparable harm for the

21    informational injury.

22          MR. SUS:  Just to clarify, it's not a published

23    decision, but the D.C. Circuit denied the stay pending

24    appeal in that case.  And Judge Henderson wrote a separate

25    opinion.  It might be hard to find on Westlaw, so I just

1    wanted to flag it for Your Honor.  But that is an

2    indication, it was a unanimous denial stay.

3            THE COURT:  Are you relying on Judge Sullivan's

4    opinion or whatever the D.C. Circuit wrote in an unpublished

5    decision?

6            MR. SUS:  Both.

7            THE COURT:  All right.  Go on.

8            MR. SUS:  So, Your Honor, on irreparable harm with

9    respect to the voting-related injuries, I just wanted to

10   underscore that the factual landscape is rapidly evolving.

11           Just in the past week or so, Texas has announced

12   that over 2,000 potential noncitizens have been identified

13   in their voter rolls through this overhauled system.

14           Louisiana has announced that 390 alleged

15   noncitizens are in the process of being removed and

16   potentially referred for investigation.

17           Ohio recently alleged that over a thousand alleged

18   noncitizens were referred to the FBI.

19           Tennessee recently announced that 42 individuals

20   were identified and referred for investigation to the FBI.

21           A lot of these facts were not actually in the

22   record.  And we would be happy to submit this in a

23   supplemental filing because some of it postdates the reply

24   and because the reply turnaround was very quick.  I just

25   want Your Honor to have all of the facts in front of you

1    when you rule on the irreparable harm question because we do

2    think that the risk of imminent investigation and potential

3    prosecution for lawful voting is part of the irreparable

4    harm piece -- it's not just the risk of being purged from a

5    voter role, which we do think is independently sufficient

6    for irreparable harm; but the risk of facing an unlawful

7    investigation for exercising of fundamental rights would be

8    irreparable harm.

9              The D.C. Circuit has often said --

10             THE COURT:  But what -- how do you link that to

11   the agency action that you are challenging here?

12             MR. SUS:  Well, Your Honor, the defendants have

13   aggressively pushed out this system to purge voter rolls of

14   alleged -- what, in the defendant's words -- "illegal

15   aliens" that are allegedly voting in our elections.

16             There are numerous correspondence from the

17   President directly to secretaries of state thanking them for

18   using state -- to purge the elections of alleged noncitizen

19   voting, and the secretaries of state are reciprocating and

20   saying, thank you, President --

21             THE COURT:  I understand all of the rhetoric.  You

22   can't rely on all of that to show specific irreparable harm

23   in this case on its own.  So --

24             MR. SUS:  I think you can consider it as

25   causation, Your Honor.

1          THE COURT:  Sorry.  When you speak over me it

2     makes my staff's job very, very difficult.

3          MR. SUS:  Sorry.

4          THE COURT:  First, I have to find that the SAVE

5     data that will go to the states will be incorrect.  And then

6     the states will make a decision to purge or investigate

7     based solely on that data, which USCIS is telling the states

8     they can't do.  Then the states have to decide to do that.

9     I mean, there are a lot of steps there that you want me to

10    assume.

11         MR. SUS:  That is correct, Your Honor.  And that's

12    why we have put in evidence based on how, historically, this

13    system has worked and why we think the problem is going to

14    be worse now that there is this bulk upload functionality.

15    It's because of the historical problems between linking DHS

16    and SSA systems.  And so when --

17         THE COURT:  I want you to tell me what the

18    irreparable harm is for these particular plaintiffs before

19    me.  And if you have -- I mean, are you asking me to defer

20    ruling on my -- the PI motion you have filed?  Because,

21    right now, all I can do is decide the PI based on the record

22    that is before me.

23         Are you making a request of me, or not?

24         MR. SUS:  Yes, Your Honor.  We would request that

25    you defer until we can submit further supplemental facts

1    that are both -- at least close in time to the filing of our

2    reply brief and postdate the reply brief so at least that

3    that material is in front of the Court.

4          THE COURT:  In what form are you proposing doing

5    that?  Are you going to file a new PI motion, or what are

6    you going to file?

7          Because, as I said, I find your motion as it is

8    extremely confusing.  And if you are going to file something

9    else for me, I want to make sure I know what that is and in

10   what form it's coming in --

11         MR. SUS:  Yes.

12         THE COURT:  -- and that it needs to be really

13   clear about what you are asking me to do and why, and which

14   harms relate to which plaintiffs and which claims.

15         MR. SUS:  So it would not be a new motion.  It

16   would simply be a supplemental filing that identifies the

17   activities in states relating to the use of the overhauled

18   SAVE system that we did not have an opportunity to include

19   either because they postdate the reply brief or because they

20   have it in the midst of the reply brief being filed, just to

21   get the factual material in front of the Court.

22         It would be a very targeted filing.  It would not

23   be a, sort of, rehash of the motion.  It wouldn't have any

24   legal argument; it would simply have the facts.  We would

25   cite the relevant parts of our motion that the facts relate

1    to.  That would be our submission, that Your Honor hold off

2    on ruling on the motion until you have those facts in front

3    of you.

4              THE COURT:  Mr. Pezzi, do you have any objection

5    to that?

6              MR. PEZZI:  The government would defer to Your

7    Honor about when you want to decide the motion and whether

8    you want to permit additional submissions.

9              I would just say if it looks anything like it was

10   just described by counsel for plaintiffs, I find it very

11   hard to imagine it moves the needle here.  The fact that

12   states are managing their own voter rolls has very little to

13   do with the claims against the federal government here.

14              The fact that the federal government, even up to

15   and including the President, has encouraged use of the

16   system, doesn't even jibe with their allegations unless what

17   we're talking about is encouraging the removal of

18   naturalized citizens from state voter rolls and, certainly,

19   no one has encouraged anything like that.  Removing

20   noncitizens from the voter rolls is not the injury they're

21   claiming.  So to the extent their material doesn't

22   disentangle those two concepts, I don't think it does

23   anything.  But beyond that, we defer to the Court.

24              THE COURT:  Thank you.

25              I hope the plaintiffs have heard me with respect

1    to my concerns on irreparable harm and that whatever you

2    want to file is responsive to that.

3              How long do you need to file that?  Because you

4    filed for a PI, right?

5              I mean, I have been moving expeditiously on your

6    motion for a PI because it's a motion for a PI --

7              MR. SUS:  Yes.

8              THE COURT:  -- and you have pointed out the

9    urgency here, so I am now going to hold on your request.

10   When do you plan to file that?

11             MR. SUS:  We can file it by midnight tomorrow.

12             THE COURT:  Okay.

13             How long would you like to respond, Mr. Pezzi?

14   Understanding that you are working for free.

15             MR. PEZZI:  48 hours, Your Honor.

16             THE COURT:  So you will file any supplement by

17   tomorrow at midnight; and then the government can have until

18   Monday to respond, and then I will continue to consider the

19   motion.

20             MR. SUS:  Your Honor, one final point I just want

21   to --

22             THE COURT:  Go ahead.

23             MR. SUS:  The naturalized citizen voters are

24   uniquely at risk because of the SSA data limitations.  I

25   don't think I was clear on that before -- as clear as I

1    could have been.

2           U.S.-born citizens do not face the same level of

3    risk.  Because naturalized citizens are uniquely susceptible

4    to problems with this database, that is a critical component

5    of the irreparable harm here.  It's both an injury for

6    standing and irreparable harm.  And again, because of the

7    time-limited nature of the election, that is what makes the

8    harm irreparable.

9           THE COURT:  Okay.  If you plan to make any changes

10   or withdraw your motion for certification of the subclass,

11   you can do that by tomorrow at midnight.  I don't want to

12   waste more of my time sort of writing an opinion based on

13   the papers I have if you plan to change them.

14          I am going to press pause until I hear from you

15   tomorrow at midnight, and then pick back up.

16          MR. SUS:  Yes.  Understood, Your Honor.

17          THE COURT:  All right.  Let me just make sure.

18          I am going to reserve decision on the motions for

19   PI and class certification.

20          As I said, I will rule on the motion to intervene

21   from Texas.  I have set briefing deadlines.  I am

22   particularly interested in hearing from the government on

23   whether Texas's interests are not adequately represented by

24   the federal defendants.  I am happy to have you address that

25   today or file a brief if you want to.  I certainly don't

1    want to add additional brief-writing to your plate right now

2    if you would prefer to just give me your view on that here.

3            MR. PEZZI:  Unfortunately, we are not prepared to

4    address that at this time.

5            THE COURT:  Okay.  I will rule on that motion when

6    I have the briefing.  I will hold for any additional

7    submissions from the plaintiff.

8            I just want to thank Mr. Pezzi and Ms. Shapiro,

9    who I ordered to work during a federal shutdown when you are

10   not being paid.  I know this is a very difficult time, and I

11   appreciate you filing a brief on difficult issues in a week

12   in the midst of that.  I appreciate it.

13           Okay.  Anything else?

14           MR. SUS:  No, Your Honor.

15           THE COURT:  Okay.  Thanks, everyone.

16           (Whereupon, the proceeding concludes, 4:24 p.m.)

17                        **CERTIFICATE**

18           I, ELIZABETH DAVILA, RPR, FCRR, do hereby certify
     that the foregoing constitutes a true and accurate
19   transcript of my stenographic notes, and is a full, true,
     and complete transcript of the proceedings to the best of my
20   ability.

21           This certificate shall be considered null and void
     if the transcript is disassembled and/or photocopied in any
22   manner by any party without authorization of the signatory
     below.
23
         Dated this 30th day of October, 2025.
24
         /s/ Elizabeth Davila, RPR, FCRR
25       Official Court Reporter

**/**

**/s** [1] - 84:24

**0**

**05** [1] - 27:12

**1**

**1** [5] - 20:15, 42:17, 43:11, 47:13, 47:14
**11** [1] - 62:10
**1100** [1] - 1:19
**12** [4] - 22:11, 62:5, 62:6, 62:9
**1200** [1] - 14:12
**13** [5] - 62:10, 62:11, 62:15, 62:16
**1300** [1] - 14:12
**1331** [1] - 1:9
**1373** [2] - 14:1, 44:18
**1988** [2] - 43:24, 44:9

**2**

**2,000** [1] - 77:12
**20004** [1] - 1:10
**20043** [1] - 1:14
**2006** [2] - 60:18, 60:25
**202** [3] - 1:10, 1:14, 1:20
**2020** [4] - 21:9, 21:10, 25:3, 40:17
**2025** [4] - 1:4, 10:1, 21:7, 84:23
**20530** [1] - 1:19
**23** [1] - 72:24
**25-3501** [2] - 1:3, 2:3
**26** [1] - 22:12
**28** [1] - 1:4
**2:37** [1] - 1:4

**3**

**3** [1] - 61:9
**3.3** [1] - 60:20
**30** [2] - 13:1, 69:16
**30-year-old** [2] - 72:14
**305-8576** [1] - 1:20
**30th** [1] - 84:23
**34553** [1] - 1:13
**390** [1] - 77:14

**4**

**4** [2] - 42:17, 43:12
**408-5565** [1] - 1:10
**42** [1] - 77:19
**48** [1] - 82:15

**4:24** [1] - 84:16

**5**

**5** [3] - 20:15, 42:17, 43:12
**50** [1] - 67:8
**552a(g)** [1] - 67:23

**6**

**6** [4] - 20:18, 20:23
**6's** [1] - 20:25

**7**

**701-1783** [1] - 1:14
**705** [6] - 27:23, 28:7, 28:12, 28:23, 33:8, 46:17
**706** [1] - 27:12

**8**

**8** [1] - 14:1

**9**

**90-day** [1] - 73:17
**90-day-purge-period** [1] - 40:23
**900** [1] - 1:9

**A**

**A-number** [2] - 9:23, 64:23
**AARP** [1] - 38:6
**ability** [2] - 75:17, 84:20
**able** [2] - 70:6, 71:14
**abrogated** [1] - 45:12
**absence** [2] - 37:25, 56:1
**absent** [3] - 42:7, 42:10, 42:15
**absolutely** [2] - 68:13, 74:2
**access** [8] - 8:20, 13:13, 13:18, 13:20, 14:20, 15:1, 22:14, 58:1
**accidentally** [1] - 60:8
**accomplish** [1] - 72:1
**accomplished** [4] - 71:25, 72:4, 72:5, 72:6
**accord** [3] - 34:3, 34:4, 34:19
**according** [1] - 65:18

**accuracy** [2] - 25:5, 60:24
**accurate** [1] - 84:18
**Act** [23] - 17:6, 21:6, 21:11, 21:14, 21:17, 24:6, 43:24, 44:9, 44:15, 57:9, 57:12, 57:14, 57:22, 58:1, 60:16, 68:9, 68:14, 68:20, 69:8, 69:10, 69:18, 70:17
**act** [1] - 44:5
**Act's** [1] - 43:25
**Action** [1] - 1:2
**action** [10] - 3:17, 3:18, 20:14, 38:8, 40:25, 48:4, 58:9, 67:13, 78:11
**actions** [4] - 25:21, 27:11, 41:17, 68:16
**activities** [1] - 80:17
**actors** [1] - 45:14
**Acts** [1] - 47:16
**actual** [1] - 68:1
**ADA** [1] - 44:5
**add** [2] - 74:16, 84:1
**additional** [18] - 11:14, 11:15, 13:6, 19:21, 22:19, 39:23, 47:12, 61:12, 62:1, 62:13, 64:2, 64:19, 72:25, 74:11, 75:21, 81:8, 84:1, 84:6
**address** [5] - 38:18, 75:11, 76:5, 83:24, 84:4
**addressed** [1] - 11:21
**adequately** [1] - 83:23
**adjustments** [1] - 21:8
**Administration** [7] - 6:23, 7:17, 8:22, 11:4, 12:22, 45:3, 61:4
**advance** [1] - 68:6
**affected** [2] - 43:4, 47:17
**affects** [1] - 33:20
**afternoon** [7] - 2:2, 2:8, 2:11, 2:25, 3:4, 3:8, 35:13
**agencies** [5] - 6:22, 11:17, 13:15, 14:4, 15:12
**agency** [14] - 3:23, 5:6, 7:20, 9:15, 14:3, 14:7, 15:9, 15:10, 23:9, 44:2, 48:4, 57:16, 58:9, 78:11
**agency's** [1] - 57:19
**ageorge@**

**democracyforward.org** [1] - 1:15
**aggregates** [1] - 45:2
**aggressively** [1] - 78:13
**ago** [3] - 18:15, 61:5, 70:21
**agree** [10] - 30:13, 33:17, 44:4, 50:9, 50:12, 51:21, 55:17, 58:19, 68:18, 76:5
**agreed** [1] - 55:18
**agreement** [7] - 14:21, 15:2, 15:6, 15:20, 16:5, 65:8, 69:1
**agreements** [5] - 11:17, 14:25, 15:18, 16:8, 67:11
**ahead** [3] - 35:12, 56:16, 62:8, 75:19, 82:22
**aided** [1] - 1:25
**al** [3] - 1:2, 2:4, 2:5
**Alien** [1] - 3:12
**aliens** [1] - 78:15
**allegations** [3] - 23:16, 38:8, 81:16
**allege** [2] - 21:9, 60:2
**alleged** [9] - 3:11, 20:17, 23:12, 66:10, 77:14, 77:17, 78:14, 78:18
**allegedly** [1] - 78:15
**alleging** [1] - 21:16
**allow** [1] - 75:2
**almost** [1] - 70:15
**alone** [4] - 9:19, 61:18, 61:19, 63:25
**alongside** [1] - 43:4
**alternative** [5] - 28:7, 28:23, 29:17, 29:18, 30:1
**alternatively** [1] - 25:21
**alternatives** [1] - 38:16
**AMAN** [1] - 1:12
**amendments** [3] - 44:5, 44:6, 44:9
**American** [2] - 11:9, 23:7
**analyses** [1] - 60:24
**announced** [3] - 77:11, 77:14, 77:19
**announcing** [1] - 51:1
**answer** [17] - 9:2, 12:18, 13:3, 15:25, 16:2, 17:11, 18:2, 18:5, 19:15, 25:24, 39:11, 41:20, 50:7,

