UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>    Defendants. | Case No. 25-cv-3501-SLS |

**PLAINTIFFS' OPPOSITION TO STATE OF TEXAS'S MOTION TO INTERVENE**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................1

LEGAL STANDARD............................................................................................................2

ARGUMENT........................................................................................................................3

I.      Texas's motion to intervene in order to oppose Plaintiffs' request for preliminary relief under 5 U.S.C. § 705 is untimely. ...........................................................................4

II.     Intervention as of right should be denied...........................................................................5

      A.      The State of Texas does not have Article III standing nor a sufficient interest to warrant intervention as of right......................................................................5

          1.      D.C. Circuit precedent requires any proposed intervenor to demonstrate Article III standing. .....................................................................................5

          2.      Texas has failed to demonstrate Article III standing to enter this suit as a defendant-intervenor. ..................................................................................6

      B.      Any purported interest of Texas will not be impaired or impeded by the resolution of this case.......................................................................................................10

      C.      Any purported interest of Texas is adequately represented by Defendants and the U.S. Department of Justice. ............................................................................12

III.     Permissive intervention should also be denied. ..............................................................13

      A.      Texas's lack of standing also dooms its alternative request for permissive intervention. ....................................................................................................14

      B.      Texas fails to specifically articulate any defense that shares a common question of law or fact with this case.................................................................................14

      C.      Granting permissive intervention would delay and prejudice the adjudication of Plaintiffs' rights. ............................................................................................15

IV.     If intervention is granted, Texas's participation should be strictly limited. ......................16

CONCLUSION...................................................................................................................17

**INTRODUCTION**

Plaintiffs are not suing any Texas state agency or official and are not challenging any Texas law. Plaintiffs have not named *any* state actor as a defendant nor challenged *any* state law. Plaintiffs are instead suing federal executive agencies and their leaders for federal statutory and constitutional violations, relating to their unlawful and secretive consolidation of millions of Americans' sensitive personal data across government agencies into centralized data systems at the Department of Homeland Security ("DHS"). The U.S. Department of Justice is representing Defendants and defending the agencies' actions.

Nevertheless, the State of Texas is seeking to intervene. But its conclusory assertions of harm to its purported interests cannot sustain its obligations under Federal Rule of Civil Procedure 24(a) or 24(b) or Article III of the U.S. Constitution. Texas asks this Court to ignore the able representation of the U.S. Department of Justice in order to make room for its own arguments, all of which duplicate those advanced by the existing Defendants. If Texas wants to inform this Court of the benefits it sees in use of the unlawfully overhauled SAVE system, it can convey those arguments, which sound more in policy than law, to the Court via an amicus brief. But where Texas has failed to establish its qualification under Rule 24(a) nor convinced the Court to exercise its discretion under Rule 24(b), intervention is not proper.

**BACKGROUND**

On September 30, 2025, Plaintiffs filed their complaint challenging Defendants' unlawful consolidation of data across agencies, including the overhaul of the SAVE system. ECF No. 1. One week later, Plaintiffs filed a motion for a stay under 5 U.S.C. § 705, or in the alternative, for a preliminary injunction, ECF No. 16, as well as a motion to certify a preliminary relief subclass.

ECF No. 17.[1] On October 8, Defendants moved for a stay of all proceedings in this case "[i]n light of the lapse in appropriations." ECF No. 19 at 1. On October 14, the docket reflected that this case had been assigned to this Court. That same day, this Court denied Defendants' motion to stay all proceedings and set a briefing schedule for Plaintiffs' motion for § 705 stay and preliminary injunction and motion to certify a preliminary relief subclass. *See* Oct. 14, 2025 Minute Order. On October 17, the Court set the hearing date on the two motions for October 28. *See* Oct. 17, 2025 Minute Order.

On October 22, counsel for the State of Texas contacted the parties for their position on a forthcoming emergency motion to intervene. *See* ECF No. 43 at 12. Five days later, Texas filed its "Emergency Motion to Intervene and Request for Oral Hearing," ECF No. 43 ("Mot."), attaching a combined "Motion to Dismiss and Response to Plaintiffs' Motion for Preliminary Injunction." ECF No. 43-1.

## LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) requires courts to grant intervention, "[o]n timely motion," to "anyone who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). A proposed intervenor as of right must "establish[] its qualification for intervention" under the Rule. *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 731–32 (D.C. Cir. 2003).

Federal Rule of Civil Procedure 24(b) governs permissive intervention. "On timely motion,

---

[1] On October 29, 2025, Plaintiffs J. Does 1, 4, and 5 filed a notice withdrawing their motion for certification of a preliminary relief subclass. *See* ECF No. 17 (motion); ECF No. 46 (withdrawal). Because of that withdrawal, Plaintiffs' motion for a stay under 5 U.S.C. § 705 and preliminary injunction should now be treated solely as a § 705 motion.

the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Put another way, proposed intervenors must show: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). "[P]ermissive intervention is an inherently discretionary enterprise." *Id.* "In deciding how to exercise its discretion, the Court may . . . consider such factors as the nature and extent of the applicant's interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to . . . the just and equitable adjudication of the legal question presented." *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010) (citations and quotation marks omitted). Additionally, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## ARGUMENT

This Court should deny Texas's motion to intervene. First, with respect to Plaintiffs' motion for preliminary relief under 5 U.S.C. § 705, Texas's motion to intervene (filed the day before a hearing that had been scheduled eleven days prior) was not timely (*see infra* Section I). As such, Texas should not be permitted to intervene in the emergency proceedings.

Second, with respect to the broader case, Texas has not demonstrated standing to intervene, and has not demonstrated interests that would warrant intervention, either as of right (*see infra* Section II) or permissively (*see infra* Section III). And granting Texas leave to intervene would delay and prejudice the adjudication of Plaintiffs' rights.

3

**I.  Texas's motion to intervene in order to oppose Plaintiffs' request for preliminary relief under 5 U.S.C. § 705 is untimely.**

Texas's motion to intervene should be deemed untimely with respect to Plaintiffs' motion for a stay under 5 U.S.C. § 705. "At the threshold," a "motion to intervene must be timely"; if "the motion is untimely, the explicit language of the rule dictates that 'intervention must be denied.'" *Amador Cnty. v. U.S. Dep't of Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014) (quoting *NAACP v. New York*, 413 U.S. 345, 365 (1973)). The Court weighs "all the circumstances, especially . . . [the] time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980).

As the Court noted at the motion hearing held on October 28, 2025, the case had been pending four weeks when Texas moved to intervene, and it was not reasonable for Texas to expect to be heard on its motion when it filed only one day before the already-scheduled hearing. *See* Oct. 28, 2025 Hr'g Tr. at 4:5–15. Texas does not explain why it delayed filing for five days after it became aware of the case and conferred with counsel for Plaintiffs and Defendants. *See* Mot. at 4, 12. Texas also does not explain why it only learned of this case on October 21, Mot. at 4, three weeks after the complaint was filed and two weeks after the motion for a stay under 5 U.S.C. § 705 was filed. Indeed, the complaint was widely reported in national press, and, as Texas points out, it explicitly mentions Texas and its ongoing use of the overhauled SAVE system (though not in any way that would entitle Texas to intervention).[2] Texas's motion for intervention is, therefore, untimely with respect to its participation in the § 705 stay proceedings. Granting intervention now

---

[2] *See, e.g.*, Jude Joffe-Block, *A lawsuit tries to block the Trump administration's efforts to merge personal data*, NPR (Sep. 30, 2025), https://perma.cc/M8Y6-EXSN.

4

and allowing Texas to file its response to Plaintiffs' § 705 motion would be prejudicial or, at a minimum, cause unreasonable delay in adjudicating that motion.

**II.     Intervention as of right should be denied.**

Intervention as of right under Federal Rule Civil Procedure 24(a) is foreclosed, because the State of Texas has not demonstrated it has Article III standing. Alternatively, if this Court determines that the State of Texas does have Article III standing (or need not demonstrate it), it should nevertheless deny the motion because Texas's ability to protect its purported interest will not be impaired or impeded without its participation, and Defendants and their counsel will more than adequately defend the interests of the approximately 1,300 non-party SAVE user agencies. *See* Declaration of Brian Broderick ("Broderick Decl.") ¶ 7, ECF No. 37-1.

