**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| League of Women Voters of the United States, *et al.*, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Case No. 1:25-cv-003501 |
| U.S. Department of Homeland Security, *et al.*, | § § | |
| *Defendants.* | § § | |

**STATE OF TEXAS'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION TO INTERVENE**

Everyone—Texas, Federal Defendants, Plaintiffs, and this Court—should have a deep interest in ensuring the fairness of our elections. Plaintiffs have challenged recent upgrades to the SAVE system which, for the first time, have enabled the effective use of SAVE to perform citizenship verification for individuals on the voter rolls. Texas's use of the SAVE system to perform these verifications has been directly challenged in this action. Texas should be permitted to intervene to protect its interests, respond to Plaintiffs' representations about Texas's use of SAVE, and to ensure that Texas retains access to a usable and accurate method of performing its statutorily required obligation to maintain its voter rolls and ensure non-citizens are not able to vote illegally.

## TABLE OF CONTENTS

Table of Contents.................................................................................................................2

Table of Authorities ...........................................................................................................3

    I.    Texas is entitled to intervene as a matter of right. ........................................6

        A.  Texas's Motion to Intervene was timely. .......................................6

        B.  Texas has sufficient interest in this matter to intervene..............................7

        C.  Texas has interests in the litigation which will be impaired by the resolution of this case in favor of Plaintiffs. .....................................................................11

        D.  Federal Defendants do not adequately represent Texas's interests. ...........................14

    II.    In the alternative, Texas is entitled to permissive intervention. ................................16

        A.  Texas maintains defenses and questions of law common to the main action. .............17

        B.  Granting permissive intervention would not delay the proceedings, prejudice the adjudication of Plaintiffs' rights, or open the floodgates for other states to intervene...................................................................................................17

    III.    Texas's role as intervenor should not be limited. .......................................18

Conclusion ........................................................................................................................18

Certificate of Service.........................................................................................................19

<u>**T**ABLE OF **A**UTHORITIES</u>

## <u>Cases</u>

*100Reporters LLC v. United States Dep't of Justice,*
   307 F.R.D. 269 (D.D.C. 2014) ......................................................................6, 14

*Amador Cnty., Cal. v. U.S. Dep't of the Interior,*
   772 F.3d 901 (D.C. Cir. 2014) ................................................................... 6

*ASARCO Inc. v. Kadish,*
   490 U.S. 605 (1989) .............................................................................. 9, 10

*Associated Builders & Contractors v. Perry,*
   16 F.3d 688 (6th Cir. 1994) ................................................................ 8

*Attorney General of Texas, et al. v. Mayorkas, et al.;*
   Case No. 4:24-cv-00049 (W.D. Tex. 2024) ................................. 12, 16, 18

*Beckman Indus., Inc. v. International Ins. Co.,*
   966 F.2d 470 (9th Cir. 1992) .......................................................... 16

*Bowsher v. Synar,*
   478 U.S. 714 (1986) ........................................................................ 8

*Broidy Capital Mgmt. LLC v. Muzin,*
   61 F.4th 984 (D.C. Cir. 2023) ...................................................... 13

*Chiles v. Thornburgh,*
   865 F.2d 1197 (11th Cir. 1989) ................................................... 8

*Citizens United v. Fed. Election Comm'n,*
   558 U.S. 310 (2010) ...................................................................... 7

*City of Colorado Springs v. Climax Molybdenum Co.,*
   587 F.3d 1071 (10th Cir. 2009) ................................................... 8

*Clinton v. City of New York,*
   524 U.S. 417 (1998) ...................................................................... 8

*Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior,*
   100 F.3d 837 (10th Cir.1996) ..................................................... 12

*Cobell v. Jewell,*
   No. 96-01285 (TFH), 2016 WL 10704595 (D.D.C. Mar. 30, 2016) ......... 15

*Commonwealth of the N. Mariana Islands v. United States,*
   No. CIVA 08-1572 PLF, 2009 WL 596986 (D.D.C. Mar. 6, 2009) ......... 13

