**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LEAGUE OF WOMEN VOTERS *et al.*,

        Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et. al.*,

        Defendants.

**Civil Case No. 25-cv-3501-SLS**

**DECLARATION OF LORRAINE KISSELBURGH**

I, Lorraine Kisselburgh, declare under penalty of perjury, under 28 U.S.C. § 1746, that the following is true and correct:

1.    I am over eighteen years old, of sound mind, and fully competent to make this declaration. I also have personal knowledge of the factual statements contained herein.

2.    I am a United States citizen.

3.    I currently live in and am registered to vote in Tippecanoe County, Indiana.

4.    I am an active voter. I participate in elections frequently, and I intend to vote in the May primary election and November midterm election in Indiana this year.

5.    I am a former professor, and current faculty fellow and lecturer at Purdue University, in West Lafayette, Indiana, where I specialize in technology, society, and privacy.

6.    I am also a twenty-year member of the Association for Computing Machinery (ACM) U.S. Technology Policy Council; inaugural Chair of ACM's Global Technology Policy Council; and Chair of the Center for AI and Digital Policy.

1

7. Given my expertise, I've submitted, with colleagues, numerous comments to federal agencies to advocate for enhanced privacy protections, including on how to balance privacy and accessibility in voting systems.[1]

8. The Electronic Privacy Information Center (EPIC) is a non-profit, public interest research center established in 1994 to focus public attention on emerging privacy and civil liberties issues. Central to EPIC's mission is oversight of government activities that impact individual privacy, free expression, and democratic values.

9. I am a member of EPIC because I contribute to the advancement of the mission of EPIC and have been recognized and registered as a member by EPIC by virtue of paying dues.

10. I became an EPIC member because I am concerned about protecting privacy, freedom of expression, and democratic values in the information age. As an academic with longstanding research interest in privacy, EPIC's work on these issues is of special importance to me.

11. Through my own personal research, I have learned more about DHS's Systematic Alien Verification for Entitlements (SAVE) system and Indiana's use of the system to conduct citizenship checks of registered voters. I learned that DHS expanded the SAVE system last year by allowing bulk searches of Americans' personal data retained at SSA, including name, date of birth, and Social Security number (SSN). I also learned that the Indiana Secretary of State entered into a Memorandum of Agreement with DHS to share personally identifiable information of individuals on the state's voter rolls with the federal government and the SAVE system.

---

[1] *See, e.g.*, Association for Computing Machinery U.S. Technology Policy Committee, *Comments in Response to U.S. Office of Management & Budget Request for Information on Privacy Impact Assessments* (Apr. 1, 2024), https://perma.cc/N4R9-6HQW; ACM USTPC, *Comment Letter on RFI Regarding Promoting Access to Voting (Docket 210608-0123)* (July 16, 2021), https://perma.cc/MVA7-FU33; ACM USPTC, *Comments on 'Developing a Privacy Framework' (Docket 181101997-8997-01)* (Jan. 14, 2019), https://perma.cc/JCB9-J4KD; ACM USTPC, *Comment Letter on "Developing the Administration's Approach to Consumer Privacy"* (Nov. 8, 2018), https://perma.cc/8DGA-WZ3E; EPIC, *Comment Letter on Request for Information on Update to the 2016 National Artificial Intelligence Research and Development Strategic Plan (83 FR 48655)* (Oct. 26, 2018), https://perma.cc/6FUH-7X45.

12.     I obtained a Social Security card in California when I was sixteen years old in order to qualify for employment, verify eligibility for taxes, and access benefits.

13.     It is my understanding that, as part of the process of bulk uploading Indiana's entire voter registration list into SAVE, the Indiana Secretary of State disclosed, at a minimum, my name, date of birth, and full nine-digit SSN to DHS, and that this information will be retained in SAVE for at least 10 years. It is also my understanding that DHS then disclosed this information to SSA so that the agency could match it against its own records about me.

14.     I have not consented to, and do not consent to, the Indiana Secretary of State disclosing my personally identifiable information to DHS, SSA, or any other federal government agency. I provided that information for use by state and local Indiana officials. I expected that information to remain private and protected by state and local Indiana officials, and not to be shared beyond the original intended use.

15.     Likewise, I have not consented to, and do not consent to SSA disclosing and verifying my personal information from SSA records to DHS or any other federal, state, or local agency. When I received my SSN, I expected that my sensitive personal information would be kept confidential and protected by the federal government and my places of employment. I understood that my personal information would be in the federal government system for the limited purposes of determining eligibility for SSA benefits or work authorization. I never thought this information could be provided to a governmental agency for citizenship checks.

16.     The sharing of my private information without my knowledge, expectation, or consent makes me feel angry that the government is carelessly and recklessly sharing my personally identifiable information.

17.     I take my personal data security seriously. As an expert on the risks associated with the disclosure or aggregation of data beyond its intended purposes, I understand the importance of securing three pieces of personal information: name, SSN, and date of birth. However, in the wrong hands, these three pieces of information together, provide an opportunity for bad actors to steal identities, create fake IDs, and commit credit card fraud, among other bad actions. Importantly,

having these three pieces of personal information serves as a critical key to authenticate and duplicate my identity in multiple platforms and contexts, putting me at risk for significant harm, financially, reputationally, and physically.

18.     With this understanding, I strongly believe in limited data disclosures and that data should only be used for the limited purpose for which it was collected. I take steps to secure and protect this information in my personal life, and minimize the information I provide in all aspects of my life—even at the doctor's office—to limit my data exposure.

19.     I feel violated that the government misused my personal data and violated my trust by repurposing my personal information—without my consent—to create a national database of U.S. citizens outside of the existing, secured SSA database.

20.     I feel especially violated and afraid because I did not consent to data sharing, and I have no insight into what steps, if any, the federal, state, and local actors involved have taken to store and transfer my data in a secure manner. For the reasons described above, I fear that the unsecured storage or transfer of files containing my full name, date of birth, and SSN will increase my vulnerability to data theft and security breaches.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Dated the _11_ of March, 2026

Lorraine Kisselburgh

4