# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LEAGUE OF WOMEN VOTERS, *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

Defendants.

Case No. 1:25-cv-03501

**BRIEF OF TRAVIS COUNTY TAX ASSESSOR-COLLECTOR, CELIA ISRAEL; THE TRAVIS COUNTY CLERK, DYANA LIMON-MERCADO; AND TRAVIS COUNTY, TEXAS AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

STATEMENT OF INTEREST.................................................................................................1

INTRODUCTION ...................................................................................................................1

ARGUMENT...........................................................................................................................2

I.      Texas's Flawed Transition of its Voter Registration Database...............................2

II.     Texas's Use of the SAVE System ...........................................................................4

        A.      Issues with the SAVE list..............................................................................7

        B.      Communications with SOS and DPS..............................................................8

CONCLUSION........................................................................................................................12

i

## TABLE OF AUTHORITIES

**Page(s)**

**State Statutes**

Tex. Elec. Code § 16.0332................................................................................................4, 7

Tex. Elec. Code § 16.033.................................................................................................10

**Regulations**

90 Fed. Reg. 50879 (Nov. 12, 2025).................................................................................2

**Other Authorities**

Comment from Travis Cnty. Clerk, Travis Cnty. Tax Assessor-Collector, &
    Travis Cnty. to U.S. Citizenship & Immigr. Servs., Docket No.
    USCIS-2025-0337 (Dec. 1, 2025),
    https://www.regulations.gov/comment/USCIS-2025-0337-9354. ............................1

Letter from Tex. Ass'n of Cnty. Election Offs., Cnty. & Dist. Clerks Ass'n, Tax
    Assessor-Collectors Ass'n of Tex., & Cnty. Judges & Comm'rs Ass'n of Tex.
    to The Hon. Jane Nelson, Tex. Sec'y of State (Feb. 16, 2026),
    https://www.courthousenews.com/wp-content/uploads/2026/02/texas-county-
    association-team-letter-february.pdf......................................................................4

Letter from Tex. Ass'n of Cnty. Election Offs., Cnty. & Dist. Clerks Ass'n, Tax
    Assessor-Collectors Ass'n of Tex., & Cnty. Judges & Comm'rs Ass'n of Tex.
    to The Hon. Jane Nelson, Tex. Sec'y of State (Oct. 17, 2025),
    https://www.documentcloud.org/documents/26190075-collective-association-
    team-concerns/ ...................................................................................................3

Mem. of Agreement between Dep't of Homeland Sec., U.S. Citizenship &
    Immigr. Servs., & Tex. Sec'y of State (Mar. 25, 2025),
    https://americanoversight.org/featureddocument/texas-secretary-of-state-
    communications-concerning-voters-searched-in-save/............................................5

Tex. Dep't of Pub. Safety, *Verifying Lawful Presence* (Mar. 2022),
    https://www.dps.texas.gov/internetforms/Forms/DL-53.pdf....................................5

Tex. Sec'y of State, *Election Advisory No. 2021-11: List Maintenance Activity
    Involving Potential Non-United States Citizens* (Sept. 9, 2021),
    https://www.sos.state.tx.us/elections/laws/advisory2021-11.shtml...........................7

Tex. Sec'y of State Press Release, *Texas Completes Citizenship Verifications in
    the SAVE Database* (Oct. 20, 2025),
    https://www.sos.state.tx.us/about/newsreleases/2025/102025.shtml.........................6

Tex. Sec'y of State, *Secretary of State Strategic Plan 2025 – 2029* (June 1, 2024), https://www.sos.state.tx.us/about/publications/strategic-plan-fy-25-29.pdf ............................2

U.S. Citizenship & Immigr. Servs., *SAVE*, https://www.uscis.gov/save (last visited Mar. 13, 2026)................................................................................................................4

