# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LEAGUE OF WOMEN VOTERS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY, *et al.*,<br><br>Defendants. | Case No. 1:25-cv-03501 |

**DECLARATION OF CHRISTOPHER DAVIS**

I, Christopher Davis, pursuant to 28 U.S.C. § 1746, declare that the following statements are true and correct to the best of my knowledge and belief:

1.  I have worked in voter registration and election administration for 13 years.

2.  From 2012 to 2015, I was the Elections Administrator in Cameron County, Texas, in charge of voter registration and elections.

3.  From 2015 to 2023, I was the Elections Administrator in Williamson County, Texas, in charge of voter registration and elections.

4.  I am currently the Voter Registration Director for Celia Israel, Travis County Tax Assessor-Collector. I have been in this role since 2023.

5.  On October 20, 2025, the first day of Early Voting for the November 4, 2025 election, the SOS announced via press release that her office "completed a full comparison of the state's voter registration list against citizenship data in the U.S. Citizenship and Immigration Services' SAVE database" and "[l]ast week those voter files were provided to Texas counties, who will now conduct their own investigations into the eligibility of these voters as part of their statutory responsibilities to remove ineligible voters from the rolls under Chapter 16 of the Texas Election Code."

6.  On October 21, 2025, the SOS sent an email advisory to Texas counties, including Travis County, to inform counties that the list referenced in the previous day's press release was in our online repository. *See* Exhibit A.

7.  Apparently on October 16, 2025, the SOS's office added a list of potential non-citizens to Travis County's online repository, but we were not made aware of this until the October 21

1

email advisory from the SOS. I have spoken with several other Texas counties who were also not made aware of their potential non-citizen match lists until they received the SOS's October 21 email advisory. Placing critical list maintenance data into county electronic repositories with no notice goes against the standard communication practice between the SOS and county election administration partners. The October 20 press release was the first indication that such a list had been sent.

8. We understand that the list we received was generated using the Systematic Alien Verification for Entitlements (SAVE) database but we have no visibility into how the matching process was conducted, how the list was created, or the reliability of the information within the database. For example, it is not clear whether the information provided by the SOS's office accurately reflects the citizenship status of naturalized citizens who naturalized before registering to vote. The list is static (as opposed to an indicia on an individual's registration record) and indicates the legal status of each individual listed at some unknown point in time, information which apparently came directly from the SAVE database.

9. After receiving the SAVE list, we began investigating each of the ninety-seven (97) voter records on the list, including researching the voter registration application origination sources, citizenship attestations on application images attached to voter registration records, and attempting to obtain citizenship status through other means.

10. Twenty-six (26) people on the SAVE list of potential non-citizen matches sent to Travis County have a voter registration source code of *64 – Department of Public Safety*. Our understanding of this designation is that the applicant registered to vote at the Department of Public Safety (DPS) and, through the process at DPS, provided proof of citizenship at the time of registration. An additional thirty-nine (39) people on the list registered to vote at a place other than DPS but have driver license numbers associated with their voter registration records and thus have previously been run against the DPS database for non-citizen matches. On October 27, 2025, I contacted the SOS's office about this apparent issue with the list we received, they could not clarify why people who registered to vote at DPS would be flagged via the SAVE database matching process. Instead, the SOS's office indicated I should contact DPS directly. It is my understanding that other counties have experienced this same issue with the lists sent to them by the SOS.

11. On October 31, 2025, I contacted DPS directly and was told: "The Department does not verify citizenship for county registrars." The DPS official copied an individual from the SOS's office who did not respond to the email chain. After back and forth with DPS, on November 3, 2025, I forwarded the email exchange with DPS to elections@sos.texas.gov (as suggested in the SOS's October 21 Advisory) wherein the we asked if the Texas Transportation Code, specifically section 730.005(9), allows DPS to share proof of citizenship information with county registrars. The County received no response to that email.

12. On November 14, 2025, Travis County Tax Assessor-Collector Celia Israel sent a letter to SOS and DPS. *See* Exhibit B.

13. On November 20, 2025, DPS Director Martin responded to Assessor-Collector Israel's letter dated November 20th. *See* Exhibit C.

14. On November 21, 2025, SOS Nelson sent a reply letter back to Assessor-Collector Israel. *See* Exhibit D.

15. On December 12, 2025, Christina Adkins from SOS Nelson's office emailed Assessor-Collector Israel indicating SOS had "been working with DPS to obtain the additional information you requested related to the list of potential non-citizens that was provided to you last month." The email contained a link to a spreadsheet with additional information about the individuals on the SAVE list, including whether they previously provided documents proving their citizenship to DPS.

16. On December 16, 2025, I emailed Christina Adkins requesting corresponding receipt dates from DPS for any lawful presence documentation that individuals on the SAVE list may have submitted.

17. On December 17, 2025, Christina Adkins replied via email with the lawful presence documentation receipt dates.

18. Travis County takes its list maintenance role, described by both federal and state law, seriously. The required time and attention by the voter registration office to process the SAVE list, request through various communication channels additional information from the SOS and DPS, and to carefully determine the required legal steps took an untold number of hours of work.

19. Ultimately, we determined at least 11 individuals, over 10% of the SAVE list, are U.S. citizens, as they previously provided proof of citizenship to DPS. SOS also provided details about *when* those documents were presented by individuals to DPS. The "when" is crucial because if the non-citizenship documentation was provided prior to the individual registering to vote, the individual may very well have become a citizen and registered to vote *after* the interaction with DPS (e.g., at a naturalization ceremony). An additional 20 individuals registered to vote after their DPS interaction.

20. Not all Texas counties have the time or resources to expend in the ways Travis County has in response to the SOS's sending of the SAVE list. I worry about voters who were improperly on the SAVE list who are in counties who did not have the time or resources to (1) conduct extensive research, and/or (2) request additional information from SOS and DPS. Those voters may be removed from the voter rolls improperly and very likely will not realize the removal until they go to the polls to vote. This ultimately creates a greater likelihood that those voters are disenfranchised.

21. Any required Texas Election Code section 16.033 notices sent to voters are sent through the United States Postal Service. Per Texas Election Code section 16.033, if the voter does not respond to that notice within 30 days after it is mailed, the voter's registration is required to be cancelled.

22. The process for receiving a section 16.033 notice and responding to that notice can be a burden on voters given the required short turnaround for providing proof of citizenship.

23. I have interacted with voters in the past who felt intimidated by receiving a governmental document indicating that they needed to provide proof of citizenship when they had previously

3

done so with a state agency, like DPS. I am worried that sending out this notice will deter eligible voters from providing the required proof of citizenship and/or from voting.

24. I am concerned that the list Travis County received from the SOS is flawed and worry about the potential for voters to be improperly cancelled from the voter rolls and possibly disenfranchised as a result.

