# Exhibit A

TEXAS CIVIL RIGHTS PROJECT

November 18, 2025

*Via Electronic Filing*

FOR: Roman Jankowski, Chief Privacy Officer
U.S. Department of Homeland Security

Angela Y. Washington, Chief of the Office of Privacy
U.S. Citizenship and Immigration Services

FROM: Carl Blair and Miranda van Dijk
Texas Civil Rights Project

**RE: Systematic Alien Verification for Entitlements Program System of Records Notice [Docket No. USCIS–2025–0337]**

Mr. Jankowski and Ms. Washington,

We represent the Texas Civil Rights Project, one of Texas's leading civil and voting rights organizations and a leader of the largest non-partisan Election Protection program in Texas. For the reasons set out below, we strongly urge a reconsideration of the Statement of Record Notice ("SORN") codifying the expansion of the Systematic Alien Verification for Entitlements Program ("SAVE") database and encouraging its use in voter verification.

**Background**

The Department of Homeland Security ("DHS") has published a SORN seeking to codify its previous unauthorized expansion of SAVE.[1] The SORN details changes to "the (1) purpose(s) of the system, (2) categories of individuals covered by the system, (3) categories of records in the system, (4) records source categories, and (5) routine uses of records maintained in the system."[2] Of particular concern, the SORN encourages the use of the SAVE database as a voter verification tool and, in order to facilitate that use, expands the database to include Social Security numbers and other personally identifiable information.

[1] Privacy Act of 1974; System of Records, 90 Fed. Reg. 48948, 48948 (Oct. 30, 2025), https://www.federalregister.gov/documents/2025/10/31/2025-19735/privacy-act-of-1974-system-of-records.
[2] *Id.*

TEXAS CIVIL RIGHTS PROJECT

The SAVE database was originally developed to assist government agencies in verifying the citizenship status of applicants for certain government benefits.[3] To that end, the database included information from sources relevant to immigration status, such as Alien Registration Numbers and Permanent Resident (Green) Card data.[4]

However, earlier this year, DHS expanded the SAVE database to include information unrelated to immigration and to permit bulk searches of existing data.[5] Soon after this expansion of the database's sources and capabilities, the White House began encouraging state governments to use the SAVE database for tasks beyond the scope of its original purpose, including verifying the citizenship of all registered voters and applicants.[6] Texas was among the earliest states to run its entire voting list through the expanded SAVE database.[7]

DHS did not seek public comment prior to its expanded use of the SAVE database. Instead, this SORN was filed after the commencement of a lawsuit by the League of Women Voters and the Electronic Privacy Information Center ("EPIC") alleging violations of the Administrative Procedure Act and the Privacy Act of 1974.[8]

The policies outlined in this SORN would formalize and further the unauthorized expansion of SAVE's sources, coverage, and use without implementing appropriate guidelines to ensure accuracy or privacy. This comment seeks to detail the harms already experienced by Texas voters as a result of Texas's use of the expanded SAVE database and illustrate the risks to democratic participation and data privacy that will result from further expansion.

---

[3] Yunior Rivas & Jim Saksa, *In Late, Obscure Notice, DHS Turbocharges Trump's Voter Purge Database, Evading Privacy Protections*, Democracy Docket (Oct. 30, 2025), https://www.democracydocket.com/news-alerts/in-late-obscure-notice-dhs-turbocharges-trumps-voter-purge-database-evading-privacy-protections

[4] American Immigration Council, *The Systematic Alien Verification for Entitlements (SAVE) Program: A Fact Sheet Research and Analysis*, (Dec. 15, 2011), https://www.americanimmigrationcouncil.org/report/systematic-alien-verification-entitlements-save-program-fact-sheet/.

[5] *Id.*

[6] Jim Saksa, *At Briefing, White House Urges States to Use DHS Databases to Check Citizenship for Voting*, Democracy Docket (Aug. 1, 2025), https://www.democracydocket.com/news-alerts/at-briefing-white-house-urges-states-to-use-dhs-databases-to-check-citizenship-for-voting/

[7] Press Release, Tex. Sec'y of St., Texas Completes Citizenship Verifications in the SAVE Database (Oct. 20, 2025), https://www.sos.state.tx.us/about/newsreleases/2025/102025.shtml

[8] *See* Class Action Complaint for Injunctive and Declaratory Relief, *League of Women Voters v. Dep't of Homeland Sec.*, No. 25-cv-3501 (D.D.C. Sept. 30, 2025)

**<u>Harms to Texas Voters Illustrate the Risks of an Expanded Use of the SAVE Database</u>**

Concerns about the accuracy and reliability of the SAVE database stretch back years. In 2017, the General Accounting Office released a report finding that "from fiscal year 2012 through fiscal year 2016, the majority of SAVE user agencies that received a SAVE response prompting them to institute additional verification did not complete the *required* additional steps to further verify the benefit applicant's immigration status."[9]

