**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LEAGUE OF WOMEN VOTERS, *et al.,*

      Plaintiffs,

      v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

      Defendants.

Case No. 25-cv-3501-SLS

**PLAINTIFFS' OPPOSITION TO INTERVENOR-DEFENDANT TEXAS'S MOTION TO
DISMISS FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

**TABLE OF CONTENTS**

Table of Authorities....................................................................................................................... iii

Introduction........................................................................................................................................1

Legal Standard ..................................................................................................................................1

Argument ...........................................................................................................................................2

I.      Texas's motion improperly makes new and incorrect factual assertions beyond the
        pleadings. ............................................................................................................................ 2

II.     Plaintiffs plausibly allege standing. ................................................................................. 3

        A.      LWVTX and LWVLA plausibly allege organizational standing. ...............................3

        B.      Plaintiffs have also plausibly alleged their associational standing. .............................4

                1.      Plaintiffs have specifically identified members with standing. .......................... 4

                2.      Plaintiffs' members have cognizable privacy injuries. ...................................... 7

                3.      Plaintiffs' members have cognizable reputational injuries. ............................... 9

                4.      Plaintiffs' members have cognizable voting-related injuries that are
                        caused by overhauled SAVE and are redressable by this Court. ........................ 9

        C.      Plaintiffs have shown injuries traceable to SAVE's new bulk-upload capability
                that their requested relief would redress. ...................................................................12

        D.      EPIC has informational and procedural standing to seek relief for violations of
                the Privacy Act's matching program requirements. ......................................................13

III.    Plaintiffs plausibly state their claims and are entitled to summary judgment. ................. 13

        A.      Plaintiffs challenge final agency action. ....................................................................13

        B.      The SAVE overhaul lacks statutory authorization and affirmatively violates
                the Social Security Act. .............................................................................................14

                1.      The Immigration Reform Control Act of 1986 does not authorize the
                        SAVE overhaul.................................................................................................. 15

                2.      The Illegal Immigration Reform and Immigrant Responsibility Act of
                        1996 does not authorize the SAVE overhaul. ..................................................... 15

                3.      The major questions doctrine confirms that the SAVE overhaul lacks
                        statutory authorization. ..................................................................................... 16

i

4.    Defendants' unauthorized disclosures violate the Social Security Act. ............. 17

C.    The SAVE overhaul violates the separation of powers. ...............................................17

D.    The SAVE overhaul was contrary to the Privacy Act. ..................................................18

1.    Plaintiffs have an APA remedy for the Privacy Act violations alleged in Counts 4, 5, and 7. ............................................................................................ 18

2.    The SAVE overhaul was contrary to the Privacy Act's substantive restrictions. ....................................................................................................... 19

3.    Plaintiffs' notice-and-comment claim is not moot, and Defendants have conceded Plaintiffs' merits arguments. ................................................................ 20

4.    Defendants failed to comply with the Privacy Act's requirements for computer matching programs. ............................................................................ 20

E.    The SAVE overhaul was arbitrary and capricious. .....................................................21

IV.    Plaintiffs seek appropriate relief. ...................................................................................... 22

Conclusion ...............................................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*AFL-CIO v. Dep't of Lab.*,
  778 F. Supp. 3d 56 (D.D.C. 2025) ...................................................................18

*AFL-CIO v. Dep't of Lab.*,
  No. 25-339, 2026 WL 879518 (D.D.C. Mar. 31, 2026)............................................8

*AFSCME v. SSA*,
  172 F.4th 361 (4th Cir. 2026)...............................................................6, 8

*Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*,
  642 F.3d 1137 (D.C. Cir. 2011)...............................................................1, 2

*America First Legal Found. v. Greer*,
  153 F.4th 1311 (D.C. Cir. 2025)...............................................................13

*American Federation of Teachers v. Bessent*,
  152 F.4th 162 (4th Cir. 2025)...............................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................1

*Bennett v. Spear*,
  520 U.S. 154 (1997).......................................................................14

*Cell Assocs., Inc. v. NIH*,
  579 F.2d 1155 (9th Cir. 1978) ...........................................................18

*Chamber of Com. of U.S. v. EPA*,
  642 F.3d 192 (D.C. Cir. 2011)...........................................................4

*Cisneros v. Alpine Ridge Grp.*,
  508 U.S. 10 (1993).......................................................................16

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).......................................................................7, 10

*Cohen v. Bd. of Trs. of the Univ. of D.C.*,
  819 F.3d 476 (D.C. Cir. 2016) ...........................................................2

*Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*,
  585 F. Supp. 3d 63 (D.D.C. 2022), *aff'd*, 77 F.4th 679 (D.C. Cir. 2023) ...................................3

*Ctr. for Taxpayer Rts. v. IRS*,
  815 F. Supp. 3d 1 (D.D.C. 2025) ...........................................................8

*D.C. Fed'n of Civic Ass'ns, Inc. v. Volpe*,
434 F.2d 436 (D.C. Cir. 1970) ............................................................................16

*Davis v. FEC*,
554 U.S. 724 (2008)..............................................................................................5

*Dep't of Com. v. New York*,
588 U.S. 752 (2019)............................................................................................10

*Diamond Alt. Energy, LLC v. EPA*,
606 U.S. 100 (2025)......................................................................................10, 11

*Doe v. Stephens*,
851 F.2d 1457 (D.C. Cir. 1988) ..........................................................................18

*Equal Rts. Ctr. v. Uber Techs.*, Inc.,
525 F. Supp. 3d 62 (D.D.C. 2021) ......................................................................1, 2

*FCC v. Consumers' Rsch.*,
606 U.S. 656 (2025)............................................................................................17

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024)..............................................................................................3

*Garcia v. Vilsack*,
563 F.3d 519 (D.C. Cir. 2009) ............................................................................19

*Herbert v. Nat'l Acad. of Scis.*,
974 F.2d 192 (D.C. Cir. 1992) ..............................................................................2

*Jeffries v. Volume Servs. Am.*,
928 F.3d 1059 (D.C. Cir. 2019) ............................................................................8

*Judge Rotenberg Educ. Ctr., Inc. v. FDA*,
3 F.4th 390 (D.C. Cir. 2021) ..............................................................................14

*Kuehl v. Sellner*,
887 F.3d 845 (8th Cir. 2018)................................................................................5

*Larson v. Valente*,
456 U.S. 228 (1982).............................................................................................11

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
No. 25-0946, No. 25-0952, No. 25-0955, 2026 WL 252420 (D.D.C. Jan. 30, 2026) .....8, 17, 18

*League of Women Voters of the United States v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ..................................................................................7

*League of Women Voters v. DHS*,
No. 25-3501, 2025 WL 3198970 (D.D.C. Nov. 7, 2025).............................................................6

*Make the Road N.Y. v. Noem*,
No. 25-5320, 2025 WL 3563313 (D.C. Cir. 2025) ................................................................22

*Mass. v. EPA*,
549 U.S. 497 (2007).............................................................................................................11, 12

*Sparrow v. United Air Lines, Inc.*,
216 F.3d 1111 (D.C. Cir. 2000) ...............................................................................................1

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).............................................................................................................6, 7

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)..............................................................................................................22

*United States v. Gaubert*,
499 U.S. 315 (1991)................................................................................................................2

*Venetian Casino Resort, LLC v. EEOC*,
530 F.3d 925 (D.C. Cir. 2008) ..............................................................................................14

**Statutes**

42 U.S.C. § 1306...........................................................................................................................17

42 U.S.C. § 1373...........................................................................................................................17

42 U.S.C. § 405.............................................................................................................................17

