**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LEAGUE OF WOMEN VOTERS, et al.,
    Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.,
    Defendants.

Case No. 1:25-cv-03501-SLS

**STATE OF TEXAS'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT**

**INTRODUCTION[1]**

Plaintiffs' Memorandum in Opposition concedes far more than it contests. Plaintiffs do not identify a single named member of LWVLA or LWVVA, resting instead on pseudonymous declarations submitted with their denied preliminary-injunction motion—declarations the Court already found wanting. *League of Women Voters v. DHS*, No. 25-3501, 2025 WL 3198970, at *7 (D.D.C. Nov. 7, 2025). They do not contest that, of the millions of SAVE queries run since the challenged changes took effect, the operative pleading identifies only four LWVTX members allegedly affected. And the named declarant, Anthony Nel, alleges no continuing harm. Plaintiffs also do not deny that constitutional responsibility for voter-eligibility decisions in Texas lies with Texas's counties, not DHS, and is not determined by the results of SAVE. *See* ECF 97 at 16–17.

Plaintiffs' standing theory collapses on close inspection. Their statutory theory asks the Court to set aside that Congress directed DHS to provide the States with citizenship verification

---

[1] Plaintiff identified several errors in Texas's Motion. Undersigned counsel regrets that he failed to conduct a cite check to do time constraints the resulted in several errors and apologizes to Plaintiffs and the Court for the issues.

information and that States are obligated to administer voter-list-maintenance. And their remedial demand—sweeping nationwide vacatur within fourteen days—runs headlong into *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), and basic comity principles arising from the federal settlement entered in *Florida v. DHS*, No. 24-cv-509 (N.D. Fla. Dec. 1, 2025).

Plaintiffs devote much of their opposition to accusing Texas of mirroring the Federal Defendants. This observation is a feature, not a bug: an intervenor that defends the same agency action will naturally advance overlapping arguments, and Texas adopts the Federal Defendants' anticipated reply on shared issues. *See* LCvR 7(a). The First Amended and Supplemental Complaint should be dismissed.

## ARGUMENT

### I.  PLAINTIFFS FAIL TO ESTABLISH STANDING.

Standing must be assessed by reference to the operative pleading based on the time the lawsuit is filed. *Davis v. FEC*, 554 U.S. 724, 734 (2008). Texas's MTD identified four standing defects in the Complaint. Each remains.

### A.  The national League of Women Voters identifies no injured member of its own.

Plaintiffs concede they cannot identify a single member of the League of Women Voters of the United States ("LWVUS") who has suffered any injury caused by SAVE. ECF 104 at 6–7. They argue instead that LWVUS may rely on the alleged injuries of state-League members because members of the state Leagues are "also members of the national League of Women Voters." *Id.* (citing ECF 61 at ¶ 158). As a matter of pleading, the Complaint nowhere alleges that the four LWVTX declarants or any of the Doe declarants are themselves members of LWVUS. The only other Paragraph that appears to address the issue merely alleges that "LWVTX, LWVLA, and

LWVVA have dues paying members, who are also members of the national League," not that any of the members reference in the complaint are members of the national League. ECF 61 at ¶ 15. That is precisely the sort of conclusory recitation *Twombly* forbids. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs cannot fill that gap in response to a Rule 12 motion by reference to extrinsic declarations or affidavits.

As a matter of law, *League of Women Voters of the United States v. Newby*, 838 F.3d 1 (D.C. Cir. 2016), does not aid Plaintiffs. *Newby* addressed only whether the *organizational* injuries sustained by state and local Leagues—resource diversion and mission frustration—could support standing for the *organizations* themselves. *Id.* at 8–9. It did not hold that LWVUS may piggy-back on the *individual* injuries of state-League members to claim associational standing on behalf of the parent organization. *Id.*

### B.  LWVTX cannot anchor standing on Mr. Nel or the remaining declarants.

LWVTX identifies a single member by name, Anthony Nel. ECF 61 at ¶ 165. Even assuming Mr. Nel's voter registration was cancelled, that cancellation did not occur as a result of SAVE. Texas law requires that counties perform an independent verification by requesting the voter submit proof of citizenship. Tex. Elec. Code. § 16.0332(a). Only if the voter fails to provide such proof is the registration cancelled. *Id.* at § 16.0332(c). Any wrongful cancellation is the result of Mr. Nel's inaction, not a result of the complained of updates to SAVE.

