# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LEAGUE OF WOMEN VOTERS, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br><br><br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY, *et al.*,<br><br>        Defendants. | No. 1:25-cv-03501-SLS<br><br>**DECLARATION OF BRIAN J.**<br>**BRODERICK** |

I, Brian J. Broderick, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Acting Chief of the Verification Division at the U.S. Citizenship and Immigration Services ("USCIS") within the Department of Homeland Security ("DHS").  In this capacity, I am responsible for overseeing the administration of the Systematic Alien Verification for Entitlements (SAVE) program. I make this declaration based on my personal knowledge and information made available to me in the course of my official duties.

2. I submit this declaration in support of Defendants' Motion for Stay Pending Appeal of the Court's June 22, 2026, Memorandum Opinion and Order (the "Order") vacating the 2025 SAVE and SSA system modifications and related System of Records Notices (SORNs).

3. The Court's Order requires DHS to immediately set aside the 2025 modifications to the SAVE system and the associated SORN.

**Disruption of Critical Federal and State Operations**

4. The SAVE system is a critical tool used by federal, state, tribal, and local government agencies to verify citizenship and immigration status for a wide range of lawful purposes,

including eligibility for public benefits, licenses, and voter registration and list maintenance.  The 2025 modifications were implemented to address the needs expressed by federal, state, and local agencies for a system that is accessible based on the data available to user agencies, and that provides accurate, consistent, and efficient verification.

5.  Immediate vacatur of the 2025 SAVE modifications severely disrupts ongoing operations. Federal, state, and local agencies rely on the vacated SAVE system to process more than a million verification requests daily. Abruptly reverting to the pre-2025 system creates confusion, delays, and potential gaps in service, undermining the agency's ability to fulfill its statutory obligations under 8 U.S.C.§§ 1373 and 1644, which require the agency to ensure that federal, state, and local agencies have access to citizenship and immigration status information when needed.

6.  In response to recent statutory requirements, such as H.R. 1, Pub. L. No 119-21, and Executive Orders 14159 and 14218, multiple federal agencies have submitted over 298 million verification requests through SAVE, mostly using a combination of the SSNs and the bulk upload tool.  For example, the Department of Transportation recently published a Final Rule entitled *Restoring Integrity to the Issuance on Non-Domiciled Commercial Drivers Licenses (CDL)*, 91 Fed. Reg. 7044 (Feb. 13, 2026), which requires states to query the SAVE system to verify status prior to issuing a CDL.

7.  Pursuant to the SAVE enhancements, states and federal agencies have implemented legislative and regulatory changes that rely on the availability of capabilities affected by the Court's Order. For example, Housing and Urban Development (HUD) has proposed to use SAVE for primary verification of U.S. citizenship or immigration status for all applicants of certain housing programs, and not just those with an immigration history. *See Housing and Community Development Act of 1980: Verification of Eligible Status,* 91 Fed. Reg. 8151 (Feb. 20, 2026). Similarly, several states—including Iowa, Wyoming, Louisiana, and Indiana—now use SAVE not only to determine the status of aliens but also to verify the citizenship of natural born U.S. citizens and to initiate eligibility

determinations for public benefits using Social Security Numbers (SSNs).  Additionally, states such as Iowa, Utah, Ohio, Mississippi, and Wyoming have enacted legislation requiring the use of SAVE for regular maintenance of voter registration lists.

8.  Another harm resulting from immediate vacatur of the 2025 SAVE modifications is the agency's reduced ability to identify and address gaps in its own data. For example, individuals who acquire or derive U.S. citizenship—such as through a court process without filing an N-600 with USCIS—may have no citizenship record in DHS systems, even though other agencies like the Department of State (DOS) or the Social Security Administration (SSA) maintain more current or complete status information. The enhanced SAVE system's integration with DOS and SSA records allows DHS to cross-reference and supplement its own records, helping to fill these gaps and provide more comprehensive status verification. The loss of this capability limits SAVE's accessibility for partner agencies and increases the risk that individuals' citizenship or immigration status cannot be fully verified, potentially affecting benefit eligibility.

