# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LEAGUE OF WOMEN VOTERS, *et al.*,

$\qquad$ *Plaintiffs,*

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

$\qquad$ *Defendants.*

Case No. 1:25-cv-03501-SLS

**BRIEF OF ARIZONA SENATE PRESIDENT WARREN PETERSEN
AND ARIZONA SPEAKER OF THE HOUSE OF REPRESENTATIVES
STEVE MONTENEGRO AS AMICI CURIAE IN SUPPORT OF
DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

S. Lee Whitesell (TX Bar No. 24093356)
Fusion Law, PLLC
7600 N. 15th St., Suite 150
Phoenix, AZ. 85020
(480) 624-5648
slw@fusion.law

*Counsel for Amici Curiae*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTEREST OF AMICI CURIAE ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.      States have an important interest in maintaining public confidence in elections ........... 2

    II.     A stay would provide States the consistency needed to maintain public confidence in election procedures—especially because elections already are underway. ................... 4

CONCLUSION ...................................................................................................................... 7

## TABLE OF AUTHORITIES

**Cases**

*Bond v. United States*,
564 U.S. 211 (2011)................................................................................................ 4

*Burson v. Freeman*,
504 U.S. 191 (1992)................................................................................................ 3

*Carson v. Simon*,
978 F.3d 1051 (8th Cir. 2020) ............................................................................... 5

*Crawford v. Marion County Election Board*,
553 U.S. 181 (2008)............................................................................................ 3, 4

*Democratic National Committee v. Republican National Committee*,
141 S. Ct. 28 (2020)................................................................................................ 7

*Gregory v. Ashcroft*,
501 U.S. 452 (1991)................................................................................................ 4

*League of United Latin American Citizens v. Executive Office of the President*,
780 F. Supp. 3d 135 (D.D.C. 2025)........................................................................ 6

*Maine v. Taylor*,
477 U.S. 131 (1986)................................................................................................ 4

*Mi Familia Vota v. Fontes*,
129 F.4th 691 (9th Cir. 2025) ................................................................................ 1

*Purcell v. Gonzalez*,
549 U.S. 1 (2006)................................................................................................ 2, 6

*Storer v. Brown*,
415 U.S. 724 (1974)................................................................................................ 3

*Tennessee Conference of the National Association for the
Advancement of Colored People v. Lee*,
105 F.4th 888 (6th Cir. 2024) ................................................................................ 7

**Statutes**

Ariz. Rev. Stat. § 1-504 .......................................................................................... 2

Ariz. Rev. Stat. § 16-121.01 ................................................................................... 1

**Other Authorities**

*2026 State Primary Elections*, Vote 411, https://www.vote411.org/primaries2026 (last visited
Jul. 3, 2026) ........................................................................................................... 6

Cameron Smith, *New Mississippi laws bring teacher raises and voter verification changes*,
WJTV (July 1, 2026, at 8:02 CDT), https://www.wjtv.com/news/politics/mississippi-
politics/new-mississippi-laws-bring-teacher-raises-and-voter-verification-changes/ ............... 6

Emergency Motion to Enforce Settlement Agreement, *Florida v. DHS*, No. 3:24-cv-00509, Doc. 32 (N.D. Fla. June 30, 2026) .................................................................... 5

Joseph K. Giddens, *Yavapai County Board of Supervisors vote 4-1 to verify voter data with DHS*, Sedona Red Rock News (Mar. 13, 2026), https://www.redrocknews.com/2026/03/13/yavapai-county-board-of-supervisors-vote-4-1-to-verify-voter-data-with-dhs/ ...................................... 2

Jude Joffe-Block & Miles Parks, *33 million voters have been run through a Trump administration citizenship check*, npr (Sept. 11, 2025, at 1:37 ET), https://www.npr.org/2025/09/10/nx-s1-5477367/save-election-citizenship-data-trump............ 6

Katie King, et al., *Election Legislation Trends to Watch in the Coming Months*, NCSL (Mar. 30, 2026), https://www.ncsl.org/state-legislatures-news/details/election-legislation-trends-to-watch-in-the-coming-months.................................................................................................... 5

Manuelita Beck, *Maricopa County signed agreement with DHS to check voters' citizenship, documents show*, ABC 15 (May 13, 2026, at 8:22 MST), https://www.abc15.com/news/politics/maricopa-county-signed-agreement-with-dhs-to-check-voters-citizenship-documents-show.................................................................................... 2

NCSL Staff, *Can States and the Feds Strike a Balance on Election Roles?*, NCSL (Nov. 11, 2025), https://www.ncsl.org/state-legislatures-news/details/can-states-and-the-feds-strike-a-balance-on-election-roles.................................................................................................... 3

