**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**STATE OF FLORIDA**, et al.,

    **Plaintiffs**,

v.                         **Case No. 3:24-cv-509-TKW-HTC**

**UNITED STATES DEPARTMENT**
**OF HOMELAND SECURITY** and
**MARKWAYNE MULLIN**,[1] in his
official capacity as Secretary of the
Department of Homeland Security,

    **Defendants**.

_____/

## **ORDER**

This case is before the Court based on Plaintiffs' emergency motion to enforce settlement agreement (Doc. 32). Upon due consideration of the motion, the declarations submitted by Plaintiffs (Docs. 32-1, 32-2, 34-1), Defendants' response in opposition (Doc. 42) and its attachment, Plaintiffs' reply (Doc. 43), and the amicus brief filed by the League of Women Voters and the Electronic Privacy Information Center (Doc. 37-1), the Court finds that the motion is due to be granted for the reasons that follow.

---

[1] Markwayne Mullin, the current Secretary of the Department of Homeland Security, is substituted for the former Secretary, Kristi Noem, under Fed. R. Civ. P. 25(d), and the Clerk shall update CM/ECF to reflect this change.

## Background

The State of Florida filed this action in October 2024. The operative amended complaint[2] sought declaratory and injunctive relief regarding Defendants' use of the Systematic Alien Verification for Entitlements (SAVE) system to comply with DHS's obligation under 8 U.S.C. §1373(c)[3] to verify individuals' immigration status upon request of a state. Most pertinent to the issue framed by Plaintiffs' motion, the amended complaint alleged that the SAVE system was an "inadequate tool" to verify immigration status because it required a "unique immigration identifier" to run an inquiry and it could not run an inquiry using a Social Security number (SSN), driver's license number, or other similar identifier.

The case was resolved by a settlement agreement executed by the parties in November 2025. The agreement required the parties to cooperate on "improving and modernizing" the SAVE system, and among other things, it required Defendants to ensure that the system had the capability to (1) "[i]ntegrat[e] with the Social Security Administration to allow searches with full [SSNs] to be used as a non-DHS enumerator"; (2) "[i]ntegrat[e] with the Social Security Administration to allow

---

[2] The amended complaint was filed in November 2025 and added three additional states (Ohio, Iowa, and Indiana) as plaintiffs, but the substantive claims in the amended complaint were the same as those in the original complaint.

[3] This statute provides: "The Immigration and Naturalization Service shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."

searches with last-four-digits SSNs to be used as a non-DHS enumerator"; and (3) "process bulk upload verification requests so that users of the system will not need to input verification requests one-by-one."

On December 1, 2025, the Court entered an order dismissing this case pursuant to Plaintiffs' motion under Fed. R. Civ. P. 41(a)(2). The dismissal order expressly "approved" the settlement agreement and "incorporated [it] by reference" into the order. Doc. 31 at 1–2. And, in the dismissal order, the Court retained jurisdiction for a period of 20 years "for the purpose of enforcement of the parties' settlement agreement." *Id.* at 1.

From December 2025 to June 2026, Defendants performed their obligations under the settlement agreement. Most pertinent to the issues framed by Plaintiffs' motion, Defendants ensured that the SAVE system had the bulk-upload and SSN-search functions.

On June 23, 2026, Defendants disabled the bulk-upload functionality and SSN-search feature of the SAVE system after a district judge in the District of Columbia (Judge Sparkle L. Sooknanan) entered an order vacating those modifications to the system. *See League of Women Voters v. DHS*, --- F. Supp. 3d ---, 2026 WL 1784297 (D.D.C. June 22, 2026). Most pertinent to the issues framed by Plaintiffs' motion, Judge Sooknanan's order concluded that the modifications to the SAVE system violated the Social Security Act and the Privacy Act.

On June 30, Plaintiffs filed an emergency motion to enforce the settlement agreement. The motion was accompanied by declarations from state officials in Florida, Iowa, and Ohio, explaining the harm that those states are suffering as a result of their inability to utilize the disabled features of the SAVE system. That harm includes Iowa's inability to comply with a state law requiring verification of citizenship of professional license applicants and Florida and Ohio's inability to comply with state laws requiring verification of the citizenship of registered voters.

