**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS, *et al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,<br><br>    *Defendants*. | Case No. 1:25-cv-3501-SLS<br><br>**HEARING REQUESTED** |

**PLAINTIFFS' MOTION TO ENFORCE SUMMARY JUDGMENT ORDER**

**TABLE OF CONTENTS**

BACKGROUND ...........................................................................................................................1

    A.     Procedural History in this Court ...............................................................................1

    B.     Procedural History in *Florida v. DHS* ....................................................................2

    C.     Notice of Noncompliance and Subsequent Developments......................................5

LEGAL STANDARD..................................................................................................................6

ARGUMENT................................................................................................................................8

    A.     This Court may enforce its judgment as to all Defendants because it is
undisputed that they are in violation........................................................................8

    B.     In the alternative, this Court may enforce its judgment against just the
SSA Defendants .......................................................................................................9

CONCLUSION...........................................................................................................................12

Pursuant to this Court's inherent authority to enforce its orders, Plaintiffs respectfully move to enforce the Court's June 22, 2026 order granting summary judgment in this matter (ECF 111, 112).[1] The Court's order was clear and unambiguous, and Defendants have acknowledged in court filings that they are bound by it. Defendants are, nonetheless, reinstating access to the modified SAVE system, which this Court vacated as unlawful, for use by the four plaintiff states with which Defendant Department of Homeland Security ("DHS") entered voluntarily into a settlement agreement last year in connection with *Florida v. DHS*, No. 24-cv-00509 (N.D. Fla.). Defendants' actions to reinstate access to the modified SAVE system this Court vacated are undisputed; Defendants placed them on the record themselves. *See* ECF 125, 126, 127. These actions also unquestionably violate this Court's summary judgment order. Plaintiffs accordingly move the Court to enforce its summary judgment order and enter the attached proposed order.[2]

## BACKGROUND

### A. Procedural History in this Court

This Court entered summary judgment in this case on June 22, 2026, setting aside and vacating the SAVE "modified system" as well as the updated System of Record Notices ("SORNs") for both the SAVE system and the Social Security Administration's ("SSA") Master Files of Social Security Number ("SSN") Holders and SSN Applications that added new routine uses purporting to cover the use of SSA data for citizenship and immigration verification purposes.

---

[1] Plaintiffs maintain that contempt may also be an appropriate remedy. *See Am. Rivers v. U.S. Army Corps of Eng'rs*, 274 F. Supp. 2d 62 (D.D.C. 2003). They reserve the right to initiate contempt proceedings and any other measures that may be appropriate following the Court's resolution of this motion.

[2] Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel conferred with Defendants' counsel about this motion, and Defendants' counsel stated that Defendants oppose the motion. Plaintiffs also request, pursuant to Local Civil Rule 7(f), that the Court proceed with a hearing on this motion tentatively scheduled for July 20 at 10 a.m. *See LWV,* Minute Order (July 11, 2026).

*See League of Women Voters, et al. v. DHS, et al.*, Case No. 25-cv-3501 (D.D.C.) ("*LWV*"), ECF 111, 112. Since then, Defendants have filed a Notice of Appeal, *LWV*, ECF 113, and sought a stay of the judgment pending appeal, *LWV*, ECF 116, which this Court denied on July 8, 2026, *LWV*, ECF 123, 124.

Defendants then immediately moved to stay the judgment pending appeal and for an administrative stay from the Court of Appeals, on July 8, 2026, in which they requested a ruling by July 16, 2026 and stated they intended to seek relief from the Supreme Court of the United States if they did not receive a stay. *See League of Women Voters, et al. v. DHS, et al.*, Case No. 26-5243 (D.C. Cir.) ("*LWV* Appeal"), Doc. No. 2182390 (July 8, 2026), at 2. The Court of Appeals set a briefing schedule without granting the request for administrative stay and with briefing closing on July 20, 2026. Per Curiam Order, *LWV* Appeal, Doc. No. 2182598 (July 9, 2026).

