**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LEAGUE OF WOMEN VOTERS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-3501-SLS <br><br> **HEARING REQUESTED** |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION TO ENFORCE SUMMARY JUDGMENT ORDER**

**TABLE OF CONTENTS**

I.     Defendants are violating the Court's judgment vacating modified SAVE, its features, and the related SORNS. ................................................................................................ 2

       A.     Defendants adopt an unreasonably constrained view of vacatur. ........................... 2

       B.     The Court's judgment vacating the modified SAVE system prohibited the actions Defendants are taking now for Florida, Indiana, Iowa, and Ohio. .......................... 4

       C.     Defendants' reliance on *Neguse v. ICE* is unavailing. ........................................... 6

       D.     Defendants are wrong to equate Plaintiffs' interpretation of the Court's judgment vacating modified SAVE to a permanent injunction. ............................................ 7

II.    The Court should enforce its judgment to remedy Defendants' noncompliance. ............... 8

       A.     The Court should enforce its judgment against SSA. ............................................. 8

       B.     The Court should enforce its judgment against DHS. .......................................... 10

III.   Comity does not justify excusing Defendants' noncompliance. ....................................... 12

IV.    A narrowed scope of relief is not justified here. ............................................................... 16

Plaintiffs move to enforce this Court's summary judgment order based on undisputed facts. Faced with two competing court orders, Defendants have chosen to comply with one, while violating the other.

Defendants' actions do not align with their acknowledgement that "this Court's order of vacatur was a legally binding order that deprived Defendants of the legal authority to continue the modified SAVE system." *See* Defs' Opp'n to Ps' Mot. to Enforce, *League of Women Voters, et al. v. DHS, et al.*, Case No. 25-cv-3501 (D.D.C.) ("*LWV*"), ECF 129 ("Opp.") at 5. Rather, as set forth below, both DHS and SSA are violating the Court's summary judgment order vacating modified SAVE, its features, and the related SORNs. Any conflict between the summary judgment order and the purportedly conflicting order enforcing the settlement agreement in *Florida v. DHS*, No. 24-cv-00509 (N.D. Fla.) ("*Florida*") is of Defendants' own making. And despite the "difficult and complicated situation[,]" Opp. at 1, in which they find themselves, Defendants have neither pursued an appeal or other relief in *Florida* nor accepted Plaintiff's proposal for SSA—which is *not* subject to the conflicting *Florida* order—to abstain from reconnecting or otherwise making available SSA data to the four *Florida* plaintiff states.

An order enforcing this Court's summary judgment order is warranted and necessary to protect the interests Plaintiffs brought this case to vindicate. Defendants' erroneous and unsupported view of vacatur does not change the fact that vacatur applies nationwide and prospectively and the Court's summary judgment opinion made as much clear. And because the Defendants are violating the Court's vacatur, the Court can and should enforce its decision against both Defendants or, at a minimum, against SSA, which is not subject to any competing court order or obligation. Neither principles of comity nor limitations on the scope of equitable relief say otherwise.

The risks to voter data privacy and of improper disenfranchisement based on states' and DHS's own use of the faulty and unlawful modified SAVE system persist.[1] Defendants have acknowledged they have allowed four states to resume using the modified SAVE system that this Court vacated less than a month ago. This Court should take action to stop Defendants' ongoing violation of the final judgment entered in this case.

## I.    Defendants are violating the Court's judgment vacating modified SAVE, its features, and the related SORNS.

### A.  Defendants adopt an unreasonably constrained view of vacatur.

Defendants ignore that, when granting APA relief "to 'vacate,' means to 'annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to set aside.'" *Mobil Oil Corp. v. U.S. EPA.*, 35 F.3d 579, 584 (D.C. Cir. 1994) (quoting *Action on Smoking and Health v. CAB*, 713 F.2d 795, 798 (D.C. Cir. 1983)). Thus, by vacating DHS's and SSA's modifications to SAVE and the accompanying SORNs, the Court rendered the challenged agency actions "void." *Id.*; *see also Texas v. United States*, 126 F.4th 392, 418 (5th Cir. 2025) (stating same). It is like the modifications to SAVE never existed, because vacatur "retroactively undoes or expunges a past [agency] action." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021); *see also Am. Fed'n of Tchrs. v. Dep't of Educ.*, 796 F. Supp. 3d 66, 122 (D. Md. 2025) ("[V]acating a rule means that it is void, null, and nonexistent; the government cannot continue to enforce it,

