**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**STATE OF FLORIDA**, et al.,

    **Plaintiffs**,

**v.**                                                    **Case No. 3:24-cv-509-TKW-HTC**

**UNITED STATES DEPARTMENT**
**OF HOMELAND SECURITY** and
**MARKWAYNE MULLIN**, in his
official capacity as Secretary of the
Department of Homeland Security,

    **Defendants**.

_____/

## <u>ORDER GRANTING MOTION TO INTERVENE</u>

On December 1, 2025, the Court approved the parties' settlement agreement requiring Defendants (DHS) to make certain enhancements to the Systematic Alien Verification for Entitlements (SAVE) system to comply with DHS's obligations under 8 U.S.C. §1373(c) to verify individuals' immigration status upon the request of state officials. *See* Doc. 31. The required modifications included integration of the SAVE system with the Social Security Administration (SSA) to allow searches using full or partial social security numbers (SSNs) and the addition of a process for bulk-upload verification requests.

The order approving the settlement agreement and dismissing this case retained jurisdiction for 20 years to enforce the agreement. That made the settlement

agreement "the functional equivalent … of a consent decree." *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002).

Meanwhile, unbeknownst to the Court, a separate case was proceeding in the District Court for the District of Columbia (D.D.C.) challenging the modifications to the SAVE system that were required by the consent decree.[1]  The plaintiffs in that case included the League of Women Voters (LWV) and the Electronic Privacy Information Center (EPIC).

The judge in the D.D.C. case denied LWV and EPIC's motion for a preliminary injunction and the modified SAVE system continued to operate with the features required by the consent decree until late-June 2026 when the D.D.C. judge entered an order finding the modifications to be unlawful.  *See League of Women Voters v. DHS*, -- F. Supp. 3d --, 2026 WL 1784297 (D.D.C. June 22, 2026) (Sooknanan, J.).  Within a day or two after that ruling, DHS disabled the modifications to the SAVE system that were required by the consent decree.

Things then started to get interesting.  On June 30, Plaintiffs filed an emergency motion to enforce the consent decree.  The Court established an

---

[1]  DHS told the D.D.C. judge in its most recent filing in that court that it does not consider the order approving the parties' settlement agreement in this case to be a consent decree, but under Eleventh Circuit precedent, it is "functional[ly] equivalent" to one.  Thus, for sake of convenience and to avoid repeatedly referring to the order as "the order approving the parties' settlement agreement," the Court will adopt the D.D.C. judge's vernacular and refer to the order as a "consent decree" in this order.

expedited briefing schedule on the motion, and on July 7, after fully considering the parties' briefs and other filings (including LWV and EPIC's amicus brief), the Court entered an order finding that DHS violated the settlement agreement by disabling the modifications to the SAVE system and requiring it to "immediately comply with the [consent decree] by reinstating Plaintiffs' access to the bulk-upload and SSN-search features in the SAVE system." Doc. 45 at 9.

The D.D.C. judge apparently did not think much of the enforcement order because she pejoratively stated in a July 8 order denying DHS's motion to stay the judgment in that case pending appeal to the D.C. Circuit that this Court "erred in significant ways" in enforcing the consent decree.[2] A few days later, after DHS told

---

[2] The order included other condescending language, including statements that this Court "may very well correct [its] errors" now that it has been "made aware of them" and that "[t]he errors in the … order … illustrate why courts do not proceed in this way." The Court will take the high road and not reply in kind, but the unwarranted disparagement of the enforcement order cannot go unanswered.

Suffice it to say, the Court respectfully disagrees with the D.D.C. judge's view that this Court "had no authority to make merits determinations about the legality of SAVE, either implicitly or explicitly." Indeed, there is Eleventh Circuit precedent for the proposition that a district court can (and sometimes must) assess the legality of a proposed consent decree before adopting and putting the weight of the court's enforcement authority behind the decree. *See, e.g., Stovall v. City of Cocoa*, 117 F.3d 1238, 1242–43 (11th Cir. 1997) ("Even though the decree is predicated on consent of the parties, the judge must not give it perfunctory approval …. Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny. Even when it affects only the parties, the court should … examine it carefully to ascertain not only that it is a fair settlement but also that it does not put the court's sanction on and power behind a decree that violates Constitution, statute, or jurisprudence.") (quoting *United States v. City of Miami*, 664 F.2d 435, 440–41 (5th Cir. 1981) (en banc) (Rubin, J., concurring)).