64:17, 66:5, 66:6, 72:8
**answered** [1] - 14:1
**answering** [4] - 12:24, 13:10, 19:6, 35:22
**answers** [2] - 18:25, 22:17
**Antideficiency** [1] - 70:17
**anxious** [1] - 39:14
**APA** [24] - 24:8, 25:23, 27:11, 27:12, 27:24, 28:7, 28:10, 28:15, 29:4, 29:20, 32:16, 32:17, 32:23, 33:8, 38:24, 46:5, 47:9, 53:15, 54:21, 58:7, 58:8, 68:10, 68:11, 68:12
**Apologies** [1] - 35:11
**apologies** [4] - 20:20, 20:21, 23:17, 42:25
**appeal** [1] - 76:24
**appear** [2] - 6:10, 7:14
**APPEARANCES** [1] - 1:7
**appeared** [1] - 6:12
**appearing** [1] - 6:8
**appellate** [1] - 55:24
**applicable** [1] - 30:6
**applied** [1] - 7:6
**applies** [5] - 29:19, 44:4, 69:18, 69:20, 73:19
**apply** [2] - 49:24, 74:3
**applying** [1] - 73:18
**appointment** [1] - 65:20
**appreciate** [2] - 84:11, 84:12
**approach** [2] - 2:6, 59:13
**appropriate** [3] - 24:18, 48:5, 60:13
**appropriation** [1] - 71:3
**appropriations** [2] - 70:14, 70:24
**April** [2] - 22:12, 48:6
**Arcia** [1] - 59:19
**area** [1] - 13:5
**argue** [2] - 2:17, 69:22
**argued** [1] - 69:21
**arguing** [4] - 2:12, 2:13, 2:15, 20:6
**argument** [11] - 19:7, 19:13, 29:19, 44:21, 50:2, 57:21, 69:11, 74:11, 74:17, 80:24
**arguments** [12] -

19:21, 29:17, 30:2, 30:5, 54:13, 68:6, 69:13, 70:3, 72:24, 75:3, 75:18, 75:22
**arising** [1] - 21:12
**Arizona** [1] - 59:25
**Article** [2] - 39:15, 59:8
**ascertain** [1] - 14:5
**aside** [6] - 26:2, 26:3, 29:8, 30:23, 32:23, 42:2
**aspects** [1] - 51:17
**assess** [2] - 17:19, 25:13
**assessment** [3] - 21:11, 21:18, 21:20
**Assessment** [1] - 21:13
**assigned** [1] - 5:15
**associated** [1] - 6:15
**associational** [7] - 20:25, 42:5, 43:2, 43:5, 43:9, 43:11, 43:12
**assume** [6] - 13:22, 52:17, 64:21, 67:19, 71:13, 79:10
**assuming** [3] - 39:4, 68:20, 69:20
**asylee** [1] - 11:11
**attached** [1] - 11:22, 15:20, 73:4
**audit** [3] - 60:18, 60:25, 61:1
**audits** [1] - 60:24
**authorities** [2] - 3:15, 65:10
**authority** [5] - 44:15, 45:1, 45:11, 45:14, 45:15
**authorization** [2] - 1:23, 84:22
**authorize** [2] - 44:1, 44:19
**authorized** [3] - 14:8, 15:3, 15:4
**authorizes** [2] - 44:12, 44:18
**automated** [2] - 62:1, 62:13
**automatic** [2] - 11:20, 62:24
**automatically** [3] - 7:25, 8:25, 12:2
**available** [2] - 67:21, 70:25
**aware** [14] - 6:4, 16:16, 17:15, 17:22, 18:13, 18:14, 36:2,

58:1, 61:1, 61:17, 65:22, 66:7, 66:10

**B**

**background** [3] - 49:7, 49:11, 74:7
**backstop** [1] - 67:10
**backstops** [1] - 67:10
**bank** [1] - 44:3
**based** [11] - 27:22, 41:7, 46:25, 52:9, 59:1, 65:6, 67:13, 79:7, 79:12, 79:21, 83:12
**basic** [4] - 13:2, 17:2, 68:7
**basis** [3] - 51:25, 55:22, 60:15
**bear** [1] - 19:15
**became** [1] - 60:21
**BEFORE** [1] - 1:6
**begin** [1] - 4:5
**beginning** [2] - 32:18, 70:2
**behalf** [22] - 3:1, 3:18, 4:25, 20:15, 21:1, 24:9, 24:16, 26:15, 26:19, 27:14, 28:21, 29:2, 30:25, 31:1, 31:15, 31:20, 32:3, 32:6, 32:7, 33:2, 46:8, 54:18
**belong** [1] - 69:3
**below** [1] - 84:22
**benefit** [5] - 14:17, 14:19, 16:4, 34:2, 57:5
**benefits** [3] - 11:6, 69:3
**best** [2] - 76:13, 84:19
**better** [1] - 20:6
**between** [6] - 6:4, 11:17, 14:25, 75:24, 79:15
**beyond** [4] - 32:13, 45:5, 45:11, 81:23
**binding** [1] - 76:9
**birth** [14] - 5:5, 5:14, 5:22, 6:15, 9:6, 9:16, 9:18, 10:2, 10:5, 10:13, 10:19, 10:24, 10:25, 22:15
**bit** [12] - 2:22, 9:12, 11:22, 13:16, 14:12, 18:18, 26:1, 32:22, 43:2, 45:19, 64:22, 69:9
**blanket** [1] - 6:2
**Boasberg** [1] - 20:15

**born** [3] - 7:6, 11:9, 25:3
**Box** [1] - 1:13
**Branch** [1] - 1:18
**branches'** [1] - 45:15
**break** [2] - 24:25, 25:9
**brief** [20] - 11:23, 15:21, 21:9, 26:14, 28:3, 29:19, 30:2, 49:14, 49:23, 56:5, 56:22, 58:17, 72:22, 80:2, 80:19, 80:20, 83:25, 84:1, 84:11
**brief-writing** [1] - 84:1
**briefed** [3] - 20:12, 29:15, 52:5
**briefing** [19] - 4:7, 4:8, 4:13, 5:12, 19:25, 20:7, 20:21, 22:10, 24:2, 25:15, 35:21, 44:21, 44:25, 45:22, 48:2, 53:11, 73:13, 83:21, 84:6
**briefs** [1] - 58:18
**bring** [2] - 21:16, 60:13
**bringing** [6] - 21:25, 25:11, 30:25, 34:18, 41:23, 43:4
**broader** [8] - 31:5, 32:12, 34:18, 36:24, 37:13, 37:15, 48:24, 68:11
**broadly** [1] - 6:3
**Broderick** [1] - 11:22
**brought** [6] - 3:18, 20:14, 25:22, 28:11, 32:3, 54:18
**bucket** [2] - 61:16
**buckets** [1] - 50:4
**bulk** [5] - 2:14, 5:4, 5:9, 28:8, 79:14
**burden** [2] - 24:23, 58:21
**burdens** [2] - 47:2, 47:3
**busy** [1] - 35:18

**C**

**campaign** [2] - 57:1, 57:2
**candidly** [1] - 25:18
**cannot** [1] - 69:21
**capability** [1] - 5:4
**capacity** [1] - 41:24
**captioned** [1] - 59:24
**capture** [1] - 63:2
**captures** [1] - 61:25
**cards** [1] - 69:11

**carried** [1] - 58:21
**Carter** [1] - 59:7
**carves** [1] - 56:18
**CASA** [2] - 25:20, 34:6
**Case** [1] - 2:3
**case** [54] - 3:10, 3:16, 4:9, 4:10, 5:12, 5:13, 6:23, 7:8, 8:19, 11:23, 15:3, 16:6, 19:14, 19:24, 25:22, 25:23, 28:5, 30:18, 35:14, 35:20, 36:2, 36:25, 39:1, 43:3, 48:13, 48:14, 48:15, 48:16, 48:20, 49:9, 49:14, 51:17, 53:24, 55:8, 55:9, 55:10, 55:13, 56:1, 57:9, 57:11, 59:7, 59:12, 59:23, 59:24, 65:16, 68:7, 69:22, 76:8, 76:13, 76:17, 76:18, 76:24, 78:23
**cases** [16] - 25:20, 39:20, 39:21, 40:16, 40:20, 51:3, 51:4, 55:14, 55:22, 56:5, 56:21, 56:22, 57:11, 60:1, 60:6, 66:9
**casting** [1] - 56:19
**categories** [6] - 11:7, 24:10, 24:15, 24:17, 25:1, 25:9
**categorized** [1] - 63:16
**category** [1] - 24:19
**causation** [1] - 78:25
**caveats** [1] - 16:3
**cert** [2] - 52:3, 75:16
**certain** [7] - 3:14, 26:20, 44:1, 68:12, 72:7, 75:9, 75:18
**certainly** [18] - 4:24, 6:3, 6:6, 7:8, 8:17, 13:25, 15:17, 17:8, 18:6, 18:9, 57:20, 57:22, 58:14, 60:15, 69:6, 71:19, 81:18, 83:25
**CERTIFICATE** [1] - 84:17
**certificate** [3] - 9:23, 22:16, 84:21
**certification** [22] - 2:18, 3:25, 5:9, 26:23, 28:13, 28:19, 29:6, 29:8, 29:10, 35:7, 35:10, 36:3, 36:24, 37:15, 37:21, 38:20, 38:23, 63:12,

63:14, 73:8, 83:10, 83:19
**certified** [1] - 34:23
**certify** [17] - 24:11, 26:20, 28:11, 30:10, 34:24, 35:2, 35:5, 36:1, 36:6, 36:7, 37:2, 37:3, 37:16, 37:17, 37:23, 37:24, 84:18
**certifying** [7] - 29:5, 30:18, 35:7, 36:2, 36:16, 37:25
**cetera** [2] - 5:5, 11:1
**chairs** [1] - 2:22
**challenge** [1] - 58:9
**challenged** [1] - 8:18
**challenges** [1] - 3:10
**challenging** [3] - 9:19, 41:10, 78:11
**change** [10] - 5:10, 5:11, 6:19, 16:13, 17:20, 18:4, 18:7, 48:7, 65:20, 83:13
**changed** [3] - 5:19, 10:25, 17:3
**changes** [21] - 4:21, 5:1, 8:18, 16:23, 17:5, 17:7, 17:10, 17:14, 17:16, 17:23, 18:10, 18:17, 21:10, 21:19, 22:25, 23:1, 23:2, 39:7, 69:15, 69:23, 83:9
**checking** [1] - 12:5
**checks** [1] - 61:13
**chief** [3] - 20:15, 74:13, 74:23
**choose** [1] - 74:7
**Circuit** [18] - 39:18, 39:22, 40:2, 43:3, 55:17, 55:18, 56:2, 56:3, 56:20, 57:8, 59:19, 59:21, 59:24, 76:9, 76:23, 77:4, 78:9
**Circuit's** [1] - 39:18
**circumstance** [8] - 7:13, 15:17, 48:12, 58:2, 58:3, 68:13, 71:3, 71:16
**circumstances** [5] - 6:11, 22:13, 29:5, 61:20, 67:11
**cite** [3] - 40:18, 59:12, 80:25
**cited** [8] - 22:10, 48:11, 48:16, 55:15, 56:5, 56:21, 57:11
**citizen** [26] - 7:6, 7:13,

3

10:23, 10:24, 11:2, 12:1, 12:3, 12:24, 13:4, 13:11, 14:19, 22:15, 41:8, 61:5, 61:6, 61:12, 61:16, 63:1, 64:7, 64:13, 65:21, 66:16, 67:3, 67:4, 82:23

**citizens** [37] - 3:19, 4:1, 6:8, 6:10, 6:12, 6:13, 6:19, 6:24, 7:3, 7:5, 7:10, 7:11, 7:18, 7:22, 7:24, 14:17, 22:8, 22:13, 25:3, 25:4, 26:20, 31:23, 31:25, 32:1, 33:19, 34:13, 52:25, 60:8, 60:20, 60:21, 61:7, 63:7, 81:18, 83:2, 83:3

**Citizens** [1] - 1:9
**Citizenship** [1] - 66:14
**citizenship** [16] - 3:13, 6:21, 12:19, 14:5, 16:2, 47:1, 47:6, 52:20, 52:25, 53:19, 60:19, 60:24, 61:24, 63:25, 65:17, 66:12
**Civil** [3] - 1:2, 1:18, 2:3
**claim** [19] - 25:14, 32:24, 44:13, 44:14, 46:5, 47:9, 51:18, 53:11, 53:13, 54:21, 58:7, 58:13, 60:10, 60:11, 60:12, 60:13, 67:22, 68:4, 69:7
**claiming** [1] - 81:21
**claims** [27] - 19:2, 20:2, 20:14, 21:6, 21:12, 21:16, 21:25, 23:16, 24:3, 24:5, 24:6, 24:16, 25:10, 28:8, 28:9, 28:10, 41:7, 41:9, 41:11, 41:18, 41:21, 49:4, 49:25, 52:2, 76:11, 80:14, 81:13
**clarification** [3] - 20:11, 20:13, 26:7
**clarified** [1] - 33:1
**clarify** [6] - 7:4, 22:2, 27:21, 43:10, 47:8, 76:22
**class** [75] - 2:18, 3:17, 3:18, 3:19, 20:14, 21:3, 24:7, 24:9, 24:25, 25:9, 25:21, 26:11, 26:23, 27:6, 27:9, 27:11, 28:12,

28:13, 28:18, 29:5, 29:6, 29:7, 29:9, 30:11, 30:18, 30:25, 31:5, 31:8, 31:11, 31:16, 32:6, 32:7, 32:12, 33:13, 33:14, 33:20, 34:3, 34:24, 35:6, 35:8, 35:9, 36:3, 36:6, 36:8, 36:17, 36:20, 36:21, 36:23, 36:24, 37:3, 37:7, 37:11, 37:13, 37:15, 37:17, 37:23, 37:25, 38:8, 38:19, 38:20, 38:22, 42:7, 42:9, 42:10, 42:15, 42:17, 43:4, 43:16, 52:3, 63:12, 63:13, 63:15, 75:16, 83:19
**classwide** [1] - 30:9
**clause** [2] - 8:2, 45:10
**clear** [15] - 9:22, 13:8, 18:23, 20:22, 23:15, 24:16, 26:9, 38:7, 53:11, 56:5, 69:1, 76:11, 80:13, 82:25
**clearly** [1] - 62:23
**clients** [1] - 53:22
**close** [2] - 72:17, 80:1
**closer** [1] - 14:12
**co** [1] - 2:15
**co-counsel** [1] - 2:15
**colleague** [1] - 35:10
**COLUMBIA** [1] - 1:1
**combine** [1] - 8:12
**coming** [2] - 48:6, 74:20, 80:10
**comment** [15] - 17:6, 42:4, 47:13, 47:15, 47:16, 47:19, 48:8, 49:15, 49:19, 58:6, 58:7, 58:8, 58:10, 69:16
**committed** [1] - 4:4
**committing** [1] - 15:6
**common** [1] - 7:13
**commonly** [1] - 43:5
**compile** [1] - 5:4
**complaint** [12] - 23:12, 24:7, 26:2, 26:3, 26:24, 31:1, 31:4, 31:5, 31:8, 37:7, 37:12
**complete** [4] - 27:1, 34:4, 34:20, 84:19
**completely** [2] - 3:9, 75:4
**compliance** [2] - 15:23, 57:19
**complication** [1] -

25:19
**comply** [2] - 68:19, 72:16
**complying** [1] - 57:5
**component** [1] - 83:4
**comprehensive** [1] - 7:9
**computer** [3] - 1:25, 10:18, 12:2
**Computer** [1] - 43:23
**computer-aided** [1] - 1:25
**concede** [1] - 68:5
**concepts** [1] - 81:22
**concern** [2] - 63:24, 66:19
**concerned** [4] - 63:6, 65:2, 71:5, 74:4
**concerns** [5] - 25:4, 25:7, 63:2, 75:12, 82:1
**concludes** [1] - 84:16
**concrete** [4] - 47:17, 49:20, 51:11, 57:15
**conducted** [1] - 60:23
**confer** [4] - 39:15, 40:12, 56:7, 57:15
**conferring** [1] - 75:7
**confirmation** [1] - 6:3
**confirms** [1] - 15:1
**conflicting** [1] - 62:18
**confused** [3] - 24:12, 27:21, 51:16
**confusing** [3] - 21:24, 45:22, 80:8
**confusion** [1] - 20:21
**Congress** [5] - 18:16, 18:21, 45:12, 57:2, 70:21
**Congress's** [1] - 45:8
**connection** [4] - 33:5, 38:8, 40:24, 41:17
**Connolly** [3] - 2:10, 2:17, 35:11
**CONNOLLY** [11] - 1:12, 35:13, 36:4, 36:9, 36:19, 36:23, 37:4, 37:9, 37:14, 38:4, 38:6
**consent** [1] - 3:24
**consider** [6] - 4:13, 27:14, 29:12, 33:14, 78:24, 82:18
**considered** [2] - 1:22, 84:21
**consistent** [1] - 15:18
**constitutes** [1] - 84:18
**Constitution's** [1] - 45:9
**constitutional** [4] -