**A. The State of Texas does not have Article III standing nor a sufficient interest to warrant intervention as of right.**

The D.C. Circuit requires intervenors to demonstrate Article III standing, and Texas cannot do so based on the injuries that it proffers in its motion. The standard for intervention by right also requires that Texas demonstrate a sufficient interest in the litigation to warrant intervention, and for the same reasons that Texas cannot demonstrate Article III standing, it lacks a sufficient interest to warrant intervention. Its failure to demonstrate this interest dooms its attempted intervention by right.

**1. D.C. Circuit precedent requires any proposed intervenor to demonstrate Article III standing.**

"Intervenors become full-blown parties to litigation, and so all would-be intervenors must demonstrate Article III standing." *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 (D.C. Cir. 2018); *see Fund For Animals*, 322 F.3d at 731–32 ("[I]n addition to establishing its qualification for intervention under Rule 24(a)(2), a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution."). Crucially here, even

*defendant*-intervenors, must demonstrate Article III standing. *See Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013).

The D.C. Circuit has noted a "tension" between D.C. Circuit precedent requiring that Article III standing be demonstrated for intervention, and recent Supreme Court cases suggesting that requirement may be relaxed where an intervenor does not seek relief that is broader than a party with standing. *Inst'l S'holder Servs. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (discussing *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017), *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)). However, the D.C. Circuit has continued requiring a showing of standing for defendant-intervenors without focusing on the relief requested. *See IGas Holdings, Inc. v. Env't Prot. Agency*, 146 F.4th 1126, 1135 n.2 (D.C. Cir. 2025) (confirming respondent-intervenors' standing even when not contested by parties) (referencing *Inst'l S'holder Servs*, 142 F.4th at 764 n.3).

Accordingly, district courts within this circuit have continued to require a showing of standing from defendant-intervenors, as neither the Supreme Court nor the D.C. Circuit has stated the D.C. Circuit's requirement has been conclusively overruled. *See Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*, 348 F.R.D. 397, 402 (D.D.C. 2025) ("[T]his Court is bound by D.C. Circuit precedent unless intervening Supreme Court authority eviscerates the law of the circuit.") (cleaned up); *see also Mayor & City Council of Baltimore v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 738 F. Supp. 3d 1, 12 (D.D.C. 2024) (holding that proposed defendant-intervenor's "failure to demonstrate it [*sic*] that is [*sic*] has Article III standing requires the Court to deny its motion for leave to intervene as of right"); *Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*, 338 F.R.D. 1, 4 (D.D.C. 2021) (concluding that the court

6

was required to evaluate putative defendant-intervenor's standing before granting motion to intervene). In the D.C. Circuit, Texas must demonstrate Article III standing to intervene.

### 2. Texas has failed to demonstrate Article III standing to enter this suit as a defendant-intervenor.

Texas's asserted injuries here do not suffice to support Article III standing. Proposed intervenors "must demonstrate" each of the elements of Article III standing: "injury-in-fact to a legally protected interest, causation, and redressability." *Old Dominion Elec. Coop.*, 892 F.3d at 1233. Mere conclusory assertions are not sufficient to show standing. *See Racing Enthusiasts & Suppliers Coal. v. Env't Prot. Agency*, 45 F.4th 353, 357 (D.C. Cir. 2022). Courts cannot "presume the missing facts necessary to establish an element of standing." *Humane Soc'y of the U.S. v. Perdue*, 935 F.3d 598, 603 (D.C. Cir. 2019) (citation omitted).

While a state has a "sovereign" power to "to create and enforce a legal code," *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982), simply noting the existence of the power is not enough to confer standing. "Rather, to sufficiently allege standing against the federal government, a state must show that a federal law or its application *interferes* with [the] state's exercise of its sovereign power to create *and enforce* a legal code." *Commonwealth v. U.S. Dep't of Educ.*, 340 F. Supp. 3d 7, 12 (D.D.C. 2018) (quotations and citation omitted) (first emphasis added).