*Commonwealth v. U.S. Dep't of Educ.,*
   340 F. Supp. 3d 7 (D.D.C. 2018) .................................................. 9

*Cooper v. Newsom,*
   13 F.4th 857 (9th Cir. 2021) ....................................................... 18

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
  788 F.3d 312 (D.C. Cir. 2015) ................................................................................11

*D.C. v. Potomac Elec. Power Co.*,
  826 F. Supp. 2d 227 (D.D.C. 2011) ........................................................................ 13

*E.E.O.C. v. Nat'l Children's Ctr., Inc.*,
  146 F.3d 1042 (D.C. Cir. 1998) ......................................................................... 16, 17

*Env't Def. Fund, Inc. v. Costle*,
  79 F.R.D. 235 (D.D.C. 1978) ................................................................................. 15

*Freedom from Religion Found., Inc. v. Geithner*,
  262 F.R.D. 527 (E.D. Cal. 2009) ............................................................................ 14

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir.2003) .............................................................................6, 11

*HRH Servs. LLC v. Travelers Indem. Co.*,
  No. 23-CV-02300 ( JDB), 2024 WL 4699925 (D.D.C. Nov. 6, 2024)................................. 14, 15

*Institutional S'holder Services, Inc. v. Sec. & Exch. Comm'n*,
  142 F.4th 757 (D.C. Cir. 2025).......................................................................7, 8, 18

*Jones v. Prince George's Cnty., Md.*,
  348 F.3d 1014 (D.C. Cir. 2003) .............................................................................. 6

*Las Americas Immigrant Advocacy Center v. U.S. Department of Homeland Security*,
  348 F.R.D. 397 (D.D.C. 2025)........................................................................... 16, 18

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
  591 U.S. 657 (2020) ...................................................................................... 7, 9

*McConnell v. Fed. Election Comm'n*,
  540 U.S. 93 (2003) ........................................................................................ 7

*Michel v. Anderson*,
  14 F.3d 623 (D.C. Cir. 1994) ............................................................................... 13

*Moten v. Bricklayers, Masons & Plasterers, Intern. Union of Am.*,
  543 F.2d 224 (D.C. Cir. 1976) .............................................................................. 13

*Mova Pharm. Corp. v. Shalala*,
  140 F.3d 1060 (D.C. Cir. 1998) ............................................................................. 6

*Narragansett Indian Tribe v. Nat'l Indian Gaming Comm'n*,
  158 F.3d 1335 (D.C. Cir. 1998) ............................................................................ 13

*Nashville, C. & St. L. R. Co. v. Wallace*,
  288 U.S. 249 (1933) ....................................................................................... 9

*Nat. Res. Def. Council v. Costle*,
  561 F.3d 904 (D.C. Cir. 1977) ..............................................................................11

*Red Lake Band of Chippewa Indians v. United States Army Corps of Eng'rs*,
    338 F.R.D. 1 (D.D.C. 2021) .................................................................................11

*Ruiz v. Estelle*,
    161 F.3d 814 (5th Cir. 1998) ...............................................................................8

*Schneider v. Dumbarton Devs., Inc.*,
    767 F.2d 1007 (D.C. Cir. 1985) ..........................................................................18

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017) ........................................................................................7, 9

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) ...........................................................................................14

*U.S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978) ................................................................................8

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) ..........................................................................15

*United States v. Seigel*,
    168 F.2d 143 (D.C. Cir. 1948) ...........................................................................13

*United States v. State of Mich.*,
    940 F.2d 143 (6th Cir. 1991) .............................................................................13

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
    412 U.S. 669 (1973) .............................................................................................9

*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
    295 F.3d 1111 (10th Cir. 2002) ..........................................................................12

*Warth v. Seldin*,
    422 U.S. 490 (1975) .............................................................................................9

*Yniquez v. Arizona*,
    939 F.2d 727 (9th Cir. 1991) ..............................................................................8

**Statutes**

28 U.S.C. § 1331 ...........................................................................................................17

Tex. Elec. Code § 16.0332 ...........................................................................................12