## STATEMENT OF INTEREST[1]

*Amici curiae* are the Travis County Tax Assessor-Collector, Celia Israel; the Travis County Clerk, Dyana Limon-Mercado;[2] and Travis County, Texas (collectively, "Travis County Amici"). Ms. Israel is the voter registrar for Travis County, whose duties include voter registration and voter list maintenance pursuant to Texas law. Ms. Limon-Mercado is responsible for administering elections in Travis County. Assessor-Collector Israel and Clerk Limon-Mercado are extensively familiar with the Texas voter registration list maintenance processes and understand the devastating impact of improperly removing eligible voters from the rolls. The Travis County Commissioners Court is the chief budgetary authority for the county and is responsible for ensuring that taxpayer dollars promote fair, efficient, and lawful elections—including by mitigating the risk of lawsuits. Given their duty to their constituents and their obligations under federal and Texas law, the Travis County Amici have an acute interest in protecting voting rights and ensuring free and fair elections.

## INTRODUCTION

The Travis County Amici have grave concerns about the proposed changes to the Systematic Alien Verification for Entitlements ("SAVE") system. The expanded system will introduce faulty or flawed data into Texas's voter verification process and will inevitably result in the mistaken purging of eligible voters from the voter rolls. The Travis County Amici voiced their

---

[1] Pursuant to Rule 37.6, no counsel for any party authored this brief in any part, and no person or entity other than *amici* or *amici*'s counsel made a contribution to fund its preparation or submission.

[2] Celia Israel and Dyana Limon-Mercado submit this brief in their official capacities.

concerns about SAVE by submitting a comment[3] in response to the Department of Homeland Security's (DHS) proposed System of Records Notice (SORN).[4] The flaws that the Travis County Amici previously identified in its DHS comment have caused many issues in Texas during an already tumultuous time for Travis County, given the modifications to Texas's voter registration database currently being implemented by the Texas Secretary of State (SOS). The SOS's use of the SAVE system's data has caused Travis County to expend untold time and resources seeking to verify the faulty data. But, more importantly, Travis County's experience illustrates the very real ways in which states' use of the SAVE system will disenfranchise lawful voters.

**ARGUMENT**

**I.      Texas's Flawed Transition of its Voter Registration Database**

The updates to the SAVE system are not occurring in a vacuum. Instead, the SAVE system is being added on top of existing state-specific voter registration and verification processes. In many states, including Texas, these existing systems are neither perfect nor static. To truly understand the impact of the SAVE system on voter verification, it is helpful to first understand states' existing processes and how SAVE will interact with them.

Before the SAVE system at issue in this litigation was implemented, Texas counties were already faced with myriad issues stemming from Texas's transition of the state's voter registration database, the Texas Election Administration Management (TEAM) system, overseen by the SOS.[5] In light of these challenges, the Texas Association of County Election Officials, the County and

---

[3] Comment to DHS by Travis County Clerk, Travis County Tax Assessor-Collector, & Travis County, Comment ID USCIS-2025-0337-9354, (Dec. 1, 2025) https://www.regulations.gov/comment/USCIS-2025-0337-9354. *See also*, Declaration of Christopher Davis ("Davis Decl.") ¶ 26, Exhibit E.

[4] Privacy Act Notice of Modified System of Records, 90 Fed. Reg. 50879 (Nov. 12, 2025).

[5] Tex. Sec'y of State, *Secretary of State Strategic Plan 2025 – 2029*, 4, 39 (June 1, 2024), https://www.sos.state.tx.us/about/publications/strategic-plan-fy-25-29.pdf.

District Clerks Association, the Tax Assessor-Collectors Association of Texas, and the County Judges and Commissioners Association of Texas (TACEO) sent a letter to the SOS, who oversees the rollout, onboarding, and transition to the updated system, identifying problems with the TEAM transition, including:

    a. "Since the transition of the new TEAM, counties have experienced daily inconsistencies with the core functionality of the system. Necessary processes, including voter registration lookup, ballot issuance status, precinct assignments, and voter history updates, frequently malfunction. This lack of functionality materially increases the risk of a voter being issued the wrong ballot, duplicate registrations, and more delays in the polling place."[6]

    b. "Counties have seen substantial delays in processing voter registration applications and updating registration status. Many election officials have observed TEAM incorrectly generating the voter registration list, which compromises election security by complicating the update of poll books and the identification of voters who have received a mail ballot."[7]

    c. "While training opportunities have been provided, it's concerning that it began so close to the implementation of the new system without there being a significant buffer to prepare for the upcoming constitutional amendment election."[8]