25. The situation described in this declaration is evolving day-to-day. We are working to adapt to the situation as it evolves in real time given the limited information provided to us by the SOS.

26. On December 1, 2025, Travis County submitted a comment to the System of Records Notice (SORN), docket number USCIS-2025-0337, describing our concerns with the changes to and new uses of the SAVE database in the ways described by the SORN. *See* Exhibit E. To our knowledge, the Department of Homeland Security did not make any changes in response to our comment.

I hereby declare under penalty of perjury that the foregoing is true and correct.

**Executed on**  March 12, 2026

Christopher Davis

4

EXHIBIT A

**From:** Texas Secretary of State Elections Division
**To:** Christopher Davis
**Subject:** [CAUTION EXTERNAL] MASS EMAIL (VR/EA): List Maintenance Activity Involving Potential Non-United States Citizens
**Date:** Tuesday, October 21, 2025 1:55:17 PM

**CAUTION**: This email is from OUTSIDE Travis County. Links or attachments may be dangerous. Click the Phish Alert button above if you think this email is malicious.

Having trouble viewing this email? View it as a Web page [links-2.govdelivery.com].



[links-2.govdelivery.com]

## ELECTIONS DIVISION

**TO: Voter Registrars/Elections Administrators**

**FROM: Elections Division, Texas Secretary of State**

**SUBJECT: List Maintenance Activity Involving Potential Non-United States Citizens**

**DATE: October 21, 2025**

Dear Election Officials,

On October 16, 2025, the Secretary of State's office began sending voter records to counties as part of a continuing process for identifying and removing non-United States citizens from the State's voter rolls. This process is being conducted in accordance with the Secretary of State's Memorandum of Understanding with United States Citizenship and Immigration Services (USCIS) to compare state voter registration lists with USCIS' Systematic Alien Verification for Entitlements (SAVE) records.

The process for this list maintenance activity is largely the same as the process outlined in Election Advisory No. 2021-11: List Maintenance Activity Involving Potential Non-United States Citizens [links-2.govdelivery.com]. Please note the following procedures related to list maintenance activity involving information obtained from USCIS:

- We have created a new Notice to Registered Voter for Proof of Citizenship [links-

2.govdelivery.com] to be used to request proof of citizenship documentation from a registered voter pursuant to the result of the comparison of the voter's registration information with the USCIS SAVE records.

- In accordance with our Memorandum of Understanding with USCIS, if a voter provides proof of citizenship documentation, the county must send a copy of that documentation to the Secretary of State's office to be provided to USCIS.

- Each county's TEAM representative has reached out to you to further discuss this process and answer any questions you may have about these procedures. Your TEAM representative will also instruct you on how to submit proof of citizenship documentation that you receive to our office.

If you have any questions or concerns, please feel free to contact the Elections Division at (800) 252-8683 or Elections@sos.texas.gov.

Thank you,

**Christina Adkins**

Director of Elections

Office of the Texas Secretary of State

1019 Brazos Street | Rudder Building, 2nd Floor | Austin, Texas 78701 1.800.252.VOTE (8683)

elections@sos.texas.gov | www.sos.texas.gov [links-2.govdelivery.com]

*The information contained in this email is intended to provide advice and assistance in election matters per §31.004 of the Texas Election Code. It is not intended to serve as a legal opinion for any matter. Please review the law yourself, and consult with an attorney when your legal rights are involved.*

If you have any questions regarding this e-mail, please e-mail elections@sos.texas.gov

Stay Connected with Texas Secretary of State:



[links-2.govdelivery.com]  [links-2.govdelivery.com]  [links-2.govdelivery.com]

SUBSCRIBER SERVICES:
Manage Subscriptions [links-2.govdelivery.com] | Unsubscribe All [links-2.govdelivery.com] | Help [links-2.govdelivery.com]

This email was sent to christopher.davis@traviscountytx.gov using GovDelivery Communications Cloud on behalf of: Texas Secretary

of State · 707 17th St, Suite 4000 · Denver, CO 80202



**Celia Israel**
TAX ASSESSOR-COLLECTOR
VOTER REGISTRAR

2433 Ridgepoint Drive
Austin, Texas 78754
(512) 854-9473



EXHIBIT
B

November 14, 2025

Jane Nelson                                          *Via email*
Texas Secretary of State


Freeman F. Martin                                    *Via email*
Director, Texas Department of Public Safety


Subject: Alleged list of non-citizens based on SAVE database matches


Dear Secretary Nelson and Director Martin:


I write to you both in an effort to obtain resolution of important matters related to a list of alleged non-citizens generated by the Secretary of State's Office pursuant to a Memorandum of Understanding (MOU) with United States Citizenship and Immigration Services (USCIS).


***The SAVE list***

I received Secretary Nelson's October 20, 2025, press release, issued on the first day of Early Voting for the November 4, 2025 election, wherein she indicated the Secretary of State's office "completed a full comparison of the state's voter registration list against citizenship data in the U.S. Citizenship and Immigration Services' SAVE database" and "[l]ast week those voter files were provided to Texas counties, who will now conduct their own investigations into the eligibility of these voters as part of their statutory responsibilities to remove ineligible voters from the rolls under Chapter 16 of the Texas Election Code."


Unbeknownst to Travis County and other counties, apparently on October 16, 2025, the Secretary of State's office (SOS) placed this list in Travis County's electronic repository but did not otherwise notify my office that it had done so. The October 20 press release was the first indication that such a list had been sent.


On October 21, 2025, the SOS sent an email Advisory to Texas counties, including Travis County, to inform counties that the list referenced in the previous day's press release was in our online repository and that:


- The list of alleged non-citizens was sent pursuant to a Memorandum of Understanding (MOU) between the SOS and USCIS to "compare state voter registration lists with USCIS' Systematic Alien Verification for Entitlements (SAVE) records."

- The "process for this list maintenance activity is largely the same as the process outlined in Election Advisory No. 2021-11: List Maintenance Activity Involving Potential Non-United States Citizens."
- Pursuant to the MOU, "if a voter provides proof of citizenship documentation, the county must send a copy of that documentation to the Secretary of State's office to be provided to USCIS."

I understand that the list we received was generated using the SAVE database but my office has no visibility into how the matching process was conducted, how the list was created, or the reliability of the information within the database.