That same GAO report goes on to note that USCIS had a lack of controls in place to ensure that verification agencies actually conduct required additional verification,[10] and lacked effective processes to ensure or track if verification agencies are actually in compliance with their respective Memorandums of Agreement allowing them to access the SAVE database and outlining those agencies' responsibilities when using information obtained from the database.[11]

As a reminder, this report was issued while SAVE was being used in its originally intended manner, and not in the expansive manner detailed in the SORN. Yet despite such longstanding concerns, under the policies outlined in the SORN, the "routine uses" of the SAVE database would be greatly expanded to include "verification of registrants and registered voters in voter registration and voter list maintenance processes."[12] This problem is compounded by the fact that the SORN does not include any additional steps to ensure SAVE's accuracy or reliability as a voter verification tool. As we are already seeing in Texas, expanding the SAVE database beyond its intended purpose without implementing such protections poses a significant risk of voter disenfranchisement and disillusionment.

This SORN justifies the expanded use of the SAVE database by referencing debunked concerns about noncitizen voting.[13] In reality, noncitizen voting is vanishingly rare and the few cases that do occur are quickly addressed by existing state policies.[14] For example, the Heritage Foundation found a total of 99 documented cases of noncitizens voting *nationwide* between 2000 and 2025.[15] To put this into perspective, over the same time period over 938 million votes have been cast in Presidential elections alone.

---

[9] *GAO-17-204: Democracy Immigration Status Verification for Benefits: Actions Needed to Improve Effectiveness and Oversight* (2017), U.S. Gov't Accountability Off. 2 (Mar. 2017), https://www.gao.gov/assets/gao-17-204.pdf.
[10] *Id.* at 17.
[11] *Id*. at 44.
[12] Privacy Act of 1974; System of Records, 90 Fed. Reg. 48948, 48949 (Oct. 30, 2025)
[13] *Id.*
[14] Yunior Rivas, *States Investigated Noncitizen Voting. Big Surprise — The Results Don't Match the Right's Rhetoric.*, Democracy Docket (July 26, 2025), https://perma.cc/F6G2-TLHS.
[15] *Election Fraud Map*, The Heritage Found., https://perma.cc/65F4-AU8N (last visited Oct. 16, 2025).

TEXAS CIVIL RIGHTS PROJECT

Consistent with those national findings, the Texas Secretary of State announced in October that her office had run Texas's over 18.4 million registered voters through the SAVE database and identified "2,724 potential noncitizens," representing approximately 0.015% of total registrations.[16] Even that small percentage is highly inflated, due to the SAVE database's outdated or incomplete citizenship information, particularly for people who become naturalized citizens.[17] Those data errors are less significant when the SAVE database is used as intended to run single-person searches to verify eligibility for benefits, but in the context of verifying an entire state's voter roll, bulk searches result in a higher volume of errors.[18] In fact, DHS officials previously attempted to prevent states from using the SAVE database to check the citizenship of registered voters because the information is "incomplete and does not provide comprehensive data on all eligible voters."[19]

Now, Texans election officials are experiencing the effects of error-ridden voter verification firsthand. The 2,724 voters identified by the Secretary of State in October were referred to county election officials, who must conduct an independent investigation into the voters' eligibility.[20] Officials in some of Texas's largest counties have since confirmed that *at least* 25% of those flagged in the SAVE database *already provided proof of citizenship* when registering to vote.[21] As predicted, using the SAVE database as a voter verification tool requires these busy county officials to spend time addressing the exact type of errors that experts and former officials warned about in order to prevent voters from being erroneously stripped from the rolls.[22]

For those Texas voters who have not yet provided proof of citizenship, those inaccuracies can translate into real harm. Voters flagged in the SAVE database are mailed a notice and must

---

[16] Press Release, Tex. Sec'y of St., *supra* note 7.
[17] Jen Fifield, *Details of DHS Agreement Reveal Risks of Trump Administration's Use of Social Security Data for Voter Citizenship Checks*, ProPublica (Oct. 30, 2025), https://www.propublica.org/article/dhs-social-security-data-voter-citizenship-trump; *also* Jasleen Singh & Spencer Reynolds, Homeland Security's "SAVE" Program Exacerbates Risks to Voters, Brennan Ctr. for Just. (July 21, 2025), https://www.brennancenter.org/our-work/research-reports/homeland-securitys-save-program-exacerbates-risks-voters (detailing concerns that one of SAVE's data sources – U.S. Customs and Border Protection's Automated Targeting System – is "biased against certain religious, racial, and ethnic minorities").
[18] *See* Fifield, *supra* note 17.
[19] *Feds OK Fla. Access to Citizens List*, NBC Miami (July 15, 2012), https://www.nbcmiami.com/news/local/feds-ok-fla-access-to-citizens-list/1900495/.
[20] Press Release, Tex. Sec'y of St., *supra* note 7.
[21] Jim Saksa, *Trump's Voter Citizenship Database Is 'Flawed' and Could Lead to Disenfranchisement, Election Administrator Warns*, Democracy Docket (Oct. 30, 2025), https://www.democracydocket.com/news-alerts/trumps-voter-citizenship-database-is-flawed-and-could-lead-to-disenfranchisement-election-administrator-warns/.
[22] *See* Fifield, *supra* note 17 (noting the former Social Security Administration commissioner's predictions that DHS officials would struggle to accurately flag noncitizens using the available data).