5 U.S.C. § 552.........................................................................................................................19, 20

5 U.S.C. § 553..............................................................................................................................21

52 U.S.C. § 21083........................................................................................................................12

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, ("IIRIRA"), Pub.
L. No. 104-208, 110 Stat. 3009 (1996) .......................................................................14

Immigration Reform Control Act of 1986 ("IRCA"), Pub. L. No. 99-603, title I,
§121(c)(1), 100 Stat. 3359 (1986)......................................................................................14

**Other Authorities**

*Relationship Between Illegal Immigr. Reform & Immigrant Resp. Act of 1996 & Statutory
Requirement for Confidentiality of Census Info.*, 1999 WL 34995963 (O.L.C. May 18,
1999) (Acting Ass't Att'y Gen. Randolph D. Moss) ................................................16

**INTRODUCTION**

After securing intervention in this case on the ground that the Federal Defendants do not "adequately represent" their interests, *see* ECF 43 at 8, the State of Texas proceeded to file a motion to dismiss that almost entirely duplicates the Federal Defendants' dispositive motion. *Compare* ECF 97 *with* ECF 78. Texas brings a handful of new factual assertions to the Court but all are procedurally impermissible at the motion to dismiss stage and many are factually incorrect. Texas's legal arguments largely mirror those made by the Federal Defendants. Texas only puts forward new arguments relating to standing of the League of Women Voters (*see infra* Section II.B.1), the causation and redressability of Plaintiffs' voting-related injuries (*see infra* Section II.B.4), and state obligations under the Help America Vote Act ("HAVA") (*see infra* Section II.B.4), none of which are persuasive.

For the sake of judicial efficiency and in light of the significant overlap with arguments of the Federal Defendants to which Plaintiffs have already responded, Plaintiffs incorporate by reference their Combined Reply in Support of their Motion for Summary Judgment and Opposition to [Federal] Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF 99 ("Pls.' Reply & Opp'n"), as detailed with further specificity below.

**LEGAL STANDARD**

A complaint will survive a motion under Rule 12(b)(6) if it pleads sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff is given "the benefit of all inferences that can be derived from the facts alleged[.]" *Equal Rts. Ctr. v. Uber Techs.*, Inc., 525 F. Supp. 3d 62, 72 (D.D.C. 2021) (citing *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). In assessing a dispositive motion under Rule 12(b)(1), the court is required to "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (cleaned up).

1

## ARGUMENT

**I.    Texas's motion improperly makes new and incorrect factual assertions beyond the pleadings.**

Texas moved to dismiss Plaintiffs' First Amended and Supplemental Complaint ("FAC"), ECF 61, under Rules 12(b)(1) and 12(b)(6). *See* State of Texas's Motion to Dismiss Plaintiffs' First Amended and Supplemental Complaint at 8-9, ECF 97 ("Tex. Mot."). While the court "may consider materials outside the pleadings in deciding whether to grant a [12(b)(1)] motion," it "must still 'accept all of the factual allegations in [the] complaint as true.'" *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005) (first quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992), then quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)). And "[u]nlike Rule 12(b)(1), Rule 12(b)(6) 'places th[e] burden on the moving party' to show that the complaint is legally insufficient." *Equal Rts. Ctr. v. Uber Techs.*, Inc., 525 F. Supp. 3d 62, 72 (D.D.C. 2021) (quoting *Cohen v. Bd. of Trs. of the Univ. of D.C.*, 819 F.3d 476, 481 (D.C. Cir. 2016)). A court assessing the merits of a 12(b)(6) motion "is limited to a review of the four corners of the complaint." *Id.* Here, Texas disregards these standards (a) by refusing to "accept all of the factual allegations" in the FAC as true, and (b) introducing new information outside of "the four corners of the complaint." *See id.*

Texas's retelling of its overhauled SAVE usage is contradicted by its earlier briefing and a declaration it filed in this case. Texas has not "used SAVE for voter-list maintenance for years," Tex. Mot. at 6, but rather began using it fourteen months ago when the Texas Secretary of State first signed a Memorandum of Agreement with USCIS in March 2025. Tex. Intervention Mot. at 6 (citing Ex. 1 at ¶¶ 6-7), ECF 43. As Texas's own declarant attested in an October 2025 declaration, "[t]he Texas Secretary of State did not gain access to the SAVE system before this year because the system previously required users to enter identifying information—namely, an alien registration number—that the Texas Secretary of State did not maintain." Worrell Adkins Decl. ¶ 7, ECF 43-2. Similarly, Texas's strange assertion that "[f]or States, SAVE is not optional," Tex. Mot. at 6, is belied by the fact that Texas only began using SAVE in March 2025, almost

fifteen years after some states started using SAVE in 2009 for voter list maintenance. *See* Pls.' Mem. at 4-5. Even now, the Director of Elections for the Texas Secretary of State describes SAVE as "another effective tool to use in fulfilling its obligations to maintain clean, up-to-date voter registration rolls," Worrell Adkins Decl. ¶ 11, not a required tool. While list maintenance is required under the National Voter Registration Act and the Help America Vote Act, the use of SAVE itself is not. The Federal Defendants also do not contend that "SAVE is not optional." *Compare* Tex. Mot. at 6 *with* Defendants' Combined Memorandum of Law in Support of their Motion to Dismiss (or, in the Alternative for Summary Judgment) and in Opposition to Plaintiffs' Motion for Summary Judgment at 6, ECF 78 ("Fed. Defs.' Mem.").

## II.    Plaintiffs plausibly allege standing.

Texas challenges Plaintiffs' standing by repeating the Federal Defendants' arguments but adding in misquotations and misstatements of the law. As shown by Plaintiffs' previous responses to these same arguments, Plaintiffs' complaint clearly alleges that they have standing for each of their claims, *see* FAC ¶¶ 157-67, 183-85 (privacy and reputational injuries); ¶¶ 168-70 (voting-related injuries); ¶¶ 171-82 (organizational injuries); ¶¶ 186-95 (procedural and informational injuries), and their unrebutted evidence demonstrates the same. *See* Pls.' Reply & Opp'n at 1-21; *see also* Memorandum in Support of Plaintiffs' Motion for Summary Judgment at 13-25, ECF 66-1 ("Pls.' Mem.").[1]

### A.    LWVTX and LWVLA plausibly allege organizational standing.

Like Federal Defendants, Texas asserts that LWVTX and LWVLA[2] cannot show organizational standing under the Supreme Court's decision in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ("*AHM*"). *See* Tex. Mot. at 17-18; Fed. Defs.' Mem. at 29-30.

---

[1] In ruling on Texas's Rule 12(b)(1) motion, "the Court may look to . . . declarations or affidavits provided by . . . [P]laintiff[s] to support standing." *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 70 (D.D.C. 2022), *aff'd*, 77 F.4th 679 (D.C. Cir. 2023).

[2] Although Texas also argues that LWVVA lacks organizational standing, Plaintiffs do not assert that LWVVA has organizational standing so this argument is irrelevant. Pls.' Reply & Opp. at 2; *see* Pls.' Mem. at 13, 20-22.