Moreover, Plaintiffs' invocation of *Davis* and *Kuehl v. Sellner*, 887 F.3d 845 (8th Cir. 2018), only reinforces the timing issue raised by Texas . *Davis* holds that standing is determined as of the filing of the operative complaint, 554 U.S. at 734, not that any post-injury association can manufacture jurisdiction. And *Kuehl* permitted associational standing only because "the injury [the member] suffered *at the time the complaint was filed was ongoing*." 887 F.3d at 851 (emphasis

3

added). Mr. Nel's alleged injury is the opposite: his SAVE record has been corrected and his registration confirmed. ECF 61 at ¶ 165. "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy" for the prospective injunctive and declaratory relief Plaintiffs seek. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

Plaintiffs' reliance on the three remaining LWVTX declarants is no stronger. None is identified by name in the Complaint, and none alleges an injury that persists today. Plaintiffs respond that the declarants "make these allegations with even more specificity, and Defendants have offered no evidence to the contrary." ECF 104 at 5. That inverts the burden. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing-by-declaration cannot supply allegations the operative complaint omits.[2]

### C. The privacy-injury theory does not rescue Plaintiffs.

Plaintiffs focus much of their opposition on *American Federation of State, County and Municipal Employees, AFL-CIO v. SSA*, 172 F.4th 361 (4th Cir. 2026) (en banc) ("*AFSCME*"), which abrogated *American Federation of Teachers v. Bessent*, 152 F.4th 162 (4th Cir. 2025) ("*AFT*").[3] But *AFSCME* binds the Fourth Circuit, not this Court. The governing standard in this District remains that a privacy plaintiff must plead "a close historical or common-law analogue for

---

[2] Texas's reference to the phrase "lawsuit-by-recruitment" was not intended to be a quotation—hence the *cf.* signal—but rather introducing a term or phrase. *See* Texas Law Review, Manual on Usage & Style R. 1.05–.06 (13th ed. 2015). Justice Thomas's concurrence supports the substantive proposition that the constitutionality of associational standing has been called into question. *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 397–401 (2024) (Thomas, J., concurring). Associational standing should not be a vehicle for organizations that, having "not identified a single individual who has experienced" the alleged injury at the time the suit was first filed and locate one only after litigation has begun. *League of Women Voters v. DHS*, No. 25-3501, 2025 WL 3198970, at *7 (D.D.C. Nov. 7, 2025).

[3] *AFSCME*'s abrogation of *AFT* occurred after the Court granted Texas's Motion to Intervene and ordered Texas to file its MTD and a mere 13 days before Texas filed its MTD. *AFSCME*, 172 F.4th 361 (issue April 10, 2026).

[the] asserted injury," and that the alleged disclosure must resemble that tort in kind, not merely in label. *TransUnion*, 594 U.S. at 424.

Second, *AFSCME* is distinguishable. The plaintiffs there alleged that the federal government had granted unauthorized DOGE-related access to massive troves of SSA data outside any statutory regime. 172 F.4th at 366–67. SAVE, by contrast, operates under express congressional authorization: DHS is "shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual" for any lawful purpose. 8 U.S.C. § 1373(c); *see infra*. Inter-agency disclosures Congress has *required* cannot meet the "highly offensive" element of intrusion upon seclusion. *See Wolf v. Regardie*, 553 A.2d 1213, 1220 (D.C. 1989).

Third, *AFSCME* did not relieve plaintiffs of the burden to plead concrete imminent injury to themselves. The Fourth Circuit *vacated* the preliminary injunction in that very case for failure to identify an irreparable injury. 172 F.4th at 372–74. So too here, the Complaint identifies four LWVTX members allegedly subjected to SAVE inquiries—three with records since corrected. That handful, against the universe of SAVE traffic, is the antithesis of widespread or imminent harm; it forecloses standing on a "substantial risk" theory. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013).