**Harm to Intergovernmental Agreements and Public Trust**

9.  DHS has entered into numerous Memoranda of Agreement (MOAs) and Information Sharing Agreements (ISAs) with federal, state, and local agencies. In addition, a recent settlement agreement with the States of Florida, Ohio, Indiana, and Iowa specifically requires DHS to maintain and provide enhanced SAVE system capabilities, such as bulk upload and timely verification using SSNs and other enumerators.  The immediate effect of the Court's Order prevents DHS from fulfilling certain contractual and settlement obligations and damages longstanding intergovernmental relationships. Failure to fulfill the settlement terms due to the Court's Order exposes DHS to breach of contract claims and renewed litigation.

**Resource and Logistical Burdens**

10. Reverting to the pre-2025 SAVE system presents significant technical and operational challenges. While DHS has already complied with the Court's Order by removing user access to features described in the December 2025 SORN, the transition requires ongoing maintenance and enhancement of the underlying IT infrastructure, including critical coding updates and security protections. To preserve technical capabilities and institutional resources, DHS must maintain the enhanced codebase in parallel throughout the appeals process. This dual-track approach prevents costly code divergence and safeguards the technical investments, institutional knowledge, and funding allocated to enhance SAVE. Without this parallel maintenance, DHS risks capability loss and the need for costly redevelopment. Additionally, features such as the bulk upload capability must be operationally maintained during this interim period, even if the feature remains inaccessible to SAVE users. This maintenance posture ensures continuity of service and protects the substantial government investment in SAVE enhancement.

**National Security and Election Integrity Risks**

11. The SAVE system plays a critical role in supporting national security and safeguarding the integrity of federal and state programs. The agency's current inability to utilize the enhanced SAVE system introduces significant vulnerabilities into our national security posture. Gaps in identity and status verification could be exploited by individuals seeking to fraudulently obtain government benefits, access sensitive government functions—such as employment in government positions, entry to secure facilities, or obtaining government-issued licenses and credentials—or otherwise engage in malicious activity. Additionally, the enhanced SAVE system serves as an important deterrent to voter registration fraud. Weakening these verification capabilities may embolden bad actors to attempt to register or vote unlawfully, knowing that the likelihood of detection and prevention is reduced.

- 4 -

12. Multiple states—including Iowa, Utah, Ohio, Mississippi, and Wyoming—have passed legislation that depends on the availability of the enhanced SAVE service to periodically verify their voter lists. Since May 2025, SAVE has verified more than 65 million voters across 26 states as U.S. citizens, while identifying 28,635 potential non-U.S. citizens on state voter lists, who were referred back to the states for further investigation. The inability to use this service inflicts harms that are particularly urgent given the upcoming midterm elections, when accurate and timely voter eligibility verification is essential. A stay is necessary to prevent irreparable harm while the agency pursues appellate review of the complex statutory and regulatory issues at play. Absent a stay, the agency and the public will suffer harms that cannot be remedied by a later court order.

13. The SAVE program must continue to fulfill its obligations to verify citizenship and immigration status at the request of government agencies determining eligibility for public benefits, licenses, and voting, and for other purposes authorized by law. In the absence of the enhancements to the SAVE program, the SAVE process requires more time-consuming manual work for Status Verification Officers, is less exhaustive in its search of responsive federal records establishing citizenship or immigration status, and is able to verify the citizenship or immigration status of significantly fewer individuals.

14. For all these reasons, I respectfully submit that immediate and irreparable harm to the agency and the public interest will result if the Court's Order is not stayed pending appeal.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 1st day of July 2026 at Camp Springs, Maryland

BRIAN J BRODERICK    Digitally signed by
BRIAN J BRODERICK
Date: 2026.07.01
17:41:22 -04'00'

Brian J. Broderick
(Acting) Chief, Verification Division
U.S. Citizenship and Immigration Services
Department of Homeland Security