Pew Rsch. Ctr., *Confidence in voting access and integrity; expectations for whether and when the election results will be clear* (Oct. 24, 2024), https://www.pewresearch.org/politics/2024/10/24/confidence-in-voting-access-and-integrity-expectations-for-whether-and-when-the-election-results-will-be-clear/ .................................... 3

Reply in Support of Emergency Motion to Enforce Settlement Agreement, *Florida v. DHS*, No. 3:24-cv-00509, Doc. 43 (N.D. Fla. July 3, 2026) .................................................................. 5

Travis N. Taylor, *September 2024 Election Integrity Poll Summary*, Ctr. for Excellence in Polling (Sep. 13, 2024), https://excellenceinpolling.com/poll/september-2024-election-integrity-poll-summary/ .................................................................................................................. 3

Wesley Muller, *Louisiana adopts stricter voter ID rules that suffrage advocates call unneeded*, Louisiana Illuminator (June 10, 2026, at 5:00 MST), https://lailluminator.com/2026/06/10/louisiana-voter-id/........................................................ 6

**Rules**

Ariz. House of Reps. Rule 4(K)............................................................................................ 1

Ariz. State Senate Rule 2(N)................................................................................................ 1

**Constitutional Provisions**

Ariz. Const. art. IV, pt. 2, § 8.............................................................................................. 1

## INTEREST OF AMICI CURIAE[1]

Amici Curiae Warren Petersen—in his capacity as President of the Arizona Senate—and Steve Montenegro—in his capacity as Speaker of the Arizona House of Representatives (together, the "Legislative Leaders")—respectfully submit this brief as amici curiae in support of Defendants' Motion for Stay Pending Appeal (Doc. 116). The Legislative Leaders file this brief in their official capacities as the presiding officers of their respective chambers. *See* Ariz. Const. art. IV, pt. 2, § 8; Ariz. State Senate Rule 2(N); Ariz. House of Reps. Rule 4(K).

The Legislative Leaders' interests here are twofold. First, the Legislative Leaders have an interest in maintaining public confidence in Arizona elections. This interest includes ensuring that federalism functions properly and that federal courts fully understand state laws that affect elections. As their voters' representatives, state legislators like the Legislative Leaders devote significant time and resources to proposing, revising, and enacting election-related legislation to guide state officials as they endeavor to run fair and smooth elections. When those laws and related processes are upended, voter confidence is shaken, and the States' interests in maintaining that confidence is frustrated.

Second, the Legislative Leaders also have an interest in avoiding changes to election processes during election season. Like many States, Arizona has incorporated the federal Systematic Alien Verification for Entitlements (SAVE) system into various aspects of its election-related laws, as well as into other areas of law. *See, e.g.*, Ariz. Rev. Stat. § 16-121.01(D) (requiring election officials to use SAVE for certain voter registration procedures), *distinct but related provisions held invalid by Mi Familia Vota v. Fontes*, 129 F.4th 691, 732 (9th Cir. 2025), *cert.*

---

[1] Pursuant to LCvR 7(o) and FRAP 29(a)(4)(E), no party or party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person—other than the amici curiae, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

*granted sub nom. Republican Nat'l Comm. v. Mi Familia Vota*, No. 25-1017 (U.S. June 29, 2026); *see also* Ariz. Rev. Stat. § 1-504 (statute requiring local officials to use SAVE for benefit inquiries; statute adopted by majority of state voters after legislative referral). And some Arizona election officials have contracted with DHS regarding SAVE's updated features that are the subject of this case.[2] Currently, Arizona is deep in the throes of its primary election, with early voting having already begun. Arizona election officials are focused on ensuring that the elections run smoothly. Making changes to an important election-integrity system at this late stage in the election season creates unnecessary confusion for election officials and the public.

Because of their unique insight into the practical reality of the issues presented here, the Legislative Leaders submit this brief in support of Defendants' Motion to Stay Pending Appeal to argue that the public interest weighs in favor of maintaining stable election-related processes during election season.

## ARGUMENT

### I. States have an important interest in maintaining public confidence in elections.

There is no question that upholding public confidence in election processes is an important state interest. The United States Supreme Court has continuously recognized as much. In *Purcell v. Gonzalez*, the Court said that "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." 549 U.S. 1, 4 (2006). And in *Crawford v. Marion County Election Board*, the Court confirmed that while States indeed have an interest in

---

[2] *See, e.g.*, Joseph K. Giddens, *Yavapai County Board of Supervisors vote 4-1 to verify voter data with DHS*, Sedona Red Rock News (Mar. 13, 2026), https://www.redrocknews.com/2026/03/13/yavapai-county-board-of-supervisors-vote-4-1-to-verify-voter-data-with-dhs/; Manuelita Beck, *Maricopa County signed agreement with DHS to check voters' citizenship, documents show*, ABC 15 (May 13, 2026, at 8:22 MST), https://www.abc15.com/news/politics/maricopa-county-signed-agreement-with-dhs-to-check-voters-citizenship-documents-show.

preventing voter fraud, States also have an independent interest in "public confidence in the integrity of the electoral process." 553 U.S. 181, 197 (2008); *see also Burson v. Freeman*, 504 U.S. 191, 199 (1992) (recognizing that "a State has a compelling interest in protecting voters from confusion").