The motion was briefed on an expedited basis.[4] The parties did not request a hearing on the motion, and the Court sees no need for one because there are no facts in dispute, the briefing adequately frames the issues in dispute, and time is of the essence in ruling on the motion. Thus, the motion is now ripe for a ruling.

## Analysis

The Court has jurisdiction to consider Plaintiffs' motion to enforce the settlement agreement because the parties agreed in the settlement agreement that "that they will be subject to the jurisdiction of the Court in the event of a violation of this Settlement Agreement." Additionally, the Court expressly reserved jurisdiction in the dismissal order for a period of 20 years for the purpose of enforcing the settlement agreement.

---

[4] In addition to the parties' filings, the Court received an amicus brief from the plaintiffs in Judge Sooknanan's case—the League of Women Voters and the Electronic Privacy Information Center.

4

The Court did not overlook Defendants' argument that the Court does not have jurisdiction to enforce the settlement agreement because the Tucker Act grants the Court of Federal Claims exclusive jurisdiction over actions founded on contracts with the United States. That argument is frivolous because the settlement agreement is more than a contract since the Court approved it and incorporated it by reference into the dismissal order—making the settlement agreement the "functional equivalent of … a consent decree." *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002). Thus, a breach of the settlement agreement is a violation of a court order—which the Court unquestionably has jurisdiction to address. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

Defendants are plainly in violation of the settlement agreement because it is undisputed that they disabled the bulk-upload and SSN-search features that the agreement expressly required the SAVE system to have. The fact that Defendants disabled those features to comply with Judge Sooknanan's order does not change the fact that they violated the agreement.

The Court did not overlook the amici's argument (echoed by Defendants) that Defendants are not in violation of the settlement agreement because Judge Sooknanan found the modifications to the SAVE system unlawful and the agreement stated that "[n]othing contained in this Settlement Agreement shall impose on Defendants any duty, obligation, or requirement, the performance of which would

5

be inconsistent with … any federal statute in effect at the time of such performance." The problem with that argument is that the Court implicitly found that the modifications were not inconsistent with federal law when it approved the settlement agreement.[5] The fact that another district judge subsequently concluded otherwise does not somehow undo that implicit determination.

The Court also did not overlook Defendants' request to defer consideration of Plaintiffs' motion until Judge Sooknanan (or, if necessary, the D.C. Circuit) rules on their request to stay Judge Sooknanan's order pending appeal. The Court sees no reason to do so because there is no guarantee that a stay will be granted and Plaintiffs submitted unrebutted evidence showing that they are suffering real and concrete harm every day that passes without the disabled features of the SAVE system. Moreover, the principles of comity that might otherwise weigh in favor of deferring consideration of the motion to enforce until Judge Sooknanan and/or the D.C. Circuit determines whether to enter a stay are not entitled to much weight here because if Judge Sooknanan had deferred to this Court's implicit determination that the

---

[5] Admittedly, the Court did not undertake an extensive assessment of the legality of the features that the settlement agreement required the SAVE system to include when it approved the agreement, but it would not have approved the agreement if it had any concern that those features were unlawful. And now having reviewed Judge Sooknanan's order and the counter-arguments in Defendants' response (and their briefing in Judge Sooknanan's case), the Court makes explicit what was implicit in the approval of the settlement agreement—the modifications to the SAVE system, including the bulk-upload and SSN-search features, do not violate the Social Security Act or the Privacy Act.

modifications to the SAVE system were lawful, the parties (and the courts) would not be in the current predicament.[6]

The Court understands that this puts Defendants in a bind because they are subject to two contradictory orders—one from this Court requiring them to include certain features in the SAVE system and one from Judge Sooknanan prohibiting them from doing so. One of the orders has to give, and not surprisingly, the Court is not persuaded by Defendants' (and the amici's) arguments that its order is the one that should give.