**B.  Procedural History in *Florida v. DHS***

The modified SAVE system was also at issue in *Florida v. DHS*, No. 24-cv-00509 (N.D. Fla.) ("*Florida*"). In that case, originally filed in 2024, the State of Florida and Florida Department of State sued DHS and the DHS Secretary—but not SSA—for failing to respond to inquiries regarding voter verification in a timely manner, arguing that they should be required to respond using "any and all reasonably available information in Defendants' custody." *See Florida*, ECF 1 ¶¶ 46, 52, 61. The federal agency defendants in the *Florida* matter never answered the *Florida* complaint, filing unopposed or consent extensions to their answer deadline on December 9, 2024, February 5, 2025, May 15, 2025, July 15, 2025, and September 11, 2025. *Florida*, ECF 8, 15, 19, 23, 25.

On November 28, 2025—the day after Thanksgiving, months after the modified SAVE system had been implemented, just eleven days after this Court stated that it "doubt[ed] the lawfulness of the Government's actions," *LWV*, ECF 55 at 1, and just four days after this Court

granted Plaintiffs leave to file a supplemental complaint, *LWV*, Minute Order (Nov. 24, 2025) —

the *Florida* plaintiffs and the *Florida* defendant, DHS, entered multiple filings in the case. First,

the *Florida* plaintiffs filed an amended complaint adding Iowa, Indiana, and Ohio as Plaintiffs.

*Florida*, ECF 29. Later the same day, the *Florida* plaintiffs filed a motion to dismiss and attached

an already-executed settlement agreement. *Florida*, ECF 30. Although the motion contained no

argument and did not ask the Court to make any substantive rulings, the unopposed proposed order

included—unusually—language specifying that the court would "retain[] jurisdiction over this

case for a period of twenty years … for the purpose of enforcement of the parties' settlement

agreement," which was to be "approved by and incorporated by reference into" the order. *Florida*,

ECF 30-2 at 1–2.

Notably, the *Florida* settlement agreement was the first time that the bulk upload function

and transfer of SSA records were specifically placed at issue in *Florida*. *See Florida*, ECF 30-1

¶ 10. The docket in the *Florida* case does not reflect either party notifying the Northern District of

Florida of pending litigation in this case, where the bulk upload function and SSA data integration

were already plainly at issue, or this Court's November 17, 2025, decision calling the SAVE

modifications' legality into question, despite DHS being a defendant in both cases.

The next business day, the *Florida* court entered the parties' proposed order as a consent

decree approving the settlement agreement, incorporating it by reference, and dismissing the case

with prejudice. *Florida*, ECF 31. Before that consent decree, the parties' only actions in *Florida*

were the complaint, the government's unopposed motions for extensions of time, and the plaintiffs'

motion to dismiss with an executed settlement—there had been no adversarial litigation,

production of an administrative record, or dispositive motion briefing.

Nor did the consent decree purport to resolve the legality of the SAVE modifications. Instead, the settlement agreement incorporated in the consent decree notably states, "[n]othing contained in this Settlement Agreement shall impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, or with *any federal statute* in effect at the time of such performance." *Florida*, ECF 30-1 ¶ 17 (emphasis added).

On June 30, 2026, eight days after this Court vacated the modified SAVE system, the *Florida* plaintiffs filed a motion to enforce their settlement agreement. They asked the *Florida* court to order DHS—but not SSA, which was not a party to that case—to restore the modified SAVE system despite this Court's June 22 order. *Florida*, ECF 32. Later that same day, the *Florida* court ordered the defendants to show cause as to why it should not restore the vacated functionalities of the SAVE system as to the *Florida* plaintiffs. *Florida*, ECF 33. On July 2, the DHS defendants opposed the *Florida* plaintiffs' motion to enforce, taking the position that compliance with this Court's vacatur order did not breach the *Florida* settlement agreement and that the government "remain[s] bound by that order." *Florida*, ECF 42 at 11. It made two primary arguments: (1) that the language in the settlement agreement carving out any requirement inconsistent with law rendered the settlement agreement unenforceable, in light of this Court's final judgment finding the system unlawful, and (2) that the plaintiffs were not entitled to specific performance on the settlement under the Tucker Act. *Florida*, ECF 42.