---

[1] Indeed, in just the last 24 hours, (1) DHS released a document championing its efforts alongside DOJ to obtain state voter rolls and run them through the modified SAVE system, *Preventing Alien Voting*, DHS (July 16, 2026), available at https://www.whitehouse.gov/election-integrity/ (Exhibit A), and (2) DHS Secretary Markwayne Mullin threatened officials in states that "choose not to participate in the SAVE program" with possible "fines," "penalties," and "prison time" after a post-election review of "who voted" in upcoming midterm elections. DHS, *Secretary Mullin Delivers Remarks on President Trump's Update on Election Integrity Efforts*, at 15:29-16:19 (YouTube, July 17, 2026), https://www.youtube.com/watch?v=jjuVaRAEpe4.

implement it, or otherwise use it."). By, in their own words, "reinstating" modified SAVE's features, *LWV,* ECF 125, Defendants are plainly violating the Court's judgment.

Defendants cherry-pick authority to minimize the role and effect of the Court's judgment vacating modified SAVE and the SORNs. They assert that, "[a]s a general matter, '[v]acatur operates on the legal status of a rule, causing the rule to lose binding force,'" and thus suggest vacatur does not impose any prospective duty. Opp. at 7 (quoting John Harrison, *Vacatur of Rules Under the Administrative Procedure Act*, 40 YALE J. REG. 119, 119 (2023)). But Defendants' own authority shows that the Court's judgment did not impose the toothless remedy Defendants portray vacatur to be. *See id.* at 7-8. Professor Harrison's next sentences, for example, explain that vacatur necessarily applies more broadly than injunctions: "[U]nlike injunctive relief, vacatur is inherently universal. An injunction can be limited to the defendant's actions concerning the plaintiff, and its preclusive effect can be limited to the relations between the parties. Vacatur, by contrast, eliminates a rule's binding force altogether." Harrison, *supra* at 119-20. That is particularly true after *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). *See*, *e.g.*, *Drs. for Am. v. Off. of Pers. Mgmt.*, 793 F. Supp. 3d 112, 148 n.17 (D.D.C. 2025).

Given vacatur's broad scope, Judge Cooper has emphasized that its "universal nature … means that after a court vacates an agency rule, the agency may not apply that rule *to anyone* in subsequent adjudicative decisions, even if those adjudications involve facts that predate the vacatur." *D.A.M. v. Barr*, 486 F. Supp. 3d 404, 415 (D.D.C. 2020); *see also Nat'l Fuel Gas Supply Corp. v. FERC*, 59 F.3d 1281, 1289 (D.C. Cir. 1995) ("Just as an Article III court may not issue an advisory decision, it may not issue a decision for less than all seasons, for some citizens and not others, as an administrator shall later decide."). Indeed, as Professor Harrison also underscores, "vacatur is a prospective remedy, which eliminates the binding effect of [administrative action]

3

for the future." Harrison, *supra* at 129. Judge Lamberth recently applied that very principle, holding that because "vacatur requires that the agency's forward-looking decisionmaking comply with the constitutional or statutory basis on which the court invalidated an agency action," agencies subject to a judgment of vacatur "remain under a continuing obligation to comply with the vacatur relief." *Abramowitz v. Lake*, No. 25-cv-887, 2026 WL 1652600, at \*5 (D.D.C. May 14, 2026) (citation modified); *see also Ctr. for Biological Diversity v. Zeldin*, 171 F.4th 356, 383 (D.C. Cir. 2026) (affirming prospective vacatur); *Cigar Ass'n of Am. v. FDA*, 132 F.4th 535, 542 (D.C. Cir. 2025) (same).

### B. The Court's judgment vacating the modified SAVE system prohibited the actions Defendants are taking now for Florida, Indiana, Iowa, and Ohio.

In light of their mistaken understanding about the breadth of vacatur, Defendants are plainly incorrect about the effect of the Court's judgment vacating modified SAVE. Take, for example, their statement that "this Court's order of vacatur ***was*** a legally binding order that depriv***ed*** Defendants of the legal authority to continue the modified SAVE system." Opp. at 5 (emphasis added). The Court's judgment remains legally binding and continues to deprive Defendants of the legal authority to use modified SAVE or the routine uses identified in the SORNs until they remedy the many legal flaws the Court identified.