The Court also respectfully disagrees with the D.D.C. judge's assessment that the cases she cited for the general proposition that a district court should modify a consent decree based on

3

"changes in governing law or its interpretation by the courts" are controlling here. Unlike this case, those cases involved situations in which a pertinent statute changed after the consent decree was entered or a subsequent Supreme Court decision—not a non-binding district decision—undermined the legal basis of the consent decree. Moreover, in this case, the Court was asked to enforce—not modify—the consent decree, so it had no occasion to consider how the factors in Fed. R. Civ. P. 60(b)(5) might apply.

There is also no merit to the idea that the consent decree should be given less weight than the D.D.C. judge's order simply because of the timing surrounding its entry—as LWV and EPIC appear to be implying in their filings in the D.D.C. and the D.C. Circuit. Like the D.D.C. judge, this Court works on nights, weekends, and holidays, and the quick approval of the settlement agreement does not mean that the Court did not give due consideration to the legality of the modifications to the SAVE system at the time. *See* Doc. 45 at 6 n.5 (acknowledging that the Court "did not undertake an extensive assessment of the legality of the features that the settlement agreement required the SAVE system to include when it approved the agreement" but also emphasizing that the Court "would not have approved the agreement if it had any concern that those features were unlawful"). Moreover, although this Court has the humility to recognize that reasonable judicial minds can differ and that its assessment of the legality of the modifications to the SAVE system or its enforcement of the consent decree may ultimately be found to be incorrect by a higher court, the Court firmly believes based on its review when the consent decree was approved and its more thorough review since—which now includes a review of all of the merits briefing in the D.D.C. case—that the modifications are consistent with the plain language of 8 U.S.C. §1373 that (1) clearly and unambiguously requires DHS to provide requested verification of immigration status to state officials and (2) explicitly overrides any other provision of federal law (including the Social Security Act and the Privacy Act) that might otherwise prohibit the sharing of information regarding citizenship or immigration status that is maintained by the SSA in relation to SSNs.

Relatedly, although the Court probably could have explained it better, the point that the Court was trying to make in the enforcement order about the "routine use" exception in the Privacy Act was that the purpose for which the citizenship information collected by the SSA under 42 U.S.C. §405(c)(2)(B)(ii) is being used by the Plaintiff states in the modified SAVE system (to verify that an individual has the requisite citizenship status to vote, obtain government benefits, be issued a professional license, etc.) is "compatible with" a purpose for which that information was collected by SSA (to verify that the individual has the requisite citizenship status to be issued a SSN). Thus, to use the D.D.C. judge's analogy, even though the purpose of a library card might be to borrow books, the purpose for which residency information is collected by the library before issuing the card (to confirm that the applicant is a county resident) is compatible with using that information (or the resulting library card) as evidence of the cardholder's residence.

All of that being said, the Court agrees with much of what Judge Nelson said in his concurring opinion in *Mi Familia Vota v. Fontes*, 152 F. 4th 1153 (9th Cir. 2025), about the potential problems with "friendly" consent decrees because the Court has seen first-had how they have been abused in other cases. *See Florida v. United States*, 660 F. Supp. 3d 1239, 1267 (N.D. Fla. 2023) (Wetherell, J.) (rejecting DHS's reliance on another court's consent decree as an excuse

the D.D.C. judge that it intended to comply with this Court's enforcement order and its obligations under the consent decree,[3] the D.D.C. judge established an expedited briefing schedule on the motion to enforce the judgment vacating the modifications to the SAVE system that the plaintiffs in that case said they were going to (and ultimately did) file. That motion is fully briefed and is awaiting a ruling from the D.D.C. judge.

As things currently stand, DHS is subject to two conflicting federal court orders—one from this Court requiring it to include certain features in the SAVE system and one from the D.D.C. judge effectively prohibiting it from doing so. At some point, one of these orders will have to give. But at this point, the Court sees no reason why it should be this Court's order.