41:7, 41:21, 45:15, 67:10
**construed** [1] - 44:1
**consulted** [2] - 63:4, 63:10
**contact** [1] - 66:22
**contacting** [1] - 65:17
**contain** [2] - 3:20, 22:14
**contained** [1] - 3:21
**contains** [1] - 15:21
**contemplate** [3] - 16:9, 74:13, 74:23
**contemplates** [1] - 37:7
**contest** [1] - 68:8
**context** [1] - 59:20
**continue** [3] - 39:3, 75:7, 82:18
**continues** [1] - 62:1
**contributors** [1] - 57:2
**convincing** [1] - 70:15
**cooling** [1] - 73:17
**correct** [22] - 17:8, 21:5, 21:15, 26:8, 27:3, 38:2, 39:25, 40:1, 43:20, 47:11, 48:21, 49:18, 62:3, 62:13, 65:14, 65:17, 65:19, 66:2, 66:23, 71:4, 74:2, 79:11
**corrected** [1] - 67:20
**correspondence** [2] - 73:5, 78:16
**corresponds** [1] - 33:7
**counsel** [5] - 2:15, 22:3, 68:21, 71:4, 81:10
**counsel's** [2] - 2:9, 3:2
**counties** [1] - 52:15
**country** [2] - 11:5, 23:8
**county** [1] - 51:4
**couple** [3] - 34:6, 52:5, 61:22
**course** [2] - 64:4, 73:13
**Court** [12] - 1:24, 1:24, 38:7, 55:20, 58:19, 63:22, 64:3, 80:3, 80:21, 81:23, 84:25
**COURT** [181] - 1:1, 1:7, 2:11, 2:19, 3:4, 3:8, 5:25, 6:7, 6:24, 7:3, 7:21, 8:9, 8:23, 9:5, 10:4, 12:13, 13:12, 13:19, 15:11, 16:11, 17:4, 17:15, 17:22, 19:4, 19:9,

21:3, 21:6, 21:22, 21:24, 22:4, 22:18, 22:22, 23:11, 23:22, 24:1, 24:23, 25:24, 26:3, 26:6, 26:9, 26:13, 26:18, 26:25, 27:4, 27:8, 27:13, 27:19, 27:25, 28:9, 28:14, 28:20, 28:25, 29:11, 29:23, 30:5, 30:12, 30:19, 30:23, 31:5, 31:10, 31:14, 31:18, 31:21, 32:7, 32:13, 32:17, 33:1, 33:4, 33:9, 34:22, 35:2, 35:5, 35:12, 35:17, 36:5, 36:13, 36:21, 37:1, 37:6, 37:10, 37:16, 38:5, 38:13, 38:17, 38:25, 39:9, 39:11, 39:20, 40:19, 41:4, 41:11, 42:2, 42:12, 42:19, 42:22, 43:1, 43:13, 43:17, 43:22, 44:8, 44:11, 44:16, 44:20, 45:16, 46:13, 46:17, 46:20, 47:8, 47:19, 47:24, 48:13, 48:17, 48:22, 48:25, 49:4, 49:6, 49:12, 49:22, 50:4, 51:13, 52:17, 53:2, 53:6, 53:8, 54:4, 54:12, 54:25, 55:15, 56:6, 56:15, 57:14, 58:22, 59:5, 59:18, 60:17, 61:21, 62:6, 62:8, 62:11, 65:12, 65:23, 65:25, 67:15, 67:17, 68:2, 68:18, 69:9, 69:20, 70:5, 71:7, 71:13, 71:23, 72:21, 74:15, 74:19, 75:13, 76:12, 76:15, 76:18, 77:3, 77:7, 78:10, 78:21, 79:1, 79:4, 79:17, 80:4, 80:12, 81:4, 81:24, 82:8, 82:12, 82:16, 82:22, 83:9, 83:17, 84:5, 84:15
**court** [10] - 33:10, 34:23, 35:6, 36:2, 36:14, 36:16, 40:4, 40:8, 40:16, 57:25
**Court's** [3] - 25:20, 34:5, 75:8
**COURTROOM** [1] - 2:2
**courtroom** [1] - 3:9

4

**courts** [4] - 34:4, 34:18, 40:14, 55:24
**covered** [1] - 21:13
**creates** [1] - 57:10
**creating** [1] - 45:13
**creation** [1] - 45:1
**CREW** [1] - 76:16
**criminal** [1] - 51:3
**critical** [1] - 83:4

**D**

**D.C** [10] - 1:5, 43:3, 56:3, 56:20, 57:8, 58:15, 76:9, 76:23, 77:4, 78:9
**damages** [5] - 67:22, 68:1, 68:4, 68:12
**data** [22] - 3:22, 6:4, 15:22, 15:23, 16:14, 17:1, 34:14, 44:3, 45:2, 47:1, 60:19, 60:25, 61:18, 61:19, 62:18, 65:13, 66:12, 66:20, 67:1, 79:5, 79:7, 82:24
**database** [40] - 3:11, 3:12, 4:22, 5:3, 6:1, 6:5, 6:8, 6:10, 6:12, 7:1, 7:4, 7:7, 7:10, 7:11, 7:25, 8:5, 8:10, 8:13, 8:14, 8:15, 8:19, 8:20, 10:25, 13:13, 13:18, 16:12, 16:17, 17:7, 25:5, 32:2, 40:11, 45:1, 57:17, 61:8, 63:16, 63:25, 66:18, 67:21, 72:11, 83:4
**databases** [3] - 22:14, 22:16, 62:2
**date** [15] - 5:5, 5:14, 5:22, 6:15, 9:6, 9:16, 9:18, 10:2, 10:4, 10:13, 10:19, 10:25, 47:7, 66:16, 75:14
**Dated** [1] - 84:23
**Davila** [2] - 1:24, 84:24
**DAVILA** [1] - 84:18
**days** [5] - 18:15, 52:5, 69:17, 70:21, 71:1
**DC** [3] - 1:10, 1:14, 1:19
**deadlines** [1] - 83:21
**deal** [1] - 38:8
**dealing** [1] - 36:23
**death** [1] - 11:5
**deaths** [1] - 11:4
**debunk** [1] - 63:23
**decades** [2] - 16:18,

16:20
**deceased** [5] - 11:3, 12:1, 12:3, 61:25, 63:1
**decide** [11] - 29:1, 39:2, 58:20, 58:22, 58:24, 70:1, 70:2, 71:20, 79:8, 79:21, 81:7
**deciding** [1] - 69:2
**decision** [14] - 24:13, 25:20, 34:6, 38:6, 39:22, 40:2, 40:3, 40:17, 48:10, 69:4, 76:23, 77:5, 79:6, 83:18
**decisions** [2] - 34:7, 39:18
**declaration** [8] - 11:22, 20:18, 20:25, 47:14, 61:21, 62:20, 62:21, 62:23
**dedicate** [1] - 44:20
**defeated** [1] - 43:5
**defeats** [1] - 63:21
**defendant's** [1] - 78:14
**defendants** [4] - 4:25, 45:6, 45:12, 47:1, 47:15, 78:12, 83:24
**DEFENDANTS** [1] - 1:16
**Defendants** [1] - 1:5
**defer** [4] - 79:19, 79:25, 81:6, 81:23
**defined** [3] - 26:23, 31:7, 34:15
**definition** [3] - 38:21, 63:15, 63:17
**delete** [1] - 52:15
**deliver** [1] - 64:15
**delivered** [1] - 64:9
**demanding** [1] - 68:22
**Democracy** [1] - 1:13
**demonstrate** [2] - 20:25, 21:18
**demonstrated** [1] - 54:10
**denial** [1] - 77:2
**denied** [2] - 59:10, 76:23
**denies** [1] - 73:7
**deny** [1] - 59:1
**DEPARTMENT** [1] - 1:4
**Department** [5] - 1:18, 2:4, 3:1, 4:25, 6:22
**deprivation** [1] - 47:21
**deprived** [1] - 58:11
**DEPUTY** [1] - 2:2

**Deputy** [1] - 3:2
**described** [5] - 11:20, 18:20, 47:5, 62:15, 81:10
**description** [1] - 21:10
**designed** [1] - 36:10
**detail** [2] - 9:14, 44:23
**detailed** [1] - 15:22
**determination** [1] - 12:14
**determine** [2] - 29:3, 30:9
**developed** [1] - 51:5
**deviate** [1] - 62:19
**DHS** [32] - 3:13, 3:23, 3:24, 5:14, 5:15, 5:24, 6:13, 6:16, 6:20, 6:25, 7:14, 7:23, 8:14, 8:23, 10:21, 13:19, 13:22, 14:1, 18:15, 18:21, 19:3, 21:19, 45:1, 47:23, 71:5, 71:6, 71:7, 71:12, 71:16, 71:21, 76:5, 79:15
**DHS's** [1] - 8:11
**DHS-specific** [1] - 5:14
**different** [11] - 8:13, 10:6, 13:1, 16:15, 16:16, 19:17, 24:10, 25:1, 25:9, 41:9, 54:21
**difficult** [7] - 19:14, 19:25, 70:15, 72:2, 79:2, 84:10, 84:11
**diligence** [1] - 74:12
**direct** [1] - 60:4
**direction** [1] - 71:22
**directly** [2] - 22:17, 78:17
**Director** [1] - 3:3
**disagree** [3] - 44:11, 49:17, 69:15
**disassembled** [2] - 1:22, 84:21
**disclose** [1] - 23:13
**disclosing** [1] - 57:1
**disclosure** [1] - 57:17
**discrepancies** [1] - 22:19
**discrete** [2] - 76:1
**discussed** [3] - 13:1, 16:3, 40:9
**discussion** [3] - 23:14, 56:13, 73:6
**disentangle** [1] - 81:22
**dismantling** [1] - 72:12

**dispute** [2] - 17:13, 73:3
**disputed** [1] - 61:2
**disputing** [1] - 58:2
**disregarded** [1] - 51:19
**disregards** [1] - 52:10
**dissatisfied** [1] - 58:4
**dissenting** [1] - 55:19
**dissimilar** [1] - 9:9
**distinct** [1] - 25:6
**distinguish** [1] - 75:24
**distinguishing** [1] - 29:16
**distributed** [1] - 1:22
**district** [3] - 34:5, 48:22, 74:1
**DISTRICT** [3] - 1:1, 1:1, 1:7
**District** [12] - 34:19, 48:11, 48:14, 48:15, 48:19, 49:8, 49:13, 55:8, 55:12, 55:13, 55:21, 55:25
**Division** [1] - 1:18
**doctrine** [1] - 40:15
**doctrines** [1] - 76:1
**document** [2] - 29:24, 32:21
**Doe** [11] - 20:18, 20:23, 20:25, 43:11, 43:12, 47:13, 47:14, 73:25
**done** [7] - 19:3, 24:3, 34:5, 36:14, 36:17, 36:22, 51:23
**doubt** [1] - 56:19
**down** [8] - 9:19, 24:20, 25:16, 31:22, 32:3, 33:24, 53:18, 66:3
**draft** [2] - 18:16, 70:21
**drawing** [1] - 23:3
**drew** [1] - 22:6
**dribbled** [1] - 73:13
**due** [7] - 11:5, 17:1, 60:11, 65:9, 67:12, 67:18, 74:11
**dumps** [1] - 79:2
**during** [3] - 19:12, 47:15, 84:9
**dwell** [1] - 23:23

**E**

**E-Government** [4] - 21:13, 21:17, 24:6, 57:9
**ear** [1] - 68:22
**easier** [1] - 71:19
**easily** [1] - 34:16

**edited** [1] - 1:22
**EDVA** [1] - 59:12
**effect** [2] - 11:14, 57:6
**efficient** [1] - 2:21
**efforts** [1] - 60:3
**either** [6] - 45:25, 60:2, 60:12, 62:10, 67:4, 80:19
**election** [9] - 40:22, 40:24, 41:18, 45:7, 45:10, 72:6, 73:22, 73:24, 83:7
**elections** [10] - 45:8, 45:9, 73:18, 73:20, 73:21, 74:3, 74:4, 74:5, 78:15, 78:18
**Eleventh** [5] - 39:18, 39:22, 40:2, 59:18, 59:21
**eligible** [4] - 13:13, 13:18, 13:19, 13:24
**eliminates** [1] - 14:3
**ELIZABETH** [2] - 1:17, 84:18
**Elizabeth** [3] - 1:24, 3:3, 84:24
**email** [1] - 73:5
**emergency** [5] - 4:11, 24:15, 33:10, 51:25, 75:15
**emphasize** [1] - 68:23
**encounters** [1] - 6:20
**encouraged** [2] - 81:15, 81:19
**encouraging** [1] - 81:17
**end** [4] - 7:7, 7:13, 19:19, 56:13
**enforcement** [2] - 60:10, 65:10
**ensure** [4] - 47:6, 61:14, 63:3, 65:14
**enter** [3] - 13:24, 15:2, 53:14
**entered** [2] - 16:8, 55:20
**entire** [6] - 24:9, 25:16, 26:9, 31:22, 32:2, 51:2
**entirely** [1] - 44:13
**entirety** [2] - 31:10, 73:5
**entities** [1] - 13:24
**entitled** [3] - 14:17, 27:11, 33:18
**Entitlement** [1] - 3:12
**entity** [1] - 15:15
**enumerator** [5] - 5:14, 5:21, 9:17, 64:20, 64:24

5

enumerators [1] - 10:1

EPIC [3] - 56:22, 57:10, 59:12

equally [1] - 29:20

equivalent [2] - 33:8, 58:5

error [1] - 10:16

escalated [1] - 12:4

essentially [12] - 5:4, 5:15, 9:17, 10:15, 11:20, 12:2, 12:18, 15:7, 55:19, 58:13, 63:23, 72:10

establish [2] - 49:1, 53:16

established [1] - 44:9

establishing [1] - 59:2

establishment [1] - 44:2

estimated [1] - 60:18

et [5] - 1:2, 2:4, 2:5, 5:5, 11:1

Ethics [1] - 1:9

evidence [1] - 79:12

evolving [1] - 77:10

exact [1] - 12:10

example [22] - 6:14, 6:17, 7:12, 10:23, 11:8, 12:21, 15:13, 18:6, 22:15, 34:22, 35:6, 36:16, 51:12, 56:24, 57:1, 57:18, 57:24, 59:8, 61:3, 70:18, 73:16, 74:6

examples [2] - 17:13, 56:25

exceed [2] - 21:8, 21:10

Excel [1] - 5:5

exception [2] - 48:4, 70:17

exclusion [1] - 51:5

excuse [1] - 38:17

executive [1] - 45:7

exercising [1] - 78:7

existed [1] - 34:1

expect [2] - 36:7, 37:19

expectation [1] - 70:24

expected [1] - 74:6

expecting [1] - 4:12

expedited [1] - 53:10

expeditiously [1] - 82:5

experienced [2] - 46:7, 47:3

experiencing [1] - 46:7

expert [1] - 60:12

explain [1] - 44:23

explaining [1] - 25:17

explicitly [1] - 56:18

extensive [2] - 11:4, 15:21

extent [6] - 14:13, 27:6, 27:8, 60:7, 69:25, 81:21

extra [1] - 57:6

extraordinary [3] - 20:9, 52:7, 72:19

extremely [1] - 80:8

**F**

face [2] - 73:19, 83:2

facing [3] - 46:24, 47:2, 78:6

fact [15] - 9:11, 15:19, 22:9, 31:11, 31:12, 37:12, 38:9, 50:18, 61:13, 63:24, 67:1, 67:3, 73:11, 81:11, 81:14

factors [2] - 24:24, 70:12

facts [11] - 4:18, 19:6, 22:20, 68:13, 74:7, 77:21, 77:25, 79:25, 80:24, 80:25, 81:2

factual [3] - 4:16, 77:10, 80:21

fail [1] - 44:13

fails [2] - 44:14, 59:16

failure [6] - 23:13, 49:15, 58:4, 59:3, 68:19, 70:11

fair [3] - 16:21, 19:12, 43:2

fairly [1] - 23:6

fall [1] - 13:5

Familia [1] - 39:19

familiar [6] - 3:10, 10:17, 18:19, 41:14, 59:23, 76:18

famous [1] - 56:24

favor [1] - 34:17

FBI [2] - 77:18, 77:20

FCRR [3] - 1:24, 84:18, 84:24

February [1] - 23:5

federal [24] - 3:22, 13:15, 14:2, 14:13, 15:4, 15:24, 40:22, 41:3, 41:10, 41:13, 57:16, 60:16, 66:15, 67:1, 67:7, 67:9, 69:5, 73:18, 73:20, 73:22, 81:13, 81:14,