Courts have also rejected theories of standing where a state makes vague and unproven assertions that its ability to enforce its own laws has been impaired. *See, e.g.*, *Louisiana v. Dep't of Homeland Sec.*, 726 F. Supp. 3d 653, 668–70 (E.D. La. 2024) (finding no standing on the basis of sovereign interests where state alleged change in federal law that impacted floodplain management program but failed to allege that the revised plans "tangibly interfere[d] with the Plaintiff States' ability to create or enforce state law"); *Louisiana State by & through Louisiana*

7

*Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 881 (5th Cir. 2023) (rejecting state's proffered injury-in-fact where state failed to "connect the dots" on how it would impact enforcement of state's wildlife and fisheries laws); *Louisiana by & through Landry v. Biden*, 64 F.4th 674, 683–84 (5th Cir. 2023) (dismissing action for lack of jurisdiction where there was no "direct effect on [State] Plaintiffs' law or policy").

The State of Texas claims that denying intervention would "impede Texas's ability to implement its laws." Mot. at 6. This purported injury is supported with only conclusory assertions from a declaration, asserting that the overhauled SAVE system is helpful to some Texas officials. *See* Declaration of Christina Worrell Adkins ("Adkins Decl."), ECF No. 43-2. But that evidence falls far short of showing that reverting to the SAVE system that existed for decades before this summer constitutes an affirmative *interference* with Texas's law enforcement efforts that would confer upon Texas a right to sue the government to build and maintain SAVE. Texas's conclusory assertions to the contrary are not specific enough to meet Texas's burden. *See Racing Enthusiasts*, 45 F.4th at 357 (refusing to credit a declaration that had only conclusory assertions about the impact of an agency's action).

Indeed, Texas previously managed to implement its laws without using the recently overhauled SAVE system;[3] it has not explained how the new SAVE system has materially improved its ability to implement these laws since the Texas Secretary of State gained access to the system, nor has it cited any case law for the proposition that losing access to certain database improvements constitutes an affirmative *impediment* by the federal government to its sovereign interest in law enforcement. For instance, while the record reveals Texas has started to use SAVE

---

[3] Press Release, *Texas Leads the Way Against Noncitizen Voting*, Tex. Sec'y of State (Aug. 12, 2024), https://perma.cc/XKV3-T66D (detailing the many "safeguards and checks against noncitizen voting" used by the State of Texas, pre-dating its use of SAVE).

to flag supposed non-citizens on the voter rolls, Texas fails to identify a single *verified* case of non-citizen voting, or any criminal convictions secured, based on information obtained through SAVE.[4] At this time, Texas can only guess at the final results of its review and whether it will prove any more effective or reliable than the version of the SAVE system that existed prior to Defendants' unlawful overhaul. Such speculative injury is not sufficient under Article III.

Any connection between the overhauled SAVE system and the laws cited in the declaration is not self-evident, and the Court is not responsible for filling in the "missing facts necessary to establish an element of standing." *Perdue*, 935 F.3d at 603. It is clear that none of the enumerated statutes require the use of SAVE itself for voter registration or voter list maintenance purposes. None even require citizenship verification beyond what is laid out in Tex. Elec. Code §§ 16.0332, 18.068, which require only comparisons to jury service information and Department of Public Safety data. Nor do they mandate the mass voter list maintenance effort Texas is undertaking by running the statewide list of voters through SAVE. *See* Adkins Decl. ¶ 10. Section 16.033 of the Texas Election Code does authorize Texas county registrars to "use any lawful means to investigate whether a registered voter is currently eligible for registration in the county," but this permissive language directed at the county registrars is not a requirement. *See id.* ¶ 4. Where the declaration references use of SAVE to "determine eligibility for voter registration," it is silent on precisely how Plaintiffs' requested relief would impair or impede Texas's enforcement of the cited laws. *See id*. ¶¶ 6–12 (no laws cited). And Texas only began using DHS's SAVE system this year, Mot. at 6, despite its availability for voting-related purposes since at least 2014. *See* Compl. ¶ 150 (noting Virginia's use of SAVE for voter list maintenance since at least 2014).