**Other Authorities**

Matthew I. Hall, *Standing of Intervenor-Defendants in Public Law Litigation*,
    80 Fordham L. Rev. 1539 (2012) ........................................................................9

**Rules**

Fed. R. Civ. P. 24 .....................................................................................................16, 17

I.    **Texas is entitled to intervene as a matter of right.**

A party is entitled to intervene as a matter of right when they have (1) filed a timely motion to intervene; (2) an interest relating to the property or transaction that is the subject of the action; (3) are so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) their interest may not be not adequately represented by existing parties. *100Reporters LLC v. United States Dep't of Justice*, 307 F.R.D. 269, 274 (D.D.C. 2014) (citing *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir.2003); *Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003). Texas has satisfied these factors.

A.    **Texas's Motion to Intervene was timely.**

Texas's Motion to Intervene was timely as Federal Defendants correctly concede. ECF 50 at 2. When courts look at the time since inception of the suit as a factor in the timeliness of a motion to intervene, courts find motions timely unless months or years have elapsed, not a matter of weeks. *See, e.g.*, *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) ("As to timeliness, Upjohn sought to intervene a few weeks after Mova initiated its action, and before the district court ruled on the preliminary injunction; this cannot be regarded as untimely."); *Amador Cnty., Cal. v. U.S. Dep't of the Interior*, 772 F.3d 901, 902, 904 (D.C. Cir. 2014) (denying intervention sought "[a]fter nearly six-and-a-half years of litigation" when the "the case was otherwise ready for a decision on the merits").

Texas filed its Motion to Intervene, ECF 43, on October 27, 2025, less than four weeks after Plaintiffs filed their original complaint, ECF 1, and before the Court even heard Plaintiffs' Motion for Preliminary Injunction, ECF 16, filed on October 7, 2025. This cannot be regarded untimely. *See Mova Pharm. Corp.*, 140 F.3d at 1076. Moreover, Plaintiffs have cabined their objections to the timeliness of Texas's Motion to Intervene to participation in the preliminary injunction hearing.

ECF 49 at 6-7. Plaintiffs' arguments against Texas's participation in the preliminary injunction hearing are moot as the hearing has already occurred. Texas's Motion to Intervene in the litigation as whole was timely. Neither Federal Defendants, ECF 50 at 2, nor Plaintiffs argue otherwise. ECF 49 at 6-7.

### B. Texas has sufficient interest in this matter to intervene.

Let's be clear, Plaintiffs put Texas's interest in the SAVE system at issue in this litigation. In no less than three pleadings and two declarations, Plaintiffs directly attack Texas's use of the SAVE system. *See* ECF 1, 16-1, 16-2, 47, 47-1. Texas's interest in this litigation and injury from a ruling in Plaintiffs' favor should be clear from the face of Plaintiffs' filings alone. That they now seek to exclude Texas from participating in this action is comical. Texas meets the significant interest factor for intervention for at least two reasons. *First*, Texas need only establish a sufficient interest, not Article III standing, because a case and controversy exists between the current parties and Texas seeks no additional relief. *Second*, even if Texas is required to establish Article III standing, it can and has done so.

"Intervenors seeking relief broader than or different from that sought by existing parties must possess constitutional standing but intervenors that seek the same relief sought by at least one existing party need not do so." *Institutional S'holder Services, Inc. v. Sec. & Exch. Comm'n*, 142 F.4th 757, 764 (D.C. Cir. 2025) (internal citation omitted) (citing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020); *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017)). Because the original defendant has standing, courts "need not address the standing of the intervenor-defendants, whose position [] is identical to the [defendant's]." *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 233 (2003), overruled in part by *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) (citing *Clinton v. City of New York*, 524 U.S. 417, 431–

432, n. 19 (1998); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986)). The Supreme Court's opinion in *McConnell* supported the position of the Circuit courts that held that "Article III does not require intervenors to independently possess standing where the intervention is into a subsisting and continuing Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so." *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998); *see also City of Colorado Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1079 (10th Cir. 2009) ("[P]arties seeking to intervene under Rule 24(a) or (b) need not establish [independent] Article III standing so long as another party with constitutional standing on the same side as the intervenor remains in the case."); *Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir. 1994) ("An intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing."). *Yniquez v. Arizona*, 939 F.2d 727, 731 (9th Cir. 1991) ("In order for an individual to intervene in ongoing litigation between other parties, he need only meet the [Rule 24(a)] criteria."); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) ("[A] party seeking to intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24 as long as there exists a justiciable case and controversy between the parties already in the lawsuit."); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 190 (2d Cir. 1978) ("The existence of a case or controversy having been established as between the Postal Service and the Brennans, there was no need to impose the standing requirement upon the proposed intervenor.").