---

[6] Letter from Tex. Ass'n of Cnty. Election Offs., the Cnty. & Dist. Clerks Ass'n, the Tax Assessor-Collectors Ass'n of Tex., & the Cnty. Judges & Comm'rs Ass'n of Tex. to The Hon. Jane Nelson, Tex. Sec'y of State, 1-2 (Oct. 17, 2025), https://www.documentcloud.org/documents/26190075-collective-association-team-concerns/.

[7] *Id.*

[8] *Id.*

The letter was submitted to the SOS the week before early voting started in Texas's November 4, 2025 election. Before the start of Texas's 2026 primary election, TACEO sent a follow-up letter to the SOS identifying the same core functionality issues and "data inconsistencies with TEAM [that] have caused county staff to spend significant time manually verifying voter registration information, reducing efficiency."[9]

Adding additional unreliable SAVE data into the already problem-riddled TEAM transition will almost certainly infringe upon Texans' voting rights. Given that the statewide TEAM database is already unreliable, adding the faulty SAVE data to this system is a recipe for disaster.

## II.    Texas's Use of the SAVE System

The SAVE system is "an online service for registered federal, state, territorial, tribal, and local government agencies to verify immigration status and U.S. citizenship of applicants seeking benefits or licenses."[10] SAVE itself does not determine eligibility for benefits or licenses; it is a service that the agency granting the benefit or license may access to aid in its determination.[11] Pursuant to Texas law, the SOS has an agreement with the Texas Department of Public Safety (DPS) that allows the SOS to compare the Texas voter registration list with the DPS database and verify the accuracy of citizenship status information on a monthly basis.[12] Persons seeking to

---

[9] Letter from Tex. Ass'n of Cnty. Election Offs., the Cnty. & Dist. Clerks Ass'n, the Tax Assessor-Collectors Ass'n of Tex., & the Cnty. Judges & Comm'rs Ass'n of Tex. to The Hon. Jane Nelson, Tex. Sec'y of State, 1-2 (Feb. 16, 2026), https://www.courthousenews.com/wp-content/uploads/2026/02/texas-county-association-team-letter-february.pdf.

[10] U.S. Citizenship & Immigr. Servs., *SAVE*, https://www.uscis.gov/save (last visited Mar. 13, 2026).

[11] *Id.*

[12] Tex. Elec. Code § 16.0332(a-1).

obtain a Texas driver's license or identification card must provide documentation of lawful presence, which DPS verifies through the SAVE database.[13]

In March 2025, the Department of Homeland Security, U.S. Citizenship and Immigration Services (DHS-USCIS) and the SOS entered into a Memorandum of Agreement (the "MoA") purporting to permit the SOS to use the SAVE system to "verify the citizenship and immigration status information of non-citizen and naturalized or acquired U.S. citizen registrants and registered voters within User Agency's jurisdiction for voter registration and voter list maintenance (benefit) in the State of Texas."[14]

The Texas statutory authority cited in the MoA, however, does not expressly authorize the SOS to directly access the SAVE database for voter list-citizenship matching. Nor did SOS go through any Texas Administrative Procedure Act process to authorize this new matching procedure. Further, it appears that the SOS did not verify the SAVE results with the DPS database, despite the MoA's requirement that the User Agency—the SOS—"institute additional verification when required by SAVE for any registrant or registered voter that does not verify as a naturalized or acquired citizen on initial verification, including in all cases where the User Agency receives any SAVE response other than that of naturalized or acquired citizen."[15]

On October 20, 2025, the first day of Early Voting for the November 4, 2025 election, the SOS issued a press release stating that its office had "completed a full comparison of the state's voter registration list against citizenship data in the U.S. Citizenship and Immigration Services'

---

[13] Tex. Dep't of Pub. Safety, *Verifying Lawful Presence*, 1 (Mar. 2022), https://www.dps.texas.gov/internetforms/Forms/DL-53.pdf.