After receipt of the SAVE list,[1] our voter registration team began its investigations, including researching the voter registration application origination sources, citizenship attestations on application images attached to voter registration records, and attempting to obtain citizenship status through other means.[2]

Twenty-six (26) of the alleged non-citizen matches on Travis County's list have a voter registration source code of 64 – Department of Public Safety. Our understanding of this designation is that the applicant registered to vote at the Department of Public Safety (DPS) and, through the process at DPS, provided proof of citizenship at the time of registration. An additional thirty-nine (39) registered to vote at a place other than DPS but have driver license numbers associated with their voter registration records, and thus are run against the DPS database for non-citizen matches regularly.[3]

***Previous outreach to SOS and DPS***
On Monday, October 27, 2025, when my office contacted the SOS about this issue, the SOS's elections legal team could not clarify why people who registered to vote at DPS would be flagged via the SAVE database matching process. Instead, the legal team indicated that my office should contact DPS directly.

---

[1] The list is static (as opposed to an indicia on an individual's registration record) and indicates the legal status of each individual listed at some unknown point in time, information which apparently came directly from the SAVE database.

[2] As your office noted in its advisory, "In determining whether a voter is eligible for registration in your county, the voter registrar may use any lawful means at the registrar's disposal." Election Advisory No. 2021-11: List Maintenance Activity Involving Potential Non-United States Citizens." (citing Tex. Elec. Code § 16.033(a)).

[3] *See* Tex. Elec. Code 16.0332(a-1) (requiring SOS and DPS to work together to compare "information in the existing statewide computerized voter registration list" "against information in the database of the [DPS] on a monthly basis to verify the accuracy of citizenship status information previously provided on voter registration applications.").

On October 31, 2025, my office did contact DPS directly and were told: "The Department does not verify citizenship for county registrars." The DPS official copied an individual from the SOS's office who did not respond to the email chain.

After some back and forth with DPS, on November 3, 2025, my office forwarded the email exchange with DPS to elections@sos.texas.gov, as recommended in the SOS's October 21 Advisory, wherein my voter registration team asked whether Transportation Code Section 730.005(9) (personal information obtained by an agency in connection with a motor vehicle record shall be disclosed for use in connection with any matter of voter registration or the administration of elections by the secretary of state) allows DPS to share proof of citizenship information to county registrars or only to the Secretary of State. To date, we have not received a response to this question.

***Requested next steps***

I take my responsibilities very seriously and I know that you do, too. Under the Texas Election Code, I may "use any lawful means at [my] disposal"[4] to ascertain citizenship, therefore, I am seeking information from both of your offices to further our investigations into the SAVE list. I ask that your offices work together to compare the sub-list of voters from Travis's SAVE list who either (1) registered to vote at DPS or (2) registered to vote elsewhere but have a Texas driver license[5] with the DPS driver license system to determine whether the individuals listed have provided proof of U.S. citizenship to DPS. I ask that you then provide to my office (a) whether the person has provided proof of U.S. citizenship to DPS and (b) if the person has provided proof of U.S. citizenship to DPS, on what date such information was provided.

Please let me know by Tuesday, November 18, 2025, if you agree to provide this information to my office. If you do not agree to do so, I request a written response indicating the reasons you will not do so.

Thank you,

*[signature: Celia Israel]*

Celia Israel

---

[4] Tex. Elec. Code 16.033(a)

[5] My office is prepared to send the sub-list to you under separate cover.

# TEXAS DEPARTMENT OF PUBLIC SAFETY



**5805 N LAMAR BLVD • BOX 4087 • AUSTIN, TEXAS 78773-0001**
**512-424-2000**
www.dps.texas.gov



FREEMAN F. MARTIN
COLONEL
WALT GOODSON
JASON C. TAYLOR
LIEUTENANT COLONELS

STEVEN P. MACH, CHAIRMAN
NELDA L. BLAIR
DAN HORD III
LARRY B. LONG
STEVEN H. STODGHILL

November 20, 2025

Celia Israel
Travis County Tax Assessor-Collector
2433 Ridgepoint Drive
Austin, Texas 78754

Dear Ms. Israel:

The Department is in receipt of your recent correspondence regarding voter registration issues. The list you describe was created by the Office of the Secretary of State (SOS) and the Department was not involved in that process. With regard to your request that the Department work with the SOS, the Driver License Division has advised the SOS that we will provide any assistance they request to utilize driver record information maintained by the Department for purposes of voter registration or the administration of elections by their office.

Should you have further questions, please contact Sheri Gipson, Chief, Driver License Division, at 512-424-5415.

Sincerely,

Freeman F. Martin
Colonel

FFM:DPS:KTM

cc:    Jane Nelson, Texas Secretary of State
       Sheri Gipson, Chief, Driver License Division



# The State of Texas



**Executive Division**
Capitol Building, 1E.8
P.O. Box 12697
Austin, Texas 78711-2697

Phone: 512-463-5770
Fax: 512-475-2761
Dial 7-1-1 For Relay Services
www.sos.texas.gov

**Jane Nelson**
**Secretary of State**

November 21, 2025

Celia Israel
Travis County Tax Assessor-Collector

*Via Electronic Mail*

Dear Assessor-Collector Israel:

Thank you for contacting me about our ongoing efforts to ensure accurate voter lists for Texas elections. I appreciate this opportunity to clarify our recent work on data.

As you stated in your letter, our office completed a full comparison of the state's voter registration list against citizenship data in the U.S. Citizenship and Immigration Services' SAVE database – which is the most current and accurate data set available to states when it comes to determining a voter's citizenship. The matching process compared a voter's first name, last name, date of birth, and full social security number against the SAVE database. Out of over 18 million records, our office identified 2,724 potential noncitizens and shared that information with counties to conduct further investigation.

Even though the data we received from SAVE is considered a strong match, we directed counties to treat them as weak matches in order to ensure that counties conducted their own investigation. Such investigations can include notifying the voter and requesting proof of citizenship directly from the voter.

Your letter acknowledges that many Texans register to vote through the Department of Public Safety, which also has access to the SAVE database. We receive data from DPS on a regular basis, and we will continue collaborating with DPS in the State's efforts to maintain accurate voter lists.

For additional information, I would refer you to the Elections Division's October 16, 2025 webinar presentation and October 21, 2025 email to county election officials regarding the list maintenance work involving potential non-United States citizens.

Thank you again for your inquiry, and for your service to the State of Texas.

Sincerely,

Jane Nelson
Secretary of State



EXHIBIT
E

**TRAVIS COUNTY**

December 1, 2025

Department of Homeland Security
Washington, DC 20528-0655

       Subject: Department of Homeland Security SORN - docket number USCIS-2025-0337

Department of Homeland Security,

       On October 31, 2025, the Department of Homeland Security (DHS) issued a System of Records Notice (SORN) regarding updates and changes to the Systematic Alien Verification for Entitlements (SAVE) system, docketed as USCIS-2025-0337. The SORN indicates that DHS, through its subdivision, U.S. Citizenship and Immigration Services (USCIS), plans to change the following: "(1) purpose(s) of the system, (2) categories of individuals covered by the system, (3) categories of records in the system, (4) records source categories, and (5) routine uses of records maintained in the system."[1] The undersigned local entities—Travis County, Texas; Celia Israel, Travis County Tax Assessor-Collector; and Dyana Limon-Mercado, Travis County Clerk[2] (collectively, "Travis County Officials")—submit this public comment regarding the SORN.