provide county officials with proof of citizenship within 30 days.[23] This is a significant barrier for the 9.1% of American citizens of voting age who cannot readily access a document proving citizenship.[24] For those 21.3 million people, a disproportionate number of whom are people of color, an inaccurate flag from a database that is ill-suited to this purpose is enough to result in the cancellation of their voter registration.[25] County officials have criticized this process, expressing discomfort over "blindly canceling voters without really knowing how names have shown up on the SAVE database."[26] While a cancelled registration can be reinstated at the polls or an elections office, this creates another barrier in Texas' already outdated voter registration process.[27]

A September 2024 survey commissioned by the University of Maryland's Center for Democracy and Civic Engagement and the non-partisan voting rights organization VoteRiders found that approximately 1% of Texans who are U.S. citizens of voting age do not have documents that would prove their citizenship, while another 6% do not have easy access to those documents.[28] That amounts to approximately 1.3 million Texans who are US citizens of voting age that either would not be able to prove their citizenship, or would have great difficulty in doing so. To put this into perspective, that is 472 times the number of potential noncitizens the Texas SOS's use of the SAVE database flagged.

While Texas voters are already feeling these effects, under the policies outlined in this SORN, the same harms are likely to occur across the nation. Even in places with more accessible voter registration processes, these kinds of errors undermine the democratic process. As well as wasting local election officials' resources, sending cancellation notices to voters often results in voter intimidation that dampens democratic participation.[29] This risk is especially salient when states pursue criminal penalties based on SAVE's potentially inaccurate information.[30] Finally,

---

[23] Tex. Elec. Code § 16.033(b)-(d)

[24] Press Release, Brennan Ctr. for Just., 21.3 Million American Citizens of Voting Age Don't Have Ready Access to Citizenship Documents (June 11, 2024), https://perma.cc/H8QE-H787.

[25] *Id.*

[26] Natalia Contreras, *Texas counties look into 'potential noncitizens' on voter rolls. Here's what they're finding*, VoteBeat (Oct. 31, 2025), https://www.votebeat.org/texas/2025/10/31/county-election-officials-investigate-potential-noncitizens-flagged-save-database/

[27] Natalia Contreras, *With Texas' paper-based voter registration system, applications get lost in the shuffle*, VoteBeat (Oct. 28, 2024), https://www.votebeat.org/texas/2024/10/28/voter-registration-problems-dps-paper-forms/

[28] Jillian Andres Rothschild et. al, *Who Lacks ID in Texas Today?: An Exploration of Voter ID Access, Barriers, and Knowledge*, Univ. of Md. Ctr. for Democracy and Civic Engagement 5 (Sept. 2024), https://cdce.umd.edu/sites/cdce.umd.edu/files/Voter%20ID%20Report%20Texas.pdf.

[29] Saksa, *Trump's Voter Citizenship Database Is 'Flawed', supra* note 21 ("I am worried that sending out this notice will deter eligible voters from providing the required proof of citizenship and/or from voting").

[30] *See* Natalia Contreras, *Texas secretary of state refers 33 potential noncitizen voters for criminal investigation*, Tex. Trib. (June 5, 2025), https://www.texastribune.org/2025/06/05/texas-secretary-state-noncitizen-voters-investigation/.

states erroneously claiming that large numbers of noncitizens have registered to vote or voted can fuel misinformation and diminish trust in elections.[31]

In Texas, we have seen first hand how policies driven by inaccurate data and disproven claims of widespread noncitizen voting played out before. In 2019, former Texas Secretary of State, David Whitley, initiated a review of our state's voter rolls that incorrectly flagged at least 25,000 citizens as being ineligible to vote, with many of those flagged being naturalized citizens. This attempted voter purge was handled so poorly that it led to multiple lawsuits, a settlement requiring the Secretary of State to stop the purge and update rolls with more up-to-date information, and Mr. Whitley resigning from office.[32]

The nation should take note of that experience and not make the same mistakes again. Texas voters were among the first to be impacted by this improper use of the SAVE database, and we should be among the last. The use of the SAVE database as a voter verification tool does nothing to protect elections, wastes government resources, and risks disenfranchising voters across the nation.