3

Making the same arguments as Federal Defendants, Texas unpersuasively attempts to differentiate the facts of *Havens* from the facts supporting the standing of LWVTX and LWVLA. *See* Tex. Mot. at 18 ("Unlike the fair-housing organization in *Havens*, [. . .] none of the Plaintiffs here is 'requesting (or receiving) any information (accurate or inaccurate) from the Defendants.'" (quoting but not citing Fed. Defs.' Mem. at 30)); Fed. Defs.' Mem. at 30 ("Unlike in *Havens*, none of the Plaintiff organizations here are requesting (or receiving) any information (accurate or inaccurate) from the Defendants."); *see also* Tex. Mot. at 18 ("The factual coincidence that *Havens* involved 'inaccurate information' in a general sense 'has no bearing on the viability of the legal theory of Article III standing that *[AHM]* rejected.'" (quoting but not citing Fed. Defs.' Mem. at 30)); Fed. Defs.' Mem. at 30 ("[T]he factual coincidence that *Havens* happened to be a case (at least, at a very high level of generality) about inaccurate information has no bearing on the viability of the legal theory of Article III standing that *[AHM]* rejected.").

Plaintiffs incorporate by reference Section I.A of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 2-3. Courts have routinely found that voter-services organizations like LWVTX and LWVLA have standing to challenge conduct that directly impairs mission-critical functions, including in cases after *AHM*. *See* Pls.' Mem. at 20-22 (citing cases). Plaintiffs' complaint has plausibly alleged that overhauled SAVE has disrupted LWVTX's and LWVLA's direct services to voters and caused them to expend resources to counteract that harm and, therefore, that they have organizational standing. *See* FAC ¶¶ 171-82

**B.      Plaintiffs have also plausibly alleged their associational standing.**

**1.      Plaintiffs have specifically identified members with standing.**

Recycling Federal Defendants' arguments, Texas wrongly asserts that Plaintiffs have failed to "specifically identify members who have suffered the requisite harm." *See* Tex. Mot. at 10 (citing *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011)); Fed. Defs.' Mem. at 11 (same). Plaintiffs incorporate by reference Section I.B.1 of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 4-6. Plaintiffs' complaint details the privacy, reputational, and voting-related injuries caused by the overhauled SAVE. *See* FAC ¶¶ 157-70. Moreover,

Plaintiffs submitted declarations from members of each organization recounting their injuries. *See* Pls.' Mem at 14-19 (citing declarations of four LWVTX members, two EPIC members, one LWVLA member, and one LWVVA member); Pls.' Index of Declarations, ECF 66-2.

**LWVTX.** Despite LWVTX submitting declarations from four members, Texas joins the Federal Defendants in arguing that LWVTX must also show that they were members *at the time of the alleged injury*. Just like the Federal Defendants, Texas cites no case for that made-up requirement, *see* Tex. Mot. at 12; Fed. Defs.' Mem. at 13; nor does Texas address the settled rule that the standing inquiry focuses on whether a plaintiff was injured *at the time the operative complaint was filed*. *See Davis v. FEC*, 554 U.S. 724, 734 (2008); *see also Kuehl v. Sellner*, 887 F.3d 845, 851 (8th Cir. 2018) (rejecting argument that association needed to prove "individual plaintiffs were members" at the time they incurred injuries and finding associational standing where injured member "became a member . . . before trial" and "the injury she suffered *at the time the complaint was filed* was ongoing" (emphasis added)). Plaintiffs' complaint plausibly alleges that LWVTX has members–including one who was identified by name in the complaint–who have had their personal information uploaded into overhauled SAVE, and that this upload has caused them privacy and voting-related injuries. *See* FAC ¶¶ 164-65, 170. The four declarations from LWVTX members make these allegations with even more specificity, and Defendants have offered no evidence to the contrary. *See* Pls.' Reply & Opp'n at 4-5. Additionally, Texas erroneously cites *AHM* for the proposition that "[t]his Court should not extend associational standing to permit 'lawsuit-by-recruitment,'" *see* Tex. Mot. at 12, but the quoted language actually comes from the Federal Defendants' brief, *see* Fed. Defs.' Mem. at 13, and does not appear in *AHM*.

**LWVLA and LWVVA.** Both the Federal Defendants and Texas argue that LWVVA and LWVLA's declarations cannot support associational standing because they do not demonstrate any voting-related injuries. First, Texas purports to quote this Court's earlier Order for the proposition that these declarations were "'insufficient' then, and they remain so now," but the "insufficient" language is from the Federal Defendants' brief and not the Court's Order. *Compare* Tex. Mot. at

11 *with* Fed. Defs.' Mem. at 12.[3] Second, as Plaintiffs noted in their Combined Reply and Opposition, those declarations offer support for *privacy* injuries, not *voting-related* injuries. *See* Pls.' Reply & Opp'n at 5-6; J. Doe 4 Supp. Decl. ¶¶ 8-12, ECF 16-3 (LWVLA member); J. Doe 6 Decl. ¶¶ 9-13, ECF 16-8 (LWVVA member). And, for the reasons explained in Sections I.B.2-I.B.3 below, these members have attested to facts sufficient to plausibly allege standing on the basis of these privacy injuries.[4]

**LWV.** Texas argues without support that the national League of Women Voters has no basis to sue because they have not identified a "distinct member." Tex. Mot. at 11. This argument is unfounded, relying on a misquotation of the law and ignoring facts and binding caselaw about the League's membership structure.

To start, Texas misquotes *TransUnion* to say "'*associational* standing is not dispensed in gross' among a parent organization and its affiliates" *Id.* at 11 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)) (emphasis added). But *TransUnion* does not say "associational" or concern associational standing, and the misquoted sentence goes on to explain that standing for one claim and form of relief does not grant standing for every claim—nothing related to the standing of a parent organization and its affiliates. As Plaintiffs pleaded in their FAC

---

[3] Texas's Motion to Dismiss contains numerous instances where quoted language is not properly attributed to the Federal Defendants' brief, and sometimes, as here, the language is misattributed to cases or statutes. Plaintiffs endeavor to note when this occurs. For instance, Texas misquotes this Court's earlier Memorandum Opinion as saying that Plaintiffs' pseudonymous declarations were "insufficient" to identify an individual who has experienced the alleged injury. Tex. Mot. at 11. However, the only time that Opinion uses "insufficient" is regarding the standard for procedural injuries and irreparable harm. *See League of Women Voters v. DHS*, No. 25-3501, 2025 WL 3198970, at *6 (D.D.C. Nov. 7, 2025) ("[A] 'procedural injury' such as being denied notice and comment 'alone is insufficient to support a finding of irreparable harm.'" (quoting ECF 16-1)). Federal Defendants, however, do characterize Plaintiffs' declarations as "insufficient." *See* Fed. Defs. Mem. at 12.

[4] Here, Texas relies on *American Federation of Teachers v. Bessent*, 152 F.4th 162 (4th Cir. 2025) ("*AFT*"). Tex. Mot. at 11-12. But that decision was recently abrogated by the en banc Fourth Circuit. *See Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. SSA*, 172 F.4th 361, 369 (4th Cir. 2026) ("*AFSCME*") (en banc) ("Whether plaintiffs 'would prevail in a lawsuit for common law invasion of privacy is irrelevant.' Instead, it is enough that the injury plaintiffs have identified 'pose[s] the same kind of harm that common law courts recognize.'" (cleaned up)).

and offered multiple declarations to support, members of the state Leagues are also members of the national League. *See* FAC ¶ 158; Stewart Decl. ¶ 6, ECF 16-5; Supp. Stewart Decl. ¶ 10, ECF 66-9. The D.C. Circuit agrees. In *League of Women Voters of the United States v. Newby*, when considering whether state and national leagues had standing when the impacted work was being carried out by local affiliates, the court held that for "the League of Women Voters of the United States, local leagues are a unit of organization within the larger group, rather than separate entities that operate independently." 838 F.3d 1, 9 (D.C. Cir. 2016) (cleaned up). For standing purposes, "the national, state, and local Leagues are interdependent and inextricably linked." *Id.*