## D. Texas counties—not DHS—cause and would redress Plaintiffs' voting-related injuries.

The standing arguments unique to Texas, raised at pages 15–17 of the MTD, are not meaningfully answered. Texas county officials, not DHS, decide whether a Texas voter is removed from the rolls. *See* Tex. Elec. Code §§ 16.0332. And only after the county voter registrar conducts an independent verification and the voter fails to prove their citizenship. *Id.* Moreover, federal law

obligates Texas's counties—regardless of any DHS verification tool—to conduct an independent eligibility review and to provide notice and an opportunity to respond before any voter-list-maintenance action. *See* 52 U.S.C. § 21083(a)(4)(A); *see also* § 21083(a)(4)(B) (requiring States to implement "[s]afeguards to ensure that eligible voters are not removed in error"). Plaintiffs do not, because they cannot, dispute that Texas counties retain final authority and obligation over voter-roll decisions.

Plaintiffs' redressability argument fails for the same reason. They say vacating SAVE "would remove 'access [to] the data that led to the LWVTX member declarants' false identification as non-citizens.'" ECF 104 at 11 (alteration in original). But *Murthy v. Missouri*, forecloses standing where the redress sought operates only through the discretionary, statutorily compelled action of an independent third party. 603 U.S. 43, 73–74 (2024). Counties would still have to maintain rolls under HAVA § 21083(a)(4)(B); they would still investigate registrations they believed in error; and they would still take the steps Plaintiffs allege caused the declarants' harms. Vacating SAVE does not, on Plaintiffs' own theory, change *any* of that.

### E.  Bulk upload and EPIC's procedural injury fail for the reasons stated.

Plaintiffs do not engage Texas's argument that no plaintiff has identified a concrete injury flowing from the *bulk-upload* feature as distinguished from one-by-one queries—a feature that "produce[s] the same results on the same data" more efficiently. ECF 97 at 9. Plaintiffs' opposition incorporates by reference their prior briefing on the topic, *see* ECF 104 at 12, but their prior briefing identified no injury traceable to bulk-upload functionality as such. The claim should be dismissed for that independent reason.

EPIC's informational and procedural-injury theory likewise fails. EPIC concedes that DHS and SSA have now published modified SORNs, ECF 61 at ¶¶ 74, 89, and conceded at the

preliminary-injunction hearing that publication would resolve its informational injuries. Hr'g Tr. 76:4–6 (Oct. 28, 2025), ECF 48. And as Judge Kollar-Kotelly held in *League of United Latin American Citizens v. Executive Office of the President*, publication of modified SORNs after notice and comment moots an identical Privacy Act notice-and-comment claim. 818 F. Supp. 34, 54 (D.D.C. Jan. 30, 2026) ("*LULAC II*"). Plaintiffs concede *LULAC II*'s holding but seek to evade it on the ground that they challenge the agencies' alleged *pre*-determination to ignore comments. ECF 104 at 20. That theory depends entirely on conclusions the Complaint does not plead, identifies no specific comment the agencies allegedly failed to consider, and cannot overcome the "presumption of regularity" owed to the agencies' administrative record certifications. *FDA v. Wages & White Lion Invs.*, 604 U.S. 542, 577 (2025).

## II.  PLAINTIFFS DO NOT CHALLENGE FINAL AGENCY ACTION.

Texas's MTD demonstrated that, stripped of the "overhaul" label, the Complaint identifies only three discrete acts: the move to bulk-upload functionality, the May 15, 2025 DHS-SSA letter agreement, and the Modified SORNs. ECF 97 at 22. Plaintiffs' opposition does not contest that taxonomy. They argue only that "the integration and combination of disparate data sources" amounts to final action because "Federal Defendants enabled user agencies to query and receive information from a wholly new set of databases." ECF 104 at 14. That assertion misreads both the record and the law.

DHS did not grant user agencies "access" to "new" databases. The user-agency interface is unchanged: a SAVE user enters identifying information for one individual and receives a verification response. The change in *what databases SAVE itself consults on the back end* is internal to DHS and SSA; it does not determine "rights or obligations" or generate "legal consequences" for any user agency. *Bennett v. Spear*, 520 U.S. 154, 178 (1997). The D.C. Circuit

confirmed this analysis in *Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1234–36 (D.C. Cir. 2026), which held an information-sharing MOU between IRS and ICE non-final because it "merely outline[d] the process through which" the agencies would administer their existing statutory authority. The DHS-SSA letter agreement performs the same function.