It's no surprise then that election-related legislation is a top priority for many state legislatures. Indeed, "there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). The National Conference of State Legislators (NCSL) reported that, in 2025, state legislators introduced over 3,000 election-administration related bills.[3] Legislatures around the country, including in Arizona, have assembled legislative committees tasked specifically with reviewing election-related bills, listening to expert and public testimony, and revising and refining those bills throughout the legislative process to best meet the needs of their States and citizenries—unsurprising, given that polls show that safeguarding elections is a top concern amongst voters.[4]

When state legislatures enact these laws, they expect them to be followed. That is a key aspect of federalism. Federalism allows local lawmakers to "be more sensitive to the diverse needs of a heterogenous society;" it "increases opportunity for citizen involvement in democratic

---

[3] NCSL Staff, *Can States and the Feds Strike a Balance on Election Roles?*, NCSL (Nov. 11, 2025), https://www.ncsl.org/state-legislatures-news/details/can-states-and-the-feds-strike-a-balance-on-election-roles.

[4] *See* Travis N. Taylor, *September 2024 Election Integrity Poll Summary*, Ctr. for Excellence in Polling (Sep. 13, 2024), https://excellenceinpolling.com/poll/september-2024-election-integrity-poll-summary/ ("[A]n overwhelming majority (86%) of voters are concerned with safeguarding American elections."); Pew Rsch. Ctr., *Confidence in voting access and integrity; expectations for whether and when the election results will be clear* (Oct. 24, 2024), https://www.pewresearch.org/politics/2024/10/24/confidence-in-voting-access-and-integrity-expectations-for-whether-and-when-the-election-results-will-be-clear/.

processes;" it "allows for more innovation and experimentation in government;" and it "makes government more responsive by putting the States in competition for a mobile citizenry." *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991). Federalism also "allows States to respond, through the enactment of positive law, to the initiative of those who seek a voice in shaping the destiny of their own times without having to rely solely upon the political processes that control a remote central power." *Bond v. United States*, 564 U.S. 211, 221–22 (2011). So when a State is prevented from acting on or enforcing duly enacted laws, the State's "legitimate interest in the continued enforceability of its own statutes" is frustrated, *see Maine v. Taylor*, 477 U.S. 131, 137 (1986), as is the State's interest in securing "public confidence in the integrity of the electoral process," *Crawford*, 553 U.S. at 197.

## II.    A stay would provide States the consistency needed to maintain public confidence in election procedures—especially because elections already are underway.

The Court should grant a stay here because elections are already underway. And the public interest favors maintaining existing election-related processes and systems for States while the appeal proceeds. As Defendants have emphasized, "[m]any state and local agencies rely on the modified SAVE system to maintain accurate voter-registration lists and to verify eligibility for public benefits," and "[p]rior to the Court's order, the modified SAVE system processed over one million status-verification requests each day." Doc. 116-1 at 2, 12. According to a declaration submitted by Defendants, "states such as Iowa, Utah, Ohio, Mississippi, and Wyoming have enacted legislation requiring the use of SAVE for regular maintenance of voter registration lists." Doc 116-2 at 3. The NCSL reported in March of this year that "[a]t least 10 states statutorily authorize or require voter list comparison with the [SAVE] database … , and an additional 15

4

states without direct statutory authorization currently use the system."[5] Additionally, many state legislators have considered bills that would increase the States' use of the SAVE system.[6]

The current litigation between Florida, Indiana, Iowa, and Ohio and DHS further demonstrates how States have incorporated SAVE into state laws that will be frustrated without a stay. *See* Emergency Motion to Enforce Settlement Agreement, *Florida v. DHS*, No. 3:24-cv-00509, Doc. 32 at 8–9 (N.D. Fla. June 30, 2026); Reply in Support of Emergency Motion to Enforce Settlement Agreement, *Florida v. DHS*, No. 3:24-cv-00509, Doc. 43 at 2 (N.D. Fla. July 3, 2026). Florida stated just recently that this Court's injunction has affected it so that it can no longer "identify potential noncitizens as accurately, efficiently, and timely to perform the daily duty of eligibility list maintenance that Florida law requires even through an election cycle and to ensure that only eligible registered voters who are U.S. citizens are casting votes in our elections." *See* Emergency Motion at 9 (quotation marks removed).