This Court is not bound by Judge Sooknanan's order, and with all due respect, the Court disagrees with the conclusions in that order. For example, with respect to the Social Security Act, even though 42 U.S.C. §405(c)(2)(C)(viii)(I) seemingly precludes the Social Security Administration (SSA) from disclosing SSNs to anyone, that statute does not preclude SSA from doing so in the immigration context because SSNs can provide information about citizenship and 8 U.S.C. §1373(a) expressly provides that "[n]otwithstanding any other provision of Federal … law, a

---

[6] The Court does not fault Judge Sooknanan for not deferring to this Court's implicit determination that the modified SAVE system was lawful because she is no more bound by this Court's rulings than this Court is bound by hers. Indeed, the Court has similarly rejected an agency's reliance on another court's consent judgment as an excuse for not complying with the law as this Court interpreted it. *See Florida v. United States*, 660 F. Supp. 3d 1239, 1267 (N.D. Fla. 2023). That said, it is unfortunate that the parties to this case did not bring Judge Sooknanan's case to this Court's attention before it approved the settlement agreement and/or the parties to Judge Sooknanan's case did not bring this Court's order approving the settlement agreement to her attention sooner than they did so the conundrum that now exists might have been avoided through principles of comity.

Federal … entity or official may not … in any way restrict[] any government entity or official from sending to … [Defendants] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." (emphasis added).[7] Moreover, with respect to the Privacy Act, the modifications to the SAVE system plainly fall within the Act's "routine use" exception in 5 U.S.C. §552a(a)(7), (b)(3), because using SSNs to verify the identity of potential non-citizens is not incompatible with the purpose of SSNs (e.g., "to establish the age, citizenship, or alien status and true identity" of individuals, *see* 42 U.S.C. §405(c)(2)(B)(ii)), and it is undisputed that Defendants published notice of the use of SSNs as part of the modified SAVE system in advance of the order approving the settlement agreement requiring integration of the SSN-search feature.[8]

The Court also did not overlook Defendants' argument that the balance of harms weighs against enforcing the settlement agreement. However, that argument is not persuasive because it focuses only on the potential harm to Defendants in having to comply with two conflicting orders rather than the harm caused to

---

[7] The Court did not overlook Judge Sooknanan's discussion of §1373, but that discussion was not persuasive because it focused more on the perceived purpose of the statute rather than its plain language explicitly overriding any other provision of federal law that would have otherwise prohibited the sharing of information regarding citizenship.

[8] Also, although not argued by the parties, it would seem that the Court's approval of the settlement agreement requiring the SAVE system to be integrated with the Social Security Administration to allow searches with full or partial SSNs implicates the exception in §552a(b)(12) that authorizes disclosure of records "pursuant to the order of a court of competent jurisdiction."

Plaintiffs by Defendants disabling the bulk-upload and SSN-search features required by the settlement agreement.  Moreover, in this Court's view, the interests that the amici were purportedly vindicating in Judge Sooknanan's case are far outweighed by Plaintiffs' sovereign interests in ensuring that non-citizens are not on their voter rolls, that unlawfully present aliens are not receiving professional licenses, etc.

Finally, the Court did not overlook amici's argument that the Court cannot grant Plaintiffs the relief they are seeking in their motion because the agency whose cooperation is necessary for the SSN feature is not a party to this case but is a party to Judge Sooknanan's case.  That argument is not without some merit, but it does not persuade the Court that it should not order Defendants to comply with their obligations under the settlement agreement and leave it to them to figure out how best to fulfill those obligations.

### Conclusion

In sum, for the reasons stated above, it is **ORDERED** that:

1.     Plaintiffs' emergency motion to enforce settlement agreement (Doc. 32) is **GRANTED**, and Defendants shall immediately comply with the court-approved settlement agreement in this case by reinstating Plaintiffs' access to the bulk-upload and SSN-search features in the SAVE system.

2.    The parties shall file a status report 7 days from the date of this Order regarding Defendants' compliance with this Order and the status of the proceedings in Judge Sooknanan's case and/or the D.C. Circuit.

**DONE and ORDERED** this 7th day of July, 2026.

_____
**T. KENT WETHERELL, II
UNITED STATES DISTRICT JUDGE**

10