The *Florida* court entered an order granting the motion to enforce on July 7, 2026. *Florida*, ECF 45. This order directed DHS to "immediately comply with the court-approved settlement agreement in this case by reinstating Plaintiffs' access to the bulk-upload and SSN-search features in the SAVE system." *Id.* at 9. DHS has not, as of this filing, noticed an appeal of that order.

4

C. **Notice of Noncompliance and Subsequent Developments**

The same day the *Florida* court entered its order enforcing the settlement, Defendants filed a Notice informing this Court that they were in the process of restoring the *Florida* plaintiffs' access to the bulk-upload and SSN-search functionalities of the modified SAVE system, in order to comply with the *Florida* court's order. *LWV*, ECF 125. They provided additional details in the Court-ordered Joint Status Report on July 10, explaining that Defendants DHS and SSA were in the process of developing a "technical workaround" to allow access to these functionalities for the four *Florida* plaintiff states while continuing to block other SAVE users from accessing these functionalities. *LWV*, ECF 126 at 1–2. This process involves the *Florida* plaintiffs submitting their query lists to DHS, which will run the searches itself via the modified SAVE system and provide the results back to the requesting party via secure file transfer. Broderick Decl., *LWV*, ECF 126-2 ¶ 12. DHS first restored access to the bulk-upload and SSN-search capabilities of SAVE as to DHS-held data, which was available to be queried as of the afternoon of July 9. *See LWV*, ECF 126-1 at 1.

That afternoon, Defendant SSA also reactivated the Application Programming Interface ("API") that allows for data sharing between DHS and SSA in connection with the modified SAVE system. Steffensen Decl., *LWV*, ECF 126-3 ¶ 4. Defendants advised the *Florida* plaintiffs on July 9 that SSA data was not yet available through the "technical workaround" but that they hoped to have it available by the end of that week. *LWV*, ECF 126-1 at 1. Defendants confirmed on July 14 that "[t]he Social Security Administration is now making its data available to the Department of Homeland Security for purposes of responding to SAVE requests, though solely with respect to the Plaintiff States in this case." *Florida*, ECF 53, at ¶ 4. As a result, as Defendants acknowledged in the Joint Status Report, they have restored or are restoring access for the *Florida* plaintiffs to the (vacated) modified SAVE system, including access to SSA data, and are confirming SSNs

5

"beyond those collected through the 'very limited circumstances' recognized in the Notice of Modified System of Records, 85 Fed. Reg. 31,798, 31,801 (May 27, 2020)." *LWV*, ECF 126 at 3–4.

The parties met and conferred, pursuant to the Court's orders, on July 10 and 13. Plaintiffs proposed to Defendants that the SSA Defendants modify their plan to violate the vacatur order and abstain from reconnecting or otherwise making available SSA data (including, but not limited to, the NUMIDENT system) to the four *Florida* plaintiff states. Plaintiffs informed the Federal Defendants that if they voluntarily took this course of action, Plaintiffs would be willing to forgo— for the time being—seeking an order to enforce the D.D.C. judgment or pursuing contempt proceedings, unless or until other material facts, government actions, or judicial decisions alter the situation. Defendants declined this proposal.

## LEGAL STANDARD

This Court has the authority to enter an order interpreting and enforcing its judgment, directing further relief as necessary to effectuate that judgment, and holding noncompliant parties in contempt, where warranted. "District courts have the authority to enforce the terms of their mandates." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) (citing *The Fund for Animals v. Norton*, 390 F. Supp. 2d 12, 15 (D.D.C. 2005)). "Such a motion should be utilized to compel compliance with a prior decision, especially in cases of willful or deliberate violation of a court order." *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004) (quoting *Nat. Res. Def. Council, Inc. v. Texaco Ref. & Mktg., Inc.*, 20 F. Supp. 700, 707 (D. Del. 1998)). "The exercise of this authority is 'particularly appropriate' when a case returns to a court on a motion to enforce the terms of its mandate to an administrative agency." *Flaherty*, 17 F. Supp. 3d at 55 (*quoting Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984)). "Without jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be

incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.'" *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (quoting *Riggs v. Johnson Cnty.*, 73 U.S. 166, 187 (1867)).