Nor was the Court's decision ambiguous in establishing that the judgment applies universally and prospectively, because the judgment is applied to the agency action itself rather than any individual litigant. *See Corner Post, Inc. v. Bd. of Govs. of Fed. Rsrv. Sys.*, 603 U.S. 799, 838 (2024) (Kavanaugh, J., concurring). In the Court's analysis of standing, it stated that "[r]everting SAVE to its prior functionality before the recent changes—without the inaccurate SSA data labeling the Plaintiffs' members as non-citizens—would likely redress the Plaintiffs' harms. Their *future harms* from 'potential errors' would certainly be redressed." *LWV,* ECF 111

4

at 38 (emphasis added) (quoting *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014)). And as the Court also observed, this harm—and thus the remedy—spans nationally because "[m]embers of local and state Leagues of Women Voters are also members of the League of Women Voters." *Id.* at 23 n.4. Further, the Court's conclusions on the conditions precedent to Defendants reinstating the vacated modifications to SAVE in the future were unambiguous: "Since the Federal Defendants are unable to rely on 'belated justifications' to explain their failure to comply with the procedural requirements of the APA and Privacy Act, they must 'deal with the problem afresh' should they wish to implement any SAVE modifications not barred by the substantive provisions of the Privacy Act or Social Security." *Id.* at 63–64 (quoting *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 21, 23 (2020)). Since Defendants have not done any of those things, they violated the judgment by reinstating the vacated modifications to SAVE.

Defendants also fail in trying to make hay from the Court stating it was "re-establishing the status quo absent the unlawful agency action." Opp. at 7–8 (quoting *LWV,* ECF 111 at 74). That is because, as Defendants concede, the new status quo imposed by the Court must continue "unless and until (1) the government obtained relief on appeal, or (2) the government 'dealt with the problem afresh' by taking new agency action." Opp. at 8 (quoting *Regents of the Univ. of Cal.*, 591 U.S. at 21). Despite this concession, Defendants suggest that the *Florida* enforcement order somehow changed the status quo. *Id.* at 2, 7-8. But since the order was neither (1) relief on appeal nor (2) the government dealing with the problem afresh by taking new agency action, it did not establish a "new status quo" and has no bearing on Defendants' obligations under the judgment. *Contra id.*

Finally, Defendants' analogy about an intervening act of Congress changing the status quo, *see* Opp. at 8, only highlights the shortcomings in Defendants' argument. *See id.* Congress *could*

alter or eliminate at least the many statutory issues that required the Court to vacate modified SAVE in the first place (although not the procedural violations), since modified SAVE lacked statutory authority and violated numerous laws that Congress passed. *See LWV,* ECF 111 at 3. A court order enforcing a settlement, however, does no such thing; nor does it remedy the fact that there currently are no SORNs operative for modified SAVE. The *Florida* enforcement order, as a result, is immaterial to the status quo.

### C. Defendants' reliance on *Neguse v. ICE* is unavailing.

In *Neguse v. ICE*, No. 25-cv-2463, 2026 WL 137017 (D.D.C. Jan. 19, 2026), after the court issued a stay of DHS action under 5 U.S.C. § 705, the court declined to enforce that stay against a subsequent policy memo after determining that DHS had taken "a *new* agency action not subject to the Court's prior stay order." *Id.* at *1 (emphasis added). Two factors were key to the court's analysis: (1) the alleged "new" policy at-issue was not subject to the court's previous order because it "did not exist at the time that this Court issued the stay and . . . Plaintiffs' complaint did not challenge" the "new" policy, *id*. at *2 (quoting Order, *Asylum Seeker Advoc. Project v. USCIS*, No. 25-cv-3299 (D. Md. Jan. 13, 2026), ECF 70 at 1), and (2) the alleged "new" memorandum "differ[ed] facially from the one" that was stayed, *id.* Crucially, the court determined, the "new" policy memorandum's funding aspect (a central issue in the case) introduced new legal and factual issues by creating a *different policy* and agency action. *Id.*

That is obviously not the case here. The *Florida* court is enforcing obligations arising from a settlement agreement that pre-dates the Court's judgment vacating modified SAVE and that the Court expressly addressed in its summary judgment opinion. *LWV,* ECF 111 at 72-74. Moreover, the *Florida* order enforcing the settlement agreement explicitly reimposes the same obligations this Court vacated. *Compare Florida*, ECF 45 at 9 (DHS "shall immediately comply with the court-approved settlement agreement in this case by reinstating Plaintiffs' access to the bulk-upload and