DHS has not appealed the enforcement order, and even though it told the D.D.C. judge in its most recent filing in that court that it "disagrees" (present tense) with the enforcement order and that it "believes" (present tense) that the order "was in error," it is unclear if DHS intends to appeal the order. LWV and EPIC, however,

_____

for not complying with this Court's understanding of the law and explaining that DHS should seek modification of the consent decree if it was hampering its ability to comply with the law). The Supreme Court recently granted review of the *Mi Familia* case, *see* 2026 WL 1855101 (U.S. June 29, 2026), and if that court (or the Eleventh Circuit) restricts the use of consent decrees or decides that they must give way to things like a decision of another district court, the Court will, of course, dutifully follow that ruling. Until then, however, the Court sees no reason why its consent decree should not be enforced simply because another district judge has a different view of the law than what was implicit in the Court's approval of the consent decree and is now explicit.

[3] DHS reiterated that position in the status report filed in this case. *See* Doc. 53.

want to appeal the enforcement order—and on July 8, they filed an emergency motion to intervene in this case for that purpose. *See* Doc. 48. The motion was briefed on an expedited basis and is ripe for a ruling.[4]

LWV and EPIC argue that they are entitled to intervene in this case as a matter of right under Fed. R. Civ. P. 24(a) or that they should be permitted to intervene under Fed. R. Civ. P. 24(b). Plaintiffs and DHS respond that intervention should be denied because LWV and EPIC's motion is untimely under either rule and because they lack standing to challenge the modifications to the SAVE system. LWV and EPIC reply that they only seek to intervene to appeal the enforcement order (not the underlying consent decree), that their motion is timely in relation to that order, and that they have standing to challenge that order.

It is well-established that post-judgment intervention is disfavored and is to be "looked upon with a jaundiced eye." *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) (quoting *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1072 (5th Cir. 1970)). Nevertheless, "[o]n timely motion, the court <u>must</u> permit anyone to intervene who … [1] claims an interest relating to the property or transaction that is the subject of the action, and [2] is so situated that disposing of

---

[4] The Court assured the parties that it would resolve the motion to intervene "as expeditiously as possible" after their July 14 status report, *see* Doc. 49 at 2, and the motion would have been resolved sooner than now but for the fact that the Court was also tending to important matters in several other cases last week while preparing for a felony criminal jury trial that starts tomorrow. But, still, the motion was resolved less than a week after it became ripe.

the action may as a practical matter impair or impede the movant's ability to protect its interest, [3] unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2) (emphasis added).

Here, the existing parties do not appear to dispute that LWV and EPIC have satisfied the substantive criteria in this rule. Indeed, there is no real question that the LWV and EPIC's interests are directly affected by the enforcement proceedings in this case based on the relief that they obtained—rightly or wrongly—in the D.D.C. case; that the relief they obtained in the D.D.C. case will be substantially impaired if the enforcement order is not reversed on appeal; and that the existing parties (particularly DHS) are not adequately representing that LWV and EPIC's interest because it is unlikely that they are going to appeal the enforcement order. Thus, resolution of the motion to intervene boils down to whether it was "timely."

In this context, "timeliness is not limited to chronological considerations but is to be determined from all the circumstances.'" *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263–64 (5th Cir. 1977) (quoting *U.S. Steel Corp.*, 548 F.2d at 1235). And district courts are to consider the following four factors when assessing the timeliness of a motion to intervene:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest; (3) the extent of the

7

prejudice that the would-be intervenor may suffer if denied the opportunity to intervene; and (4) the existence of unusual circumstances weighing for or against a determination of timeliness.

*Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019).

Here, the first factor weighs against finding the motion to intervene timely because LWV and EPIC have been aware of this case since <u>at least</u> December 2025 and the Court still does not understand why they did not seek to intervene long before now if, as they claimed in the D.D.C. case, the modifications to the SAVE system that were required by the consent decree caused real and substantial injuries to them and/or their members.[5]  Nevertheless, because the motion to intervene was filed the day after the enforcement order was entered and the legal import of the consent decree became crystal clear to LWV and EPIC, the Court does not give much weight to the first factor.  *See id.* ("Mere knowledge that an action is pending, without