83:24, 84:9

Federal [5] - 1:18, 23:20, 70:18, 70:19, 70:25

few [4] - 2:15, 17:18, 18:15, 70:21

figure [5] - 14:18, 24:4, 32:22, 39:1, 52:22

file [10] - 37:3, 80:5, 80:6, 80:8, 82:2, 82:3, 82:10, 82:11, 82:16, 83:25

filed [10] - 4:6, 24:1, 24:7, 29:23, 30:13, 35:2, 37:2, 79:20, 80:20, 82:4

files [1] - 23:7

filing [5] - 77:23, 80:1, 80:16, 80:22, 84:11

filings [1] - 18:20

final [3] - 53:23, 53:24, 82:20

finances [1] - 57:1

first [25] - 4:19, 5:25, 6:3, 6:7, 6:9, 9:25, 10:10, 10:11, 18:1, 18:3, 20:13, 23:4, 25:8, 27:22, 32:15, 50:5, 50:9, 52:12, 57:13, 58:24, 59:6, 62:3, 70:15, 75:24, 79:4

five [1] - 61:5

flag [1] - 77:1

Florida [2] - 40:7, 59:24

focus [2] - 5:11, 32:24

FOIA [3] - 56:18, 56:19, 56:24

folks [1] - 61:15, 70:16

follow [3] - 15:6, 49:8, 55:9

followed [4] - 13:21, 17:5, 47:16, 67:13

following [2] - 66:25, 67:1

food [2] - 14:16, 69:2

FOR [3] - 1:1, 1:8, 1:16

forced [2] - 52:24, 53:23

foregoing [1] - 84:18

foremost [1] - 57:13

form [3] - 51:6, 80:4, 80:10

forth [1] - 66:25

forthcoming [1] - 71:10

Forward [1] - 1:13

Foundation [1] - 1:13

FOUNTAIN [1] - 1:12

four [2] - 4:10, 24:24

fours [1] - 57:12

Fourth [2] - 55:17, 55:18

free [1] - 82:14

front [6] - 32:10, 47:4, 77:25, 80:3, 80:21, 81:2

frustrated [3] - 35:19, 39:15, 60:2

fulfill [1] - 69:5

full [2] - 33:14, 84:19

function [2] - 13:2, 17:2

functionality [3] - 6:5, 22:6, 79:14

fundamental [3] - 20:12, 40:14, 78:7

**G**

general [2] - 52:14, 61:2

generally [1] - 49:15

George [2] - 2:10, 2:15

GEORGE [1] - 1:12

gist [1] - 34:8

given [5] - 12:10, 12:15, 16:13, 20:8, 71:2

Google [2] - 13:22, 14:3

governed [1] - 67:7

Government [4] - 21:13, 21:17, 24:6, 57:9

government [39] - 4:17, 8:21, 14:3, 14:4, 15:13, 22:3, 34:17, 41:13, 44:12, 45:17, 50:12, 51:19, 52:10, 53:10, 55:1, 55:18, 57:24, 58:2, 58:12, 60:16, 60:23, 66:15, 66:18, 68:7, 70:4, 70:6, 71:13, 72:1, 72:11, 72:16, 74:24, 75:3, 75:9, 76:3, 81:6, 81:13, 81:14, 82:17, 83:22

government's [7] - 3:10, 11:23, 18:24, 41:10, 68:19, 75:11, 75:21

governments [3] - 13:14, 13:18, 16:15

governs [1] - 15:1

grant [10] - 29:4, 29:8, 30:17, 31:21, 33:19, 34:8, 34:10, 34:21, 51:13, 52:11

granted [2] - 20:16, 29:2

granting [1] - 32:13

grants [1] - 57:17

granular [1] - 9:13

gray [1] - 13:5

ground [1] - 19:7

grounds [2] - 55:17, 58:10

group [7] - 25:11, 25:13, 33:20, 38:11, 50:5, 63:15

groups [1] - 60:1

guys [2] - 2:21, 73:2

**H**

hamper [1] - 75:17

hampered [1] - 73:14

hand [1] - 37:23

hang [1] - 3:6

happy [2] - 77:22, 83:24

hard [11] - 17:19, 19:24, 20:4, 70:13, 72:12, 76:25, 81:11

harm [56] - 24:14, 25:12, 45:17, 45:18, 45:21, 45:23, 45:25, 47:10, 48:3, 48:18, 48:23, 49:1, 49:16, 50:11, 50:17, 50:22, 51:14, 51:15, 52:2, 53:6, 53:7, 53:16, 53:22, 54:6, 54:8, 54:10, 54:11, 54:19, 54:22, 55:5, 56:4, 56:9, 58:16, 58:21, 58:23, 59:3, 59:6, 59:11, 59:17, 64:5, 76:2, 76:10, 76:14, 76:15, 76:20, 77:8, 78:1, 78:4, 78:6, 78:8, 78:22, 79:18, 82:1, 83:5, 83:6, 83:8

harmed [4] - 52:23, 53:20, 53:23, 54:4, 68:3, 68:19

harms [10] - 20:17, 39:23, 40:4, 42:7, 47:5, 47:9, 47:11, 47:12, 50:17, 80:14

head [1] - 41:15

hear [5] - 4:8, 4:20, 19:9, 55:1, 83:14

**heard** [5] - 4:12, 55:4, 56:8, 76:17, 81:25
**HEARING** [1] - 1:6
**hearing** [5] - 4:11, 35:23, 53:13, 76:3, 83:22
**heavily** [2] - 43:25, 60:18
**heightened** [1] - 54:11
**heightens** [1] - 52:13
**held** [3] - 34:18, 34:19, 57:8
**help** [2] - 19:13, 36:11
**helpful** [4] - 13:12, 19:7, 26:1, 36:15
**helps** [1] - 24:4
**Henderson** [1] - 76:24
**hereby** [1] - 84:18
**hesitant** [5] - 6:2, 8:16, 62:19, 70:9, 71:17
**hesitate** [1] - 72:9
**hide** [1] - 69:11
**higher** [1] - 58:17
**highly** [1] - 40:15
**hint** [1] - 36:13
**historical** [1] - 79:15
**historically** [1] - 79:12
**hold** [3] - 81:1, 82:9, 84:6
**holdings** [1] - 59:8
**Homeland** [1] - 2:4
**HOMELAND** [1] - 1:4
**Honor** [75] - 2:2, 2:8, 2:24, 2:25, 4:24, 5:2, 8:2, 9:13, 11:20, 12:17, 13:17, 13:25, 15:16, 18:5, 18:13, 19:8, 20:20, 21:5, 21:15, 22:2, 22:9, 22:17, 22:21, 23:2, 23:17, 25:18, 30:8, 35:13, 36:11, 38:15, 38:22, 39:8, 39:17, 43:10, 44:10, 44:24, 46:11, 48:21, 49:18, 50:3, 50:24, 53:21, 54:9, 56:11, 57:20, 58:19, 58:25, 59:1, 59:23, 62:4, 67:16, 69:25, 70:2, 71:8, 71:19, 72:3, 72:15, 73:7, 74:18, 75:6, 75:23, 76:11, 77:1, 77:8, 77:25, 78:12, 78:25, 79:11, 79:24, 81:1, 81:7, 82:15, 82:20, 83:16, 84:14
**HONORABLE** [1] - 1:6
**hope** [1] - 81:25

**host** [1] - 57:3
**hours** [1] - 82:15
**House** [1] - 73:24
**human** [1] - 9:20

**I**

**identification** [1] - 3:21
**identified** [10] - 39:24, 40:4, 40:7, 40:10, 51:7, 52:16, 60:19, 66:8, 77:12, 77:20
**identifier** [2] - 9:18, 10:5
**identifies** [1] - 80:16
**identify** [4] - 2:7, 36:10, 50:4, 75:11
**identities** [1] - 74:9
**ifs** [1] - 52:22
**ignore** [3] - 30:14, 37:12, 49:6
**ignoring** [1] - 49:10
**Ill** [2] - 39:15, 59:8
**illegal** [1] - 78:14
**imagine** [6] - 15:17, 41:6, 68:6, 68:13, 69:22, 81:11
**immediate** [1] - 48:9
**Immigration** [1] - 66:14
**immigration** [10] - 3:14, 11:7, 11:11, 12:14, 12:16, 12:20, 13:2, 14:6, 66:12, 66:17
**imminence** [1] - 52:14
**imminent** [1] - 78:2
**impact** [3] - 21:11, 21:18, 21:20
**Impact** [1] - 21:13
**impacted** [2] - 39:7, 47:18
**impeding** [1] - 50:17
**impinging** [1] - 45:14
**implement** [1] - 63:15
**implementation** [1] - 52:13
**implicates** [1] - 45:8
**important** [12] - 11:25, 14:7, 18:23, 19:24, 26:6, 40:13, 56:25, 57:3, 62:10, 64:4, 69:12, 70:4
**impossible** [1] - 32:22
**improving** [1] - 72:14
**inability** [1] - 42:3
**inaccurate** [2] - 63:24, 67:18
**inaccurately** [1] -

60:19
**include** [3] - 7:5, 12:7, 80:18
**included** [3] - 23:12, 25:3, 47:14
**includes** [1] - 25:2
**including** [7] - 7:22, 8:21, 23:5, 40:17, 59:3, 70:13, 81:15
**inconclusive** [3] - 11:14, 12:16, 65:6
**incorrect** [2] - 52:19, 79:5
**incorrectly** [3] - 41:16, 52:21, 63:16
**increased** [1] - 7:18
**incredibly** [1] - 35:18
**incurred** [1] - 53:5
**independent** [1] - 64:3
**independently** [3] - 21:16, 40:5, 78:5
**Indiana** [3] - 15:1, 15:2, 15:21
**indicating** [1] - 61:24
**indication** [1] - 77:2
**indicator** [1] - 63:25
**indistinguishable** [1] - 58:7
**individual** [12] - 10:9, 14:6, 27:15, 27:16, 46:7, 46:14, 46:15, 46:18, 47:9, 60:1, 61:24, 73:12
**individually** [1] - 27:10
**individuals** [11] - 27:13, 28:15, 28:16, 37:10, 39:12, 39:14, 46:6, 54:20, 57:16, 65:5, 77:19
**infer** [1] - 71:9
**inform** [1] - 74:25
**information** [30] - 3:21, 6:1, 6:16, 6:17, 8:20, 12:15, 13:6, 13:23, 14:10, 15:12, 15:14, 22:15, 23:21, 25:5, 47:22, 56:24, 57:6, 57:23, 61:10, 61:25, 62:14, 66:2, 68:15, 68:25, 69:6, 72:25, 74:25, 75:2, 75:9, 75:17
**informational** [18] - 23:13, 23:18, 23:19, 47:21, 47:25, 55:5, 55:7, 56:4, 56:6, 56:11, 57:5, 57:10, 57:15, 58:11, 75:25, 76:5, 76:10, 76:21

**injunction** [18] - 2:14, 2:17, 22:11, 26:5, 26:10, 26:19, 28:24, 29:21, 29:22, 29:25, 30:1, 33:23, 38:2, 38:9, 53:15, 55:23, 59:15, 63:23
**injuries** [24] - 20:3, 23:13, 24:18, 25:11, 39:13, 46:12, 46:20, 47:20, 47:21, 47:25, 48:19, 49:7, 49:24, 50:4, 50:8, 54:18, 54:20, 55:6, 59:10, 59:20, 76:5, 76:6, 77:9
**injury** [20] - 39:5, 42:3, 46:1, 46:6, 46:9, 47:13, 48:9, 50:6, 52:14, 53:5, 55:6, 55:7, 56:6, 56:11, 75:25, 76:10, 76:21, 81:20, 83:5
**inputting** [1] - 12:5
**inquiry** [2] - 14:2, 59:6
**insignificant** [1] - 69:23
**inspection** [1] - 70:25
**instead** [3] - 5:8, 49:8, 64:18
**integration** [3] - 6:4, 7:16, 17:1
**integrity** [1] - 1:21
**intend** [1] - 4:7
**intention** [1] - 26:12
**intentionally** [1] - 72:11
**interacted** [3] - 6:25, 7:22, 9:10
**interacting** [1] - 10:17
**interactions** [1] - 6:13
**interagency** [1] - 3:22
**interest** [1] - 49:20
**interested** [3] - 9:13, 57:18, 83:22
**interests** [3] - 47:17, 57:15, 83:23
**intertwined** [1] - 2:20
**intervene** [2] - 4:5, 83:20
**introduced** [1] - 25:19
**investigate** [2] - 52:21, 79:6
**investigated** [1] - 50:19
**investigation** [4] - 77:16, 77:20, 78:2, 78:7
**investigations** [1] - 46:25

**involved** [1] - 70:18
**involvement** [1] - 75:8
**involving** [1] - 56:22
**irreparable** [55] - 24:14, 25:12, 45:16, 45:18, 45:21, 45:23, 45:25, 46:1, 46:6, 46:9, 47:10, 48:3, 48:18, 48:23, 49:1, 49:16, 50:11, 50:22, 51:14, 51:15, 52:2, 53:6, 53:7, 53:16, 53:22, 54:6, 54:8, 54:19, 54:22, 55:5, 56:9, 58:16, 58:21, 58:23, 59:3, 59:6, 59:11, 59:16, 64:4, 76:2, 76:10, 76:14, 76:15, 76:20, 77:8, 78:1, 78:3, 78:6, 78:8, 78:22, 79:18, 82:1, 83:5, 83:6, 83:8
**irreparably** [3] - 52:23, 53:20, 53:23
**issue** [13] - 4:22, 5:1, 18:17, 30:18, 45:25, 51:25, 66:11, 70:1, 70:3, 72:22, 73:5, 73:10, 74:21
**issued** [1] - 61:5
**issues** [9] - 2:16, 2:20, 19:14, 20:1, 36:25, 49:2, 52:4, 63:13, 84:11
**iteration** [2] - 22:9, 40:11
**itself** [3] - 11:21, 36:8, 61:11

**J**

**jconnolly@ democracyforward. org** [1] - 1:15
**JENNIFER** [1] - 1:12
**Jennifer** [1] - 2:10
**jibe** [1] - 81:16
**job** [4] - 20:4, 36:12, 66:14, 79:2
**John** [3] - 20:15, 20:18
**JUDGE** [1] - 1:7
**Judge** [6] - 20:15, 40:17, 59:7, 76:17, 76:24, 77:3
**judge's** [2] - 74:13, 74:23
**judges** [1] - 34:19
**judgment** [4] - 53:11,

6

53:13, 53:24
**jurisdiction** [3] - 14:6, 14:18, 15:5
**jurisdictions** [3] - 14:14, 14:22, 16:8
**jurisprudence** [1] - 56:13
**Justice** [3] - 1:18, 3:1, 4:25
**justifies** [1] - 46:10

## K

**key** [1] - 9:15
**kick** [1] - 69:17
**kicks** [1] - 70:22
**kind** [2] - 6:17, 72:19
**knowledge** [2] - 12:17, 18:2
**known** [2] - 3:11, 5:16
**knows** [2] - 53:21, 69:11