---

[4] *Cf.* Press Release, *Texas Completes Citizenship Verifications in the SAVE Database*, Tex. Sec'y of State (Oct. 20, 2025), https://perma.cc/9WZ2-XVDA (identifying 2,724 "potential" non-citizens registered to vote in Texas).

9

Without a concrete, non-speculative injury, the State of Texas fails to meet its burden to demonstrate Article III standing, dooming its bid for intervention as of right.

For the same reasons, Texas does not establish a legal interest sufficient for intervention under Rule 24(a). *See Las Americas*, 348 F.R.D. at 403 (explaining that Texas had "not asserted a legal interest sufficient to satisfy the interest element of Rule 24(a)" for "the same reason" that the state had failed to show standing) (citing *Deutsche Bank*, 717 F.3d at 191) (characterizing Article III standing and Rule 24(a)'s interest element as "similar")).

### B. Any purported interest of Texas will not be impaired or impeded by the resolution of this case.

While Texas's claims for intervention by right are fatally flawed based on a lack of standing and a sufficient interest, as described above, Texas also fails to establish that the "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). Analysis on this prong focuses on "the practical consequences of denying intervention." *Fund for Animals*, 322 F.3d at 735 (citation and quotation marks omitted). While Texas asserts that its interest is in "maintaining accurate voter rolls, preventing illegal votes, and ensuring fair and accurate elections," Mot. at 7, its arguments that this matter will impede that interest are speculative and poorly supported. Texas essentially argues that because it has conducted an initial analysis of its voter rolls using stale, unreliable SSA data that is now accessible via the SAVE system, it will ultimately identify non-citizens on its voter rolls. But Texas has not yet identified any such voters with SAVE, nor is it yet aware whether SAVE is in fact identifying naturalized citizens who are lawfully registered.

Moreover, Texas's claim that it would have "no way to defend its interests" is overstated and lacking support. *See* Mot. at 7. Denying intervention here would not prohibit Texas from enforcing the many other provisions in Texas state law that criminalize unlawful voting and that

10

authorize voter list maintenance processes aimed at identifying any non-citizens on the rolls. For example, the resolution of this case will not prevent state officials from continuing to obtain data on non-citizens from the Texas Department of Public Safety and comparing it to the statewide voter registration database, Tex. Elec. Code § 16.0332; or prosecuting anyone that knowingly or intentionally makes a false statement on a voter registration application, Tex. Elec. Code § 13.007, or anyone that knowingly or intentionally votes even though they are ineligible, Tex. Elec. Code § 64.012.

Nor does Texas substantiate its claim that if Plaintiffs' requested relief were granted, it "could fundamentally alter Texas's ability to comply with federal and state law regarding voter registration by eliminating 'the most current and accurate data set available for verification of U.S. citizenship.'" Mot. at 7. No federal or state law requires Texas to use SAVE instead of or in addition to the other list maintenance and registration tools at its disposal. And the overhauled SAVE system now incorporates SSA citizenship data that the *federal government* has previously admitted is neither current nor accurate. *See* Pls. Mem. in Supp. of a Stay and Prelim. Inj. at 3, ECF No. 16-1 (describing SSA's own admissions that its data on citizenship is unreliable, incomplete, and not definitive). If there are practical consequences here, Texas does not name them.

Lastly, where a proposed intervenor remains able to participate as amicus curiae, "denying intervention . . . will not practically impair the proposed intervenors' ability to protect their interests . . . ." *District of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 234 (D.D.C. 2011). Plaintiffs would not oppose Texas's participation as amicus. If Texas's sole purpose here is to inform this Court of how it has, in its view, benefited from Defendants' unlawful overhauling of the SAVE system, the proper venue to convey such policy-related views is an amicus brief.