Plaintiffs correctly point out that there is confusion amongst D.C. district courts as to whether an intervenor-defendant must allege standing when seeking the same relief as the original party defendant. ECF 49 at 8 (citing *Institutional S'holder Servs.*, 142 F.4th at 764 n.3 (discussing

*Town of Chester*, 581 U.S. at 440 and *Little Sisters of the Poor Saints Peter & Paul Home*, 591 U.S. at 674 n.6.). That may well be because Article III standing as applicable to defendants is an under-appreciated and infrequently litigated area of the law. *See* Matthew I. Hall, *Standing of Intervenor-Defendants in Public Law Litigation*, 80 Fordham L. Rev. 1539, 1541–42 (2012). But even assuming Texas is required to independently establish its standing, "[a]n intervenor-defendant against whom no claim is asserted may seek to establish standing by showing a reasonable apprehension of injury from judicial resolution of the plaintiff's claim." *Id.* at 1572–73. The United States Supreme Court has held that an adverse court ruling is an "'actual or threatened injury' that is sufficiently 'distinct and palpable' to support [an intervenors] standing to invoke the authority of the federal court." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 618 (1989) (quoting *Warth v. Seldin*, 422 U.S. 490, 500, 501 (1975)). Standing exists for an intervenor-defendant where the "parties remain adverse and 'valuable legal rights . . . will be directly affected to a specific and substantial degree by the decision of the question of law.'" *Id.* at 619 (quoting *Nashville, C. & St. L. R. Co. v. Wallace*, 288 U.S. 249, 262 (1933)).

Here, Texas is not merely a "concerned bystander," but has a "direct stake" in the outcome of this litigation and, thus, possesses Article III standing to intervene as a defendant in this matter. *See, e.g.*, *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687 (1973). Plaintiffs claim "to sufficiently allege standing against the federal government, a state must show that a federal law or its application *interferes* with [the] state's exercise of its sovereign power to create *and enforce* a legal code." ECF 49 at 9 (citing *Commonwealth v. U.S. Dep't of Educ.*, 340 F. Supp. 3d 7, 12 (D.D.C. 2018)). However, Texas is not attempting to allege standing against the federal government. Instead, Texas alleges injuries based on Plaintiffs' actions and the harm

that will befall Texas should Plaintiffs succeed and be granted the ultimate relief requested before this Court. Such injuries are sufficient to invoke standing. *ASARCO Inc.*, 490 U.S. at 619.

Texas currently claims a significant benefit from USCIS's update of SAVE. ECF 43-2 ¶ 8. The updated version of SAVE allows Texas to complete its legally mandated voter maintenance activities in the least burdensome and most accurate manner to date. ECF 43-2 at ¶¶ 9, 10. Some of these concrete benefits include being able to submit bulk uploads of voter records to the SAVE system "instead of going through a cumbersome process of searching one record at a time" and being able to verify the citizenship of individuals on Texas's voter rolls with numbers regularly maintained in Texas's voter registration system. ECF 43-2 at ¶ 9. If Plaintiffs prevail and the SAVE system returns to its pre-upgraded state, Texas will once again be unable to search the SAVE system and verify citizenship for individuals on its voter rolls for whom Texas does not have an alien registration number or other immigration identifier. ECF 43-2 at ¶¶ 7, 9. Texas will also be forced to return to the cumbersome and labor-intensive process of verifying its voter rolls one individual at a time. ECF 43-2 at ¶ 9.