[14] Mem. of Agreement between Dep't of Homeland Sec., U.S. Citizenship & Immigr. Servs., & Tex. Sec'y of State, 81 (Mar. 25, 2025), https://americanoversight.org/featureddocument/texas-secretary-of-state-communications-concerning-voters-searched-in-save/.

[15] *Id*. at 83.

SAVE database" and that "[l]ast week those voter files were provided to Texas counties, who will now conduct their own investigations into the eligibility of these voters as part of their statutory responsibilities to remove ineligible voters from the rolls under Chapter 16 of the Texas Election Code."[16]

Unbeknownst to Travis and other Texas counties, on October 16, 2025, the SOS's office had placed this list of voters in counties' electronic voter list maintenance repositories, which assign list maintenance tasks for the counties.[17] But the SOS did not otherwise inform the counties it had done so.[18] Placing critical list maintenance data into county electronic repositories with no notice goes against the standard communication practice between the SOS and county election administration partners.[19] The October 20 press release was the first indication that such a task list had been assigned to the counties.[20] A full day after sending the press release, the SOS's office sent an email advisory to Texas counties informing them that the list was in the online repository and that:

    a.  The list of alleged non-citizens was sent pursuant to the MoA between SOS and USCIS to "compare state voter registration lists with USCIS' Systematic Alien Verification for Entitlements (SAVE) records."[21]

---

[16] Tex. Sec'y of State Press Release, *Texas Completes Citizenship Verifications in the SAVE Database* (Oct. 20, 2025), https://www.sos.state.tx.us/about/newsreleases/2025/102025.shtml; *see also*, Davis Decl. ¶ 5.

[17] Davis Decl. ¶ 7.

[18] *Id*.

[19] *Id*.

[20] *Id*.

[21] *Id*. ¶ 6, Ex. A at 1.

b. The "process for this list maintenance activity is largely the same as the process outlined in Election Advisory No. 2021-11: List Maintenance Activity Involving Potential Non-United States Citizens."[22]

c. Pursuant to the MoA, "if a voter provides proof of citizenship documentation, the county must send a copy of that documentation to the Secretary of State's office to be provided to USCIS."[23]

## A.    Issues with the SAVE list

After receiving the list of alleged non-citizens created from the SAVE database,[24] the Travis County voter registration team investigated each of the ninety-seven (97) voter records on the list.[25] The voter registration team researched each voter registration application origination source, reviewing citizenship attestations on application images attached to voter registration records, and attempted to obtain citizenship status through other means.[26]

Twenty-six (26) of the alleged non-citizen matches on Travis County's list had a voter registration source code of "64 – Department of Public Safety," which indicates that the applicant registered to vote at DPS and, through that process, provided proof of citizenship at the time of

---

[22] *Id.*

[23] *Id.* at 2.

[24] The list is static (as opposed to an indicium on an individual's registration record) and indicates the legal status of each individual listed at some unknown point in time, information which apparently came directly from the SAVE database. *Id.* ¶ 8.

[25] *Id.* ¶ 9.

[26] *Id.* ¶ 9. As the SOS noted in its advisory, "In determining whether a voter is eligible for registration in your county, the voter registrar may use any lawful means at the registrar's disposal." Tex. Sec'y of State, *Election Advisory No. 2021-11: List Maintenance Activity Involving Potential Non-United States Citizens* (Sept. 9, 2021), https://www.sos.state.tx.us/elections/laws/advisory2021-11.shtml (citing Tex. Elec. Code § 16.033(a)).

7

registration.[27] An additional thirty-nine (39) people on the list had registered to vote at places other than DPS but had driver license numbers associated with their voter registration records, meaning that their records had already been run against the DPS database and screened for non-citizen matches.[28]

### B.    Communications with SOS and DPS

On October 27, 2025, the Travis County voter registrar's office contacted the SOS's office about this issue, but the SOS's elections legal team could not explain why people who registered to vote at DPS would be flagged as possible non-citizens via the SAVE database matching process.[29] Instead, the legal team indicated that Travis County should contact DPS directly.[30] On October 31, 2025, Travis County did contact DPS directly and was told: "The Department does not verify citizenship for county registrars."[31] The DPS official copied an individual from the SOS's office who did not respond to the email chain.[32]

After back and forth with DPS, on November 3, 2025, Travis County forwarded the email exchange with DPS to elections@sos.texas.gov.[33] The Travis County voter registration team asked if the Texas Transportation Code, specifically Section 730.005(9), allows DPS to share proof of citizenship information with county registrars.[34] Travis County received no response.[35]

---

[27] Davis Decl. ¶ 10.