       In sum, and as described below, the Travis County Officials have grave concerns about the proposed changes to the SAVE system, given the foreseeable ways the expanded system will be used to unlawfully and mistakenly purge eligible voters from the voter rolls. The Travis County Officials ask DHS to withdraw the SORN and use the SAVE system only in ways that are contemplated by the governing statutes and take sufficient account of the risks that use of the system poses to voters.

       Given their duty to their constituents and their obligations under federal and Texas law, the Travis County Officials have an acute interest in protecting voting rights and ensuring free and fair elections. Under Texas law, Ms. Israel is the voter registrar for Travis County, whose duties include registering voters and voter list maintenance and Ms. Limon-Mercado is responsible for administering elections in Travis County. Assessor-Collector Israel and Clerk Limon-Mercado are extensively familiar with Texas voter registration list maintenance processes and understand the devastating impact of improperly removing eligible voters from the rolls based on faulty data processes. The Travis County Commissioners Court is the chief budgetary authority for the county and is responsible for ensuring that taxpayer dollars promote fair, efficient, lawful elections— including by mitigating the risk of lawsuits. Particularly given the State of Texas's recent use of

---

[1]SORN available here: https://www.federalregister.gov/documents/2025/10/31/2025-19735/privacy-act-of-1974-system-of-records#addresses.

[2] Celia Israel and Dyana Limon-Mercado submit this statement in their official capacity.

1

the expanded SAVE system, and Texas's history of unlawful voter purges, the Travis County Officials asks DHS to withdraw the SORN at issue.

I.    **Texas's History of Attempting Unlawful Voter Purges**

Texas has a well-documented history of inaccurately flagging citizens as non-citizens for voter-roll removal. The most prominent recent episode occurred in 2019, when the Secretary of State (SOS) identified roughly 100,000 registered voters as likely non-citizens based on a flawed data-matching process with the Department of Public Safety (DPS).[3] The matching process involved a comparison of voter rolls to DPS records of individuals who, at some prior point— often years earlier—had indicated they were not U.S. citizens when obtaining a driver's license or ID card.[4]

But because driver's licenses remain valid for years, and there is no legal requirement to continuously notify the DPS of citizenship changes, such as might occur via naturalization, DPS frequently lacked current citizenship information.[5] Thus, the matching process failed to account for the many lawful permanent residents who subsequently naturalized and were not required by law to update DPS. For example, in 2017 and 2018 alone, over 100,000 Texans became naturalized citizens, meaning many individuals flagged for removal were eligible voters.[6] Despite these flaws, the SOS, David Whitley, forwarded the removal list to the Texas Attorney General for potential felony prosecution, and state and national political leaders—including Gov. Abbott and President Trump—publicly promoted the list as evidence of widespread illegal voting.[7] Within days, state officials privately alerted local election administrators that thousands of names had been included in error.[8] The SOS's office later admitted it had overstated the number of flagged voters by approximately 25,000.[9] The SOS's actions prompted multiple lawsuits, and a federal judge in San Antonio ultimately found that the effort was fundamentally flawed in execution and resulted in "perfectly legal naturalized Americans [being] [] burdened with…ham-handed and threatening correspondence" that risked intimidating lawful voters.[10] The Court barred local officials from

---

[3] *See generally* Alexa Ura, *Texas will end its botched voter citizenship review and rescind its list of flagged voters*, The Texas Tribune, April 26, 2019, https://www.texastribune.org/2019/04/26/texas-voting-rights-groups-win-settlement-secretary-of-state/.

[4] *Id.*

[5] *Id.*

[6] U.S. Dep't of Homeland Sec., Office of Homeland Sec. Statistics, *Table 22. Persons Naturalized by State or Territory of Residence: Fiscal Years 2017 to 2019*, in *2019 Yearbook of Immigration Statistics* (Sept. 1, 2020), https://ohss.dhs.gov/topics/immigration/yearbook/2019/table22.

[7] *See* Alex Ura, *"Someone did not do their due diligence": How an attempt to review Texas' voter rolls turned into a debacle,* The Texas Tribune, Feb. 1, 2019, https://www.texastribune.org/2019/02/01/texas-citizenship-voter-roll-review-how-it-turned-boondoggle/.

[8] Ura, *supra* n. 3-5.

[9] *Id.*

[10] *Id.*

2

sending "notice of examination" letters or removing any voter from the rolls without prior Court approval and ordered the SOS to halt all removal efforts stemming from the initial list.[11]

The lawsuits concluded in a settlement under which the state agreed to overhaul its methodology: *only* individuals who provided DPS with proof of non-citizenship after they registered to vote could be flagged for list maintenance.[12] The state also committed to issuing new training materials to ensure proper implementation going forward.[13] Secretary Whitley eventually resigned, in part, due to the debacle.[14]

The irony is that the flawed data-matching process in 2019 arose because of a law passed to address a similar fiasco that took place in 2012.

Under Texas law (H.B. 174) passed in 2011, the SOS was required by law to compare the statewide voter list with the Social Security Administration's (SSA) Master Death File.[15] Despite the SSA's warnings to State officials that SSA data should not be relied upon for voter-purge purposes, the State proceeded anyway.[16] After running a comparison between the two lists, the State flagged more than 80,000 Texans as deceased.[17] In Harris County alone, over 9,000 voters were flagged as dead. This matching process was deeply flawed in part because it used what are called "weak" matches (meaning that voters were matched to the SSA database off of limited data points) without conducting any further investigation.[18] According to one analysis, more than 68,000 of the 80,000 voters identified as possibly dead were weak matches.[19] This policy of flagging voters based on a weak match without further investigation was eventually changed when

---

[11] *Id.*

[12] Texas Secretary of State Press Release, Apr. 26, 2019, https://www.sos.state.tx.us/about/newsreleases/2019/042619.shtml

[13] Ura, *supra* n. 3-5.