**<u>Further Expansion of the SAVE Database Creates Data Security and Privacy Risks</u>**

The policies outlined in this SORN will also expand the ambit of the SAVE database to include Social Security numbers, passport numbers, and drivers license numbers from millions of American-born citizens who have never interacted with the immigration system.[33] In addition, as of September 2025, over 33 million voters' data had already been run through SAVE, despite no information about how that data is used.[34] This massive influx of sensitive personal information creates significant data security and privacy concerns with no particular benefit.[35]

This SORN claims that the inclusion of Social Security numbers in the SAVE database will increase its utility as a tool to verify voters' citizenship status.[36] As discussed above, the problem of noncitizen voting is near-nonexistent and the SAVE database does more to burden election

---

[31] Singh & Reynolds, *supra* note 17; *See, e.g.*, Vianna Davila et al., *Gov. Greg Abbott boasted that Texas removed 6,500 noncitizens from its voter rolls. That number was likely inflated.*, VOTEBEAT (OCT. 15, 2024), https://www.votebeat.org/texas/2024/10/15/greg-abbott-noncitizen-voter-roll-removal-investigation/.

[32] Alexa Ura, *Texas Secretary of State David Whitley Departs as Legislative Session Ends*, TEX. TRIB. (May 27, 2019), https://perma.cc/X59B-FFHU.

[33] Privacy Act of 1974; System of Records, 90 Fed. Reg. 48948, 48950–51 (Oct. 30, 2025)

[34] Jude Joffe-Block & Miles Parks, *33 million voters have been run through a Trump administration citizenship check*, NPR (Sept. 11, 2025), https://www.npr.org/2025/09/10/nx-s1-5477367/save-election-citizenship-data-trump ("USCIS did not respond to NPR's questions about what happens to the data states upload and who has access to it.").

[35] *See* Singh & Reynolds, *supra* note 17.

[36] Privacy Act of 1974; System of Records, 90 Fed. Reg. 48948, 48951 (Oct. 30, 2025)

TEXAS CIVIL RIGHTS PROJECT

officials than to protect elections. In addition, Social Security data does not provide a complete picture of citizenship, particularly when it comes to naturalized citizens.[37] Once a person completes their naturalization ceremony, they must either consent to allowing USCIS to transmit their information to the Social Security Administration which may take up to ten days to be processed, or they must contact the Social Security Administration to inform the agency of their naturalization on their own.[38]

If they did not understand that requirement, were unable to follow those rules, or simply forgot to contact the Social Security Administration to update their citizenship status, then they would likely be flagged by SAVE even though they are now a U.S. citizen.

In addition, the expansion of SAVE database sources is especially risky at the current moment, with cybercriminals increasingly targeting state and local governments and federal agencies withholding cybersecurity funding.[39] Over 115,000 Texans experienced this kind of breach in December 2022, when their "names, addresses, Social Security numbers, driver's license numbers, and government-issued ID numbers" were leaked due to a data breach at the Texas Department of Public Safety.[40] Experts warn that expanding the SAVE database will result in more opportunities for bad actors to access sensitive personal information in similar leaks.[41]

The policies in this SORN create a vast and unguarded reservoir of Americans' personal data, while failing to address the resulting privacy and security risks. Given the limited utility of the extra data in assessing voter eligibility, there is no reason to take on this risk.

**Conclusion**

This SORN formalizes an unjustified and harmful expansion of the SAVE database in all directions. As we are currently seeing in Texas, SAVE is already stretched too far beyond its intended purpose. The cracks are starting to show, and it will be voters who end up slipping through them. It would be best to return SAVE to its intended purpose and use other verification tools that are more accurate and pose fewer dangers to the privacy rights of the American public.

---

[37] Singh & Reynolds, *supra* note 17.

[38] U.S. Citizenship and Imm. Servs., M-767, Important Information for New Citizens (2024), https://www.uscis.gov/sites/default/files/document/flyers/M-767.pdf.

[39] Lawrence Norden, *How the Federal Government Is Undermining Election Security*, Brennan Ctr. for Just. (Apr. 14, 2025), https://www.brennancenter.org/our-work/research-reports/how-federal-government-undermining-election-security.

[40] Penelope Rivera, *Personal information leaked for more than 115,000 Texans in DPS data breach*, KERA News (Oct. 15, 2024), https://www.keranews.org/government/2024-10-15/personal-information-for-more-than-115-000-texans-leaked-in-dps-data-breach.

[41] Fifield, *supra* note 17.

TEXAS CIVIL RIGHTS PROJECT

For all of the reasons listed above, TCRP strongly urges a rejection of the expanded use of SAVE as a voter verification tool as detailed in this SORN.

Sincerely,

| | |
|---|---|
| Carl Blair | Miranda van Dijk |
| Senior Election Protection Attorney | Voting Rights Legal Fellow |