### 2.    Plaintiffs' members have cognizable privacy injuries.

Like the Federal Defendants, Texas argues that Plaintiffs' privacy injuries do not support standing because they are too speculative and not certainly impending. *See* Tex. Mot. at 13; Fed. Defs.' Mem. at 15. Plaintiffs incorporate by reference Section I.B.2 of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 6-7. Plaintiffs' complaint plausibly alleges that their members have suffered violations of their privacy rights. *See* FAC ¶¶ 157-67, 183-85. Additionally, Plaintiffs have provided undisputed evidence of these privacy injuries. *See* Nel Decl. ¶¶ 27-33, ECF 66-3; A. Doe Decl. ¶¶ 18, 23-24, ECF 66-4; B. Doe Decl. ¶¶ 32-38, ECF 66-5; C. Doe Decl. ¶¶ 19-25, ECF 66-6; Kisselburgh Decl. ¶¶ 13-15, ECF 66-11; Green Supp. Decl. ¶¶ 8, 45-46, 48-50, ECF 66-8; J. Doe 4 Supp. Decl. ¶¶ 8-12, ECF 16-3; J. Doe 6 Decl. ¶¶ 9-13, ECF 16-8. These privacy injuries are analogous to the historical, privacy-related torts of intrusion upon seclusion and breach of confidence, and are therefore sufficiently concrete to satisfy Article III. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Moreover, the injuries alleged are violations of members' statutory privacy rights that already occurred and are likely to continue in the future—not possible future harm that could flow from a privacy violation. *See* Pls.' Reply & Opp'n at 6-7. Therefore, the injuries are concrete and imminent enough under *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

7

**Intrusion upon seclusion.** Parroting Federal Defendants, Texas argues that intra-governmental data sharing is not offensive or irritating enough to rise to the level of intrusion upon seclusion. Texas appears to quote 8 U.S.C. § 1373 for the proposition that USCIS is "simply using federal-government information to carry out its legal responsibilities under federal law." Tex. Mot. at 14. But this language comes from the Federal Defendants' brief, not 8 U.S.C. § 1373. *See* Fed. Defs.' Mem. at 18 ("Here, the federal government is simply using federal-government information to carry out its legal responsibilities under federal law. *See* 8 U.S.C. § 1373.").

Texas relies heavily on *AFT*, 152 F.4th 162, but ignores *AFSCME v. SSA.*, 172 F.4th 361 (4th Cir. 2026) (en banc), which abrogated *AFT* and held that unlawful intra-government transfers of personal data *do*, in fact, inflict harm analogous to intrusion upon seclusion that are sufficient to establish standing. *See AFSCME*, 172 F.4th at 368-69; *see also AFL-CIO v. Dep't of Lab.*, No. 25-339, 2026 WL 879518, at *10 (D.D.C. Mar. 31, 2026) (collecting cases). As Plaintiffs have plausibly alleged, and as the case law amply supports, when a privacy statute is violated and sensitive information changes hands, a concrete harm occurs. *See* FAC ¶¶ 157-62, 183; Pls.' Reply & Opp'n at 6-7.

**Breach of confidence.** Texas restates Federal Defendants' arguments about whether breach of confidence has a sufficient historical origin to underpin standing and, even if it does, whether the facts here are sufficiently analogous to that tort. *See* Tex. Mot. at 14-15; Fed. Defs.' Mem. at 20-21. First, the D.C. Circuit has long recognized breach of confidence as a privacy tort. *See* Pls.' Reply & Opp'n at 7 (citing *Jeffries v. Volume Servs. Am.*, 928 F.3d 1059, 1064-65 (D.C. Cir. 2019)). Second, SSA's betrayal of trust in disclosing this information to DHS and SAVE users closely matches the type of injury addressed by the breach of confidence tort. *See* FAC ¶¶ 157-62, 183; Pls.' Mem. at 15-16 (first citing *Jeffries*, 928 F.3d at 1064; then citing *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. 25-0946, No. 25-0952, No. 25-0955, 2026 WL 252420, at *51 (D.D.C. Jan. 30, 2026) ("*LULAC II*"); and then citing *Ctr. for Taxpayer Rts. v. IRS*, 815 F. Supp. 3d 1, 35-37 (D.D.C. 2025)).

### 3. Plaintiffs' members have cognizable reputational injuries.

Texas also repeats some of the Federal Defendants' arguments about defamation, asserting that Plaintiffs do not have cognizable reputational injuries because DHS is not publishing Plaintiffs' names, being labeled a non-citizen is not offensive enough, and, even if these injuries could be analogized to defamation, such harm does not warrant prospective injunctive relief. *See* Tex. Mot. at 15; Fed. Defs.' Mem. at 21-23.

Plaintiffs incorporate by reference Section I.B.3 of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 8. Texas's argument is wrong for the same reason as Federal Defendants': the overhauled SAVE *is* publishing false and incomplete information about Plaintiffs to user agencies, the degree of offensiveness does not matter for the purposes of establishing standing (though this misinformation is highly offensive to Plaintiffs), and it is plausibly alleged that SAVE will continue to publish the same misinformation about them. *See* FAC ¶¶ 163-64, 184; *see also* Pls.' Reply & Opp'n at 8. Therefore, the injuries from these statutory violations are analogous to the kind of harm vindicated by the tort of defamation.

### 4. Plaintiffs' members have cognizable voting-related injuries that are caused by overhauled SAVE and are redressable by this Court.

Texas again borrows from the Federal Defendants, arguing that "Plaintiffs' voting-related injuries are speculative, not fairly traceable to the Federal Defendants, and not redressable in this suit." Tex. Mot. at 15; *see also* Fed. Defs.' Mem. at 23 (similar). But like the Federal Defendants, Texas does little to address Plaintiffs' plausible allegations that overhauled SAVE causes these concrete voting-related injuries, and vacating the overhaul would redress those harms. *See* FAC ¶¶ 168-70; Pls.' Reply & Opp'n at 8-16. Plaintiffs incorporate by reference Section I.B.4 of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 8-16.

At the outset, Texas seeks to dismiss the injuries of the four member declarants as a "tiny number" that "confirms that SAVE is working well, not poorly." Tex. Mot. at 16; *see also* Fed. Defs.' Mem. at 24-25. Texas's minimization of SAVE's misidentification and disenfranchisement of Plaintiffs' members misses the point of the standing analysis at the motion to dismiss stage—

Plaintiffs met their burden by identifying one injured member. *See* FAC ¶ 165; Pls' Reply & Opp'n at 11. Moreover, there is unrebutted evidence about the scope and scale of SAVE's harmful effects to demonstrate that these cases are not outliers. *See* Pls.' Reply & Opp'n at 4-5, 11.

On causation and redressability, Plaintiffs need only show "third parties will likely react to the government regulation (or judicial relief) in predictable ways that will likely cause (or redress) the plaintiff's injury." *See* Pls.' Reply & Opp'n at 13 (quoting *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 112 (2025)).