Plaintiffs' attempt to invoke *Venetian Casino Resort, LLC v. EEOC*, 530 F.3d 925, 931 (D.C. Cir. 2008), is misplaced. *Venetian Casino* held that an EEOC *policy* of disclosing confidential personnel information without notice was final because it determined the legal rights of those whose information would be disclosed. Here, by contrast, no "policy of disclosure" is at issue: DHS responds, as Congress directed, to citizenship inquiries from state and federal agencies, and SSA already provides data to DHS for that purpose under statutory authority predating the 2025 changes. *See infra.*

The Modified SORNs are no better candidate for final agency action. Plaintiffs' theory—that the agencies cured one violation by publishing modified SORNs after public notice and comment but committed another by allegedly failing to take comments seriously—depends on facts plainly absent from the Complaint. Plaintiffs identify no comment the agencies allegedly failed to consider. *Twombly*, requires more. 550 U.S. at 555

### III.  CONGRESS AUTHORIZED—AND REQUIRED—THE USE OF SAVE.

Plaintiffs' merits theory rests on a startling proposition that DHS, when asked by a State, whether a person on a voter roll is a U.S. citizen, must answer "no comment" because 8 U.S.C. § 1373(c) authorizes responses only as to non-citizens. ECF 104 at 15. That reading cannot be reconciled with the text.

### A.  Section 1373(c) covers citizenship inquiries about citizens.

8

Section 1373(c) directs DHS to respond to inquiries "seeking to verify or ascertain the *citizenship or immigration status of any individual . . .* for any purpose authorized by law." 8 U.S.C. § 1373(c) (emphases added). Plaintiffs would read the words "citizenship" and "any individual" out of the statute. Courts do not ordinarily "construe statutes to render words mere surplusage." *Duncan v. Walker*, 533 U.S. 167, 174 (2001). Plaintiffs' contrary reading—that "immigration status" in IRCA must refer to non-citizens—conflates §§ 1373(a) and (b), which prohibit state and local restrictions on the sharing of immigration-status information with DHS, with § 1373(c), which obligates DHS to *respond* to such inquiries. Whatever inferences might be drawn from subsections (a) and (b), subsection (c) speaks unambiguously: "citizenship *or* immigration status," not "immigration status *only*." 8 U.S.C. § 1373(c).

Plaintiffs' citation to a 1999 OLC opinion on the Census Act does not undermine that text. *See* 1999 WL 34995963 (O.L.C. May 18, 1999). The OLC opinion concerned the narrow question whether § 1373's notwithstanding clause displaced 13 U.S.C. § 9's specific Census confidentiality regime. It said nothing about whether DHS, when answering a citizenship inquiry, may rely on its own and SSA's records to do so. And it expressly confirmed that the notwithstanding clause displaces other federal law where Congress so intended. *Id.* at *5–6.

### B.  Section 1373's "notwithstanding" clause displaces conflicting limits.

Section 1373(a) and (b)'s "notwithstanding" language is sweeping. By its terms, it prevents "any other provision of Federal, State, or local law" from "prohibit[ing], or in any way restrict[ing]," the sharing of citizenship and immigration-status information with DHS. 8 U.S.C. § 1373(a)–(b). The Supreme Court has explained that such language "clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any

other section," and that "[a] clearer statement is difficult to imagine." *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993) (cleaned up).[4]

The Social Security Act's confidentiality provisions are "other provisions of Federal . . . law." They must therefore yield to § 1373's information-sharing mandate where the two conflict. *Cisneros*, 508 U.S. at 17–18. Plaintiffs' reliance on *D.C. Federation of Civic Associations, Inc. v. Volpe*, 434 F.2d 436, 447 (D.C. Cir. 1970), is misplaced. Where, as here, the notwithstanding text is unqualified, it controls. *Cisneros*, 508 U.S. at 17–18.

### C.  The major-questions and nondelegation doctrines do not apply.

Plaintiffs' major-questions argument fails. The doctrine is reserved for "extraordinary cases" involving "vast economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022). Improving how SAVE—a system that has existed since 1986—verifies the citizenship of voters whose registration is in question is not such a case. It is, in DHS's own description, a routine modernization of an existing verification system States are permitted to use. *See* 90 Fed. Reg. 48,948, 48,949 (Oct. 31, 2025). Plaintiffs cite no decision invoking the major-questions doctrine against an IT improvement to a statutorily mandated verification system.