If States have relied on the SAVE system to perform election-related functions, then a stay surely favors the public interest. *See Carson v. Simon*, 978 F.3d 1051, 1061 (8th Cir. 2020) (stating that the "public interest" was "served by maintaining the ability to enforce the law adopted by the" Minnesota State Legislature "and in upholding the exclusive authority vested in the" state legislature "under the Electors Clause of the United States Constitution"). Enjoining a widely used system in the middle of election season harms public confidence in elections. News and media coverage of the extended use of the SAVE database for voter-roll maintenance has been extensive,

---

[5] Katie King, et al., *Election Legislation Trends to Watch in the Coming Months*, NCSL (Mar. 30, 2026), https://www.ncsl.org/state-legislatures-news/details/election-legislation-trends-to-watch-in-the-coming-months.
[6] *Id.*

appearing in major national forums.[7] Likewise, local media outlets have reported on States' use of the system and legislative efforts at incorporating it into state law.[8]

Enjoining use of SAVE's new features now—when numerous States already have started primary elections or are on the eve of their primary elections[9]—creates exactly the kind of scenario that should give the Court pause. Principles underlying the Supreme Court's holding in *Purcell* have application here. In *Purcell*, the Supreme Court said that "[c]ourt orders affecting elections, *especially conflicting orders*, can … result in voter confusion and consequent incentive to remain away from the polls," noting that this risk only increases "[a]s an election draws closer." 549 U.S. at 4–5 (emphasis added). As such, courts enjoining election laws should "'consider the importance of preserving the status quo' in the realm of elections to avoid voter confusion"; "consider the fairness of [an] injunction with regard to timing," avoiding "intervening 'in the period close to an election'"; and consider interests of federalism. *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 220 (D.D.C. 2025).

Even if this Court did not enjoin an election law per se, these principles should apply as the Court considers Defendants' stay motion. While election officials across the country are currently administering elections, any change to election-related processes that States have relied

---

[7] *See, e.g.*, Jude Joffe-Block & Miles Parks, *33 million voters have been run through a Trump administration citizenship check*, npr (Sept. 11, 2025, at 1:37 ET), https://www.npr.org/2025/09/10/nx-s1-5477367/save-election-citizenship-data-trump.

[8] *See, e.g.*, Cameron Smith, *New Mississippi laws bring teacher raises and voter verification changes*, WJTV (July 1, 2026, at 8:02 CDT), https://www.wjtv.com/news/politics/mississippi-politics/new-mississippi-laws-bring-teacher-raises-and-voter-verification-changes/ (discussing Mississippi's new law using SAVE); Wesley Muller, *Louisiana adopts stricter voter ID rules that suffrage advocates call unneeded*, Louisiana Illuminator (June 10, 2026, at 5:00 MST), https://lailluminator.com/2026/06/10/louisiana-voter-id/ (discussing Louisiana's new law using SAVE).

[9] *See 2026 State Primary Elections*, Vote 411, https://www.vote411.org/primaries2026 (last visited Jul. 3, 2026).

on imposes an extra administrative burden on those local officials. *See Tenn. Conf. of the Nat'l Ass'n for the Advancement of Colored People v. Lee*, 105 F.4th 888, 897 (6th Cir. 2024) (recognizing the concerns that underlie *Purcell* as "the risk of voter confusion and the unfairness of unexpected administrative burdens").

<p style="text-align:center">*          *          *</p>

"It is one thing for state legislatures to alter their own election rules in the late innings and to bear the responsibility for any unintended consequences," but "[i]t is quite another thing for a federal district court to swoop in and alter carefully considered and democratically enacted state election rules when an election is imminent." *Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay). This Court's order altered an election-related process in the middle of elections around the Nation and thus harms the States' interest in maintaining voters' confidence in the electoral process. The public interest here favors granting a stay while the Court's opinion is on appeal.

<p style="text-align:center">**CONCLUSION**</p>

For the foregoing reasons, amici curiae, the Arizona Legislative Leaders, respectfully request that this Court grant Defendant's Motion for a Stay Pending Appeal.

Date: July 6, 2026

<div style="margin-left:40%">
Respectfully submitted,

/s/ *S. Lee Whitesell*
S. Lee Whitesell (TX Bar No. 24093356)
Fusion Law, PLLC
7600 N. 15th St., Suite 150
Phoenix, AZ. 85020
(480) 624-5648
slw@fusion.law

*Counsel for Amici Curiae*
</div>

<p style="text-align:center">7</p>

## CERTIFICATE OF COMPLIANCE

Pursuant to LCvR 7(o), I hereby certify that this brief conforms to the requirements of LCvR 5.4, complies with the requirements set forth in Fed. R. App. P. 29(a)(4), and does not exceed 25 pages in length.

DATED this 6th day of July, 2026.

/s/ S. Lee Whitsell
S. Lee Whitsell (TX Bar No. 24093356)