This authority includes "'the power to construe and interpret the language of the judgment' in order to determine the totality of the relief the Court originally granted, and to which Plaintiff was originally entitled." *Yanofsky v. Dep't of Com.*, No. 16–cv–951, 2019 WL 5110502, at *2 (D.D.C. Apr. 25, 2019) (Jackson, J.) (quoting *Heartland Hosp.*, 328 F. Supp. 2d at 11–12). Indeed, "a motion to enforce is 'the usual method for requesting a court to interpret its own judgment' and to compel compliance if necessary in light of that interpretation." *Anglers Conservation Network v. Ross*, 387 F. Supp. 3d 87, 93 (D.D.C. 2019) (quoting *Heartland Hosp.*, 328 F. Supp. 2d at 11). In deciding motions to enforce a judgment, the party subject to the judgment bears the burden of demonstrating compliance. *Allen v. D.C.*, No. 00–cv–591, 2016 WL 10653672, at *2 (D.D.C. June 1, 2016).

The Court has jurisdiction to enforce its judgment notwithstanding the pending appeal. "Although a district court is generally 'without jurisdiction to alter a judgment of its own while an appeal therefrom is ongoing,' the judgment itself 'remains operative' unless stayed and the district court 'retain[s]' its 'powers to enforce its unstayed judgment . . . throughout the pendancy [*sic*] of the appeal.'" *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Rubio*, 824 F. Supp. 3d 64, 73 (D.D.C. 2026) (quoting *Deering Milliken, Inc. v. FTC*, 647 F.2d 1124, 1128–29 (D.C. Cir. 1978)).

## ARGUMENT

**A. This Court may enforce its judgment as to all Defendants because it is undisputed that they are in violation.**

It is undisputed that Defendants have resumed operation of the modified SAVE system for the purpose of responding to queries from the four *Florida* plaintiff states. This Court's summary judgment order vacated the modified SAVE system and the associated SORNs from SSA and DHS that purported to authorize the data-sharing required for the operation of that system. *See LWV,* ECF 111, 112. Defendants are, therefore, violating the plain terms of that order by continuing to use the vacated system and associated SORNs, and they acknowledge as much in their filings. *See LWV,* ECF 125 at 1 (stating their actions were intended to comply with all relevant orders "to the greatest extent possible."); *LWV*, ECF 126 at 3 ("Defendants are now in the process of restoring some of the previously vacated SAVE functionality with respect to the *Florida* Plaintiffs."). In the face of undisputed noncompliance, this Court may—and, indeed, should—enter an order enforcing the terms of its judgment. *See Potter v. D.C.*, 126 F.4th 720, 724 (D.C. Cir. 2025) (holding that, in civil contempt proceedings, "district courts do not have discretion to overlook a proven violation, absent a recognized defense."); *Afghan & Iraqi Allies*, 824 F. Supp. 3d at 73 ("A motion to enforce should be granted if a 'prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it.'" (quoting *Flaherty*, 17 F. Supp. 3d at 55)).

Here, Defendants' only asserted defense is that they are subject to a conflicting order in *Florida*. Even assuming for the sake of argument that there is an unavoidable conflict between the two orders, this is not an excuse for noncompliance with this Court's order, nor would it even be a defense to civil contempt. While any conflict between this Court's judgment and the *Florida* order presents a complicated situation and might bear upon the appropriateness of sanctions in later proceedings, it does not change the Defendants' obligations under this Court's order or justify

denial of a motion to enforce it. Good faith is not a defense to civil contempt, *Potter*, 126 F.4th at 724, much less to a motion to enforce.