6

SSN-search features in the SAVE system") *and LWV,* ECF 111 at 2 (describing features of modified SAVE). Indeed, DHS itself agrees it is "*reinstating*" the same "bulk-upload and SSN-search features" of modified SAVE that the Court already concluded were illegal. *LWV,* ECF 125 (emphasis added). Defendants reinstating modified SAVE is neither "new" as that word was used by the court in *Neguse,* nor is it a "second, later-in-time agency action that 'did not exist at the time [the court] issued the [order] and which Plaintiff's complaint did not challenge." Opp. at 9 (quoting Order, *Asylum Seeker Advoc. Project*, No. 25-cv-3299, ECF 70 at 1). Here, Defendants are reviving the identical agency action that was already vacated, raising the exact same legal and factual questions the Court already decided.

Second, as Defendants concede, *Neguse* involved an order staying agency action under 5 U.S.C. § 705, *not* a judgment vacating and setting aside agency action under 5 U.S.C. § 706(2). *See* Opp. at 10 n.3. A stay is necessarily time-limited, as it only applies "pending conclusion of the review proceedings." 5 U.S.C. § 705. Vacatur, as noted above, applies prospectively until the agency cures whatever made the action "unlawful." *See supra* § I.A; 5 U.S.C. § 706(2).

If Defendants are correct about their interpretation of vacatur and relief under § 706(2), it would mean that any time an agency action is vacated, the agency could recycle vacated unlawful actions immediately, without correcting any of the errors that led to its vacatur in the first place. Then, according to Defendants' view, the only way to challenge the "new" course of conduct would be to file new litigation—at which point the defendants could restart the cycle again ad nauseum. That is neither tenable nor the law.

### D. Defendants are wrong to equate Plaintiffs' interpretation of the Court's judgment vacating modified SAVE to a permanent injunction.

Plaintiffs' correct reading of the judgment vacating modified SAVE is consistent with the Court's summary judgment opinion and order. As discussed above, the Court made clear that the

vacatur decision reinstated the status quo ante by reimposing unmodified SAVE, unless and until Defendants comply with federal law, at which point they then could modify SAVE. *See supra* § I.B; *see also LWV,* ECF 111 at 74-75. Permanent injunctions, however, do not reinstate the status quo; they "alter the status quo." *Cent. Bank & Tr. Co. v. Nat'l Bank of Washington*, No. 1253-73, 1975 WL 21113, at *5 (D.D.C. Aug. 26, 1975); *see also* 43A C.J.S. Injunctions § 15 ("A permanent injunction alters the status quo by adjudicating rights between the interested parties."). If the Court had issued a permanent injunction, it would have prevented Defendants from taking specific actions, like adding particular functionality to the SAVE system, regardless of the process they followed. That is not the relief the Court ordered here.

## II.    The Court should enforce its judgment to remedy Defendants' noncompliance.

### A.  The Court should enforce its judgment against SSA.

Defendants again concede, as they must, that "SSA is 'not a party in *Florida* and thus is not directly bound in the way that a party would be (*e.g.*, for purposes of contempt) by any of the Court's orders in that case.'" Opp. at 12 (quoting *LWV,* ECF 127 at 1).[2] That alone is dispositive of whether the Court should enforce its judgment against SSA. Because as Plaintiffs stated in their motion to enforce—and Defendants do not refute anywhere in their opposition—(1) no authority excuses "a party from complying with a judgment because of its collateral consequences," Mot. to Enforce, *LWV*, ECF 128 ("Mot.") at 10, and (2) even if SSA's compliance with the Court's judgment means that DHS cannot fully comply with the *Florida* enforcement order, DHS then would have a defense to contempt in *Florida*. *See id.* at 11.

---

[2] That is true of both the enforcement order and the consent decree. *See Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986) ("[O]f course, a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree.).

Defendants' hypothetical, Opp. at 13, illustrates the point. The government analogizes to a court ordering DOJ to provide notices to undocumented immigrants in DHS custody and DHS "refusing" to do so on the basis that DHS was not named as a defendant. *See id.* That is not the case here, however. SSA is not unilaterally "refusing" to perform an otherwise lawful, ministerial task necessary for DHS to carry out its obligations under the settlement. Rather, SSA is legally unable to give DHS access to SSA data because SSA is subject to this Court's judgment as well as independent statutory obligations to safeguard Americans' social security records—and, as Defendants have conceded, it has *no* competing obligation to the *Florida* court. SSA data is not DHS's to give away.