---

[5]  LWV and EPIC's purported reliance on the boilerplate language in the settlement agreement stating it did impose any obligation on DHS that "would be inconsistent with the United States Constitution, or with any federal statute in effect at the time of such performance" is not a persuasive excuse because it failed to account for the possibility that this Court already had already determined—or, when asked, would determine—that there was nothing unlawful about the modifications to the SAVE system required by the consent decree.  Indeed, reading between the lines of this argument and the sequence of events in this case and the D.D.C. case, the Court finds that it is more likely than not that LWV and EPIC simply made a strategic decision not to get involved in this case before the parties entered into the settlement agreement or before the consent decree became final because they believed that they had a better chance of obtaining the relief that they were seeking in D.D.C. than by raising and litigating their claims in this Court.

appreciation of the potential adverse effect an adjudication of that action may have on one's interests, does not preclude intervention.").

The second and third factors weigh in favor of finding the motion to intervene timely. LWV and EPIC's interests are adversely affected by the enforcement order and they will be prejudiced if they are not allowed to intervene to appeal that order because it deprives them of a portion of the relief that they obtained—rightfully or wrongfully—in the D.D.C. case and DHS does not appear to have a present intent to appeal the enforcement order. The Court is not persuaded that the existing parties would be unduly prejudiced if LWV and EPIC are allowed to intervene at this point because unless the D.C. Circuit stays the D.D.C. judge's order, the operation of the modified SAVE system in the Plaintiff states is likely going to remain in legal limbo—with or without an appeal in this case. Moreover, even if LWV and EPIC had intervened before the consent decree was approved (or at least sooner than now), the parties would likely have been in the same legal limbo—i.e., with a judgment in this case requiring DHS to improve the system used to respond to verification requests under §1373(c), a judgment in the D.D.C. case saying they could not do so in the way they ultimately did, and competing appeals at the Eleventh and D.C. Circuits.

The fourth factor weighs in favor of finding the motion to intervene timely because the events giving rise to the motion are "unusual" to say the least. Those

9

events started in late-June 2022 when the D.D.C. judge ruled that the modifications to the SAVE system that were required by the consent decree and that had been in operation for more than seven months at that point were unlawful. That ruling set in motion a fast-moving chain of events that evolved into a judicial ping-pong match over the legality of the modifications to the SAVE system that, unfortunately, appears unlikely to end any time soon. Indeed, because neither this Court nor the D.D.C. judge has shown any interest in deferring to the other on the question of whether the modifications to the SAVE system are lawful, it is seemingly going to take an appellate court—whether it is the D.C. Circuit, the Eleventh Circuit, or the Supreme Court—to decide which court is right and/or what should happen next.

In sum, because three of the four factors that the Court is required to consider when ruling on a motion to intervene weigh in favor of finding the motion timely and the fourth factor does not weigh that strongly against it, the Court finds that the motion is timely. And, based on that finding, the Court essentially has no choice but to grant the motion to intervene under the mandatory language in Rule 24(a).

The Court did not overlook Plaintiffs' argument that LWV and EPIC are required to—but did not—demonstrate their standing to appeal a decision that neither of the parties intend to appeal. That argument has support in Supreme Court precedent, *see Virginia House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) ("As the Court has repeatedly recognized, to appeal a decision that the

primary party does not challenge, an intervenor must independently demonstrate standing."), but it goes more to the question of whether the Eleventh Circuit should dismiss the appeal once LWV and EPIC files it than the threshold question of whether this Court should allow them to intervene to file an appeal. Moreover, to the extent that argument has any bearing on the motion to intervene, the Court does not find it dispositive because even though there is no evidence before this Court demonstrating that LWV and EPIC would have had standing to intervene in this case to oppose Plaintiffs' efforts to obtain enhancements to the SAVE system or to challenge the terms of the consent decree (before or after it was entered), LWV and EPIC only seek to intervene to appeal the enforcement order and that order adversely impacts their interests by depriving them of a portion of the relief that they obtained—rightfully or wrongfully—in the D.D.C. case.

*   *   *

Accordingly, for the reasons stated above, it is **ORDERED** that LWV and EPIC's emergency motion to intervene (Doc. 48) is **GRANTED**, and the Clerk shall update their status in CM/ECF from amici to intervenors.

**DONE and ORDERED** this 19th day of July, 2026.

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**

11