## L

**label** [1] - 50:16
**laborious** [1] - 18:18
**lack** [5] - 49:19, 59:2, 59:11, 59:16, 70:14
**lacking** [1] - 45:11
**laid** [1] - 22:20
**landscape** [1] - 77:10
**language** [1] - 62:20
**lapse** [1] - 70:23
**large** [4] - 5:7, 7:24, 10:8, 63:2
**largely** [1] - 21:7
**larger** [1] - 37:7
**last** [5] - 8:2, 54:15, 72:21, 74:21
**law** [19] - 14:8, 15:3, 15:5, 41:2, 43:3, 51:10, 51:22, 52:13, 52:14, 60:9, 60:12, 65:9, 65:10, 67:1, 67:8, 67:9, 67:10, 69:6, 76:8
**lawful** [3] - 3:19, 67:17, 78:3
**laws** [1] - 15:24
**lawsuit** [5] - 18:17, 43:4, 43:8, 60:15, 60:16
**lawsuits** [1] - 39:21
**lead** [1] - 64:1
**League** [3] - 2:3, 20:24, 21:1
**LEAGUE** [1] - 1:2
**learned** [2] - 65:15, 74:9

**least** [7] - 8:6, 25:21, 59:14, 68:12, 73:10, 80:1, 80:2
**lectern** [2] - 2:7, 71:10
**left** [1] - 55:3
**legal** [3] - 61:3, 67:6, 80:24
**legally** [4] - 17:12, 17:24, 18:25, 19:1
**less** [6] - 7:12, 8:1, 16:25, 56:17, 60:16, 62:9
**letters** [1] - 70:20
**letting** [1] - 57:6
**level** [1] - 83:2
**likelihood** [1] - 59:2
**limit** [1] - 38:19
**limitation** [3] - 5:18, 14:7, 14:9
**limitations** [2] - 60:3, 82:24
**limited** [3] - 33:15, 70:13, 83:7
**limits** [1] - 19:19
**line** [2] - 50:9, 53:18
**lines** [1] - 11:1
**link** [2] - 71:24, 78:10
**linked** [3] - 14:23, 15:21, 16:14
**linking** [2] - 7:23, 79:15
**list** [1] - 46:24
**listed** [1] - 61:8
**literally** [1] - 14:24
**litigate** [1] - 74:7
**live** [1] - 9:3
**lives** [1] - 73:25
**local** [13] - 3:14, 13:14, 13:17, 14:3, 14:13, 14:14, 15:5, 16:8, 16:14, 40:24, 41:17, 74:3, 74:5
**logical** [2] - 30:20, 50:1
**login** [1] - 15:8
**look** [4] - 9:9, 49:24, 72:10, 76:19
**looking** [2] - 8:11, 61:19
**looks** [4] - 24:8, 41:16, 52:9, 81:9
**loop** [1] - 27:1
**losing** [1] - 55:21
**lost** [1] - 56:1
**Louisiana** [1] - 77:14
**lump** [2] - 24:19, 28:1
**lumped** [1] - 20:2
**lumps** [1] - 25:15

## M

**machine** [1] - 1:25
**maintained** [2] - 5:24, 8:7
**maintenance** [2] - 44:2, 46:24
**managing** [1] - 81:12
**manner** [3] - 1:23, 20:22, 84:22
**manual** [6] - 12:4, 12:6, 62:15, 62:17, 62:24, 63:10
**March** [1] - 48:6
**marked** [1] - 61:24
**Maryland** [11] - 48:11, 48:14, 48:16, 48:19, 49:9, 49:13, 55:8, 55:12, 55:13, 55:21, 55:25
**master** [1] - 23:7
**match** [2] - 10:15, 10:20
**matches** [1] - 61:23
**matching** [1] - 44:6
**Matching** [1] - 43:23
**material** [3] - 80:3, 80:21, 81:21
**matter** [1] - 71:1
**mean** [58] - 8:25, 9:1, 10:10, 13:8, 13:19, 15:20, 15:25, 17:21, 18:8, 18:9, 27:8, 29:13, 30:12, 37:17, 37:18, 48:25, 50:15, 50:17, 50:19, 50:20, 52:9, 54:6, 55:25, 56:17, 56:20, 56:22, 57:19, 58:4, 58:6, 58:16, 58:18, 60:6, 61:2, 61:15, 62:22, 63:20, 64:1, 67:11, 68:5, 68:7, 68:17, 68:21, 68:24, 72:4, 72:9, 72:10, 72:15, 73:4, 73:7, 73:16, 73:18, 73:22, 74:1, 75:1, 79:9, 79:19, 82:5
**means** [4] - 6:24, 7:11, 65:2, 65:3
**meant** [1] - 42:15
**measures** [1] - 47:6
**mechanism** [3] - 65:12, 65:16, 65:19
**meet** [1] - 50:10
**member** [4] - 20:23, 21:2, 43:11, 43:12
**members** [20] - 41:24, 42:6, 42:7, 42:10,

42:12, 42:15, 42:16, 42:22, 42:23, 43:5, 43:7, 43:13, 43:14, 43:17, 43:18, 43:19, 43:20, 43:21
**memorandum** [1] - 22:11
**mere** [1] - 63:24
**merely** [1] - 21:17
**merges** [1] - 45:2
**merits** [9] - 17:25, 49:2, 51:19, 51:21, 53:12, 53:13, 53:24, 53:25, 59:2
**message** [1] - 12:16
**messy** [1] - 35:20
**Mi** [1] - 39:19
**middle** [1] - 54:6
**midnight** [4] - 82:11, 82:17, 83:11, 83:15
**midst** [2] - 80:20, 84:12
**midterms** [2] - 53:25, 54:2
**might** [19] - 6:18, 10:12, 10:22, 10:23, 11:3, 11:6, 11:13, 18:2, 19:16, 50:11, 50:18, 50:20, 51:14, 51:21, 57:6, 60:14, 61:18, 75:6, 76:25
**million** [2] - 60:20, 61:9
**mind** [1] - 20:10
**minimizing** [1] - 39:13
**minimum** [1] - 67:24
**minute** [2] - 3:6, 24:12
**missing** [5] - 20:19, 23:24, 48:9, 54:13, 69:14
**mistaken** [1] - 67:2
**misunderstood** [1] - 42:15
**MoA** [4] - 13:20, 13:23, 13:24, 15:15
**MoAs** [5] - 15:11, 23:13, 23:18, 24:6, 67:15
**modern** [1] - 56:12
**modernizing** [1] - 72:13
**Monday** [1] - 82:18
**money** [4] - 67:22, 67:25, 68:4, 68:12
**month** [1] - 8:23
**months** [1] - 48:7
**mooted** [1] - 19:3
**Moss** [1] - 59:7
**most** [13] - 2:20, 5:12, 5:17, 14:23, 14:24,

17:4, 20:22, 56:24, 58:18, 59:22, 63:6, 76:16
**mostly** [1] - 16:6
**MOTION** [1] - 1:6
**motion** [83] - 2:14, 2:16, 2:17, 4:5, 4:7, 4:11, 4:13, 5:1, 20:17, 23:14, 26:10, 26:23, 27:14, 28:2, 28:6, 28:19, 28:21, 28:22, 29:6, 29:14, 29:17, 29:18, 29:20, 29:22, 29:24, 30:1, 30:24, 30:25, 31:15, 31:19, 32:3, 32:10, 32:11, 32:12, 32:24, 33:6, 34:24, 34:25, 35:2, 35:8, 35:24, 36:3, 36:8, 37:2, 37:3, 37:17, 37:20, 38:2, 38:9, 38:20, 38:23, 46:1, 46:8, 54:17, 54:23, 59:1, 59:10, 59:16, 63:12, 63:14, 73:8, 73:14, 73:15, 75:15, 75:16, 79:20, 80:5, 80:7, 80:15, 80:23, 80:25, 81:2, 81:7, 82:6, 82:19, 83:10, 83:20, 84:5
**motions** [4] - 30:3, 33:10, 75:22, 83:18
**move** [7] - 26:15, 27:18, 27:23, 36:24, 43:22, 45:17, 50:6
**moved** [7] - 3:25, 7:25, 8:4, 24:8, 35:5, 36:6, 37:24
**moves** [1] - 81:11
**moving** [4] - 24:11, 24:15, 38:11, 82:5
**MR** [169] - 2:8, 2:13, 2:24, 2:25, 4:24, 6:2, 6:9, 7:2, 7:8, 8:1, 8:16, 9:1, 9:8, 10:6, 12:17, 13:16, 13:25, 15:16, 16:16, 17:8, 17:18, 18:5, 19:8, 20:20, 21:5, 21:15, 21:23, 22:1, 22:5, 22:21, 22:23, 23:17, 23:25, 24:22, 25:18, 25:25, 26:4, 26:8, 26:12, 26:15, 26:22, 27:3, 27:6, 27:10, 27:18, 27:23, 28:6, 28:10, 28:18, 28:22, 29:3, 29:22, 30:4,

8

30:8, 30:16, 30:22,
31:3, 31:7, 31:12,
31:17, 31:19, 32:5,
32:9, 32:15, 32:25,
33:3, 33:7, 33:22,
34:25, 35:4, 35:9,
38:15, 38:18, 39:8,
39:10, 39:17, 40:1,
41:1, 41:6, 42:1,
42:11, 42:14, 42:21,
42:24, 43:10, 43:15,
43:19, 44:6, 44:10,
44:14, 44:17, 44:24,
46:11, 46:14, 46:19,
46:21, 47:12, 47:21,
48:10, 48:15, 48:21,
48:23, 49:3, 49:5,
49:10, 49:18, 50:3,
50:24, 52:12, 52:24,
53:4, 53:7, 53:21,
54:9, 54:24, 55:12,
55:16, 56:11, 56:17,
57:20, 58:25, 59:7,
59:21, 61:1, 62:4,
62:7, 62:9, 62:12,
62:19, 64:10, 64:17,
65:15, 65:24, 66:5,
67:16, 67:24, 68:5,
68:21, 69:18, 69:21,
70:9, 71:8, 71:15,
72:2, 73:4, 74:18,
75:6, 75:23, 76:14,
76:16, 76:22, 77:6,
77:8, 78:12, 78:24,
79:3, 79:11, 79:24,
80:11, 80:15, 81:6,
82:7, 82:11, 82:15,
82:20, 82:23, 83:16,
84:3, 84:14
**MS** [10] - 35:13, 36:4,
36:9, 36:19, 36:23,
37:4, 37:9, 37:14,
38:4, 38:6
**musical** [1] - 2:22
**must** [1] - 52:15

**N**

**name** [13] - 5:13, 5:22,
6:15, 9:6, 9:16, 9:18,
10:2, 10:4, 10:12,
10:19, 10:25, 11:1,
75:2
**named** [3] - 29:4,
29:9, 42:17
**names** [2] - 5:5, 57:2
**narrow** [1] - 9:19
**narrower** [1] - 68:10
**national** [2] - 11:9,
44:3

**natural** [2] - 7:6, 25:3
**natural-born** [2] - 7:6,
25:3
**naturalization** [4] -
9:23, 12:8, 63:8
**naturalized** [14] - 4:1,
7:5, 25:4, 26:20,
31:23, 31:25, 32:1,
33:19, 34:13, 41:8,
63:7, 81:18, 82:23,
83:3
**nature** [1] - 83:7
**nearly** [1] - 72:7
**necessarily** [5] - 7:10,
17:11, 31:6, 59:4,
75:1
**necessary** [3] - 30:10,
34:3, 34:10
**need** [26] - 2:22, 4:2,
14:18, 17:24, 25:13,
28:11, 28:13, 28:18,
29:1, 29:6, 29:7,
30:9, 45:24, 49:2,
51:14, 52:17, 53:15,
54:12, 58:1, 58:22,
58:24, 66:7, 66:8,
66:21, 67:24, 82:3
**needing** [1] - 67:13
**needle** [1] - 81:11
**needs** [2] - 58:20,
80:12
**never** [3] - 6:20, 7:9,
71:19
**new** [3] - 6:6, 80:5,
80:15
**newer** [1] - 61:1
**next** [7] - 10:7, 21:6,
47:20, 53:25, 54:2,
62:16, 73:23
**Nikhel** [1] - 2:9
**NIKHEL** [1] - 1:8
**Ninth** [2] - 39:17,
59:24
**non** [2] - 60:20, 61:24
**non-U.S** [2] - 60:20,
61:24
**noncitizen** [8] - 11:8,
25:6, 51:7, 52:16,
61:16, 64:9, 64:15,
78:18
**noncitizens** [7] -
39:24, 40:10, 61:8,
77:12, 77:15, 77:18,
81:20
**none** [2] - 19:11, 67:4
**nonimmigrant** [1] -
11:10
**notable** [2] - 56:2,
59:22
**note** [3] - 10:10,

11:25, 43:25
**notes** [1] - 84:19
**nothing** [1] - 63:8
**notice** [15] - 17:6,
42:4, 47:13, 47:15,
47:16, 47:19, 48:8,
49:15, 49:19, 58:5,
58:7, 58:8, 58:10,
58:12, 69:16
**notification** [4] -
10:16, 18:15, 18:20,
18:21
**nsus@**
**citizensforethics.**
**org** [1] - 1:11
**null** [2] - 1:22, 84:21
**number** [25] - 5:15,
5:16, 5:18, 5:20,
5:23, 6:15, 7:18,
7:24, 9:7, 9:17, 9:21,
9:23, 9:24, 9:25,
10:13, 10:14, 10:20,
11:1, 13:9, 19:12,
52:22, 61:7, 64:23
**numbers** [6] - 5:7,
9:22, 9:24, 12:8,
13:8, 60:22
**numerous** [2] - 23:12,
78:16
**NVRA** [3] - 40:22,
41:15, 59:20
**NW** [2] - 1:9, 1:19

**O**

**objection** [1] - 81:4
**obligated** [1] - 74:12
**obligates** [1] - 14:1
**obligation** [4] - 15:23,
61:3, 68:25, 69:5
**obtain** [2] - 57:23,
67:25
**obviously** [15] - 7:16,
10:7, 17:11, 18:18,
36:11, 56:3, 57:13,
58:16, 59:23, 68:9,
68:11, 69:25, 71:21,
72:15, 75:1
**October** [2] - 1:4,
84:23
**odd** [1] - 71:15
**OF** [4] - 1:1, 1:2, 1:4,
1:6
**offer** [1] - 74:11
**office** [2] - 40:8, 70:18
**Official** [1] - 1:24
**official** [2] - 60:14,
84:25
**officials** [2] - 60:10,
70:21

**often** [3] - 6:13, 10:11,
78:9
**Ohio** [1] - 77:17
**OIG** [1] - 60:18
**old** [3] - 9:22, 48:7,
71:24
**OMB** [3] - 18:20,
70:22, 76:16
**once** [1] - 15:5
**one** [45] - 3:6, 5:2, 5:3,
5:8, 5:11, 8:5, 9:20,
10:1, 12:4, 13:2,
14:24, 20:13, 22:2,
22:23, 29:23, 30:6,
30:14, 32:21, 37:22,
38:19, 38:21, 43:15,
46:13, 47:13, 47:20,
48:13, 49:8, 49:13,
54:7, 54:15, 55:15,
55:16, 55:17, 55:19,
55:20, 57:10, 58:16,
61:19, 63:13, 70:7,
72:21, 81:19, 82:20
**one's** [1] - 65:17
**one-by-one** [1] - 5:8
**ones** [1] - 69:2
**online** [3] - 5:6, 9:9,
9:10
**operating** [1] - 4:18
**operation** [1] - 40:7
**operational** [1] - 33:25
**operationalized** [1] -
56:21
**opinion** [3] - 76:25,
77:4, 83:12
**opinions** [1] - 55:19
**OPM** [1] - 59:12
**opportunity** [3] -
69:13, 75:20, 80:18
**opposite** [1] - 65:4
**options** [2] - 38:18,
38:21
**oral** [2] - 19:12, 19:13
**order** [14] - 2:23,
26:18, 27:17, 27:20,
34:8, 38:7, 45:7,
47:4, 52:1, 71:23,
72:17, 74:13, 74:23,
75:10
**ordered** [4] - 4:7,
72:15, 75:15, 84:9
**orders** [1] - 55:23
**organization** [4] -
41:25, 43:3, 43:17,
43:19
**organizational** [7] -
3:17, 4:3, 41:22,
41:23, 42:3, 42:22,
43:14
**organizations** [3] -