11

### C. Any purported interest of Texas is adequately represented by Defendants and the U.S. Department of Justice.

Defendants will adequately represent the interests of Texas and all the other approximately 1,300 SAVE user agencies. *See* Broderick Decl. ¶ 7. "Although the standard for determining inadequacy of representation is lenient, the moving party still bears the burden of showing that representation may be inadequate." *Env't Def. Fund, Inc. v. Costle*, 79 F.R.D. 235, 242 (D.D.C. 1978), *aff'd*, (D.C. Cir. July 31, 1978). If a proposed intervenor "has not shown that Defendants have failed or will fail to vigorously defend the [agency action]," courts may conclude the representation is adequate. *Las Americas*, 348 F.R.D. at 403. Courts may also deny intervention as of right where all of the proposed intervenor's arguments "will be cumulative of the arguments advanced by the other defendants." *Costle*, 79 F.R.D. at 243. Rule 24 is not concerned with whether the proposed intervenors' "preferred arguments are articulated" so long as its "interest is adequately represented." *Las Americas*, 348 F.R.D. at 403.

As demonstrated by Defendants' litigation to date, the administration will robustly defend the overhauled SAVE system. Texas has provided no basis for concluding that there will be any divergence between its putative position in this litigation and that of Defendants. In *Costle*, the district court denied intervention as of right when the proposed intervenors' arguments would be necessarily "cumulative" because the parties would be "limited to arguing for or against the validity" of regulations approved by the EPA Administrator. 79 F.R.D. at 243. Just as in *Costle*, this case is focused on whether an agency action is lawful; any purported "individual interest" that a SAVE user agency like Texas would want to advance is "largely irrelevant." *Id.*

For its part, Texas has not even identified any disagreement with Defendants' approach to the case or the arguments it has raised in opposition to the motion for a stay under 5 U.S.C. § 705. *Cf. Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312 (D.C. Cir.

12

2015) (highlighting disagreements over the extent of agency power, scope of the administrative record, and post-judgment strategy in evaluating adequacy of representation). The combined motion to dismiss and response to Plaintiffs' motion for preliminary injunction that Texas attached to its motion to intervene duplicates arguments already made by Defendants. *See* ECF No. 43-1. None of its arguments, including its consideration of the equities, rely on any Texas-specific information.

Furthermore, Texas's litigation against DHS regarding the SAVE system presents only a facade of adversity. Mot. at 9. The case was filed over a year ago and has not been vigorously prosecuted. *See* Compl., *Att'y Gen. of Texas v. Mayorkas*, No. 4:24-cv-00049-DC-DF (W.D. Tex. Oct. 22, 2024), ECF No. 1. Instead, Texas has repeatedly consented to extensions of the federal government's time to respond and never sought any preliminary injunctive relief. *See* Mots. for Ext., *Mayorkas*, ECF Nos. 5, 6, 7, 8, 9, 10. Over one year later, no responsive pleading has been filed.

Accordingly, Texas has not established grounds for intervention as of right under Rule 24(a).

### III.  Permissive intervention should also be denied.

Proposed defendant-intervenors seeking permissive intervention must show "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Because of the considerable discretion under Rule 24(b), a district court may deny permissive intervention even when it finds all the technical requirements are met. *See id.* at 1048 (noting that such decisions are reviewed under an abuse of discretion standard). Before granting a request for permissive intervention, courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties'

13

rights." Fed. R. Civ. P. 24(b)(3).

Here, the Court should deny permissive intervention because Texas lacks standing, and because intervention would delay and prejudice the adjudication of Plaintiffs' rights.

### A. Texas's lack of standing also dooms its alternative request for permissive intervention.

Texas must demonstrate standing to warrant permissive intervention. *See Nat'l Children's Ctr.*, 146 F.3d at 1046 (intervenors under Rule 24(b)(2) must show "an independent ground for subject matter jurisdiction"). And district courts have declined to exercise their discretion to grant permissive intervention when standing is lacking. *See, e.g.*, *Mayor & City Council of Baltimore*, 738 F. Supp. 3d at 7, 12–13 (finding "lack of standing . . . either precludes or strongly counsels against" allowing permissive intervention.); *Scotts Valley Band of Pomo Indians v. U.S. Dep't of Interior*, 337 F.R.D. 19, 27 (D.D.C. 2020) ("[B]ecause the Court has serious doubts that Yocha Dehe has standing to intervene . . . it will not exercise its discretion to grant permissive intervention."), *aff'd sub nom. Yocha Dehe v. U.S. Dep't of the Interior*, 3 F.4th 427 (D.C. Cir. 2021); *see also In re Endangered Species Act Section 4 Deadline Litig.-MDL No. 2165*, 704 F.3d 972, 979–80 (D.C. Cir. 2013) (affirming denial of permissive intervention where proposed intervenor lacked standing).