Texas will be injured if this Court grants Plaintiffs' requested relief. Returning to the pre-upgraded SAVE system would inhibit Texas's ability to enforce its laws by requiring it to use less accurate information, evaluate its voter rolls less thoroughly, and do so in a more labor-intensive manner. ECF 43-2 at ¶¶ 7-10. This is precisely the relief Plaintiffs request. ECF 1 at 65 (requesting, among other things, the Court permanently require Federal Defendants to return the SAVE system to its prior operational state and require them to "delete, disentangle and unlink" the SSA data from the SAVE system). The risk of losing these benefits due to an adverse court ruling and being forced to use a more labor-intensive and less accurate and thorough procedure to enforce Texas law

is a legally cognizable harm under D.C. precedent. *E.g.*, *Red Lake Band of Chippewa Indians v. United States Army Corps of Eng'rs*, 338 F.R.D. 1, 4 (D.D.C. 2021) (citing *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 317 (D.C. Cir. 2015)) (finding a sufficient injury in fact when a party benefits from an agency's act, the act is challenged in court, and an unfavorable decision would remove the party's benefit). These harms are directly traceable to Plaintiffs' initiation of the lawsuit and a decision in Texas's favor would plainly prevent it from incurring the claimed injuries. As such, Texas has demonstrated Article III standing. *See e.g., Red Lake Band of Chippewa Indians*, 338 F.R.D. at 5 (finding injuries fairly traceable and redressable when they are the result of a plaintiff's request for judicial intervention and a ruling in the party's favor would avoid the injuries).

### C. Texas has interests in the litigation which will be impaired by the resolution of this case in favor of Plaintiffs.

As in *Fund for Animals*, if an adverse ruling were entered in this case "there is no question that the task of reestablishing the status quo if the [plaintiff] succeeds in this case will be difficult and burdensome." *Fund For Animals, Inc.*, 322 F.3d at 735 (citing *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 910 (D.C. Cir. 1977)). Texas's interests will be impaired in two distinct and concrete ways should Plaintiffs prevail in the present litigation. First, as discussed *supra* at I(B), Texas has a statutory obligation to maintain its voter rolls, ECF 43-2 at ¶ 5, and the upgraded SAVE system is "transformational" for Texas in this task. ECF 43-2 at ¶ 8. Downgrading the SAVE system to its former, useless format would impair Texas's ability to ensure only citizens remain on its voter rolls. *See* ECF 43-2 at ¶¶ 7-9. As Plaintiffs' themselves acknowledge, the updates to SAVE allowed Texas to identify first 33, ECF 1 at 40, and then 2,724, ECF 49 at 11, potential non-citizens on its voter rolls which it would otherwise not have been able to identify. After SAVE allowed Texas to discover

these potential noncitizens on its voter rolls, Texas followed its regular procedure to give notice to the individuals identified as potential non-citizens and provide them an opportunity to show proof of citizenship and correct the State's records. *See* Tex. Elec. Code § 16.0332 (enacted in 1997). If the Court were to order the SAVE system reverted to its pre-upgrade status, Texas would be unable to perform this work going forward.

Second, Texas's litigation interests will be irreparably impaired should Plaintiffs succeed. Texas and Federal Defendants are engaged in ongoing litigation concerning the creation of the updated SAVE system. *Attorney General of Texas, et al. v. Mayorkas, et al.*; Case No. 4:24-cv-00049 (W.D. Tex. 2024) ("Original SAVE Litigation"). In the Original SAVE Litigation, Texas sued DHS and USCIS to compel them to provide citizenship information as required by § 1373. *See id.* Prior to the Original SAVE Litigation, USCIS refused to comply with § 1373 to provide citizenship information through the SAVE system. The upgraded SAVE system satisfies part of Texas's request for relief. *See id.* Should Plaintiffs prevail, it will impact the outcome of the Original SAVE Litigation.