[28] *Id*. *See* Tex. Elec. Code 16.0332(a-1) (requiring SOS and DPS to work together to compare "information in the existing statewide computerized voter registration list . . . against information in the database of the Department of Public Safety on a monthly basis to verify the accuracy of citizenship status information previously provided on voter registration applications.").

[29] Davis Decl. ¶ 10.

[30] *Id*.

[31] *Id*. ¶ 11.

[32] *Id*.

[33] *Id*.

[34] *Id*.

[35] *Id*.

On November 14, 2025, Travis County Tax Assessor-Collector Celia Israel sent a letter to SOS and DPS, requesting that the two entities "work together to compare the sub-list of voters from Travis's SAVE list who either (1) registered to vote at DPS or (2) registered to vote elsewhere but have a Texas driver license with the DPS driver license system to determine whether the individuals listed have provided proof of U.S. citizenship to DPS."[36] She then requested that the SOS and DPS "provide [to Travis County information indicating] (a) whether the person has provided proof of U.S. citizenship to DPS and (b) if the person has provided proof of U.S. citizenship to DPS, on what date such information was provided." [37]

On November 20, 2025, DPS Director Martin responded via letter indicating the SAVE list "was created by the [SOS] and the Department was not involved in that process. With regard to your request that the Department work with SOS, the Driver License Division has advised the SOS that we will provide any assistance they request to utilize driver record information maintained by the Department for purposes of voter registration or the administration of elections by their office."[38] Also on November 21, Secretary Nelson sent a letter back to Assessor-Collector Israel but did not respond to the direct request.[39] Instead, she relied on platitudes about the voter registration process and, apparently, refused to utilize the SOS's access to DPS records to verify whether those individuals flagged through the SAVE list have previously provided proof of citizenship to the State of Texas.[40]

---

[36] *Id.* ¶ 12, Ex. B at 3.

[37] *Id.*

[38] *Id.* ¶ 13, Ex. C at 1.

[39] *Id.* ¶ 14, Ex. D at 1.

[40] *Id.*

9

On December 12, 2025, the SOS emailed Assessor-Collector Israel, noting that the SOS had "been working with DPS to obtain the additional information you requested related to the list of potential non-citizens that was provided to you last month."[41] The email contained a link to a spreadsheet with additional information about the individuals on the SAVE list, including whether they previously provided documents proving their citizenship to DPS.[42] Later, in response to Travis County's request, the SOS shared the dates of when lawful presence documentation was provided to DPS.[43]

Ultimately, Travis County determined that at least 11 individuals, over 10% of the SAVE list, are U.S. citizens, as they had previously provided proof of citizenship to DPS.[44] This indicates the SAVE data is flawed, and DPS had more accurate citizenship information on Texas voters. SOS also provided details about when those documents were presented by individuals to DPS.[45] The "when" is crucial because if the non-citizenship documentation was provided prior to the individual registering to vote, the individual may very well have become a citizen and registered to vote after the interaction with DPS (e.g., at a naturalization ceremony).[46] An additional 20 individuals registered to vote after their DPS interaction.[47] This illustrates the flaws in DPS's data given its data is not updated when a person's citizenship status changes. However, adding more erroneous data from the SAVE database does not improve Texas's voter registration list.

---

[41] *Id*. ¶ 15.

[42] *Id*.

[43] *Id*. ¶¶ 16-17.

[44] *Id*. ¶ 19.

[45] *Id*.

[46] *Id*.

[47] *Id*.