[14] *See generally* Alex Ura, *Texas Secretary of State David Whitley departs as legislative session ends*, The Texas Tribune, May 27, 2019, https://www.texastribune.org/2019/05/27/texas-secretary-state-david-whitley-forced-leave-office/

[15] *See generally* Julián Aguilar, *Voter Purge Bill Raises Concerns After Living Flagged as Possibly Dead*, *The Texas Tribune*, Sep. 12, 2012, https://www.texastribune.org/2012/09/12/concerns-raised-after-living-voters-flagged-dead/; s*ee also* 2011 Tex. Sess. Law Serv. Ch. 683 (H.B. 174), https://legiscan.com/TX/text/HB174/id/309304/Texas-2011-HB174-Enrolled.html

[16] *See* Wade Goodwyn, *Many Texans Bereaved "Over Dead" Voter Purge*, NPR, Sep. 16, 2012, *https://www.npr.org/2012/09/16/161145248/many-texans-bereaved-over-dead-voter-purge*

[17] *Id.*

[18] *See* Defendant Andrade's Notice Of Withdrawal, Plea To The Jurisdiction, And Motion To Dissolve The Temporary Restraining Order, Moore v. Morton, No. D-1-GN-12-002923 (Dist. Ct. Travis Cnty. Tex. Sept. 21, 2012).

[19] Lise Olsen, *Texas' voter purge made repeated errors*, *Houston Chronicle*, November 2, 2012, https://www.chron.com/politics/article/texas-voter-purge-made-repeated-errors-4001767.php.

Texas settled litigation by agreeing that only voters whose deaths could be affirmatively confirmed would be removed.[20]

In response to the embarrassment of the "dead voters" debacle, the Texas Legislature in 2013 quietly enacted a law granting the SOS access to Department of Public Safety (DPS) driver-license records, including information on individuals who had once presented documents—such as green cards or work visas—indicating non-citizen status when they first obtained a license or state ID.[21] The idea, according to then-election director Keith Ingram's legislative testimony, was to give the state a more reliable path for verifying voter eligibility and avoiding mistakes that lead to the "dead voters" debacle.[22]

However, as is now evident, DPS data had its own blind spots: driver's licenses remain valid for years, and individuals who later naturalize are not required to update DPS. From the beginning, civil-rights groups warned that using stale DPS citizenship data to identify ineligible voters would inevitably sweep in lawful naturalized citizens. In the end, they were right.

## II.    Texas's Flawed Transition of its Voter Registration Database

In addition to the "ham-handed" efforts to flag individuals for possible removal from the voter rolls discussed above and further complicating Texas's reliance on SAVE data, Texas is currently in the midst of another calamitous voter data overhaul. Since the summer of 2025, Texas counties have experienced myriad issues with the transition from the state's Texas Election Administration Management (TEAM) system 1.0 to system 2.0. The SOS is in charge of the rollout, onboarding, and full transition to the updated system.

In June of 2025, Clerk Limon-Mercado sent a letter to SOS detailing multiple issues with the TEAM transition. SOS initially responded indicating they would follow up with Travis County but SOS failed to substantively respond. Many of the issues raised in that June letter persist today. On October 17, 2025—before the SOS announced its use of the SAVE system at issue in this comment, *see* sec. III, *infra*—the Texas Association of County Election Officials, the County and District Clerks Association, the Tax Assessor-Collectors Association of Texas, and the County Judges and Commissioners Association of Texas sent a letter to the Texas SOS ("TACEO letter"), identifying problems with the TEAM transition, including:

- "Since the transition of the new TEAM, counties have experienced daily inconsistencies with the core functionality of the system. Necessary processes, including voter registration lookup, ballot issuance status, precinct assignments, and voter history updates, frequently malfunction. This lack of functionality materially increases the risk of a voter being issued the wrong ballot, duplicate registrations, and more delays in the polling place."[23]

---

[20] *See* Chuck Lindell, *State Settles Lawsuit on 'Dead' Voter Purge*, American-Statesman, October 3, 2012, https://www.statesman.com/story/news/2012/10/04/state-settles-lawsuit-on-dead-voter-purge/9922374007/.

[21] Ura, *supra* n. 7.

[22] *Id.*

[23] Letter from Texas Association of County Election Officials, the County and District Clerks Association, the Tax Assessor-Collectors Association of Texas, and the County Judges and

- "Counties have seen substantial delays in processing voter registration applications and updating registration status. Many election officials have observed TEAM incorrectly generating the voter registration list, which compromises election security by complicating the update of poll books and the identification of voters who have received a mail ballot."[24]

- "While training opportunities have been provided, it's concerning that it began so close to the implementation of the new system without there being a significant buffer to prepare for the upcoming constitutional amendment election."[25]

The letter was submitted to the SOS the week before early voting started in Texas's November 4, 2025 election. The issues identified in the TACEO letter have not been resolved. Rather these issues persist and new issues arise daily. Attached as Exhibit 1 is an example list of recent problems encountered by the Travis County Clerk and Tax Assessor-Collector's offices as they work to facilitate voter registration and administer elections in the county.

Rather than meaningfully work with counties to ensure corrections, the SOS has repeatedly failed to address issues with the TEAM system. The 2026 primaries are fast approaching and these failures are mounting. Adding additional unreliable SAVE data into the already problem-riddled TEAM transition will almost certainly infringe upon Texans' voting rights. Given that the statewide database in TEAM is currently unreliable, adding the SAVE data to this mixture is a recipe for disaster.

## III.    Texas's Use of the SAVE System Described in the SORN

DHS released the SORN at issue in this comment on October 31, 2025. More than six months prior, in March, 2025, DHS, USCIS, and the Texas SOS entered into a Memorandum of Agreement (the "MoA") purporting to permit the SOS to use the SAVE system to "verify the citizenship and immigration status information of noncitizen and naturalized or acquired U.S. citizen registrants and registered voters within User Agency's jurisdiction for voter registration and voter list maintenance (benefit) in the State of Texas."[26] Notably, the MoA did not identify any Texas statutory authority that expressly authorizes the SOS to access the SAVE database for voter list-citizenship matching, nor did SOS go through any Texas Administrative Procedure Act process to authorize this new matching procedure. It is thus not clear that this disclosure was for a purpose "authorized by law."[27]

---

Commissioners Association of Texas to The Honorable Jane Nelson, Texas Secretary of State (Oct. 17, 2025), https://www.documentcloud.org/documents/26190075-collective-association-team-concerns/.

[24] *Id.*

[25] *Id.*

[26] Memorandum of Agreement between the Department of Homeland Security, U.S. Citizenship and Immigration Services, and the Texas Secretary of State, (Mar. 25, 2025), available at https://americanoversight.org/featureddocument/texas-secretary-of-state-communications-concerning-voters-searched-in-save/, page 24.

[27] *See* 8 U.S.C. § 1373.