**Causation**. Texas follows the Federal Defendants in asserting that Plaintiffs' voting injuries are caused by its own counties. *See* Tex. Mot. at 16. Plaintiffs incorporate by reference Section I.B.4.b of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 13-16. Acknowledging the role of county election officials in ultimately purging voters based on SAVE results does not defeat traceability under Article III, which requires only "*de facto* causality." Pls.' Reply & Opp'n at 13 (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019)). If anything, Texas has confirmed that its counties will "react" to the overhauled SAVE system in "predictable ways that will likely cause . . . the plaintiff's injury"– i.e., by using SAVE responses to investigate voters, demand proof of citizenship, and remove them from the rolls if they cannot provide it.[5] Pls.' Reply & Opp'n at 13 (quoting *Diamond Alt. Energy*, 606 U.S. at 112 (2025)). This chain of causation is just as Plaintiffs alleged in their complaint. *See* FAC ¶¶ 128, 131-44. Texas does not dispute that "[u]nder DHS's process, if SAVE cannot verify an individual's U.S. citizenship, then a SAVE user can deny or cancel the individual's voter registration if they fail to provide DPOC." Pls.' Reply & Opp'n at 14. There is no "guesswork as to how independent decisionmakers will exercise their judgment," *Clapper*, 568 U.S. at 413, when the LWVTX member declarants sustained their voting-related injuries "because Texas followed the overhauled SAVE process

---

[5] Texas approvingly cites to Plaintiffs' description of the overhauled SAVE process, and does not dispute that the process contemplates requiring individuals whose citizenship SAVE cannot verify to provide documentary proof of citizenship or else have their voter registration cancelled. *See* Tex. Mot. at 16-17 (citing FAC ¶ 108 (describing requirements under the MOA to "'contact the registrant or registered voter to obtain proof of U.S. citizenship' before denying registration")).

*precisely as DHS instructed.*" Pls.' Reply & Opp'n at 14; *see also* Pls.' Mem. at 17-18 (describing the process in Texas).

Texas assures the Court that its "county registrars conduct independent citizenship investigations before cancelling any registration," Tex. Mot. at 17, but does not dispute Plaintiffs' allegations showing little to no investigative steps before county election officials removed voters based on SAVE responses. *See* FAC ¶¶ 133-143. And their assurance rings hollow when the four declarations from LWVTX members demonstrate that, even when the DHS process is seemingly followed, American citizens are erroneously accused of being noncitizens and forced to provide DPOC to remain registered to vote. *See* Pls.' Reply & Opp'n at 17-18.

**Redressability**. Texas claims that vacating overhauled SAVE would not redress Plaintiffs' voting-related injuries because states "would still use whatever tools they have to maintain accurate voter rolls." Tex. Mot. at 17. First, Plaintiffs do not seek an end to voter list maintenance efforts writ large; rather, Plaintiffs seek to stop the use of an *unlawful federal tool*. Second, Plaintiffs need only show that their requested relief is "likely" to have some impact in redressing Plaintiffs' harm. *See Diamond Alt. Energy*, 606 U.S. at 118-20; *see also Mass. v. EPA*, 549 U.S. 497, 526 (2007) (finding standing where "[the] risk [of harm] would be reduced to some extent if petitioners received the relief they seek."); *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) ("[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury.").Vacating the overhaul of SAVE, even if it leaves intact other tools used by states for list maintenance, would redress Plaintiffs' injuries because it would remove "access [to] the data that led to the LWVTX member declarants' false identification as non-citizens." Pls.' Reply & Opp'n at 14; *see also* FAC ¶¶ 110-30 (detailing the high risks of error introduced into the overhauled SAVE system). "[V]acating and enjoining these changes to SAVE will redress LWVTX members' injuries by substantially reducing the risk they will again be wrongfully flagged as potential non-citizens based on Texas's use of overhauled SAVE, and face attendant burdens on the exercise of their voting rights, outright disenfranchisement, and risks of wrongful federal and

11

state investigation." Pls.' Reply & Opp'n at 14 (citing Pls.' Mem. 18 & n.8). This reduction in the risk of harm is all that is needed to plausibly allege redressability. *See Mass. v. EPA*, 549 U.S. at 526. Lastly, even if Texas's arguments on redressability are meritorious, they apply only to voting-related injuries, not the privacy-related injuries that would plainly be redressed by vacatur.

Texas's citation to 52 U.S.C. § 21083(a)(4)(B), the provision of HAVA requiring that states take steps to "ensure that eligible voters are not removed in error from the official list of eligible voters," Tex. Mot. at 17, differs from how the Federal Defendants use it to contest causation, but still is wholly inapposite. *Compare* Tex. Mot. at 17 *with* Fed. Defs.' Mem. at 27. Granting Plaintiffs' requested relief will not disrupt Texas's obligation under federal law to *not* remove voters in error, and that obligation will remain with or without overhauled SAVE.

**C.      Plaintiffs have shown injuries traceable to SAVE's new bulk-upload capability that their requested relief would redress.**

Following the Federal Defendants, Texas contests Plaintiffs' standing related to the bulk-upload capability, cursorily rejecting arguments about injury and redressability. Tex. Mot. at 13; Fed. Defs.' Mem. at 14-15.

Plaintiffs incorporate by reference Section I.C of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 16-18. Plaintiffs plausibly allege that SAVE's new bulk-upload functionality for statewide voter list maintenance concretely harms Plaintiffs' mission-critical functions and its members' privacy and voting rights. *See* FAC ¶¶ 157-167 (privacy injuries), 168-170 (voting injuries), 183-185 (EPIC injuries). Additionally, Plaintiffs have provided ample evidence detailing the impact of the new bulk-upload functionality and SAVE's unauthorized transformation into a national citizenship database. *See* Pls.' Reply & Opp'n at 16-17 (citing declarations). Moreover, the record demonstrates that vacating the SAVE overhaul will redress those injuries because states would not use SAVE for voter list maintenance, decreasing the probability that voters would be falsely identified as noncitizens. *See* Pls.' Reply & Opp'n at 17.

#### D.      EPIC has informational and procedural standing to seek relief for violations of the Privacy Act's matching program requirements.

Texas again makes the same arguments as Federal Defendants regarding EPIC's informational and procedural injuries. Texas (1) regurgitates Federal Defendants' argument that the refusal to publish statutorily-required computer matching agreements does not create a legally cognizable procedural injury,[6] and (2) objects to Plaintiffs' informational injuries. Tex. Mot. at 19.

Plaintiffs incorporate by reference Section I.D of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 18-21. As Plaintiffs allege in their complaint, EPIC is injured by the refusal to publish matching agreements, those matching agreements are statutorily required, and the information required for the agreements is not published elsewhere. *See* FAC ¶¶ 186-95; *see also* Pls.' Reply & Opp'n at 18-21. Therefore, EPIC has both informational and procedural standing.

### III.    Plaintiffs plausibly state their claims and are entitled to summary judgment.

#### A.      Plaintiffs challenge final agency action.

Like Federal Defendants, Texas dismisses Plaintiffs' description of the SAVE "overhaul" as creative "rhetoric" and not final agency action. *See* Tex. Mot. at 21-22; Fed. Defs.' Mem. at 36-37. Texas argues that there are only three possible agency actions that Plaintiffs could challenge: "(1) the move from one-by-one to bulk verification requests; (2) the DHS-SSA letter agreement of May 15, 2025; and (3) the modified SORNs published in October and November 2025." Tex. Mot. at 22; *see also* Fed. Defs.' Mem. at 37. According to Texas, "[n]one is reviewable final agency action." Tex. Mot. at 22.

---

[6] For this proposition, Texas purports to quote from *America First Legal Found. v. Greer*, 153 F.4th 1311, 1315 (D.C. Cir. 2025), but the full quotation comes from the Federal Defendants' discussion of the case, and only some of the language is from the case itself. *Compare* Tex. Mot. at 19 ("[E]ven when a plaintiff alleges a violation of some procedural right, the plaintiff still must show that the violation of a procedural right 'resulted in injury' to some 'concrete, particularized interest.'" (purportedly quoting *Am. First Legal Found. v. Greer*, 153 F.4th at 1315) *with* Fed. Defs.' Mem. at 30 ("[E]ven when a plaintiff alleges a violation of some procedural right, the plaintiff still 'must show that the violation of a procedural right "resulted in injury" to some "concrete, particularized interest."'" (quoting *Am. First Legal Found.*, 153 F.4th at 1315)).