Plaintiffs' nondelegation theory, which appears nowhere in the Complaint, is procedurally barred. *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."). And it fails on the merits because § 1373(c) cabins DHS's authority to "respond[ing]" to specific inquiries from federal, state, or local agencies "seeking to verify or

---

[4]Texas's MTD invoked *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 18 (1993), for the proposition that a "notwithstanding" clause is the clearest available signal Congress can give to displace conflicting law. Texas's brief misquoted the holding but the meaning was not fundamentally changed.

ascertain" status—hardly "unbounded and undefined authority." ECF 104 at 16. The Supreme Court has rarely invalidated a federal statute on nondelegation grounds. *See FCC v. Consumers' Rsch.*, 606 U.S. 656 (2025).

## IV.  THE PRIVACY ACT BARS PLAINTIFFS' CLAIMS.

### A.  The APA does not provide injunctive relief for Privacy Act violations.

The D.C. Circuit has held that under § 552a(g)(1)(D), "authorizes entry of injunctive relief in only two specific situations" not present here. *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988). Every court in this District to confront the question has held that the Privacy Act's "comprehensive and detailed" remedial scheme, *FAA v. Cooper*, 566 U.S. 284, 287 (2012), forecloses end-runs through generic APA claims. *See, e.g.*, *Westcott v. McHugh*, 39 F. Supp. 3d 21, 32–33 (D.D.C. 2014).

### B.  Plaintiffs are not "individuals" entitled to Privacy Act relief.

Section 552a(g)(1) creates a private right of action only for "individual[s]," defined as "a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2). The LWV plaintiffs are organizations. EPIC is an organization. The voter-declarants are not parties. The Complaint, by Plaintiffs' own design, includes no individual plaintiffs. Plaintiffs cannot evade the statutory limitation by relabeling Privacy Act claims as APA claims. *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983).

### C.  The notice-and-comment claim is moot.

DHS and SSA published modified SORNs in October and November 2025 and accepted more than 30,000 public comments. ECF 61 at ¶¶ 85, 93; *see* 90 Fed. Reg. 48,948 (Oct. 31, 2025);

11

90 Fed. Reg. 50,879 (Nov. 12, 2025). That is precisely what *LULAC II* held moots an identical Privacy Act notice-and-comment claim. 2026 WL 252420, at *53–54. Plaintiffs' attempted distinction—that they seek relief for an alleged "predetermination" to ignore comments—depends on conclusory allegations the Complaint does not plead and cannot defeat the presumption of regularity owed the administrative record. *Wages & White Lion Invs.*, 604 U.S. at 577.

## V.  ANY RELIEF MUST BE NARROW.

Plaintiffs concede that *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), limits the equitable injunctive relief available here. ECF 104 at 22. They argue only that *CASA* reserved the question whether the APA permits broader vacatur. *Id.* The Supreme Court did decline to resolve that question, *CASA*, 606 U.S. at 854 n.10, but the Court did not endorse Plaintiffs' position. Plaintiffs' proposed order goes far beyond vacatur. It would order DHS to "disabl[e] any functionality that allows SAVE users to conduct bulk searches," to rescind the DHS-SSA letter agreement, and to undertake other affirmative steps within fourteen days. ECF 66-12 at 1–2. Those are injunctions in everything but name. *CASA* forbids them. 606 U.S. at 854.

Plaintiffs' response to the *Florida v. DHS* settlement issue is that "Texas declined to join" the settlement. ECF 104 at 22. That is immaterial. The settlement binds DHS and obliges DHS to maintain certain SAVE functions for twenty years. Order, *Florida v. DHS*, No. 24-cv-509 (N.D. Fla. Dec. 1, 2025), ECF 31. An order from this Court vacating, setting aside, or enjoining the same SAVE functions would place DHS in the position of having to obey one court order while violating another. That is the conflict comity exists to prevent.

## **CONCLUSION**

The Court should grant Texas's motion and dismiss the First Amended and Supplemental Complaint.

Dated: May 15, 2026

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

*/s/ William D. Wassdorf*
WILLIAM D. WASSDORF
Tex. Bar No. 24103022
Associate Deputy Attorney General
for Civil Litigation
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, MC-009
Austin, Texas 78711-2548
Tel.: (512) 936-2266
will.wassdorf@oag.texas.gov

Counsel for Intervenor-Defendant
State of Texas

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2026, I electronically served the foregoing document using the CM/ECF system to all counsel of record.


*/s/ William D. Wassdorf*
WILLIAM D. WASSDORF

14