Moreover, Defendants' course of conduct in the litigation demonstrates that they alone are responsible for any conflict and have not exhausted other means of avoiding it. As this Court discussed in the Memorandum Opinion denying Defendants' request for a stay pending appeal, the DHS Defendants themselves agreed to the terms of the settlement agreement in *Florida*, although SSA was not a defendant in that case, this case was already pending, and they failed to notify the *Florida* court of the existence of this case. *See LWV*, ECF 123 at 20; *Florida*, ECF 45 at 7 n.6. The DHS Defendants have not appealed the July 7 *Florida* order enforcing the settlement agreement nor sought reconsideration or a stay of the decision. Under similar facts, courts have found contempt. *See Am. Rivers*, 274 F. Supp. 2d at 67–69 (agency did not make a good faith attempt to comply with a court order, where it failed to inform the court that entered the conflicting order about the potential conflict, sought a stay of the order pending appeal, and delayed seeking relief from the conflicting order).

The undisputed facts in the record demonstrate that Defendants are in violation of this Court's summary judgment order, which warrants enforcement of that order.

**B. In the alternative, this Court may enforce its judgment against just the SSA Defendants.**

As Defendants have now conceded, SSA "is not a signatory to the settlement agreement in Florida. SSA is likewise not a party in *Florida* and thus is not directly bound in the way that a party would be (*e.g.*, for purposes of contempt) by any of the Court's orders in that case." *LWV,* ECF 127 at 1. Because SSA *is* bound by this Court's judgment, *LWV* ECF 111, 112, is presently violating that judgment, *LWV*, ECF 126 at 3; *LWV*, ECF 126-3 ¶ 4; and is *not* bound by the *Florida*

enforcement order, *LWV*, ECF 127 at 1, that alone is sufficient grounds for entering an order enforcing the Court's judgment against SSA.[3]

Defendants nonetheless claim that, "as a practical matter, [the *Florida*] injunction necessarily requires SSA's participation for DHS to comply fully," *id.*, because, in their view, it is "not possible for DHS to reinstate [the *Florida*] Plaintiffs' access to the features in question without SSA's cooperation." *Id.* (citation modified). But for two reasons, that is no reason for the Court to forgo enforcing its judgment here.

First, because Plaintiffs are moving to enforce the judgment they have secured, once Plaintiffs establish SSA is not complying, the burden shifts to SSA. *Allen*, 2016 WL 10653672, at *2. Defendants have not identified any authority excusing a party from complying with a judgment because of its collateral consequences—and Plaintiffs are not aware of any such rule. That alone is dispositive. SSA is not free to ignore the only court order that binds it——this Court's vacatur order—to rescue DHS from (in the words of this Court and the *Florida* court) the "conundrum" DHS itself created. *See LWV*, ECF 123 at 20, 22; *Florida*, ECF 45 at 7, n.6. DHS alone, which settled the *Florida* case while defending this case, must own the consequences in *Florida* of any tension between SSA's obligations under this Court's judgment and DHS's obligations under the *Florida* enforcement order. This Court has already made as much clear: DHS "entered into a consent decree with non-adverse parties with full recognition that adverse third parties—*i.e.*, the

---

[3] Defendants try to gloss over SSA's non-party status in *Florida* by stressing "the desire of the '*United States* to comply with all outstanding court orders'" and claiming the "*United States* cannot comply with the *Florida* injunction." ECF 127 at 2 (emphasis added). But Defendants' repeated references to the "United States" are misleading because, as they go on to acknowledge, the United States is *not* a defendant in either this case or *Florida*; only agencies and their principal officers are named defendants. *See id.* The United States cannot be subject to conflicting court orders in two cases in which it is not a party. That the United States "could have" been named as a defendant in either case, *id.* (citing 5 U.S.C. § 703), is wholly irrelevant.

10

Plaintiffs in this suit—were challenging the legality of the very terms that they were agreeing to." *LWV*, ECF 123 at 20. And the *Florida* court likewise agreed that the current problem is DHS's "to figure out"—not that of the courts. *Florida*, ECF 45 at 9. Just as the *Florida* "consent decree has no bearing on this Court's order with respect to SSA," *LWV*, ECF 123 at 22, the *Florida* order enforcing that consent decree has no bearing on SSA's obligations here.