Further, Defendants' citation to *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020), and invocation of the "unitary executive" theory does not move the needle. *Contra* Opp. at 12-13. As Plaintiffs' motion made clear, "the United States is *not* a defendant in either this case or *Florida*; only agencies and their principal officers are named defendants. The United States cannot be subject to conflicting court orders in two cases in which it is not a party." Mot. at 10 n.3. Nor have Plaintiffs sued the President; nor is there any order against the President that would even arguably flow to all subordinate portions of the Executive Branch. Under the APA, plaintiffs can sue agencies, and the relief flows against that agency. That is what happened here, and that is why SSA cannot shirk its obligation to honor this Court's order based on how the relief might affect DHS in a different case. As this Court explained in denying Defendants' stay motion, "[i]t is well established that a judgment in a suit against one federal agency is not 'binding' upon others— '[t]hey were not parties to the suit, and there is no reason they should be obliged to honor an

incidental legal determination the suit produced.'" *LWV,* ECF 123 at 22 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 (1992)).[3]

### B. The Court should enforce its judgment against DHS.

Although the situation that DHS finds itself in is different from that of SSA, the outcome should be no different. Defendants contend that DHS "is complying with this Court's order to the greatest extent possible." Opp. at 12. But that is *only* true of DHS's efforts to comply with the *Florida* enforcement order; it is *not* true with respect to this Court's judgment, as shown below:

---

[3] Indeed, the government regularly argues, and courts regularly find, that courts do not have jurisdiction to grant relief against agencies that have not been named by a plaintiff. *See*, *e.g.*, *Norris v. Salazar*, 885 F. Supp. 2d 402, 413 (D.D.C. 2012) ("the plaintiff's Amended Complaint [ ] fails to name the proper defendant and therefore should be dismissed for lack of subject-matter jurisdiction" when the plaintiff erroneously sued the Secretary of Interior rather than the Secretary of the Commission of Fine Arts); *Sedaghatdoust v. Blinken*, 735 F. Supp. 3d 1, 6 (D.D.C. 2024) (dismissing claims against incorrectly-named agency officials because the plaintiff's "injuries are neither traceable to [ ] nor remediable by" the named officials); *Kemp v. Lapin*, 04-cv-2197, 2005 WL 3276268, at *1 (D.D.C. Aug. 17, 2005) (dismissing action for lack of subject matter jurisdiction for failure to name proper agency defendant).

| **Steps taken by DHS to challenge the *LWV* judgment** | **Steps taken by DHS to challenge the *Florida* enforcement order** |
|---|---|
| 1. Filed Notice of Appeal. *LWV,* ECF 113 | |
| 2. Filed Motion for Stay Pending Appeal in District Court. *LWV,* ECF 116 | |
| 3. Filed Notice re Timing (if Necessary) of Intended Request for Relief from the D.C. Circuit. *LWV,* ECF 121 | |
| 4. Filed Emergency Motion for Immediate Administrative Stay and Stay Pending Appeal, in D.C. Circuit. *League of Women Voters v. DHS*, No. 26-5243, Doc. No. 2182390 | |
| 5. Stated intent to seek relief from Supreme Court if necessary. *See id.* at 2. | |
| 6. Filed Notice of Defendants' compliance with *Florida* order. *See LWV,* ECF 125. | |
| 7. Refused Plaintiffs' offer that if SSA Defendants modified their plan to violate the judgment and abstain from reconnecting or otherwise making available SSA data to *Florida* plaintiff states, Plaintiffs would forgo seeking an order to enforce the D.D.C. judgment or pursuing contempt proceedings. *See LWV,* ECF 126 at 7. | |

Likewise, DHS notified this Court about the *Florida* settlement agreement repeatedly before the Court's summary judgment order, *see LWV,* ECF 59; *id.,* ECF 77-1 at 7, 63, but never notified the *Florida* court of this litigation until after that court entered the settlement agreement, *Florida*, ECF 45 at 7 n.6, or indeed apparently until the *Florida* plaintiffs' motion to enforce the settlement agreement. This is not the sort of good faith conduct that excuses noncompliance, no matter how vehemently DHS may disagree with the Court's decision. *See Am. Rivers v. U.S. Army*

11

*Corps of Eng'rs*, 274 F. Supp. 2d 62, 67-68 (D.D.C. 2003) (agency did not make a good faith attempt to comply with a court order, where it failed to inform the court that entered the conflicting order about the potential conflict, sought a stay of the order pending appeal, and delayed seeking relief from the conflicting order).