42:6, 43:21, 57:18
**organizations'** [1] -
43:7
**organized** [1] - 20:1
**originated** [1] - 3:22
**otherwise** [2] - 47:2,
75:22
**outdated** [2] - 9:12,
34:14, 46:25
**outlier** [1] - 56:12
**outlined** [3] - 15:7,
16:4, 75:4
**output** [3] - 9:7, 12:10,
12:18
**outputs** [2] - 45:3,
67:2
**outset** [1] - 19:23
**outside** [2] - 34:2,
44:15
**overhaul** [1] - 3:11
**overhauled** [4] - 34:1,
45:13, 77:13, 80:17
**overstated** [1] - 57:21
**own** [9] - 39:2, 41:25,
43:8, 45:15, 57:24,
58:1, 74:11, 78:23,
81:12

**P**

**p.m** [2] - 1:4, 84:16
**P.O** [1] - 1:13
**page** [1] - 22:11
**pages** [1] - 24:1
**paid** [1] - 84:10
**papers** [7] - 27:1,
40:18, 40:20, 42:9,
46:4, 48:11, 83:13
**paragraph** [3] - 62:5,
62:9, 62:15
**parameters** [1] - 21:8
**part** [12] - 10:8, 21:3,
25:19, 27:25, 54:15,
63:2, 63:10, 68:25,
69:12, 70:10, 70:11,
78:3
**participate** [1] - 42:4
**participation** [1] - 4:4
**particular** [7] - 4:1,
6:5, 11:24, 16:4,
25:4, 39:23, 79:18
**particularly** [1] - 83:22
**parties** [6] - 34:4,
34:20, 43:8, 64:3,
75:7
**parts** [2] - 57:22,
80:25
**party** [4] - 1:23, 4:9,
4:14, 84:22
**pass** [1] - 2:21

9

**passport** [2] - 9:24, 10:13
**password** [1] - 15:8
**past** [5] - 6:25, 7:21, 16:18, 19:1, 77:11
**pause** [1] - 83:14
**paused** [1] - 3:7
**pedantic** [1] - 13:16
**pending** [2] - 4:10, 76:23
**people** [11] - 5:17, 33:21, 34:2, 38:11, 51:9, 52:18, 63:15, 63:17, 66:25, 67:1, 72:13
**perfect** [3] - 61:18, 66:19, 67:2
**period** [3] - 28:13, 69:16, 73:17
**periodic** [1] - 9:4
**permanent** [1] - 3:20
**permit** [2] - 15:12, 81:8
**person** [15] - 5:3, 10:20, 12:23, 13:3, 13:4, 13:5, 13:10, 61:12, 64:7, 64:9, 64:13, 64:15, 67:22, 75:2
**person's** [3] - 12:19, 41:7, 75:2
**personal** [2] - 3:20, 12:15
**perspective** [1] - 18:24
**Pezzi** [9] - 3:1, 4:19, 4:24, 22:20, 55:2, 75:3, 81:4, 82:13, 84:8
**PEZZI** [55] - 1:17, 2:25, 4:24, 6:2, 6:9, 7:2, 7:8, 8:1, 8:16, 9:1, 9:8, 10:6, 12:17, 13:16, 13:25, 15:16, 16:16, 17:8, 17:18, 18:5, 19:8, 55:12, 55:16, 56:11, 56:17, 57:20, 58:25, 59:7, 59:21, 61:1, 62:4, 62:7, 62:9, 62:12, 62:19, 64:10, 64:17, 65:15, 65:24, 66:5, 67:16, 67:24, 68:5, 68:21, 69:18, 69:21, 70:9, 71:8, 71:15, 72:2, 73:4, 74:18, 81:6, 82:15, 84:3
**photocopied** [1] - 84:21
**PI** [40] - 4:11, 20:17,

23:15, 24:8, 24:23, 27:2, 27:14, 28:2, 28:7, 28:17, 28:20, 29:1, 29:14, 30:24, 30:25, 31:15, 31:22, 31:23, 32:3, 32:24, 33:6, 33:15, 33:18, 35:24, 36:20, 45:25, 46:8, 46:10, 51:13, 52:1, 52:11, 54:17, 54:23, 79:20, 79:21, 80:5, 82:4, 82:6, 83:19
**pick** [2] - 55:2, 83:15
**piece** [2] - 40:13, 78:4
**PII** [3] - 3:21, 3:22, 3:24
**place** [6] - 9:6, 51:10, 52:9, 61:13, 68:17
**placed** [1] - 60:4
**plaintiff** [9] - 2:6, 20:23, 25:13, 55:3, 56:22, 58:8, 73:25, 75:11, 84:7
**plaintiff's** [1] - 71:4
**Plaintiffs** [2] - 1:3, 20:15
**plaintiffs** [7] - 2:9, 2:12, 3:16, 3:17, 3:18, 3:25, 4:3, 4:20, 5:9, 5:10, 18:13, 18:19, 19:10, 19:22, 20:2, 20:16, 24:3, 24:10, 24:15, 24:17, 24:19, 27:10, 27:15, 27:16, 28:4, 29:4, 29:9, 39:23, 41:23, 42:23, 43:14, 46:2, 46:6, 46:7, 46:15, 46:16, 46:18, 47:9, 49:25, 52:23, 55:8, 56:19, 57:22, 58:20, 60:17, 61:17, 63:2, 64:21, 64:22, 65:1, 65:16, 65:18, 72:25, 73:4, 73:8, 73:12, 73:16, 74:2, 74:10, 74:17, 79:18, 80:14, 81:10, 81:25
**PLAINTIFFS** [1] - 1:8
**plaintiffs'** [2] - 59:10, 72:22
**plan** [4] - 42:8, 82:10, 83:9, 83:13
**plate** [1] - 84:1
**play** [1] - 41:12
**pleaded** [5] - 31:1, 31:3, 37:12, 39:13, 51:17
**pleading** [1] - 21:4

**pled** [1] - 25:21
**plus** [2] - 10:12, 10:13
**point** [18] - 18:7, 22:8, 22:16, 23:2, 23:8, 34:6, 34:22, 35:14, 35:25, 36:15, 39:6, 49:13, 50:15, 52:12, 53:17, 61:10, 75:24, 82:20
**pointed** [2] - 44:25, 82:8
**points** [3] - 22:20, 34:17, 75:21
**pooled** [1] - 47:1
**poor** [1] - 36:12
**population** [1] - 63:6
**portal** [2] - 5:6, 9:9
**portals** [1] - 9:10
**position** [4] - 44:8, 44:18, 60:7, 71:10
**possibilities** [1] - 10:7
**possible** [7] - 10:22, 11:11, 34:16, 35:23, 71:18, 74:10, 75:8
**post** [1] - 34:5
**postdate** [2] - 80:2, 80:19
**postdates** [1] - 77:23
**potential** [6] - 40:9, 47:4, 51:4, 51:6, 77:12, 78:2
**potentially** [2] - 34:3, 77:16
**power** [3] - 45:9, 45:12, 72:16
**powers** [1] - 44:21
**practical** [2] - 34:12, 34:20
**precedent** [4] - 56:2, 56:3, 58:15, 76:9
**Precheck** [3] - 6:14, 7:7, 7:12
**precise** [1] - 62:20
**predict** [1] - 70:13
**prefer** [1] - 84:2
**preliminary** [27] - 2:14, 2:17, 22:10, 23:16, 26:5, 26:10, 26:16, 26:19, 28:23, 29:21, 29:22, 29:24, 29:25, 31:19, 32:10, 32:12, 33:23, 34:25, 35:15, 38:1, 38:9, 38:11, 53:15, 55:23, 59:15, 63:23, 73:9
**premise** [1] - 68:8
**prepared** [1] - 84:3
**presented** [1] - 20:22
**President** [3] - 78:17, 78:20, 81:15

**President's** [1] - 45:7
**press** [1] - 83:14
**pretty** [6] - 11:4, 20:8, 20:9, 57:15, 57:17, 60:17
**previewed** [1] - 70:1
**previous** [1] - 17:9
**previously** [6] - 6:11, 7:1, 16:24, 23:4, 25:22, 40:6
**primarily** [1] - 2:13
**principles** [2] - 49:7, 49:11
**printed** [1] - 1:22
**privacy** [9] - 4:4, 15:24, 21:11, 21:18, 21:20, 25:6, 47:17, 49:21, 57:13
**Privacy** [22] - 17:6, 21:6, 21:11, 21:12, 21:14, 43:24, 43:25, 44:9, 44:15, 47:16, 57:12, 57:14, 57:22, 57:25, 60:15, 68:9, 68:14, 68:20, 69:7, 69:10, 69:18
**problem** [2] - 27:25, 79:13
**problems** [2] - 79:15, 83:4
**procedural** [6] - 47:25, 48:18, 49:7, 50:6, 56:4, 75:25
**procedures** [6] - 17:6, 51:10, 61:13, 64:19, 66:25, 67:12
**proceed** [1] - 38:23
**proceeding** [3] - 3:7, 72:23, 84:16
**proceedings** [1] - 84:19
**Proceedings** [1] - 1:25
**process** [16] - 5:8, 5:10, 9:13, 10:11, 18:18, 18:22, 47:16, 51:8, 60:11, 65:9, 66:22, 67:12, 69:1, 69:12, 70:22, 77:15
**processed** [1] - 15:9
**processes** [3] - 11:16, 58:6, 67:6
**processing** [1] - 11:5
**produced** [1] - 1:25
**product** [1] - 1:21
**productive** [1] - 32:19
**program** [1] - 44:6
**Programs** [1] - 1:18
**progress** [1] - 70:8
**prompted** [2] - 23:1,

23:4
**properly** [1] - 67:21
**proposed** [4] - 38:22, 42:17, 43:15, 58:12
**proposing** [1] - 80:4
**proposition** [1] - 61:3
**prosecution** [2] - 51:3, 78:3
**Protection** [1] - 43:24
**protective** [2] - 40:15, 75:10
**prove** [2] - 52:24, 53:19
**provide** [8] - 5:22, 9:16, 49:15, 56:24, 69:6, 71:11, 74:24, 75:9
**provided** [5] - 7:20, 21:8, 21:17, 47:22, 71:11
**provides** [1] - 9:12
**providing** [2] - 14:9, 16:4
**provision** [3] - 44:4, 73:19, 74:2
**provisions** [2] - 15:22, 44:1
**prudential** [1] - 43:6
**pseudonym** [4] - 20:14, 20:16, 72:23, 74:22
**public** [1] - 70:25
**publication** [4] - 18:10, 18:16, 23:20, 69:17
**publications** [1] - 70:19
**publish** [10] - 17:16, 17:23, 18:8, 58:5, 69:23, 70:6, 71:14, 71:16, 76:4
**published** [7] - 17:5, 17:9, 18:4, 67:21, 70:8, 70:24, 76:22
**publishing** [1] - 17:14
**pull** [1] - 65:13
**pulling** [1] - 62:13
**pulls** [2] - 8:24, 45:2
**purge** [3] - 78:13, 78:18, 79:6
**purged** [9] - 40:21, 40:23, 41:16, 46:22, 47:7, 50:18, 51:9, 66:3, 78:4
**purpose** [9] - 14:8, 14:22, 15:3, 15:4, 15:22, 17:1, 17:2, 56:23, 61:15
**purposes** [10] - 8:18, 14:14, 14:19, 16:3,

10

16:10, 16:20, 16:22,
45:24, 72:13, 76:1
**pursuant** [2] - 44:9,
45:6
**pushed** [1] - 78:13
**put** [6] - 12:25, 32:21,
32:23, 68:25, 72:13,
79:12
**putative** [3] - 3:19,
25:21, 43:4
**puts** [2] - 9:6, 10:4
**putting** [2] - 30:23,
42:2

## Q

**qualified** [1] - 53:1
**queried** [1] - 52:18
**queries** [6] - 5:2, 5:13,
8:5, 12:5, 12:6
**query** [6] - 5:23,
15:14, 61:23, 62:1,
62:18, 67:19
**questions** [17] - 2:23,
4:17, 19:4, 19:6,
19:12, 19:16, 19:17,
19:20, 19:24, 20:11,
25:24, 30:15, 30:20,
32:20, 35:22, 39:3,
61:22
**quibble** [1] - 8:2
**quick** [1] - 77:24
**quickly** [1] - 35:23
**quite** [4] - 12:25, 52:7,
54:14, 62:22
**quote** [3] - 14:2,
33:24, 44:2

## R

**raise** [1] - 25:6
**raised** [5] - 5:10, 63:3,
63:13, 66:20, 72:22
**raises** [1] - 19:24
**raising** [1] - 68:7
**range** [1] - 11:11
**rapidly** [1] - 50:25,
54:2, 77:10
**rather** [2] - 19:2, 47:23
**reach** [7] - 28:13,
28:18, 29:1, 29:6,
29:7, 49:2, 59:8
**read** [4] - 39:20,
40:19, 43:2, 62:21
**reading** [1] - 40:3
**real** [2] - 14:11, 51:11
**reality** [1] - 51:11
**really** [7] - 20:3, 34:12,
41:14, 45:18, 57:3,
72:24, 80:12

**reason** [4] - 33:23,
36:9, 66:11, 75:5
**reasonable** [2] - 4:12,
75:4
**reasoning** [1] - 57:11
**reasons** [3] - 43:6,
70:1, 71:2
**rebuttal** [1] - 74:20
**receive** [1] - 4:8
**received** [1] - 4:5
**receiving** [1] - 4:11
**recent** [5] - 14:23,
14:24, 14:25, 17:5,
48:10
**recently** [9] - 16:24,
23:5, 34:6, 34:18,
34:19, 76:16, 76:17,
77:17, 77:19
**reciprocating** [1] -
78:19
**recognize** [2] - 24:11,
48:2
**recognizes** [1] - 49:14
**record** [18] - 2:3, 2:7,
6:21, 20:19, 50:13,
50:22, 52:6, 54:8,
54:10, 61:23, 61:25,
64:6, 64:8, 64:11,
64:14, 64:15, 77:22,
79:21
**records** [35] - 3:20,
5:23, 7:14, 8:6, 8:12,
10:8, 10:21, 11:4,
11:24, 12:7, 12:8,
12:12, 22:6, 22:7,
22:8, 23:6, 23:9,
45:3, 57:16, 57:24,
58:1, 63:4, 63:5,
63:8, 63:18, 63:20,
64:7, 65:13, 65:20,
66:16, 66:23, 67:20
**recourse** [1] - 41:5
**redefine** [1] - 36:21
**reenforces** [1] - 21:21
**refer** [1] - 5:9
**referenced** [1] - 24:2
**referred** [5] - 51:3,
51:4, 77:16, 77:18,
77:20
**referring** [1] - 62:4
**reflect** [2] - 12:12,
40:16
**reflected** [1] - 11:16
**reflects** [1] - 40:16
**regard** [2] - 27:11,
29:9
**regarding** [1] - 21:18
**Register** [1] - 23:20,
70:18, 70:19, 70:25
**registrars** [1] - 52:15

**registration** [1] - 39:6
**regulate** [1] - 45:9
**rehash** [1] - 80:23
**relate** [2] - 80:14,
80:25
**related** [9] - 14:25,
23:16, 42:3, 47:10,
47:19, 50:8, 55:6,
59:20, 77:9
**relates** [2] - 35:9, 45:7
**relating** [6] - 17:9,
17:10, 46:12, 62:24,
68:14, 80:17
**release** [1] - 14:23
**relevant** [5] - 11:13,
62:14, 70:16, 70:20,
80:25
**relief** [50] - 4:2, 20:3,
23:16, 23:18, 23:19,
24:16, 24:18, 26:5,
26:15, 26:16, 27:4,
27:5, 27:7, 27:9,
27:11, 27:17, 27:20,
28:4, 28:12, 29:4,
29:9, 30:10, 30:16,
30:18, 31:20, 31:24,
32:5, 32:11, 32:12,
32:13, 33:4, 33:8,
33:15, 33:19, 33:24,
34:2, 34:3, 34:4,
34:10, 34:11, 34:18,
34:20, 34:21, 34:25,
35:15, 38:12, 48:5,
52:6, 72:19, 73:9
**rely** [6] - 20:17, 24:14,
43:25, 60:17, 64:11,
78:22
**relying** [14] - 45:23,
47:10, 48:13, 48:19,
49:13, 49:19, 49:20,
50:7, 54:19, 54:22,
55:4, 55:8, 55:22,
77:3
**remedial** [1] - 47:6
**remedies** [3] - 41:2,
68:9, 70:5
**remedy** [4] - 20:9,
48:8, 51:24, 68:14
**removal** [1] - 81:17
**removed** [3] - 50:16,
67:18, 77:15
**removing** [1] - 81:19
**repeat** [1] - 54:12
**repeating** [1] - 46:3
**replead** [1] - 42:9
**reply** [8] - 63:12,
73:17, 77:23, 77:24,
80:2, 80:19, 80:20
**reported** [3] - 1:25,
11:12, 12:1