Accordingly, for the same reasons discussed in Section II.A.2, *see supra* at 7–10, this Court should not exercise its discretion to grant permissive intervention given Texas's lack of standing.

### B. Texas fails to specifically articulate any defense that shares a common question of law or fact with this case.

Though the words "'claim or defense,' as they appear in Rule 24(b), should not be strictly interpreted," "the proposed intervenor must have a claim or defense that shares at least some aspect with a claim or defense presented in the main action." *City of Herriman v. Bell*, 590 F.3d 1176, 1184 (10th Cir. 2010) (citing *Nuesse v. Camp*, 385 F.2d 694, 704 (D.C. Cir. 1967)).

14

This Court may exercise its discretion to deny permissive intervention if the proposed intervenor "has not specified the claim or defense it may have that shares with the main action a common question of law or fact." *Scotts Valley*, 337 F.R.D. 19 at 27 (citation and quotation marks omitted). This Court need not credit Texas's threadbare assertion of its purported defenses. Texas merely states, in conclusory fashion, that it

> will raise defenses that share many common questions of law and fact with the parties' claims and defenses. Plaintiffs allege that numerous recent changes to the SAVE system are unlawful. Texas disagrees with Plaintiffs and contends that the recent changes are valid, enforceable, and necessary to comply with federal and state law.

Mot. at 10–11. Texas directs the reader back to Section I.B., which details its purported "interest in the transaction at issue," Mot. at 4–5, but this is wholly inadequate. Again, the proper role for a defendant-intervenor that does not assert any separate defense that shares a factual or legal nexus with the existing litigation is as amicus curiae. If Texas wants to inform this Court of the benefits it sees in use of the unlawfully overhauled SAVE system, it can convey those arguments to the Court via an amicus brief.

### C. Granting permissive intervention would delay and prejudice the adjudication of Plaintiffs' rights.

Courts have also exercised their discretion to deny permissive intervention where granting it would open the door to many other intervenors, such as SAVE's many user agencies who use the system for varied purposes and pursuant to varied Memoranda of Agreement. *See, e.g.*, *Las Americas*, 348 F.R.D. at 403–04 (declining to exercise its discretion to grant permissive intervention where "ultimately all fifty states could claim to suffer the kind of collateral injuries Texas articulates here") (citing *Arpaio v. Obama*, 27 F. Supp. 3d 185, 202 (D.D.C. 2014) (noting concern that "nearly all state officials [could] challenge a host of Federal laws simply because they disagree with how many—or how few—Federal resources are brought to bear on local interests"),

15

*aff'd*, 797 F.3d 11 (D.C. Cir. 2015)); *Cooper v. Newsom*, 13 F.4th 857, 868–69 (9th Cir. 2021) ("[S]ome or all of the fifty-five other District Attorneys in California might seek to intervene if intervention were granted to the[se] three . . . .").

The overhauled SAVE system currently has approximately 1,300 user agencies, including all types of federal, state, and local government agencies. *See* Broderick Decl. ¶ 7. There are sixty-seven user agencies, including both state and local agencies, that are authorized to use SAVE for voter list maintenance or voter registration purposes, but many more use it for citizenship verification in various other contexts.[5] Were Texas permitted to intervene, any of those state and local agencies could claim the same interest Texas asserts here—*i.e.*, the overhauled SAVE system enables it to "implement [state and/or federal] laws," Mot. at 6, creating potential delay and inefficiency. The Court may exercise its discretion to avoid this outcome by limiting the defense to the federal government, which has demonstrated its robust ability to do so. *See Deutsche Bank*, 717 F.3d at 192; *Las Americas*, 348 F.R.D. at 403.