Participation as *amicus curiae* is not sufficient to protect Texas's interests. "[T]he right to file a brief as amicus curiae is no substitute for the right to intervene as a party in the action under Rule 24(a)(2)." *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (quoting *Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir.1996)). Plaintiffs' contention that the mere ability to participate as *amicus* means denial of intervention is appropriate because there is no impairment of Texas's interests is an exception that swallows the rule. *See* ECF 49 at 11. Were Plaintiffs correct, the result would be that intervention would never be granted because participation as *amicus* is always possible. In

addition, the sole case Plaintiffs cite in support of this proposition is inapposite. In *Potomac Elec.*
*Power Co.*, the court indeed denied intervention partly based on the ability of the proposed
intervenor participating as amicus. *D.C. v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 234
(D.D.C. 2011). However, that case was "proposed to be settled by consent decree" and proposed
intervenors "could not block the consent decree even if the intervention were granted." *Id.*

The role of amici is fundamentally insufficient to protect Texas's interests. "[A]micus has
been consistently precluded from initiating legal proceedings, filing pleadings, or otherwise
participating and assuming control of the controversy in a totally adversarial fashion. *United States*
*v. State of Mich.*, 940 F.2d 143, 165 (6th Cir. 1991). Ordinarily, courts do "not entertain an amicus'
argument if not presented by a party." *Michel v. Anderson*, 14 F.3d 623, 625 (D.C. Cir. 1994); *see also*
*Narragansett Indian Tribe v. Nat'l Indian Gaming Comm'n*, 158 F.3d 1335, 1338 (D.C. Cir. 1998)
(refusing to consider an argument raised only by *amicus* on appeal). Most significantly, "[a]mici
'd[o] not automatically acquire party status simply by being permitted to comment on the proposed
final judgment or by filing its notice of appeal.'" *Broidy Capital Mgmt. LLC v. Muzin*, 61 F.4th 984,
993 (D.C. Cir. 2023). The D.C. Circuit has "announced a clear and simple rule: 'It has long been
settled that one who is not a party to a record and judgment is not entitled to appeal therefrom.'"
*Moten v. Bricklayers, Masons & Plasterers, Intern. Union of Am.*, 543 F.2d 224, 227 (D.C. Cir. 1976)
(quoting *United States v. Seigel*, 168 F.2d 143, 144 (D.C. Cir. 1948)). Moreover, mere participation
as *amicus* does not entitle Texas to participate in oral argument. *See, e.g.*, *Commonwealth of the N.*
*Mariana Islands v. United States*, No. CIVA 08-1572 PLF, 2009 WL 596986, at *1 (D.D.C. Mar. 6,
2009) (permitting participation as *amicus* but denying permission to participate in oral argument).

"The filing of an amicus brief to the court seems a meager substitute in comparison [to intervention], and would deny the potential intervenors a voice in key junctures of this litigation." *Freedom from Religion Found., Inc. v. Geithner*, 262 F.R.D. 527, 530 (E.D. Cal. 2009), aff'd in part, vacated in part, remanded, 644 F.3d 836 (9th Cir. 2011). Without party status and the associated ability to initiate an appeal, Texas's interests cannot be adequately protected were this Court to issue an adverse ruling the Defendants chose not to appeal.

### D. Federal Defendants do not adequately represent Texas's interests.

Federal Defendants' only argument against Texas's intervention is that Texas's interests are adequately represented by Federal Defendants. *See* ECF 50 at 2–3. However, "[t]he Supreme Court has explained that the adequate representation 'requirement of [Rule 24(a) ] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.'" *100Reporters LLC*, 307 F.R.D. at 279 (citing *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10 (1972)). Texas has satisfied this minimal burden.

Texas and Federal Defendants do not have the same ultimate objective in defending Texas's use of SAVE against Plaintiffs' Texas-specific allegations. The presumption of adequate representation arises when parties have the same ultimate objective. *HRH Servs. LLC v. Travelers Indem. Co.*, No. 23-CV-02300 ( JDB), 2024 WL 4699925, at *9 (D.D.C. Nov. 6, 2024). Federal Defendant's ultimate objective is "to fully defeat Plaintiffs' claims and obtain dismissal of this litigation" and allegedly to "protect the interests of *all* SAVE users," ECF 50 at 2. But Federal Defendants are not SAVE users but administrators of the system; and no user is featured as prominently as Texas in Plaintiffs' pleadings. Of Plaintiffs' ten-page Supplemental Memorandum in Support of Plaintiffs' Motion for a Stay, ECF 47, Plaintiffs dedicated nearly 5 pages to discussing Texas's use of the SAVE database, ECF 47 at 3-9. Plaintiffs' only attachment, ECF 47-1, is a