Relying on the voter registration investigation process to catch these errors, though lawful, can result in the disenfranchisement of eligible voters. Pursuant to the Texas Election Code, the registrar must send notice, by mail, to voters whose registration is under investigation, informing them that their registration statuses are being investigated.[48] If the voter does not respond to that notice within 30 days after it is mailed, the voter's registration must be cancelled.[49] This process burdens voters by requiring them to provide proof of citizenship in a short time.[50] For some voters, the time required to gather the required information alone is prohibitive; for others, the process itself is a deterrent. For example, the Voter Registration Director for Accessor-Collector Israel has interacted with voters in the past who felt intimidated when they received a government document informing them that they must provide proof of citizenship.[51] For many, this was compounded by the fact they had already provided the same information to a state agency, such as DPS.[52] Travis County Amici are therefore understandably concerned that sending out such investigation notices will deter eligible voters from voting altogether.[53]

Not all Texas counties have the time or resources to expend conducting thorough investigations of the type launched by Travis County in response to the SOS's sending of the SAVE list.[54] There are counties which do not have the time or resources to (1) conduct extensive research, and/or (2) request additional information from SOS and DPS.[55] Voters in those counties may be removed from the voter rolls improperly and very likely will not learn of the removal until they

---

[48] Tex. Elec. Code § 16.033(b); *see also*, Davis Decl. ¶ 21.

[49] Tex. Elec. Code § § 16.033(d)(2); *see also*, Davis Decl. ¶ 21.

[50] Davis Decl. ¶ 22

[51] Davis Dec. ¶ 23.

[52] *Id*.

[53] *Id*.

[54] *Id*. ¶ 20

[55] *Id*.

arrive at the polls to vote.[56] This ultimately creates a greater likelihood that those voters are unfairly disenfranchised.[57]

Travis County takes its list maintenance role, described by both federal and state law, seriously.[58] The voter registration office's efforts to process the SAVE list, request additional information from the SOS and DPS, and carefully determine the next legal steps required untold hours of work.[59]

Travis County's voter investigation efforts demonstrate that, at minimum, the data provided by SAVE is out of date. The risk that this erroneous data results in the disenfranchisement of eligible voters is very real.[60] Requiring voters who have already demonstrated citizenship to one state entity to *again* prove citizenship based on flawed SAVE data burdens not only Travis County but also Texas voters and may lead many to abandon their voting rights.

## CONCLUSION

For the reasons set forth above, the Court should grant the Plaintiffs' motion for summary judgment.

March 19, 2026                                    Respectfully submitted,

                                                 */s/ Susan A. Musser*
                                                 Susan A. Musser (D.C. Bar No. 1531586)
                                                 WILMER CUTLER PICKERING HALE AND
                                                 DORR, LLP
                                                 2100 Pennsylvania Avenue NW
                                                 Washington, DC 20037
                                                 (202) 663-6155
                                                 susan.musser@wilmerhale.com

---

[56] *Id.*

[57] *Id.*

[58] *Id.* ¶ 18

[59] *Id.*

[60] *Id.* ¶ 24.

12

-and-

Melissa Lee Hargis*
Texas Bar No. 24055766
TRAVIS COUNTY ATTORNEY'S OFFICE
314 West 11th Street, 3rd Floor
Austin, Texas 78701
(512) 854-9513
melissa.hargis@traviscountytx.gov

Lydia Bailey*
California Bar No. 352568
WILMER CUTLER PICKERING HALE AND
DORR, LLP
50 California St.
San Francisco, CA 94111
(627) 235-1104
lydia.bailey@wilmerhale.com

Lauren Newby*
D.C. Bar No. 90039589
WILMER CUTLER PICKERING HALE AND
DORR, LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6318
lauren.newby@wilmerhale.com

*Pro Hac Vice Motions Forthcoming

**COUNSEL FOR AMICI CURIAE**

13

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7(o), I hereby certify that this brief conforms to the requirements of Local Civil Rule 5.4, complies with the requirements set forth in Federal Rule of Appellate Procedure 29(a)(4), and does not exceed 25 pages in length.

March 19, 2025

*/s/ Susan A. Musser*
Susan A. Musser