On October 20, 2025, on the first day of Early Voting for the November 4, 2025 election, the SOS issued a press release stating her office "completed a full comparison of the state's voter registration list against citizenship data in the U.S. Citizenship and Immigration Services' SAVE database" and "[l]ast week those voter files were provided to Texas counties, who will now conduct their own investigations into the eligibility of these voters as part of their statutory responsibilities to remove ineligible voters from the rolls under Chapter 16 of the Texas Election Code."[28]

Unbeknownst to Travis and other counties, on October 16, 2025, the SOS's office placed this list of voters in counties' electronic voter list maintenance repositories, which assign list maintenance tasks for the counties, but did not otherwise inform the counties it had done so. Placing critical list maintenance data into county electronic repositories with no notice goes against the standard communication practice between the SOS and county election administration partners. The October 20 press release was the first indication that such a list had been sent. A full day after sending the press release, the SOS's office sent an email advisory to Texas counties to inform them that the list was in the online repository and that:

- The list of alleged non-citizens was sent pursuant to a Memorandum of Understanding between SOS and USCIS to "compare state voter registration lists with USCIS' Systematic Alien Verification for Entitlements (SAVE) records."

- The "process for this list maintenance activity is largely the same as the process outlined in Election Advisory No. 2021-11: List Maintenance Activity Involving Potential Non-United States Citizens."

- Pursuant to the MOU, "if a voter provides proof of citizenship documentation, the county must send a copy of that documentation to the Secretary of State's office to be provided to USCIS."[29]

### Issues with the SAVE list

After receiving the SAVE list,[30] the Travis County voter registration team began investigating each of the ninety-seven (97) voter records on the list, including researching the voter registration application origination sources, citizenship attestations on application images attached to voter registration records, and attempting to obtain citizenship status through other means.[31]

---

[28] Texas Secretary of State Press Release, *Texas Completes Citizenship Verifications in the SAVE Database*, Oct. 20, 2025, https://www.sos.state.tx.us/about/newsreleases/2025/102025.shtml
[29] Texas Secretary of State Mass Email, *List Maintenance Activity Involving Potential Non-United States Citizens*, Oct. 21, 2025, https://content.govdelivery.com/accounts/TXSOS/bulletins/3f8057c.
[30] The list is static (as opposed to an indicia on an individual's registration record) and indicates the legal status of each individual listed at some unknown point in time, information which apparently came directly from the SAVE database.
[31] As the SOS noted in its advisory, "In determining whether a voter is eligible for registration in your county, the voter registrar may use any lawful means at the registrar's disposal." Texas

Twenty-six (26) of the alleged non-citizen matches on Travis County's list have a voter registration source code of 64—Department of Public Safety, which indicates that the applicant registered to vote at the Department of Public Safety ("DPS") and, through the process at DPS, provided proof of citizenship at the time of registration. An additional thirty-nine (39) people on the list registered to vote at a place other than DPS but have driver license numbers associated with their voter registration records and thus have previously been run against the DPS database for non-citizen matches.[32]

### *Communications with SOS and DPS*

On October 27, 2025, the Travis County voter registrar's office contacted the SOS's office about this issue, but the SOS's elections legal team could not clarify why people who registered to vote at DPS would be flagged via the SAVE database matching process. Instead, the legal team indicated that Travis County should contact DPS directly. On October 31, 2025, Travis County did contact DPS directly and were told: "The Department does not verify citizenship for county registrars." The DPS official copied an individual from the SOS's office who did not respond to the email chain.

After back and forth with DPS, on November 3, 2025, Travis County forwarded the email exchange with DPS to elections@sos.texas.gov (as suggested in the SOS's October 21 Advisory) wherein the Travis County voter registration team asked if the Texas Transportation Code, specifically Section 730.005(9), allows DPS to share proof of citizenship information with country registrars. The County received no response.

On November 14, Travis County Tax Assessor-Collector Celia Israel sent a letter[33] to SOS and DPS requesting that the two entities "work together to compare the sub-list of voters from Travis's SAVE list who either (1) registered to vote at DPS or (2) registered to vote elsewhere but have a Texas driver license with the DPS driver license system to determine whether the individuals listed have provided proof of U.S. citizenship to DPS" and that SOS and DPS then "provide [to Travis County information indicating] (a) whether the person has provided proof of U.S. citizenship to DPS and (b) if the person has provided proof of U.S. citizenship to DPS, on what date such information was provided."

---

Secretary of State, Election Advisory No. 2021-11: List Maintenance Activity Involving Potential Non-United States Citizens, Sept. 9, 2021, https://www.sos.state.tx.us/elections/laws/advisory2021-11.shtml (citing TEX. ELEC. CODE § 16.033(a)).

[32] *See* TEX. ELEC. CODE 16.0332(a-1) (requiring SOS and DPS to work together to compare "information in the existing statewide computerized voter registration list…against information in the database of the Department of Public Safety on a monthly basis to verify the accuracy of citizenship status information previously provided on voter registration applications.").

[33] Letter to Jane Nelson, Texas Secretary of State, and Freeman Martin, Director of Texas Department of Public Safety, from Celia Israel, Travis County Tax Assessor-Collector, (Nov. 13, 2025) (Exhibit 2).

On November 21, DPS Director Martin responded via letter dated November 20, indicating the SAVE list "was created by the [SOS] and the Department was not involved in that process. With regard to your request that the Department work with SOS, the Driver License Division has advised the SOS that we will provide any assistance they request to utilize driver record information maintained by the Department for purposes of voter registration or the administration of elections by their office."[34] Also on November 21, Secretary Nelson sent a letter back to Assessor-Collector Israel but did not respond to the direct request, instead relying on platitudes about the voter registration process and, apparently, refusing to utilize the SOS's access to DPS records to verify whether those individuals flagged through the SAVE list have previously provided proof of citizenship to the State of Texas.[35]

Further, pursuant to the Texas Election Code, any required notices sent to voters will go through the United States Postal Service. If the voter does not respond to that notice within 30 days after it is mailed, the voter's registration is required to be cancelled. This process can be a burden on voters given the required short turnaround for providing proof of citizenship. The Travis County Officials have interacted with voters in the past who felt intimidated by receiving a governmental document indicating that they needed to provide proof of citizenship when they had previously done so with a state agency, like DPS. Therefore, the undersigned are concerned that sending out this notice will deter eligible voters from providing the required proof of citizenship and/or from voting.

Based on the SOS's conduct over the last six weeks, the Travis County Officials can only draw the conclusion that SOS's decision to send an unfiltered and unvetted list directly from the flawed SAVE matching process is yet another bad faith attempt to remove voters from the rolls, including many people who likely previously demonstrated their citizenship in a transaction with the State of Texas. Requiring voters who have already demonstrated citizenship to one state entity and registered to vote through that entity (DPS) to *again* prove citizenship can only be construed as purposefully adding a burden on those voters in hopes the voters will become frustrated with the request and abandon their voting rights.