Plaintiffs incorporate by reference Section II.A of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 21-24. Plaintiffs reiterate that D.C. Circuit's holding in *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 931 (D.C. Cir. 2008), that a policy of disclosing confidential information constitutes final agency action, controls this case. *See* Pls.' Reply & Opp'n at 21. Moreover, regardless of word choice, there is no question that the integration and combination of disparate data sources and repositories is final agency action. Federal Defendants enabled user agencies to query and receive information from a wholly new set of databases to which they previously had no access, a change that reflects the "consummation of [DHS'] decisionmaking process" and that indisputably determines "rights or obligations" and gives rise to "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (cleaned up)); *see* Pls.' Reply & Opp'n at 22.

**B.    The SAVE overhaul lacks statutory authorization and affirmatively violates the Social Security Act.**

Texas rehashes Federal Defendants' argument that two statutes enacted in 1986 and 1996 authorize their 2025 overhaul of the SAVE system. *See* Tex. Mot. at 25-27; Fed. Defs.' Mem. at 45-52. Plaintiffs incorporate by reference Section II.B of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 24-31. "Federal agencies are creatures of statute. They possess only those powers that Congress confers upon them." *Judge Rotenberg Educ. Ctr., Inc. v. FDA*, 3 F.4th 390, 399 (D.C. Cir. 2021). Texas's reading of the Immigration Reform Control Act of 1986 ("IRCA"), Pub. L. No. 99-603, title I, §121(c)(1), 100 Stat. 3359, 3391 (1986), *codified* at 42 U.S.C. § 1320b-7 note, and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, ("IIRIRA"), Pub. L. No. 104-208, § 642, 110 Stat. 3009 (1996), *codified* at 8 U.S.C. § 1373, would confer upon DHS extraordinary power. *See* Pls.' Reply & Opp'n at 24. If Congress had intended to convey such power, it would have done so "clearly and expressly." Pls.' Mem. 30. As explained below and in Plaintiffs' prior brief, Congress has done no such thing.

14

### 1. The Immigration Reform Control Act of 1986 does not authorize the SAVE overhaul.

Texas asserts that the IRCA's directions that DHS "implement a system for the verification of immigration status" broadly authorizes a system that compiles vast troves of information on U.S. citizens—including millions of Americans who have never interacted with the immigration system—to verify citizenship status. *See* Tex. Mot. at 26 (quoting IRCA); *see also* Fed. Defs.' Mem. at 46-47 (same). Plaintiffs incorporate by reference Section II.B.1 of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 25-26. As Plaintiffs allege in their complaint, IRCA's text is clear that "immigration status" refers to *non-citizens*, and SAVE was never meant to be used on U.S. citizens. *See* FAC ¶¶ 54-55; *see also* Pls.' Reply & Opp'n at 25 ("Defendants. . .omit[] key language from the IRCA that specifies the 'system' (SAVE) is only 'for the verification of immigration status *under paragraphs (3) and (4)(B)(i) of section 1137(d) of the Social Security Act* [42 U.S.C. 1320b-7(d)(3), (4)(B)(i)].' 42 U.S.C. § 1320b-7 note (emphasis added)."); *see also* Fed Defs.' Mem. at 1, 3, 5, 44-48 (quoting statute but omitting emphasized text).

### 2. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 does not authorize the SAVE overhaul.

Texas next argues that the IIRIRA "eliminated any doubt" that the SAVE overhaul was statutorily authorized. Tex. Mot. at 26; *see also* Fed. Defs.' Mem. at 47 ("Were there any doubt, [the question of verifying U.S. citizenship] was resolved in 1996, by the enactment of 8 U.S.C. § 1373(c)."). Plaintiffs incorporate by reference Section II.B.2 of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 26-29. Texas's argument ignores that § 1373(c) merely authorizes DHS to respond to governmental inquiries to verify individuals' "citizenship or immigration status" by "providing the requested verification or status information" from DHS's own records. *See* Pls.' Mem. at 28-39; *see also* Pls.' Reply & Opp'n at 26-27; FAC ¶¶ 80-82. It does not, as Texas and Federal Defendants suggest, authorize DHS to acquire data from other agencies, nor does it empower those agencies to disclose their data to DHS.

Texas argues that the "notwithstanding" language in § 1373(a) and (b) is "'the clearest congressional direction'. . .that other statutory limits—including the Privacy Act and Social Security Act—must yield to the information-sharing mandate of § 1373." Tex. Mot. at 26 (quote misattributed to *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993)). But even a notwithstanding clause can have a limited scope where "nothing in the statute indicates that Congress intended" an action to be taken "contrary to its own laws." *D.C. Fed'n of Civic Ass'ns, Inc. v. Volpe*, 434 F.2d 436, 447 (D.C. Cir. 1970). As DOJ's Office of Legal Counsel has concluded, the notwithstanding clause in § 1373 reflects a "congressional intention to displace inconsistent law," but not a "broad construction of the substantive provision that would give rise to such inconsistencies." *Relationship Between Illegal Immigr. Reform & Immigrant Resp. Act of 1996 & Statutory Requirement for Confidentiality of Census Info.*, 1999 WL 34995963, at *6 (O.L.C. May 18, 1999) (Acting Ass't Att'y Gen. Randolph D. Moss)).

**3.    The major questions doctrine confirms that the SAVE overhaul lacks statutory authorization.**

Texas and Federal Defendants both claim that the major questions and nondelegation doctrines are inapplicable in this instance. *See* Tex. Mot. at 27; Fed. Defs.' Mem. at 50-51. Plaintiffs incorporate by reference Section II.B.3. and II.B.2 of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 29-30. Like Federal Defendants, Texas does not refute that this case meets three criteria of the major questions doctrine. *See* Tex. Mot. at 27; Pls.' Reply & Opp'n at 29. Furthermore, Texas's assertion that § 1373(c) resolves the issue is not supported by the text or statutory history of the provision. *See* discussion *supra* Section III.B.2; *see also* FAC ¶¶ 80-82; Pls.' Reply & Opp'n at 25-29. As for Texas's nondelegation doctrine argument, Plaintiffs reiterate that the constitutional avoidance canon cautions against accepting Defendants' interpretation of § 1373; if accepted, such an interpretation would violate the Constitution's nondelegation principle by giving DHS "unbounded and undefined authority" when responding to data requests from federal, state, and local agencies regarding citizenship and immigration status.

16

*See* Pls.' Reply & Opp'n at 28-29; *see also* FAC ¶¶ 199-205. This is far from an "intelligible principle." *FCC v. Consumers' Rsch.*, 606 U.S. 656, 673 (2025).

### 4.    Defendants' unauthorized disclosures violate the Social Security Act.

Texas asserts that Plaintiffs' reliance on 42 U.S.C. § 1306(a)(1) and § 405(c)(2)(C)(viii)(I) is "misplaced." Tex. Mot. at 26; *see also* Fed. Defs.' Mem. at 49 (employing a nearly identical argument). Plaintiffs incorporate by reference Section II.B.4 of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 30-31. Texas's arguments relating to § 1306(a)(1) rely on their overreading of the IRCA and the IIRIRA; neither the IRCA or the IIRIRA grants SSA authority to disclose millions of Americans' protected SSA information to DHS for use in the overhauled SAVE system. *See* FAC ¶¶ 44-45, 204; Pls.' Reply & Opp'n at 30-31. And like Federal Defendants, Texas's claim about § 405(c)(2)(C)(viii)(I) fails because the record is clear that the expansion of SAVE hinges on a misreading of § 1373, which was enacted in 1996. Pls.' Reply & Opp'n at 30-31.