Second, if, pursuant to the Court's judgment, SSA ceases to provide DHS access to NUMIDENT and DHS in turn cannot comply with any NUMIDENT-related requirement included in the *Florida* consent decree, the law should shield DHS from being held in contempt of the Florida judgment. "Inability to comply [with a court order] is a complete defense." *Newman v. Graddick*, 740 F.2d 1513, 1528 (11th Cir. 1984); *accord United States v. Rylander*, 460 U.S. 752, 757 (1983) ("In a civil contempt proceeding such as this, of course, a defendant may assert a *present* inability to comply with the order in question."); *Tinsley v. Mitchell*, 804 F.2d 1254, 1256 (D.C. Cir. 1986) (per curiam) ("It is well established that impossibility of performance constitutes a defense to a charge of contempt."). "'Inability' as a defense to contempt, does not mean that compliance must be totally impossible. Instead, the inability that will absolve a party from being held in contempt requires only that the noncomplying party has made 'in good faith all reasonable efforts to comply' with the terms of a court order." *Chairs v. Burgess*, 143 F.3d 1432, 1437 (11th Cir. 1998) (quoting *Citronelle–Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991)). As described above, DHS has gone well beyond reasonable efforts to comply with the *Florida* enforcement order,[4] and DHS cannot, nor would it be reasonable to, force SSA to disobey

---

[4] The same cannot be said for Defendants' inadequate efforts to comply with this Court's judgment. *See supra* Section A.

this Court's judgment. Under the relevant precedents, DHS should not be subject to contempt in *Florida*, *especially* if this Court enters an order enforcing its judgment against SSA.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Plaintiffs' Motion to Enforce and enter an order directing all Defendants to comply with this Court's Order granting summary judgment. *LWV*, ECF 111, 112. In the alternative, as discussed in Section B of the Argument, Plaintiffs respectfully request that the Court enter an order directing the SSA Defendants to comply with the Order, *LWV*, ECF 111, 112, by immediately terminating any mechanism by which the modified SAVE system conducts searches of SSA databases, including but not limited to the API that provides a connection between SSA databases and the modified SAVE system between SSA databases and the modified SAVE system.

Dated: July 14, 2026

*/s/ Johanna M. Hickman*

Aman T. George (D.C. Bar No. 1028446)
Jennifer Fountain Connolly (D.C. Bar No. 1019148)
Ronald A. Fein (D.D.C. Bar No. MA0012)
Sophie R. Gelber (D.C. Bar No. 9003827)
Johanna M. Hickman (D.C. Bar No. 981770)
Mark B. Samburg (D.C. Bar No. 1018533)
Robin Thurston (D.C. Bar No. 1531399)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
ageorge@democracyforward.org
jconnolly@democracyforward.org
rfein@democracyforward.org
sgelber@democracyforward.org
hhickman@democracyforward.org
msamburg@democracyforward.org
rthurston@democracyforward.org

*Counsel for All Plaintiffs*

Nikhel S. Sus (D.C. Bar No. 1017937)
John B. Hill (N.Y. Bar No. 5505508)*
Lauren C. Bingham (D.C. Bar No. 90043462)*
CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565
nsus@citizensforethics.org
jhill@citizensforethics.org
lbingham@citizensforethics.org

*Counsel for All Plaintiffs*

Respectfully submitted,

Jon Sherman (D.C. Bar No. 998271)*
Michelle Kanter Cohen (D.C. Bar No. 989164)
Emily Davis (D.C. Bar No. 90020129)
FAIR ELECTIONS CENTER
1629 K St. NW, Suite 300
Washington, DC 20006
(202) 331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
edavis@fairelectionscenter.org

*Counsel for All Plaintiffs*

John L. Davisson (D.C. Bar No. 1531914)
Enid Zhou (D.C. Bar No. 1632392)
Abigail Kunkler (D.C. Bar No. 90030868)
Mayu Tobin-Miyaji (D.C. Bar No. 90033340)
ELECTRONIC PRIVACY INFORMATION CENTER
1519 New Hampshire Ave. NW
Washington, DC 20036
(202) 483-1140
davisson@epic.org
zhou@epic.org
kunkler@epic.org

*Counsel for Plaintiff Electronic Privacy Information Center*

* admitted pro hac vice

13