**III.    Comity does not justify excusing Defendants' noncompliance.**

The principle of comity does not support denial of Plaintiffs' Motion. Defendants ask this Court to defer to the Florida enforcement order to avoid placing Defendants in the position of being subject to two conflicting orders, Opp. at 14, but this argument fundamentally misapprehends Plaintiffs' Motion. Defendants are already subject to two orders they view as conflicting: this Court's summary judgment order, *LWV*, ECF 111, 112 (entered June 22, 2026), and the Florida enforcement order, *Florida*, ECF 45 (entered July 7, 2026). Plaintiffs do not seek a new injunction that would bind Defendants with new substantive requirements or dictate disobedience of the *Florida* enforcement order. Rather, they seek enforcement of this Court's original summary judgment order, as entered on June 22, 2026, *see LWV*, ECF 111, 112, which pre-dates the *Florida* enforcement order, continues to apply to Defendants, *see supra* § I.B, and—unlike the *Florida* enforcement order—reflects a full adjudication on the merits of the relevant factual and legal questions.

Comity would likewise not have supported this Court deferring to the *Florida* case, at the time the summary judgment order was entered, because there was no competing merits decision in the *Florida* case. Prior to this Court's June 22, 2026 order, the only existing legal obligation that bound the Defendants with respect to the modified SAVE system was a settlement agreement, incorporated by reference into an order. *See Florida*, ECF 30-2 at 1-2. Although the *Florida* court characterized it as the "'functional equivalent of . . . a consent decree,'" *Florida*, ECF 45 at 5 (quoting *Am. Disability Ass'n v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002)), Defendants

12

maintain that it is merely a settlement agreement, *see* Opp. at 5 n.1. Regardless, for the reasons the Court detailed in its order denying a stay pending appeal, the Florida order incorporating the settlement cannot be understood as an adjudication of the modified SAVE system's legality. *See LWV,* ECF 123 at 18-22. Even a court-approved consent decree does not adjudicate and grant relief based upon the merits of the claims pled in the case; "it is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree." *City of Cleveland*, 478 U.S. at 522.

The settlement agreement, moreover, did not even impose legal obligations that conflicted with this Court's summary judgment order, because—as Defendants themselves have argued—it contained express language stating that "[n]othing contained in this Settlement Agreement shall impose on Defendants any duty, obligation, or requirement, the performance of which would be inconsistent with the United States Constitution, or with *any federal statute* in effect at the time of such performance." *Florida*, ECF 30-1 ¶ 17 (emphasis added). Under that language, the Florida settlement agreement could not have required operation of the modified SAVE system because such operation was unlawful and, therefore, would not conflict with any ruling vacating modified SAVE as unlawful under federal law. *See LWV*, ECF 111, 112. Thus, even by their own account, Defendants did not face conflicting orders until the *Florida* enforcement order was entered. *See* Opp. at 5 n.1.[4] If Defendants disagree with the *Florida* order and believe it creates conflicting obligations for them, their remedy is simple: appeal.

---

[4] Defendants argue that Plaintiffs should have sought to intervene earlier in *Florida*, to ensure their interests were represented. Opp. at 17. However, until an actual conflict arose due to entry of the *Florida* enforcement order, intervention was not necessary. Defendants themselves acknowledge the critical change in legal consequences between *the settlement agreement* and *the July 7 order enforcing it*. *See* Opp. at 5 n.1. Even so, Plaintiffs LWV and EPIC submitted an amicus brief to ensure the *Florida* court was fully advised of the potential conflict posed by the Florida state plaintiffs' request for an enforcement order. *See Florida*, ECF 37-1, and the DHS Defendants in

13

The cases Defendants cite are inapposite and, in fact, illustrate the contrast between situations where deferral as a matter of comity is appropriate and the current dispute. In some cases, conflicts could be avoided by declining to adjudicate the merits. *See Common Cause v. Jud. Ethics Comm'n*, 473 F. Supp. 1251, 1253 (D.D.C. 1979) (court dismissed action rather than proceeding to adjudicate it on the merits, deferring to an earlier entered injunction from another court prohibiting the conduct at issue); *Carver v. Knox Cnty., Tenn.*, 887 F.2d 1287, 1293 (6th Cir. 1989) (court transferred claims to another district court to avoid piecemeal adjudication); *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*, 751 F.2d 721, 730-32 (5th Cir. 1985) (vacating preliminary injunction and remanding to stay, transfer, or dismiss in favor of a conflicting case); *Zambrana v. Califano*, 651 F.2d 842, 845 (2d Cir. 1981) (affirming dismissal in favor of earlier filed litigation); *Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir. 1976) (similar).