**Reporter** [3] - 1:24,
1:24, 84:25
**representation** [1] -
71:2
**representative** [1] -
41:24
**representatives** [5] -
26:17, 27:16, 42:17,
42:18, 43:16
**Representatives** [1] -
73:25
**represented** [1] -
83:23
**representing** [1] -
28:16
**request** [15] - 5:21,
7:15, 7:19, 10:2,
12:10, 15:9, 20:14,
20:16, 30:23, 46:18,
64:18, 74:14, 79:23,
79:24, 82:9
**requested** [4] - 3:14,
14:10, 27:5, 34:10
**requests** [6] - 5:4, 5:7,
14:20, 16:9, 45:24,
62:25
**require** [1] - 69:17
**required** [13] - 5:13,
11:15, 11:18, 15:4,
17:12, 17:25, 18:25,
19:1, 19:5, 62:17,
67:6, 71:20, 72:18
**requirements** [2] -
9:15, 51:20
**requires** [3] - 13:5,
25:20, 59:4
**reserve** [1] - 83:18
**residents** [2] - 3:20,
25:6
**resist** [1] - 32:20
**resolve** [1] - 59:15
**respect** [11] - 18:16,
18:21, 20:16, 28:8,
30:16, 33:22, 40:1,
40:22, 63:11, 77:9,
81:25
**respectfully** [1] - 30:8
**respectively** [1] -
39:19
**respects** [2] - 18:19,
56:12
**respond** [6] - 14:2,
74:21, 74:25, 75:15,
82:13, 82:18
**responding** [1] -
73:14
**response** [12] - 7:19,
22:20, 52:20, 61:11,
62:25, 63:3, 63:13,
63:19, 64:1, 64:9,

64:16, 75:21
**responses** [4] - 5:7,
10:22, 65:6, 67:14
**Responsibility** [1] -
1:9
**responsive** [1] - 82:2
**restriction** [1] - 50:14
**restrictions** [1] - 50:10
**result** [6] - 7:14,
11:25, 12:1, 12:6,
67:2, 67:4
**results** [3] - 12:5,
45:4, 70:14
**retained** [2] - 6:21,
63:9
**return** [1] - 71:24
**revert** [2] - 33:25,
34:11
**review** [5] - 12:4, 12:6,
62:15, 62:24, 63:10
**revisions** [1] - 70:7
**revolve** [1] - 21:7
**rhetoric** [1] - 78:21
**rights** [4] - 57:10,
57:18, 58:11, 78:7
**rise** [2] - 57:4, 66:20
**risk** [9] - 46:21, 46:24,
51:9, 54:11, 78:2,
78:4, 78:6, 82:24,
83:3
**road** [1] - 66:3
**role** [2] - 11:5, 78:5
**roll** [3] - 51:2, 67:18,
69:4
**rolled** [1] - 54:1
**rollout** [1] - 50:25
**rolls** [12] - 46:22,
50:16, 51:5, 52:15,
60:9, 65:6, 67:5,
77:13, 78:13, 81:12,
81:18, 81:20
**RPR** [3] - 1:24, 84:18,
84:24
**rule** [5] - 4:7, 4:14,
78:1, 83:20, 84:5
**Rule** [1] - 72:24
**rulemaking** [1] - 58:13
**ruling** [2] - 79:20, 81:2
**run** [1] - 51:1

## S

**sacrosanct** [1] - 40:14
**safeguard** [1] - 15:23
**Samoa** [1] - 11:9
**sample** [1] - 15:20
**sat** [1] - 51:17
**save** [1] - 19:4
**SAVE** [56] - 3:11, 4:22,
5:3, 5:13, 5:21, 7:15,

11

7:19, 7:20, 7:25, 8:6,
8:10, 8:13, 11:17,
14:20, 16:24, 16:25,
17:9, 17:10, 17:14,
21:7, 21:10, 22:5,
22:9, 22:12, 22:14,
23:1, 23:3, 25:5,
34:15, 40:11, 44:8,
45:4, 46:23, 47:2,
50:25, 51:2, 51:7,
52:13, 52:16, 54:1,
54:3, 61:11, 62:25,
64:2, 64:8, 65:6,
65:13, 65:25, 66:1,
66:4, 67:11, 67:18,
69:15, 71:24, 79:4,
80:18
**scared** [1] - 39:14
**scenario** [1] - 41:5
**scope** [1] - 26:22
**screenshot** [1] - 1:22
**screenshots** [1] - 9:12
**search** [2] - 6:5, 8:6
**searchable** [1] - 6:18
**searched** [1] - 8:10
**searches** [3] - 8:14,
8:19, 9:5
**searching** [2] - 8:14
**seat** [1] - 19:9
**second** [2] - 40:4,
54:15
**secretaries** [2] -
78:17, 78:19
**Secretary** [3] - 40:8,
59:25
**Section** [6] - 27:12,
27:23, 28:7, 28:12,
28:23
**Security** [20] - 2:5,
5:20, 5:23, 6:23,
7:17, 8:21, 9:7, 9:21,
9:25, 10:13, 10:20,
11:1, 11:3, 11:6,
12:22, 13:8, 13:9,
34:14, 45:3, 61:4
**security** [1] - 60:21
**SECURITY** [1] - 1:4
**see** [7] - 3:4, 10:5,
10:7, 23:14, 52:22,
61:25, 75:7
**seeing** [2] - 9:7, 36:7
**seek** [2] - 13:24, 26:20
**seeking** [17] - 14:5,
23:15, 23:18, 23:19,
27:2, 27:6, 27:9,
28:4, 28:15, 28:20,
31:23, 32:6, 33:7,
34:11, 37:14, 63:22,
75:10
**seem** [4] - 24:10,

64:21, 74:4, 74:23
**segregate** [1] - 34:16
**select** [2] - 2:16, 74:8
**send** [2] - 14:22, 51:6
**sense** [1] - 66:13
**sensitivity** [1] - 73:10
**sentence** [1] - 8:3
**separate** [7] - 34:12,
40:7, 44:14, 44:17,
46:3, 66:21, 76:24
**separately** [2] - 28:15,
40:8
**separation** [1] - 44:21
**sequential** [1] - 50:2
**seriously** [2] - 14:9,
68:24
**Services** [1] - 66:14
**set** [9] - 7:9, 26:2,
26:3, 29:8, 40:4,
45:6, 56:25, 66:25,
83:21
**sets** [1] - 23:9
**several** [2] - 10:6,
56:22
**shakes** [1] - 14:11
**shall** [2] - 1:22, 84:21
**Shapiro** [2] - 3:3, 84:8
**SHAPIRO** [1] - 1:17
**shared** [1] - 3:24
**sheet** [1] - 22:9
**short** [2] - 15:25, 66:5
**shorthand** [1] - 1:25
**show** [12] - 10:9, 21:2,
51:14, 56:9, 59:3,
65:21, 67:20, 67:25,
68:1, 68:3, 68:18,
78:22
**showing** [1] - 72:18
**shut** [5] - 24:20,
25:16, 31:22, 32:2,
33:24
**shutdown** [1] - 84:9
**sic** [1] - 27:12
**side** [1] - 65:23
**sign** [2] - 6:14, 36:17
**signatory** [2] - 1:23,
84:22
**signed** [3] - 15:5,
16:24
**significant** [7] - 5:18,
17:7, 17:16, 17:20,
18:7, 23:6, 69:16
**significantly** [1] - 7:18
**similar** [3] - 16:9,
48:12, 59:13
**simplify** [1] - 26:1
**simply** [4] - 25:22,
29:8, 80:16, 80:24
**single** [6] - 9:20,
34:22, 36:15, 50:15,

50:23, 74:10
**sitting** [2] - 27:21,
53:12
**situation** [1] - 38:19
**skis** [1] - 8:17
**smaller** [2] - 18:9,
20:10
**Social** [19] - 5:20,
5:22, 6:23, 7:16,
8:21, 9:7, 9:21, 9:25,
10:13, 10:19, 11:1,
11:3, 11:6, 12:22,
13:8, 13:9, 34:14,
45:2, 61:4
**social** [1] - 60:21
**software** [2] - 11:21,
72:11
**solely** [2] - 33:22, 79:7
**someone** [14] - 8:13,
10:12, 10:23, 11:10,
40:23, 50:18, 54:4,
57:23, 63:24, 65:12,
66:1, 66:22, 67:3,
69:2
**sometimes** [1] - 10:14
**somewhere** [2] -
10:21, 54:6
**SOOKNANAN** [1] - 1:6
**sooner** [1] - 19:1
**SORN** [23] - 17:17,
17:20, 17:23, 18:4,
18:8, 18:11, 18:16,
21:9, 21:20, 25:3,
47:22, 58:5, 67:21,
69:17, 69:24, 70:6,
70:21, 71:9, 71:14,
71:16, 71:17, 71:18,
72:13
**SORNs** [10] - 17:5,
17:14, 23:1, 23:4,
23:10, 23:20, 47:23,
71:5, 71:8, 71:12
**SORNS** [4] - 17:9,
71:5, 76:4
**sorry** [11] - 7:2, 9:2,
9:4, 21:11, 22:7,
22:23, 42:14, 64:10,
64:21, 79:1, 79:3
**sort** [25] - 6:16, 7:9,
9:3, 9:17, 10:17,
12:24, 14:15, 14:16,
20:2, 30:6, 30:9,
34:16, 40:4, 60:11,
60:13, 61:15, 66:11,
66:19, 70:22, 71:11,
72:18, 74:5, 74:13,
80:23, 83:12
**sought** [2] - 28:12,
35:15
**sounds** [2] - 41:20,

70:7
**space** [1] - 57:1
**SPARKLE** [1] - 1:6
**speaks** [1] - 26:10
**special** [1] - 73:24
**specific** [7] - 5:14,
31:24, 31:25, 33:4,
34:13, 57:17, 78:22
**specifically** [2] -
35:15, 45:6
**speculate** [1] - 72:9
**speculative** [1] - 50:19
**spit** [1] - 61:11
**spitting** [1] - 13:7
**spreadsheet** [1] - 5:5
**squarely** [1] - 57:8
**SSA** [50] - 5:24, 6:1,
6:4, 7:24, 7:25, 8:6,
8:7, 8:12, 8:15, 8:24,
10:21, 10:24, 11:24,
12:7, 16:14, 17:1,
23:3, 46:25, 47:23,
60:18, 60:24, 61:8,
61:17, 61:19, 61:23,
62:25, 63:4, 63:16,
63:17, 63:19, 63:25,
64:6, 64:12, 65:17,
65:20, 65:21, 65:23,
66:20, 66:22, 67:1,
71:5, 71:9, 71:14,
71:17, 71:18, 71:24,
76:6, 79:16, 82:24
**SSA's** [2] - 64:13, 66:9
**SSN** [2] - 23:7, 61:5
**SSNs** [2] - 6:5, 23:7
**St** [1] - 1:9
**staff's** [1] - 79:2
**stage** [2] - 24:23,
59:15
**stamps** [2] - 14:16,
69:3
**stand** [2] - 17:19, 61:9
**standard** [1] - 50:11
**standing** [45] - 9:18,
20:25, 21:2, 25:12,
25:13, 39:5, 39:12,
39:16, 40:5, 40:12,
40:15, 41:22, 42:5,
43:2, 43:5, 43:9,
45:19, 45:20, 48:24,
50:21, 55:5, 56:4,
56:7, 56:10, 56:12,
56:20, 57:5, 58:2,
58:9, 58:17, 58:18,
58:23, 58:24, 59:6,
59:9, 59:14, 59:19,
61:18, 63:25, 64:4,
69:7, 76:1, 76:10,
76:14, 83:6
**stands** [1] - 42:9

**start** [4] - 4:16, 19:22,
32:16, 58:18
**started** [1] - 71:21
**starting** [4] - 2:6, 51:8,
52:8, 55:7
**starts** [2] - 58:17,
59:13
**state** [44] - 3:14, 4:6,
13:8, 13:14, 13:17,
14:2, 14:12, 14:14,
14:17, 15:5, 15:13,
15:24, 16:14, 25:18,
33:25, 39:21, 40:24,
40:25, 41:1, 41:2,
41:5, 41:17, 41:19,
45:3, 51:21, 60:9,
60:12, 60:14, 61:11,
65:8, 65:10, 67:8,
67:12, 69:3, 74:3,
74:4, 78:17, 78:18,
78:19, 81:18
**State** [3] - 6:22, 59:25
**State's** [1] - 40:8
**state's** [5] - 15:23,
40:10, 41:17, 45:9,
51:2
**statements** [2] -
21:17, 43:11
**states** [24] - 4:1, 16:8,
16:23, 26:21, 34:14,
41:14, 45:13, 46:22,
46:23, 51:1, 51:11,
63:4, 67:3, 67:5,
67:8, 68:17, 69:4,
79:5, 79:6, 79:7,
79:8, 80:17, 81:12
**STATES** [2] - 1:1, 1:7
**States** [3] - 3:2, 3:19,
5:17
**states'** [1] - 50:25
**status** [16] - 3:14,
6:21, 12:14, 12:16,
12:20, 14:6, 14:10,
41:8, 47:6, 52:20,
52:25, 65:17, 66:12,
66:17, 71:12, 73:1
**statuses** [3] - 11:7,
11:12, 13:2
**statute** [7] - 21:25,
44:12, 44:18, 52:10,
56:23, 57:5, 57:9
**statutes** [2] - 56:23,
57:4
**statutory** [5] - 44:15,
45:1, 45:11, 45:14,
51:19
**stay** [23] - 2:15, 2:16,
23:15, 24:8, 27:18,
27:23, 28:2, 28:6,
28:15, 28:22, 29:20,

29:24, 30:24, 32:23, 33:8, 38:24, 45:25, 46:5, 46:18, 53:15, 55:20, 76:23, 77:2
**stayed** [3] - 55:16, 55:18, 55:24
**stenographic** [1] - 84:19
**step** [3] - 10:11, 58:17, 62:3
**STEPHEN** [1] - 1:17
**Stephen** [2] - 3:1, 4:24
**stephen.pezzi@ usdoj.gov** [1] - 1:20
**steps** [8] - 11:15, 11:18, 11:19, 13:21, 15:6, 46:2, 71:21, 79:9
**stick** [1] - 35:21
**still** [3] - 8:7, 56:19, 73:2
**stored** [1] - 57:16
**strange** [1] - 71:2
**Street** [1] - 1:19
**stress** [1] - 32:16
**strong** [2] - 51:18, 55:22
**stronger** [1] - 69:7
**struggling** [2] - 45:18, 45:19
**sub** [1] - 26:2
**subclass** [86] - 4:1, 24:11, 26:4, 26:11, 26:16, 26:19, 26:22, 27:2, 27:5, 27:16, 27:17, 28:16, 28:21, 29:2, 31:1, 31:3, 31:6, 31:7, 31:9, 31:10, 31:11, 31:12, 31:13, 31:14, 31:16, 31:17, 31:20, 31:23, 31:25, 32:4, 32:5, 32:8, 32:9, 32:11, 32:14, 33:2, 33:5, 33:14, 33:16, 33:18, 34:9, 34:10, 34:13, 34:15, 34:23, 35:1, 35:3, 35:7, 35:16, 36:1, 36:2, 36:7, 36:10, 36:16, 36:20, 36:22, 37:2, 37:5, 37:6, 37:11, 37:16, 37:20, 37:25, 38:1, 38:10, 38:20, 38:21, 39:4, 42:13, 42:16, 42:18, 42:23, 43:14, 43:18, 43:21, 46:9, 46:10, 54:17, 63:7, 63:11, 73:9, 83:10
**subcomponents** [1] -