Respectfully, this Court should deny Texas's request for permissive intervention as well.

## IV.   If intervention is granted, Texas's participation should be strictly limited.

If this Court is inclined to grant Texas intervention as of right or permissive intervention, then Texas's role should be restricted to (a) briefing that avoids duplication of arguments made by Defendants and (b) participation in oral argument. "An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24(a) Advisory Committee's

---

[5] *SAVE Agency Search Tool: Filtered Results*, U.S. Citizenship and Immig. Servs., https://www.uscis.gov/save/about-save/save-agency-search-tool?benefit_category[]=97&benefit_category[]=98&items_per_page=10 (filtering the list of agencies to the "Benefit Categor[ies]" of "Voter List Maintenance" and "Voter Registration") (last visited October 31, 2025).

note on 1966 amendment; *see also Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, No. 21-CV-00344-JSW, 2021 WL 4552144, at *3 (N.D. Cal. May 3, 2021) ("[C]ourts have exercised their discretion to impose reasonable limitations on the participation of intervenors as of right to ensure the efficient adjudication of the litigation.") (citation and quotation marks omitted). Even permissive intervenors can be "barred . . . from raising collateral issues" and have their participation limited to "claims raised by the original parties." *Fund For Animals*, 322 F.3d at 737 n.11 (citation and quotation marks omitted). "[G]iven the complexity of much public law litigation, permitting courts to limit intervention as of right to discrete phases of the litigation may be necessary in some cases." *Harris v. Pernsley*, 820 F.2d 592, 599 n.11 (3d Cir. 1987). It is also common for courts to "limit intervention to particular issues or add conditions to intervention." *Fla. Med. Ass'n, Inc. v. Dep't of Health, Educ., & Welfare*, No. 3:78-CV-178-J-34MCR, 2011 WL 4459387, at *14 (M.D. Fla. Sep. 26, 2011). After all, "[a] nonparty may have a sufficient interest for some issues in a case but not others, and the court may limit intervention accordingly." *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 707 (11th Cir. 1991).

## CONCLUSION

This Court should deny the State of Texas's motion for mandatory and permissive intervention and instead grant it leave to participate as amicus curiae.

Dated: October 31, 2025

Nikhel S. Sus (D.C. Bar No. 1017937)
John B. Hill (N.Y. Bar No. 5505508)*
Lauren C. Bingham (Fl. Bar No. 105745)*
Yoseph T. Desta (DC Bar No. 90002042)
CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, D.C. 20044
202 408-5565
nsus@citizensforethics.org
jhill@citizensforethics.org
lbingham@citizensforethics.org
ydesta@citizensforethics.org

Aman T. George (D.C. Bar No. 1028446)
Jennifer Fountain Connolly (D.C. Bar No. 1019148)
Johanna M. Hickman (D.C. Bar No. 981770)
Mark B. Samburg (D.C. Bar No. 1018533)
Robin Thurston (D.C. Bar No. 1531399)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
ageorge@democracyforward.org
jconnolly@democracyforward.org
hhickman@democracyforward.org
msamburg@democracyforward.org
rthurston@democracyforward.org

Respectfully submitted,

*/s/ Emily Davis*

Jon Sherman (D.C. Bar No. 998271)*
Michelle Kanter Cohen (D.C. Bar No. 989164)
Emily Davis (D.C. Bar No. 90020129)
FAIR ELECTIONS CENTER
1825 K St. NW, Suite 701
Washington, DC 20006
202-331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
edavis@fairelectionscenter.org

*admitted *pro hac vice*

*Counsel for All Plaintiffs*

John L. Davisson (D.C. Bar No. 1531914)
Enid Zhou (D.C. Bar No. 1632392)
Abigail Kunkler (D.C. Bar No. 90030868)
ELECTRONIC PRIVACY INFORMATION CENTER
1519 New Hampshire Ave NW
Washington, D.C. 20036
Telephone: 202-483-1140
Fax: 202-483-1248
davisson@epic.org
zhou@epic.org
kunkler@epic.org

*Counsel for Plaintiff Electronic Privacy Information Center*

18