declaration by a Texas county official describing Texas's use of SAVE. Plaintiffs made Texas's use of SAVE a key factual matter in this case. Federal Defendants do not have the factual knowledge necessary to defend against Plaintiffs' Texas-specific allegations, nor the motivation to defend Texas's specific use of the SAVE system. ECF 50 at 2 (reiterating Federal Defendants' interest in preserving SAVE use generally). Protecting *Texas's* specific use of SAVE and defending against Plaintiffs' Texas-specific allegations is not an interest shared by Federal Defendants or "all SAVE users" they claim to represent. *See Env't Def. Fund, Inc. v. Costle*, 79 F.R.D. 235, 243 (D.D.C. 1978), *aff'd*, (D.C. Cir. July 31, 1978) (finding parties to be adequately represented when the intervenors' interests were general and there was no evidence of any disagreement between the states and the intervenors).

Even if both parties shared the same interests, it is not clear Federal Defendants will adequately represent Texas's interests. *See United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980) (generally allowing intervention unless it clear the party will adequately represent the intervenor's interests). Present here are "special circumstances," ECF 50 at 2, which make Federal Defendants' representation inadequate. *HRH Servs. LLC*, 2024 WL 4699925, at *9 (quoting *Cobell v. Jewell*, No. 96-01285 (TFH), 2016 WL 10704595, at *2 (D.D.C. Mar. 30, 2016) (stating the movant can rebut the presumption of adequate representation by showing special circumstances that make the representation inadequate such as adversity of interest, collusion, or nonfeasance). Unlike in *Las Americas Immigrant Advocacy Center v. U.S. Department of Homeland Security*, Federal Defendants and Texas are not simply inconsistently aligned on policy but are directly adverse parties in a separate lawsuit concerning Federal Defendants' failure to provide citizenship information to Texas—the very information that forms the basis for the upgraded SAVE

system. *See Las Americas Immigrant Advocacy Center v. U.S. Department of Homeland Security*, 348 F.R.D. 397, 403 (D.D.C. 2025) (noting that mere inconsistent alignment on immigration policy was insufficient to show inadequate representation); *see also Attorney General of Texas, et al.*; Case No. 4:24-cv-00049. In other words, Federal Defendants now avow to "vigorously defend," ECF 50 at 2, the SAVE system Texas sued them to create, and which they previously refused to provide absent Texas's initiation of litigation, *see Attorney General of Texas, et al.*; Case No. 4:24-cv-00049. The Original SAVE Litigation presents more than a mere "façade" of adversity, as Plaintiffs claim. ECF 49 at 15. Texas's concession to extensions to Federal Defendants' time to respond does not change the fact that litigation is ongoing. Rather, the multiple extensions illustrate that the parties have ongoing disagreements about and have not been able to reach agreement sufficient to demonstrate that Federal Defendants could or would adequately represent Texas's interests. Moreover, prior to the Original Save Litigation, Federal Defendants were not complying with the federal laws that required them to provide citizenship information to Texas. There is nothing to prevent Federal Defendants from changing course and reiterating their prior position of refusing to provide the required citizenship information once again.

## II.    In the alternative, Texas is entitled to permissive intervention.

A party has grounds to permissively intervene when the party shows (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action. *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (citing *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). "When 'exercising its discretion,' the district court 'shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Id.* at 1045 (quoting Fed. R. Civ. P. 24(b)). Texas satisfies these requirements. As

discussed *supra* in sections I(A) and I(B), Texas's motion was timely, and Texas has standing in its own right. Moreover, Texas has an independent ground for subject matter jurisdiction because the action arises under federal law. 28 U.S.C. § 1331. Thus, federal question jurisdiction exists as to Texas as it does to Federal Defendants. Neither Plaintiffs nor Federal Defendants dispute this. ECF 49 at 16-18 (challenging Texas's permissive intervention on the basis of standing, lack of a common question of law or fact, and delay and prejudice); ECF 50 at 3 (taking no position on Texas's motion for permissive intervention).