## IV.    DHS and USCIS Should Withdraw the SORN

We need only look at these latest efforts to flag non-citizens in Texas to understand that the data provided by SAVE is, at minimum, out of date. There are strong indicators that almost 70% of the individuals flagged in the SAVE list previously provided proof of citizenship to DPS. That error rate is wholly unacceptable when the impact is possible exclusion from the voter rolls. Travis County Officials ask DHS to withdraw the SORN given that the proposed expansion of the SAVE system exceeds legal authority and does not properly account for the risks posed to voters through the proposed use of the system.

---

[34] Letter to Celia Israel, Travis County Tax Assessor-Collector, from Freeman Martin, Texas Department of Public Safety Director, (Nov. 21, 2025) (Exhibit 3).
[35] Letter to Celia Israel, Travis County Tax Assessor-Collector, from Jane Nelson, Texas Secretary of State, (Nov. 21, 2025) (Exhibit 4).

Thank you,

Dyana Limon-Mercado
Travis County Clerk

Celia Israel
Travis County Tax Assessor-Collector

Travis County Judge Andy Brown
on behalf of Travis County

9

# Exhibit 1

| Issue Description |
|---|
| In the lead up to the November 4, 2025 election, Travis County could not pull many standard reports for voter registration and elections processes directly from the TEAM system and instead had to rely on SOS to pull these reports. For example, these standard reports were not available for Travis County to pull while preparing for the logic and accuracy test, nor the mail ballot mailouts for the November 4 election. The ballot by mail report became available on or around October 3 but did not include complete mailing addresses. This significantly hampered the workflow of the voter registrar and elections offices. Now, Travis County can pull some of these reports but the reports are not always accurate and must be verified by Travis County staff. |
| Thousands of DPS voter registration applications remain in the county's TEAM queue because the TEAM module for these applications functions exceedingly slowly and often makes it impossible to use. Travis County has asked for a list of these registration applications so that the county can process the registrations manually. The SOS provided such a list prior to the November 4, 2025 election but has not provided a similar list since the end of the November 4 election, despite repeated requests from the county to do so. |
| The updated Official List of Registered Voters, a report run for the November 4, 2025 Election Day, did not include any voters' apartment numbers. This required voters who live in apartments to fill out a Statement of Residence form because the registered addresses on the epollbook (without the apartment number) did not match the voters' actual addresses (with the apartment number). This resulted in thousands more Statement of Residence forms to be filled out than necessary and many personnel hours by Travis County staff to process those forms. |
| Reports pulled directly from TEAM are frequently incorrect and require hours of verification by the Travis County voter registration and elections staff to correct (e.g. the Official List of Registered Voters for the December 13, 2025 Runoff Election contained thousands of voters who should not have been on the list and Travis County staff were forced to correct those errors before they could use the list). |
| The TEAM module that processes regular correspondence to voters (e.g. notice of examination for felony or death) is incredibly slow and cumbersone such that the correspondence itself often will not properly attach to the voter's record. |
| During the November 4, 2025 Election, voters were improperly ommitted from the SOS-provided voter roll. In many instances, the TEAM system showed a single record for the voter that was cancelled as a "duplicate," apparently through a mass import into the TEAM system, but without a duplicate actually existing. Travis County has reported this issue to SOS multiple times but it has not been corrected. Travis County understands other counties on the TEAM system have experienced this issue. |
| Before and after the November 4, 2025 Election, SOS added districts to Travis County's voter registration precincts within TEAM rather than asking Travis County to do so and without telling Travis County in advance that SOS would add in those districts. There is no report within TEAM that Travis County may pull to double check the SOS's work and ensure that all districts that should be applied to a specific voter registration precinct are accurate and complete. Travis County may spot check this issue by looking at an individual voter's record but currently has no way to check across the system. The impact of this issue could develope in myriad ways, including missing districts (i.e. contest) on an individual voter's ballot style. |
| The Ballot by Mail module has been flawed from its initial roll out. The Travis County Ballot by Mail team had to re-enter into TEAM thousands of ballot by mail applications that were submitted in 2025 because of errors in the TEAM database. |
| As of the November 4, 2025 Election, there was not a method within TEAM to update voter records with ballot by mail indicia of "Ballot Sent" or "Ballot Received" in bulk, therefore updates had to be made by opening each individual's record to update on an individual basis. This caused delays with in turn updates to the epollbooks. |
| The polling location module within TEAM is not fully functional. The errors around this module include (1) Travis County teams manually entering polling location information into TEAM and the information disappearing after saving, (2) the TEAM system failing to accurately maintain designations of "Early Voting location" and/or "Election Day location" such that the teams had to enter this information multiple times for multiple locations. |

**Exhibit 1**

# Exhibit 2



**Celia Israel**
TAX ASSESSOR-COLLECTOR
VOTER REGISTRAR

2433 Ridgepoint Drive
Austin, Texas 78754
(512) 854-9473

November 14, 2025

Jane Nelson                                                        *Via email*
Texas Secretary of State

Freeman F. Martin                                                  *Via email*
Director, Texas Department of Public Safety

Subject: Alleged list of non-citizens based on SAVE database matches

Dear Secretary Nelson and Director Martin:

I write to you both in an effort to obtain resolution of important matters related to a list of alleged non-citizens generated by the Secretary of State's Office pursuant to a Memorandum of Understanding (MOU) with United States Citizenship and Immigration Services (USCIS).

***The SAVE list***
I received Secretary Nelson's October 20, 2025, press release, issued on the first day of Early Voting for the November 4, 2025 election, wherein she indicated the Secretary of State's office "completed a full comparison of the state's voter registration list against citizenship data in the U.S. Citizenship and Immigration Services' SAVE database" and "[l]ast week those voter files were provided to Texas counties, who will now conduct their own investigations into the eligibility of these voters as part of their statutory responsibilities to remove ineligible voters from the rolls under Chapter 16 of the Texas Election Code."

Unbeknownst to Travis County and other counties, apparently on October 16, 2025, the Secretary of State's office (SOS) placed this list in Travis County's electronic repository but did not otherwise notify my office that it had done so. The October 20 press release was the first indication that such a list had been sent.

On October 21, 2025, the SOS sent an email Advisory to Texas counties, including Travis County, to inform counties that the list referenced in the previous day's press release was in our online repository and that:

- The list of alleged non-citizens was sent pursuant to a Memorandum of Understanding (MOU) between the SOS and USCIS to "compare state voter registration lists with USCIS' Systematic Alien Verification for Entitlements (SAVE) records."

**Exhibit 2**

- The "process for this list maintenance activity is largely the same as the process outlined in Election Advisory No. 2021-11: List Maintenance Activity Involving Potential Non-United States Citizens."
- Pursuant to the MOU, "if a voter provides proof of citizenship documentation, the county must send a copy of that documentation to the Secretary of State's office to be provided to USCIS."