### C.    The SAVE overhaul violates the separation of powers.

Texas repeats Federal Defendants' misreading of Plaintiffs' separation-of-powers claims asserted in Counts II and III. *See* Tex. Mot. at 27-28; Fed. Defs.' Mem. at 53-54. Plaintiffs incorporate by reference Section II.C of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 32-34. Texas miscasts Plaintiffs' arguments as simply about exceeding statutory authority, when Plaintiffs allege that the Federal Defendants "have acted with a '*total absence* of authority from Congress in a domain that the Constitution assigns to Congress and the States.'" Pls.' Mem. at 34 (citing *LULAC II*, 2026 WL 252420, at *31 (D.D.C. Jan. 30, 2026) (emphasis added)); *see* FAC ¶¶ 206-17; Pls.' Reply & Opp'n at 32. Furthermore, Texas's effort to defuse Plaintiffs' Elections Clause argument by recasting DHS as "merely respond[ing] to State verification inquiries" is easily refuted by the record, which contains multiple documents demonstrating that overhauled SAVE directly and pervasively inserts Federal Defendants in the state-run process of

17

verifying whether registered voters are U.S. citizens qualified to vote. *See* Pls.' Reply & Opp'n at 32-33, 33 n.10 (citing examples); *see also* FAC ¶¶ 98-109.

        **D.**        **The SAVE overhaul was contrary to the Privacy Act.**

        **1.**        **Plaintiffs have an APA remedy for the Privacy Act violations alleged in Counts 4, 5, and 7.**

Texas repeats Federal Defendants' argument that "Plaintiffs [c]annot [b]ring APA [c]laims [p]redicated on Privacy Act [v]iolations." Tex. Mot. at 23-24; *see* Fed. Defs.' Mem. at 39, 42. Texas purports to quote *Cell Assocs., Inc. v. NIH*, 579 F.2d 1155, 1158-59 (9th Cir. 1978), for the proposition that "[w]ere injunctive relief freely available for violations of the Privacy Act generally . . . the detailed remedial scheme adopted by Congress would make little sense." Tex. Mot. at 24. But the first half of the quoted language is from Federal Defendants' brief, not *Cell Assocs. See* Fed. Defs.' Mem. at 42 ("Indeed, were injunctive relief freely available for violations of the Privacy Act generally—such as through the sort of generic APA claims that Plaintiffs bring here— 'the detailed remedial scheme adopted by Congress would make little sense.'" (citing *Cell Assocs.* at 1160)). Texas also echoes Federal Defendants' concern that because the Privacy Act only provides a cause of action for individuals, "Plaintiffs are thus 'straightforwardly ineligible for any relief under the Privacy Act,' and cannot use the APA to overcome that jurisdictional bar." Tex. Mot. at 24-25 (quoting without citing Fed. Defs.' Mem. at 40).

Plaintiffs incorporate by reference Section II.D.1 of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 34-37. Texas, like Federal Defendants, disregards D.C. Circuit precedent and district court cases finding that APA injunctive relief is available to remedy Privacy Act violations. *Id*. at 34 (citing *Doe v. Stephens*, 851 F.2d 1457 (D.C. Cir. 1988); *LULAC II*, 2026 WL 252420 at *51-52; and *AFL-CIO v. Dep't of Lab.*, 778 F. Supp. 3d 56, 81 (D.D.C. 2025)); *see* Pls.' Mem. at 47. Moreover, Texas fails to recognize that an alternative remedial scheme does not displace APA review when it offers either relief of an entirely different "genre" or only "doubtful and limited" relief. Pls.' Reply & Opp'n at 35 (quoting *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C.

Cir. 2009) (cleaned up)). Here, only the APA provides Plaintiffs and their members with meaningful relief. *See* Pls.' Reply & Opp'n at 37.

### 2. The SAVE overhaul was contrary to the Privacy Act's substantive restrictions.

Texas next challenges Plaintiff's claims that Defendants' bulk inter-agency and inter-governmental disclosures through the overhauled SAVE system fit none of the exceptions set out in 5 U.S.C. § 552a(b)(1)-(13). *See* Tex. Mot. at 29-30; *see also* Fed. Defs.' Mem. at 57-59. Plaintiffs incorporate by reference Section II.D.2 of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 37-39. Texas, like Federal Defendants, repurposes its statutory authority arguments to configure the routine uses outlined in the Modified SORNs as "compatible" with their original purpose. *See* Pls.' Reply & Opp'n at 38.

Texas's argument that "subsection 552a(b)(7) independently authorizes SAVE's disclosures" is both unpersuasive and procedurally flawed. Tex. Mot. at 29. Plaintiffs already refuted this argument when it moved for summary judgment and incorporates those points by reference here. *See* Pls.' Mem. at 37-38, n.17. Tellingly, Federal Defendants did not respond to Plaintiffs' arguments, nor did they attempt to invoke § 552a(b)(7) to justify their disclosures. For good reason: § 552a(b)(7) does not apply here under the statute's plain terms. Indeed, in quoting the statute, Texas omits the second half of § 552a(b)(7), which makes clear that the exception only applies "if the head of the agency or instrumentality has made a written request to the agency which maintains the record specifying the particular portion desired and the law enforcement activity for which the record is sought." 5 U.S.C. § 552a(b)(7). No evidence shows that these requirements are met here. *See* Pls.' Mem. at 37-38, n.17.

Lastly, Texas claims that Plaintiffs' Privacy Act theories under 5 U.S.C. §§ 552a(e)(5), (6), and (10) "depend entirely on their unproven, conclusory assertions about data reliability." Tex. Mot. at 30. Plaintiffs incorporate by reference Section II.C.2 of their Memorandum in Support of Plaintiffs' Motion for Summary Judgment. *See* Pls.' Mem. at 38. Both Plaintiffs' complaint and the administrative record make it clear that (a) Federal Defendants know that the overhauled SAVE

19

system disseminates inaccurate records, and (b) records used by SAVE are inaccurate as to specific Plaintiffs' members. Pls.' Mem. at 38; *see also* FAC ¶¶ 111-115, 164-165, 170, 185.

### 3. Plaintiffs' notice-and-comment claim is not moot, and Defendants have conceded Plaintiffs' merits arguments.

Texas repeats Federal Defendants' argument that Plaintiffs' notice-and-comment claim is moot because DHS and SSA belatedly published Modified SORNs and solicited public comment. *See* Tex. Mot. at 20; Fed. Defs.' Mem. at 33-34. Plaintiffs incorporate by reference Section II.D.3 of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 39-41. Texas, like the Federal Defendants, fails to recognize that Plaintiffs do not seek relief relating to Federal Defendants' failure to publish Modified SORNs, but their pre-determination that they would not consider public comments on the Modified SORNs, and their failure to actually consider those comments. *See* Pls.' Reply & Opp'n at 39-41; FAC ¶¶ 227-35. Plaintiffs' notice-and-comment claim is not moot and will not become moot until Defendants actually consider the thousands of public comments on the Modified SORNs, which the record confirms they have failed to do. Pls.' Reply & Opp'n at 39-41.