Here, this Court has already fully adjudicated the merits of this case (which was filed before, and challenged conduct predating, the *Florida* settlement), yet Defendants ask it to defer to a later-entered order enforcing a settlement agreement elsewhere. Even at an earlier stage of this case, such deference would not have been warranted. As discussed above, there were compelling reasons for this Court not to defer to a settlement or consent decree, which is all that was in place in *Florida*, at the time, and which expressly released DHS from any obligation later found to violate federal law. And an earlier adjudication on the *merits* of an issue should be given deference over a later one. *See Feller v. Brock*, 802 F.2d 722, 727-28 (4th Cir. 1986) (holding that district

---

*Florida* expressly noted their *agreement* with Plaintiffs' position that "the *League of Women Voters* Vacatur Order Requires Defendants to Disable" Modified SAVE, indicating that they were adequately representing Plaintiffs' interests in opposing the *Florida* plaintiffs' motion to enforce the settlement order. *LWV*, ECF 129-1 at 6. And after the *Florida* court entered its enforcement order, Plaintiffs LWV and EPIC promptly moved to intervene the next day to appeal that erroneous order, *Florida,* ECF 48. Regardless, Plaintiffs' intervention in the *Florida* case would not change the question at issue here—whether Defendants may violate *this* Court's vacatur order.

14

court abused its discretion by compelling a party to do something contradicting a preexisting permanent injunction entered by another court).

Other cases Defendants cite considered the principle of comity yet decided adjudication of the case was appropriate anyway. *See Florida v. HHS*, 19 F.4th 1271, 1285-86 (11th Cir. 2021) (holding that prudential concerns, including a consideration of comity, *supported* ruling on an issue, despite conflicting orders in other courts); *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987) (reversing district court's dismissal of case based on deference to another district court's decision, explaining "district judges in this circuit must not treat decisions *by other district judges*, in this and *a fortiori* in other circuits, as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies").[5]

Finally, Defendants' argument that 8 U.S.C. § 1373(a) constrains this Court's ability to adjudicate the legality of the modified SAVE system has no merit. First, this Court has already adjudicated the proper interpretation of § 1373(a), including its limits. *See LWV,* ECF 111 at 69-72. Moreover, Defendants cite no authority, nor are Plaintiffs aware of any, holding that § 1373(a) purports to—or even can—constrain the jurisdiction of this Court. The plain text of this provision refers generally to any "Federal, State, or local government entity or official," and includes no reference to the judiciary nor to any intent to alter the jurisdiction of an Article III court. *See* 8 U.S.C. § 1373(a). Acts of Congress that alter or constrain courts' jurisdiction can present separation of powers concerns. *See United States v. Klein*, 80 U.S. 128, 146-47 (1871). If Congress had intended to do so here, it would have spoken clearly. *See Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023) ("Courts will not assume Congress legislated a potential separation of

---

[5] The government wisely decided not to argue that *res judicata* or collateral estoppel apply here.

powers problem unless the statutory text makes Congress's intent to test constitutional lines apparent." (citing *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018)).

Defendants cite *United States v. Salim*, 549 F.3d 67 (2d Cir. 2008), as an analogous case, but it provides no support. *See* Opp. at 18 n.9. There, the court interpreted the meaning of "government conduct" and reached the unremarkable conclusion that it included the work of federal judges, such that acts of violence against court personnel intended to influence that conduct warranted a terrorism enhancement in sentencing. *Salim*, 549 F.3d at 79. *Salim* relied, in turn, on *United States v. Adelman*, 168 F.3d 84 (2d Cir. 1999), which reached the again unremarkable conclusion that a federal judge was a "federal officer or employee," such that threats made against a judge would warrant a sentencing enhancement. *See Salim*, 549 F.3d at 79 (quoting *Adelman*, 168 F.3d at 86). The reasoning in these cases does not support a conclusion that § 1373(a)—a statute focused on communication among Federal, State, and local governments relating to immigration enforcement—would purport to constrain an Article III court's jurisdiction to adjudicate the legality of such communication.