3:23
**subject** [1] - 15:15
**submission** [1] - 81:1
**submissions** [2] - 81:8, 84:7
**submit** [10] - 10:2, 11:14, 14:20, 15:9, 15:13, 18:15, 29:7, 54:9, 77:22, 79:25
**submitted** [4] - 5:6, 20:24, 47:14, 61:22
**submitting** [2] - 13:9, 64:19
**subset** [1] - 66:9
**substantial** [1] - 53:7
**success** [1] - 59:2
**sue** [4] - 40:25, 53:5, 53:8, 53:9
**suffer** [1] - 42:6
**suffered** [1] - 24:17
**suffers** [1] - 25:11
**sufficient** [7] - 40:5, 40:12, 48:3, 49:16, 56:7, 74:24, 78:5
**suggest** [1] - 75:6
**suggests** [1] - 44:13
**suing** [2] - 57:23, 63:21
**suit** [1] - 41:24
**Suite** [1] - 1:9
**Sullivan** [2] - 40:17, 76:17
**Sullivan's** [1] - 77:3
**summarize** [1] - 15:11
**summary** [2] - 53:10, 53:12
**supplement** [1] - 82:16
**supplemental** [3] - 77:23, 79:25, 80:16
**support** [10] - 29:17, 30:2, 38:1, 52:6, 55:10, 58:14, 60:7, 75:22, 76:9, 76:13
**supports** [1] - 76:20
**supposed** [1] - 36:5
**Supreme** [4] - 25:19, 34:5, 38:7, 55:20
**Sus** [4] - 2:9, 2:12, 31:10, 38:13
**SUS** [116] - 1:8, 2:8, 2:13, 2:24, 20:20, 21:5, 21:15, 21:23, 22:1, 22:5, 22:21, 22:23, 23:17, 23:25, 24:22, 25:18, 25:25, 26:4, 26:8, 26:12, 26:15, 26:22, 27:3, 27:6, 27:10, 27:18, 27:23, 28:6, 28:10,

28:18, 28:22, 29:3, 29:22, 30:4, 30:8, 30:16, 30:22, 31:3, 31:7, 31:12, 31:17, 31:19, 32:5, 32:9, 32:15, 32:25, 33:3, 33:7, 33:22, 34:25, 35:4, 35:9, 38:15, 38:18, 39:8, 39:10, 39:17, 40:1, 41:1, 41:6, 42:1, 42:11, 42:14, 42:21, 42:24, 43:10, 43:15, 43:19, 44:6, 44:10, 44:14, 44:17, 44:24, 46:11, 46:14, 46:19, 46:21, 47:12, 47:21, 48:10, 48:15, 48:21, 48:23, 49:3, 49:5, 49:10, 49:18, 50:3, 50:24, 52:12, 52:24, 53:4, 53:7, 53:21, 54:9, 54:24, 75:6, 75:23, 76:14, 76:16, 76:22, 77:6, 77:8, 78:12, 78:24, 79:3, 79:11, 79:24, 80:11, 80:15, 82:7, 82:11, 82:20, 82:23, 83:16, 84:14
**susceptible** [1] - 83:3
**syncing** [1] - 8:23
**system** [58] - 5:13, 5:19, 8:6, 8:11, 10:3, 10:18, 12:18, 13:3, 13:9, 13:10, 14:20, 16:1, 17:2, 17:10, 17:14, 17:16, 21:19, 23:3, 23:5, 23:6, 23:9, 25:17, 31:22, 33:24, 33:25, 34:11, 34:15, 44:12, 45:5, 45:13, 46:23, 47:2, 51:2, 54:1, 54:3, 61:15, 64:8, 64:12, 64:13, 65:7, 65:13, 65:21, 65:25, 66:2, 66:4, 66:9, 66:24, 67:14, 71:24, 72:13, 72:14, 77:13, 78:13, 79:13, 80:18, 81:16
**system's** [1] - 22:6
**systematic** [2] - 66:11, 66:19
**Systematic** [1] - 3:12
**systems** [8] - 3:22, 6:16, 7:23, 8:7, 22:7, 65:18, 79:16

**T**

**table** [2] - 2:10, 3:2

**tad** [1] - 57:21
**targeted** [1] - 80:22
**technology** [1] - 8:17
**template** [3] - 14:21, 16:7, 51:6
**Tennessee** [1] - 77:19
**terminate** [1] - 52:21
**terms** [3] - 15:1, 26:10, 46:11
**TEWARI** [1] - 1:12
**Texas** [7] - 4:6, 4:9, 4:14, 51:5, 73:23, 77:11, 83:21
**Texas's** [1] - 83:23
**thanking** [1] - 78:17
**THE** [184] - 1:1, 1:6, 1:8, 1:16, 2:2, 2:11, 2:19, 3:4, 3:8, 5:25, 6:7, 6:24, 7:3, 7:21, 8:9, 8:23, 9:5, 10:4, 12:13, 13:12, 13:19, 15:11, 16:11, 17:4, 17:15, 17:22, 19:4, 19:9, 21:3, 21:6, 21:22, 21:24, 22:4, 22:18, 22:22, 23:11, 23:22, 24:1, 24:23, 25:24, 26:3, 26:6, 26:9, 26:13, 26:18, 26:25, 27:4, 27:8, 27:13, 27:19, 27:25, 28:9, 28:14, 28:20, 28:25, 29:11, 29:23, 30:5, 30:12, 30:19, 30:23, 31:5, 31:10, 31:14, 31:18, 31:21, 32:7, 32:13, 32:17, 33:1, 33:4, 33:9, 34:22, 35:2, 35:5, 35:12, 35:17, 36:5, 36:13, 36:21, 37:1, 37:6, 37:10, 37:16, 38:5, 38:13, 38:17, 38:25, 39:9, 39:11, 39:20, 40:19, 41:4, 41:11, 42:2, 42:12, 42:19, 42:22, 43:1, 43:13, 43:17, 43:22, 44:8, 44:11, 44:16, 44:20, 45:16, 46:13, 46:17, 46:20, 47:8, 47:19, 47:24, 48:13, 48:17, 48:22, 48:25, 49:4, 49:6, 49:12, 49:22, 50:4, 51:13, 52:17, 53:2, 53:6, 53:8, 54:4, 54:12, 54:25, 55:15, 56:6, 56:15, 57:14, 58:22, 59:5, 59:18, 60:17,

61:21, 62:6, 62:8, 62:11, 62:16, 64:6, 64:11, 65:12, 65:23, 65:25, 67:15, 67:17, 68:2, 68:18, 69:9, 69:20, 70:5, 71:7, 71:13, 71:23, 72:21, 74:15, 74:19, 75:13, 76:12, 76:15, 76:18, 77:3, 77:7, 78:10, 78:21, 79:1, 79:4, 79:17, 80:4, 80:12, 81:4, 81:24, 82:8, 82:12, 82:16, 82:22, 83:9, 83:17, 84:5, 84:15
**themselves** [1] - 67:12
**theory** [3] - 58:6, 63:22, 66:22
**therefore** [1] - 65:2
**thinking** [3] - 2:19, 20:1, 69:13
**third** [3] - 35:18, 55:25, 64:3
**thousand** [1] - 77:17
**three** [3] - 50:4, 52:18, 54:20
**throughout** [2] - 8:20, 21:9
**throw** [2] - 38:15, 38:18
**throwing** [2] - 26:25, 52:2
**thrown** [2] - 60:9, 65:5
**tick** [1] - 23:23
**tied** [5] - 23:18, 23:19, 26:4, 32:11, 32:12
**time-limited** [1] - 83:7
**timeline** [2] - 70:8, 70:10
**titled** [1] - 31:19
**today** [11] - 4:9, 4:12, 5:2, 17:19, 19:7, 20:6, 58:20, 61:9, 71:6, 71:11, 83:25
**together** [6] - 20:2, 24:19, 25:16, 28:1, 29:15, 49:23
**tomorrow** [4] - 82:11, 82:17, 83:11, 83:15
**ton** [1] - 52:2
**tool** [1] - 3:13
**tough** [1] - 20:8
**track** [2] - 55:21, 56:1
**transcript** [6] - 1:21, 1:22, 84:19, 84:19, 84:21
**TRANSCRIPT** [1] - 1:6
**Transcript** [1] - 1:25
**transcription** [1] -

1:25
**TransUnion** [3] - 56:14, 56:16, 56:17
**treat** [3] - 28:14, 28:16, 37:11
**tripped** [1] - 10:11
**trouble** [1] - 45:21
**troubles** [1] - 20:12
**troubling** [1] - 19:17
**true** [7] - 40:6, 43:1, 53:19, 53:20, 64:24, 84:18, 84:19
**try** [2] - 10:16, 20:5
**trying** [5] - 23:22, 36:11, 41:12, 41:15, 50:2
**TSA** [3] - 6:14, 7:7, 7:12
**Tuesday** [1] - 72:7
**turn** [2] - 15:14, 19:5
**turnaround** [1] - 77:24
**turned** [1] - 75:5
**turns** [2] - 8:8, 63:15
**tutorial** [1] - 9:11
**two** [11] - 3:16, 5:2, 18:5, 23:9, 38:15, 38:18, 47:12, 50:24, 55:13, 81:22
**type** [2] - 45:5, 75:3
**types** [1] - 3:16

## U

**U.S** [29] - 1:4, 1:18, 2:4, 6:8, 6:10, 6:11, 6:13, 6:19, 7:3, 7:18, 7:24, 10:23, 11:2, 11:25, 12:3, 12:24, 13:4, 13:11, 60:8, 60:20, 60:21, 61:7, 61:24, 63:1, 65:21, 66:13, 73:24
**U.S.-born** [10] - 6:24, 7:5, 7:9, 7:11, 7:13, 7:22, 22:8, 22:13, 22:15, 83:2
**U.S.C** [1] - 14:1
**ultimately** [1] - 69:4
**unanimous** [1] - 77:2
**under** [26] - 21:25, 22:13, 27:11, 27:18, 27:23, 28:6, 28:10, 28:11, 28:12, 28:22, 29:4, 29:16, 32:16, 33:8, 38:24, 45:9, 46:5, 57:25, 67:22, 68:12, 69:5, 69:7, 70:17, 74:7, 75:10
**underscore** [1] - 77:10
**understood** [5] -

25:25, 49:3, 49:5, 83:16
**underway** [1] - 18:22
**undisputed** [2] - 7:17, 63:9
**unfolding** [1] - 50:25
**unfortunately** [1] - 84:3
**uniquely** [2] - 82:24, 83:3
**UNITED** [2] - 1:1, 1:7
**United** [3] - 3:2, 3:19, 5:17
**unlawful** [4] - 51:23, 52:11, 53:18, 78:6
**unlawfully** [5] - 40:21, 40:23, 47:1, 60:9, 66:3
**unless** [3] - 29:13, 55:21, 81:16
**unnecessary** [1] - 30:10
**unprecedented** [1] - 52:4
**unpublished** [1] - 77:4
**unredressed** [1] - 76:7
**unreliable** [1] - 46:25
**unsurprisingly** [1] - 12:11
**unwarranted** [1] - 46:25
**up** [20] - 4:19, 6:14, 7:7, 7:14, 10:11, 11:2, 16:24, 16:25, 38:14, 45:6, 47:7, 55:2, 61:4, 64:22, 65:10, 66:16, 74:17, 74:20, 81:14, 83:15
**up-to-date** [1] - 66:16
**update** [2] - 9:4, 71:11
**updating** [1] - 9:3
**upload** [1] - 79:14
**urgency** [1] - 82:9
**urgent** [1] - 4:2
**USCIS** [37] - 5:24, 6:4, 8:19, 9:11, 11:17, 12:4, 12:7, 14:8, 14:9, 14:15, 14:21, 14:25, 15:7, 15:14, 16:9, 17:5, 17:13, 17:15, 18:3, 18:7, 18:8, 52:19, 63:5, 63:9, 63:20, 64:8, 64:14, 65:8, 66:1, 66:12, 66:13, 66:25, 68:21, 68:24, 69:5, 79:7
**useful** [3] - 14:14, 16:21, 16:25
**user** [7] - 5:22, 7:20,

9:6, 9:15, 10:4, 11:17, 64:16
**users** [1] - 45:4

## V

**vacatur** [1] - 32:6
**variety** [5] - 6:11, 10:22, 11:7, 41:6, 41:9
**vary** [3] - 12:11, 60:14, 67:8
**Verification** [1] - 3:12
**verification** [10] - 11:15, 14:10, 14:25, 15:3, 16:7, 16:20, 16:22, 62:17, 64:19
**verify** [3] - 3:13, 14:5, 22:13
**versus** [1] - 2:4
**via** [1] - 47:22
**view** [2] - 4:13, 84:2
**viewing** [2] - 35:7, 36:3
**violation** [4] - 51:22, 65:7, 65:8, 67:25
**violations** [2] - 21:16, 69:10
**Virginia** [6] - 20:24, 21:1, 52:12, 52:19, 52:20, 72:7
**visa** [1] - 11:10
**void** [2] - 1:22, 84:21
**Von** [1] - 2:10
**Vota** [1] - 39:19
**vote** [7] - 40:14, 47:4, 50:10, 50:14, 50:17, 60:3, 60:4
**Voter** [2] - 59:24, 59:25
**voter** [33] - 4:4, 14:25, 15:3, 16:7, 16:20, 16:22, 39:6, 40:21, 41:16, 46:22, 46:24, 47:10, 47:19, 50:8, 50:15, 50:23, 51:2, 51:5, 52:15, 55:6, 59:20, 60:9, 65:6, 67:5, 67:17, 67:19, 69:4, 77:13, 78:5, 78:13, 81:12, 81:18, 81:20
**voter-related** [5] - 47:10, 47:19, 50:8, 55:6, 59:20
**VOTERS** [1] - 1:2
**Voters** [3] - 2:4, 20:24, 21:1
**voters** [7] - 5:17, 47:13, 51:7, 54:10,

60:1, 60:2, 82:23
**voting** [10] - 14:16, 46:12, 47:17, 49:20, 62:24, 67:18, 77:9, 78:3, 78:15, 78:19
**voting-related** [1] - 77:9
**vs** [1] - 1:3

## W

**wait** [5] - 28:9, 53:4, 53:8, 53:23, 54:2
**walk** [4] - 4:21, 61:21
**wants** [2] - 15:2, 49:23
**warrant** [1] - 17:20
**Washington** [5] - 1:5, 1:9, 1:10, 1:14, 1:19
**waste** [1] - 83:12
**ways** [5] - 16:15, 16:16, 18:5, 68:10
**web** [2] - 9:9, 9:10
**website** [2] - 9:11, 15:8
**week** [4] - 52:5, 73:23, 77:11, 84:11
**weeks** [1] - 4:10
**weighs** [1] - 34:17
**welfare** [2] - 14:17, 69:3
**Westlaw** [1] - 76:25
**whereas** [1] - 65:3
**whole** [18] - 11:11, 24:20, 26:10, 26:14, 31:16, 32:7, 33:13, 33:20, 34:24, 35:6, 35:8, 36:3, 36:17, 36:24, 37:18, 37:23, 57:3, 70:17
**willful** [1] - 67:25
**willing** [1] - 38:19
**win** [1] - 51:23
**withdraw** [5] - 37:3, 37:20, 38:22, 73:8, 83:10
**withdrawing** [2] - 28:21, 29:14
**Women** [3] - 2:3, 20:24, 21:1
**WOMEN** [1] - 1:2
**wondering** [1] - 18:1
**word** [3] - 14:11, 37:5, 37:6
**words** [1] - 78:14
**works** [1] - 9:13
**world** [1] - 57:7
**worry** [1] - 63:8
**worse** [2] - 72:11, 79:14
**wrap** [1] - 41:15

writing [2] - 83:12, 84:1
**wrongfully** [5] - 39:24, 40:9, 46:21, 47:7, 50:18
**wrote** [2] - 76:24, 77:4

## Y

**year** [2] - 22:12, 23:5
**year's** [2] - 53:25, 54:2
**years** [2] - 18:10, 61:5
**yes-or-no** [2] - 12:24, 16:2
**yesterday** [1] - 4:6
**yourselves** [1] - 2:7