### A. Texas maintains defenses and questions of law common to the main action.

Texas shares common defenses and questions of law with the main action. Plaintiffs admit as much when they complain that Texas's motion to dismiss and response to Plaintiffs' motion for preliminary injunction "duplicates arguments already made by Defendants." ECF49 at 15. While Texas's arguments and defenses are not entirely duplicative, Texas does share common defenses and questions of law with Federal Defendants. For example, Texas agrees Plaintiffs lack Article III standing, ECF 43-1 at 5-9 and ECF 37 at 21-36, irreparable harm, ECF 43-1 at 16-18 and ECF 37 at 44-49, and meritorious *ultra vires* and separation of powers claims, ECF 43-1 at 12-14 and ECF 37 at 42-44, to name a few. As such, Texas has met this requirement for permissive intervention.

### B. Granting permissive intervention would not delay the proceedings, prejudice the adjudication of Plaintiffs' rights, or open the floodgates for other states to intervene.

When exercising its discretion, the district court shall "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Nat'l Children's Ctr., Inc.*, 146 F.3d at 1045 (quoting Fed. R. Civ. P. 24(b)). Seeing as Texas's Motion to Intervene is timely, *see Supra* at I(A), and the preliminary injunction hearing has already occurred, any future participation by Texas will be purely prospective and not delay the proceedings. Moreover, other

concerns considered by courts in denying permissive intervention are not present here. *See, e.g.*, *Las Americas Immigrant Advoc. Ctr.*, 348 F.R.D. at 403 (denying permissive intervention in part because of a concern that permitting Texas to intervene would allow all states affected by federal immigration policy to intervene). Unlike in *Las Americas Immigrant Advocacy Center*, there is no risk that allowing Texas to intervene will open the floodgates and allow every state that uses SAVE to intervene because every state that uses SAVE has not been targeted by Plaintiffs. 348 F.R.D. at 403. Nor did every state that uses SAVE bring a prior lawsuit against DHS for failing to provide it with citizenship information. *See Attorney General of Texas, et al.*; Case No. 4:24-cv-00049. These two facts distinguish Texas's request to intervene from other states which merely claim an interest in using SAVE. These facts also distinguish the present case from *Cooper v. Newsom*, where the court denied permissive intervention for three district attorneys because all if the three had been allowed to intervene all 55 other district attorneys could have intervened. 13 F.4th 857, 868 (9th Cir. 2021). Such is not the case here.

## III.    Texas's role as intervenor should not be limited.

Generally, "[a] party that properly intervenes 'becomes a full participant in the lawsuit and is treated just as if it were an original party.'" *Institutional S'holder Services, Inc.*, 142 F.4th at 764 (quoting *Schneider v. Dumbarton Devs., Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985)). Here, Texas has an interest in all issues in this case and limitation on the scope of its intervention would fundamentally prejudice its ability to protect its interests.

### CONCLUSION

For these reasons, the State of Texas respectfully requests this Court grant the State's Motion to Intervene.

Dated: November 3, 2025.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

/s/ Ali M. Thorburn

WILLIAM D. WASSDORF
Associate Deputy AG for Civil Litigation
Texas Bar No. 24103022

BRENT WEBSTER
First Assistant Attorney General

ALI M. THORBURN
Special Counsel, Special Litigation Division
Texas Bar No. 24125064

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(737) 226-4398
Will.Wassdorf@oag.texas.gov
Ali.Thorburn@oag.texas.gov
COUNSEL FOR INTERVENOR DEFENDANT

THE STATE OF TEXAS

## CERTIFICATE OF SERVICE

On November 3, 2025, the foregoing instrument was served on all parties and counsel of record via the Court's CM/ECF system.

/s/ Ali M. Thorburn

ALI M. THORBURN
Special Counsel, Special Litigation Division