I understand that the list we received was generated using the SAVE database but my office has no visibility into how the matching process was conducted, how the list was created, or the reliability of the information within the database.

After receipt of the SAVE list,[1] our voter registration team began its investigations, including researching the voter registration application origination sources, citizenship attestations on application images attached to voter registration records, and attempting to obtain citizenship status through other means.[2]

Twenty-six (26) of the alleged non-citizen matches on Travis County's list have a voter registration source code of 64 – Department of Public Safety. Our understanding of this designation is that the applicant registered to vote at the Department of Public Safety (DPS) and, through the process at DPS, provided proof of citizenship at the time of registration. An additional thirty-nine (39) registered to vote at a place other than DPS but have driver license numbers associated with their voter registration records, and thus are run against the DPS database for non-citizen matches regularly.[3]

***Previous outreach to SOS and DPS***
On Monday, October 27, 2025, when my office contacted the SOS about this issue, the SOS's elections legal team could not clarify why people who registered to vote at DPS would be flagged via the SAVE database matching process. Instead, the legal team indicated that my office should contact DPS directly.

---

[1] The list is static (as opposed to an indicia on an individual's registration record) and indicates the legal status of each individual listed at some unknown point in time, information which apparently came directly from the SAVE database.

[2] As your office noted in its advisory, "In determining whether a voter is eligible for registration in your county, the voter registrar may use any lawful means at the registrar's disposal." Election Advisory No. 2021-11: List Maintenance Activity Involving Potential Non-United States Citizens." (citing Tex. Elec. Code § 16.033(a)).

[3] *See* Tex. Elec. Code 16.0332(a-1) (requiring SOS and DPS to work together to compare "information in the existing statewide computerized voter registration list" "against information in the database of the [DPS] on a monthly basis to verify the accuracy of citizenship status information previously provided on voter registration applications.").

On October 31, 2025, my office did contact DPS directly and were told: "The Department does not verify citizenship for county registrars." The DPS official copied an individual from the SOS's office who did not respond to the email chain.

After some back and forth with DPS, on November 3, 2025, my office forwarded the email exchange with DPS to elections@sos.texas.gov, as recommended in the SOS's October 21 Advisory, wherein my voter registration team asked whether Transportation Code Section 730.005(9) (personal information obtained by an agency in connection with a motor vehicle record shall be disclosed for use in connection with any matter of voter registration or the administration of elections by the secretary of state) allows DPS to share proof of citizenship information to county registrars or only to the Secretary of State. To date, we have not received a response to this question.

***Requested next steps***
I take my responsibilities very seriously and I know that you do, too. Under the Texas Election Code, I may "use any lawful means at [my] disposal"[4] to ascertain citizenship, therefore, I am seeking information from both of your offices to further our investigations into the SAVE list. I ask that your offices work together to compare the sub-list of voters from Travis's SAVE list who either (1) registered to vote at DPS or (2) registered to vote elsewhere but have a Texas driver license[5] with the DPS driver license system to determine whether the individuals listed have provided proof of U.S. citizenship to DPS. I ask that you then provide to my office (a) whether the person has provided proof of U.S. citizenship to DPS and (b) if the person has provided proof of U.S. citizenship to DPS, on what date such information was provided.

Please let me know by Tuesday, November 18, 2025, if you agree to provide this information to my office. If you do not agree to do so, I request a written response indicating the reasons you will not do so.

Thank you,

Celia Israel

---

[4] Tex. Elec. Code 16.033(a)
[5] My office is prepared to send the sub-list to you under separate cover.

# Exhibit 3

# TEXAS DEPARTMENT OF PUBLIC SAFETY





5805 N LAMAR BLVD • BOX 4087 • AUSTIN, TEXAS 78773-0001
512-424-2000
www.dps.texas.gov

FREEMAN F. MARTIN
COLONEL
WALT GOODSON
JASON C. TAYLOR
LIEUTENANT COLONELS

STEVEN P. MACH, CHAIRMAN
NELDA L. BLAIR
DAN HORD III
LARRY B. LONG
STEVEN H. STODGHILL

November 20, 2025

Celia Israel
Travis County Tax Assessor-Collector
2433 Ridgepoint Drive
Austin, Texas 78754

Dear Ms. Israel:

The Department is in receipt of your recent correspondence regarding voter registration issues. The list you describe was created by the Office of the Secretary of State (SOS) and the Department was not involved in that process. With regard to your request that the Department work with the SOS, the Driver License Division has advised the SOS that we will provide any assistance they request to utilize driver record information maintained by the Department for purposes of voter registration or the administration of elections by their office.

Should you have further questions, please contact Sheri Gipson, Chief, Driver License Division, at 512-424-5415.

Sincerely,

Freeman F. Martin
Colonel

FFM:DPS:KTM

cc:    Jane Nelson, Texas Secretary of State
       Sheri Gipson, Chief, Driver License Division

EQUAL OPPORTUNITY EMPLOYER
COURTESY • SERVICE • PROTECTION

Exhibit
3

# Exhibit 4

# The State of Texas



Executive Division
Capitol Building, 1E.8
P.O. Box 12697
Austin, Texas 78711-2697

Phone: 512-463-5770
Fax: 512-475-2761
Dial 7-1-1 For Relay Services
www.sos.texas.gov

### Jane Nelson
### Secretary of State

November 21, 2025

Celia Israel
Travis County Tax Assessor-Collector

*Via Electronic Mail*

Dear Assessor-Collector Israel:

Thank you for contacting me about our ongoing efforts to ensure accurate voter lists for Texas elections.  I appreciate this opportunity to clarify our recent work on data.

As you stated in your letter, our office completed a full comparison of the state's voter registration list against citizenship data in the U.S. Citizenship and Immigration Services' SAVE database – which is the most current and accurate data set available to states when it comes to determining a voter's citizenship.  The matching process compared a voter's first name, last name, date of birth, and full social security number against the SAVE database.  Out of over 18 million records, our office identified 2,724 potential noncitizens and shared that information with counties to conduct further investigation.

Even though the data we received from SAVE is considered a strong match, we directed counties to treat them as weak matches in order to ensure that counties conducted their own investigation.  Such investigations can include notifying the voter and requesting proof of citizenship directly from the voter.

Your letter acknowledges that many Texans register to vote through the Department of Public Safety, which also has access to the SAVE database. We receive data from DPS on a regular basis, and we will continue collaborating with DPS in the State's efforts to maintain accurate voter lists.

For additional information, I would refer you to the Elections Division's October 16, 2025 webinar presentation and October 21, 2025 email to county election officials regarding the list maintenance work involving potential non-United States citizens.

Thank you again for your inquiry, and for your service to the State of Texas.

Sincerely,

Jane Nelson
Secretary of State