### 4. Defendants failed to comply with the Privacy Act's requirements for computer matching programs.

Texas challenges Plaintiffs' assertion that Federal Defendants failed to publish a "computer matching agreement" as required by 5 U.S.C. § 552a(o). *See* Tex. Mot. at 31-32; *see also* Fed. Defs.' Mem. at 59-61. Like Federal Defendants, Texas asserts that DHS need not publish a computer matching agreement because SAVE is a front-end single record verification system. Tex. Mot. at 32 ("DHS's longstanding position—dating back to at least 2013—is that so-called 'front-end' single-record verification queries are not covered by this part of the Privacy Act. . ."); Fed. Defs.' Mem. at 60 (". . .DHS's longstanding position (dating back to at least 2013) is that so-called 'front-end' single-record verification queries are not covered by this part of the Privacy Act."). In the alternative, Texas argues that an alternative remedy exists under the Privacy Act. *See* Tex. Mot. at 32.

Plaintiffs incorporate by reference Section II.D.4 of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 41-43. Like Federal Defendants, Texas improperly characterizes the lawsuit as solely about "voter verification." *See* Tex. Mot. at 32; Fed. Defs.' Mem. at 60. This argument ignores evidence that the overhauled SAVE system will also be used for federal benefits programs, and that EPIC's mission goes beyond voter protection. *See* Pls.' Reply & Opp'n at 43; *see also* FAC ¶¶ 186-95, 239-51. Furthermore, Texas's position on SAVE's disposition as a "'front-end' single record verification quer[y]" is unpersuasive and not supported by the text of the Privacy Act. *See* Pls.' Reply & Opp'n at 41-43. Lastly, Texas ignores that EPIC cannot seek relief under the Privacy Act, nor does the Privacy Act offer the remedy EPIC seeks. *See* Pls.' Reply & Opp'n at 43; FAC ¶¶ 239-251.

### E.    The SAVE overhaul was arbitrary and capricious.

Texas next challenges Plaintiffs' claims that the Modified SORNs are arbitrary and capricious, again reproducing Federal Defendants' arguments. *See* Tex. Mot. at 30-31; Fed. Defs.' Mem. at 54. Texas then argues that, in the event that arbitrary-and-capricious review applies to Privacy Act SORNs, Plaintiffs argument would nonetheless fail. *See* Tex. Mot. at 30-31; Fed. Defs.' Mem. at 55-57.

Plaintiffs incorporate by reference Section II.E of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 43-47. Like Federal Defendants, Texas inaccurately characterizes Plaintiffs' arbitrary-and-capricious claim and overlooks that Count 6 is, in fact, an APA claim premised on Federal Defendants' obligation to engage in "reasoned decisionmaking." *See* Pls.' Reply & Opp'n at 43; *see also* FAC ¶¶ 236-38; Pls.' Mem. at 40. Contrary to Defendants' arguments, arbitrary-and-capricious review is not limited to APA rulemakings under 5 U.S.C. § 553(c). *See* Pls.' Reply & Opp'n at 44 (describing how courts undertake arbitrary-and-capricious review of non-rulemaking agency action) (citing cases). Texas also ignores that Plaintiffs' arbitrary-and-capricious claim challenges more than just the SORN notice-and-comment process. *See* Pls.' Reply & Opp'n at 44-45; FAC ¶ 238.

21

## IV.     Plaintiffs seek appropriate relief.

Echoing Federal Defendants, Texas argues that "[a]ny [r]elief [s]hould be [s]trictly [t]ailored." Tex. Mot. at 32; Fed. Defs.' Mem. at 61. Texas, like Federal Defendants, invokes *Trump v. CASA, Inc.*, asserting that "the sweeping, nationwide relief [Plaintiffs] seek is not available." Tex. Mot. at 33 (citing *Trump v. CASA, Inc.*, 606 U.S. 831, 851, 854 (2025)); Fed. Defs.' Mem at 61-62.

Plaintiffs incorporate by reference Section III of their Combined Reply and Opposition. *See* Pls.' Reply & Opp'n at 47-50. Plaintiffs do not seek nationwide injunctive relief, but vacatur of agency action under the APA and the publication of statutorily required materials. Pls.' Reply & Opp'n at 48; *see* FAC at 73-74. *CASA* is inapposite because the Supreme Court explicitly declined to extend its holding to APA vacatur. Pls.' Reply & Opp'n at 48. It remains binding precedent in the D.C. Circuit that when a court determines that an agency rule is unlawful, it vacates the rule, instead of just preventing its application to an individual party. Pls.' Reply & Opp'n at 48 (citing *Make the Road N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313 at *34 (D.C. Cir. 2025) (statement of Millett and Childs, JJ.)).

Texas continues to follow Federal Defendants' lead, raising the settlement agreement in *Florida v. DHS*, No. 24-cv-00509, (N.D. Fla. Nov. 28, 2025, Dec. 01, 2025), ECF Nos. 30, 31 (N.D. Fla.), and arguing that "principles of comity preclude this Court from entering relief that would subject DHS to conflicting orders." Tex. Mot. at 33; *see* Fed. Defs.' Mem. at 62-64.

As an initial matter, Plaintiffs note that Texas declined to join the *Florida* settlement agreement, and its related lawsuit against DHS and USCIS remains pending. *See* Fed. Defs.' Mem. at 7. It is not clear what interest Texas has in defending the settlement agreement or ensuring that DHS is not subject to conflicting court orders. Regardless, as the Federal Defendants themselves admitted (in the lawsuit brought by Texas), the federal government cannot contract around its legal obligations under federal law or the Constitution. Pls.' Reply & Opp'n at 49-50. A decision in Plaintiffs' favor by this Court would simply clarify Federal Defendants' statutory and

22

constitutional legal obligations—obligations that were not briefed in the *Florida* case or passed on by that court.

## CONCLUSION

The Court should deny the State of Texas's Motion to Dismiss Plaintiffs' First Amended and Supplemental Complaint.

Dated: May 8, 2026

/s/ Emily Davis
Jon Sherman (D.C. Bar No. 998271)*
Michelle Kanter Cohen (D.C. Bar No. 989164)
Emily Davis (D.C. Bar No. 90020129)
FAIR ELECTIONS CENTER
1629 K St. NW, Suite 300
Washington, DC 20006
(202) 331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
edavis@fairelectionscenter.org

*Counsel for All Plaintiffs*

Nikhel S. Sus (D.C. Bar No. 1017937)
John B. Hill (N.Y. Bar No. 5505508)*
Lauren C. Bingham (D.C. Bar No. 90043462)
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565
nsus@citizensforethics.org
jhill@citizensforethics.org
lbingham@citizensforethics.org

*Counsel for All Plaintiffs*

Respectfully submitted,

Aman T. George (D.C. Bar No. 1028446)
Jennifer Fountain Connolly (D.C. Bar No. 1019148)
Johanna M. Hickman (D.C. Bar No. 981770)
Mark B. Samburg (D.C. Bar No. 1018533)
Robin Thurston (D.C. Bar No. 1531399)
Sophie Rose Gelber (D.C. Bar No. 90038427)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
ageorge@democracyforward.org
jconnolly@democracyforward.org
hhickman@democracyforward.org
msamburg@democracyforward.org
rthurston@democracyforward.org
sgelber@democracyforward.org

*Counsel for All Plaintiffs*

John L. Davisson (D.C. Bar No. 1531914)
Enid Zhou (D.C. Bar No. 1632392)
Abigail Kunkler (D.C. Bar No. 90030868)
Mayu Tobin-Miyaji (D.C. Bar No. 90033340)
ELECTRONIC PRIVACY INFORMATION CENTER
1519 New Hampshire Ave. NW
Washington, DC 20036
(202) 483-1140
davisson@epic.org
zhou@epic.org
kunkler@epic.org

*Counsel for Plaintiff Electronic Privacy Information Center*

* admitted pro hac vice

24