## IV.    A narrowed scope of relief is not justified here.

Finally, Defendants' argument that any relief the Court grants should be constrained based on the standing of certain Plaintiffs is without merit. As discussed above, Plaintiffs have not requested an injunction; this Motion seeks an order directing compliance with the Court's original summary judgment order, which directed only vacatur of the modified SAVE system and associated SORNs, not an injunction. *See* Mot. at 12. And the APA remedies, which include vacatur, operate directly on agency action, distinct from the limits on injunctive relief that the Supreme Court articulated in *CASA*. *See Make the Rd. New York v. Noem*, No. 25-5320, 2025 WL 3563313, *34-36 (D.C. Cir. Nov. 22, 2025); *see also Corner Post*, 603 U.S. at 838 (Kavanaugh, J., concurring).

16

In any event, although the Court only affirmatively found standing for two of the Plaintiffs, it did not rule as to the others, *LWV*, ECF 111 at 23 n.5, each of whom also had standing, for the reasons explained in Plaintiffs' Motion for Summary Judgment and Reply, *see id.,* ECF 66, 99. These Plaintiffs include the League of Women Voters (for which the Court found standing, *see id.,* ECF 111 at 22) and EPIC, both of which are organizations with a significant national presence. *See id.*, ECF 66-10 at ¶ 32 (EPIC has members in at least 24 states and the District of Columbia); *id.,* ECF 16-5 at ¶ 4 (LWV has members in every state and the District of Columbia). The Court also credited that "[m]embers of local and state Leagues of Women Voters are also members of the League of Women Voters." *Id.*, ECF 111 at 23 n.4. And Plaintiffs previously filed a declaration from an EPIC member who lives in Indiana, one of the *Florida* plaintiff states, articulating her privacy-related injuries. *See id.*, ECF 66-11. If the Court concludes that it is necessary for Plaintiffs to identify members who live in the four *Florida* plaintiff states to justify relief on this Motion, Plaintiffs respectfully request an opportunity to submit additional evidence to support such a finding.

* * * * * * * * * * * * * *

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion to Enforce Summary Judgment Order and enter the proposed order filed at *LWV*, ECF 128-1.

17

Dated: July 17, 2026

Respectfully submitted,

*/s/ Johanna M. Hickman*

Johanna M. Hickman (D.C. Bar No. 981770)
Jennifer Fountain Connolly (D.C. Bar No. 1019148)
Ronald A. Fein (D.D.C. Bar No. MA0012)
Sophie R. Gelber (D.C. Bar No. 9003827)
Aman T. George (D.C. Bar No. 1028446)
Mark B. Samburg (D.C. Bar No. 1018533)
Robin Thurston (D.C. Bar No. 1531399)
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
ageorge@democracyforward.org
jconnolly@democracyforward.org
rfein@democracyforward.org
sgelber@democracyforward.org
hhickman@democracyforward.org
msamburg@democracyforward.org
rthurston@democracyforward.org

*Counsel for All Plaintiffs*

Nikhel S. Sus (D.C. Bar No. 1017937)
John B. Hill (N.Y. Bar No. 5505508)*
Lauren C. Bingham (D.C. Bar No. 90043462)
CITIZENS FOR RESPONSIBILITY
 AND ETHICS IN WASHINGTON
P.O. Box 14596
Washington, DC 20044
(202) 408-5565
nsus@citizensforethics.org
jhill@citizensforethics.org
lbingham@citizensforethics.org

*Counsel for All Plaintiffs*

Jon Sherman (D.C. Bar No. 998271)*
Michelle Kanter Cohen (D.C. Bar No. 989164)
Emily Davis (D.C. Bar No. 90020129)
FAIR ELECTIONS CENTER
1629 K St. NW, Suite 300
Washington, DC 20006
(202) 331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
edavis@fairelectionscenter.org

*Counsel for All Plaintiffs*

John L. Davisson (D.C. Bar No. 1531914)
Enid Zhou (D.C. Bar No. 1632392)
Abigail Kunkler (D.C. Bar No. 90030868)
Mayu Tobin-Miyaji (D.C. Bar No. 90033340)
ELECTRONIC PRIVACY INFORMATION CENTER
1519 New Hampshire Ave. NW
Washington, DC 20036
(202) 483-1140
davisson@epic.org
zhou@epic.org
kunkler@epic.org

*Counsel for Plaintiff Electronic Privacy Information Center*

* admitted pro hac vice